IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | |
|---|---|
| In re<br><br>**O.W. Bunker Holding North America Inc.,**[1]<br><br>    Debtor. | **Chapter 11**<br><br>**Case No. 14-51720 (AHWS)** |
| In re<br><br>**O.W. Bunker North America Inc.,**[2]<br><br>    Debtor. | **Chapter 11**<br><br>**Case No. 14-51721 (AHWS)** |
| In re<br><br>**O.W. Bunker USA Inc.,**[3]<br><br>    Debtor. | **Chapter 11**<br><br>**Case No. 14-51722 (AHWS)** |

**NUSTAR ENERGY SERVICES, INC.'S AND NUSTAR SUPPLY & TRADING LLC'S RESPONSE AND OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER UNDER 11 U.S.C. §§ 105 AND 362: (I) DIRECTING CUSTOMER PAYMENTS INTO SEGREGATED DEBTOR IN POSSESSION ACCOUNT PENDING ADVERSARY PROCEEDING TO AVOID LIEN; AND (II) AUTHORIZING AND ESTABLISHING PROCEDURES FOR RESOLUTION OF SUPPLIER LIENS AGAINST CUSTOMER VESSELS**

NuStar Energy Services, Inc. and NuStar Supply & Trading LLC (collectively "**NuStar**") files this response and objection to *Debtors' Motion for Entry of An Order Under 11 U.S.C. §§ 105 and 362: (I) Directing Customer Payments Into Segregated Debtor In Possession Account Pending Adversary Proceeding to Avoid Lien; and (II) Authorizing and Establishing Procedures*

---

[1] The last four digits of the Debtor's taxpayer identification numbers is 7474. The Debtor's address is 281 Tresser Blvd. 2 Stamford Plaza, 15th Floor, Stamford, CT 06901.
[2] The last four digits of the Debtor's taxpayer identification numbers is 7158. The Debtor's address is 281 Tresser Blvd., 2 Stamford Plaza, Stamford, CT 06901.
[3] The last four digits of the Debtor's taxpayer identification numbers is 3556. The Debtor's address is 2603 Augusta Drive, Suite 440, Houston, TX 77057.

41174897.2
00000.000/614736.1

- 1 -

*for Resolution of Supplier Liens Against Customer Vessels* (the "**Injunctive Motion**"), and would show:

# I.
# **PRELIMINARY STATEMENT**

NuStar objects to Debtors' Injunctive Motion. NuStar specifically objects to the Injunctive Motion to the extent it seeks to impair or impede NuStar's right to perfect maritime liens and/or arrest vessels. As it applies to O.W. Bunker USA Inc. ("**USA**"), the Injunctive Motion is (i) procedurally improper, (ii) fails to afford due process to the parties most affected by its requested relief, (iii) seeks relief outside the jurisdictional reach of this Court, (iv) fails to satisfy the elements necessary to obtain an injunction, (v) fails to establish cause to enjoin vessel arrests, (vi) fails to establish benefit to the estate from enjoining vessel arrests, (vii) operates as a "taking" of NuStar's property under the Fifth Amendment of the U.S. Constitution, and (viii) greatly prejudices the rights of bunker fuel oil[4] suppliers like NuStar (by seeking to stay the perfection of *in rem* maritime liens and/or *in rem* vessel arrests against vessels that are not property of the estate) without obtaining the result USA seeks (diversion of account receivable proceeds to the bankruptcy court).

As it applies to O.W. Bunker North America, Inc. ("**North America**"), NuStar objects to the Injunctive Motion to the extent it seeks to institute a procedure that fails to preserve NuStar's reclamation rights in both the bunker fuel oil sold to North America by NuStar and in the sales proceeds generated by any sale of such bunker fuel oil.

---

[4] Fuel oil is often referred to as bunker fuel or bunker crude, and these terms generally refer to any type of fuel oil used aboard vessels. "Bunker" derives from the tanks on ships and in ports that it is stored in.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

**A.    The NuStar Entities**

1.    NuStar Energy Services, Inc. ("**NuStar Energy**") is a Delaware corporation, with its head office at 2330 North Loop 1604 West, San Antonio, Texas 78248.

2.    NuStar Supply & Trading LLC ("**NuStar Supply**") is a Delaware limited liability company with its principal place of business located at 19003 IH-10 West, San Antonio, Texas, 78257.

**B.    Vessel Sales: NuStar Energy to USA as Agent for Vessels**

3.    O.W. Bunker USA, Inc. ("**USA**") brokered bunker fuel sales between NuStar Energy and various vessels at sea in different parts of the world ("**Vessel Sales**"). USA acts as a middleman or agent for the vessels in finding fuel oil suppliers.[5] NuStar made 31 Vessels Sales through USA for which NuStar has not been paid. NuStar is owed approximately USD $19 million for these Vessel Sales.

4.    USA acts as an agent for vessels seeking fuel oil bunkers. In the words of Debtors' General Manager: "OBW-USA manages the bunker purchasing process on behalf of a customer (vessel)" Case No. 14-51720, Dkt. 15 (Declaration of Adrian Tolson, at 4 (para. 13) (emphasis added). USA finds the appropriate bunker fuel oil suppliers (like NuStar Energy) and matches them with vessels in need of such fuel oil bunkers.

**C.    NuStar Energy's Maritime Liens**

5.    Under maritime law, NuStar Energy acquires a maritime lien in the vessel upon delivery of bunker fuel oil – whether or not a broker is involved in the transaction – because the fuel oil powering the vessel is a "necessary." 46 U.S.C. § 971; *Belcher Co. of Alabama v. M/V*

---

[5] USA only acted as an agent for the vessels and never acquired equitable title to the bunkers acquired by the vessels.

*Maratha Mariner*, 724 F.2d 1161, 1163 (5th Cir. 1984); *see also Exxon Corp. v. Cent. Gulf Lines*, 780 F. Supp. 191, 193–94 (S.D.N.Y. 1991)(fuel oil bunkers qualify as "necessaries," giving rise to an enforceable maritime lien).

6. NuStar Energy's maritime liens attached to numerous private vessels owned by non-debtor third-parties who acquired NuStar's fuel bunkers. *See* 46 U.S.C. § 31341; *see also Gulf Marine & Indus. Supplies, Inc. v. Golden Prince M/V*, 230 F.3d 178, 180 (5th Cir. 2000) (citing to 46 U.S.C. § 31342 for the proposition that a person providing necessaries to a vessel has a maritime lien on the vessel). As a result, NuStar Energy's maritime liens are wholly independent of any purported security interest held by ING.[6]

7. Importantly, maritime liens are in the vessels themselves—not in the cargo held by the vessels. *Gulf Marine*, 230 F.3d at 180. Thus, foreclosing on a maritime lien and arresting a vessel owned by a non-debtor, even when property of the estate is on board, does not violate the automatic stay. In *Chugach Timber Corp. v. Northern Stevedoring & Handling Corp. (In re Chugach Forest Prods.)*, debtors Chugach hired stevedores to load logs and lumber onto the HERMES ISLAND, a vessel not owned by the debtor. 23 F.3d 241, 243 (9th Cir. 1994). Upon completion of the job, the stevedores billed Chugach $ 101,488.94 and, pursuant to the Maritime Lien Act, acquired a lien on the HERMES ISLAND. *Id*. Before paying this bill, Chugach filed a chapter 11 bankruptcy petition. *Id*. Post-petition, Churgach again hired the stevedores to load another shipment onto the HERMES ISLAND, which they did. *Id*. Then the stevedores filed an *in rem* complaint (which named only the vessel and made no mention of the Chugach bankruptcy proceedings) in federal court to arrest the HERMES ISLAND pursuant to the maritime lien. *Id*. The court issued an arrest warrant for the HERMES ISLAND, and the US Marshal arrested the HERMES ISLAND. *Id*. The Ninth Circuit held that the procurement of

---

[6] The Debtors contend that ING's liens are avoidable, having been perfected on the eve of bankruptcy.

the arrest of the HERMES ISLAND was not a violation of the automatic stay of 11 U.S.C. § 362(a)(3). *Id*. at 244-45. The Ninth Circuit noted that the arrest of the non-debtor vessel did not amount to an exercise of control over property of the bankruptcy estate under 11 U.S.C. § 362(a)(3). NuStar Energy contends that the automatic stay does not apply to *in rem* actions to arrest non-debtor vessels in enforcement of its maritime lien. In the instant case, no proceedings have been or are being filed against the Debtors, and no property of the Debtors is involved in the vessel arrests.

D. **Bulk Sales: NuStar Supply to North America for "Floating Gas Station"**

8. NuStar Supply sold fuel oil, in bulk amounts, directly to North America. North America operated a "floating gas station" where it re-sold bunker fuel oil to vessels at sea.[7] NuStar Supply made bulk sales of fuel oil to North America for one vessel, the EVA SCHULTE, which, on information and belief, is or was chartered by North America, or an affiliate, O.W. Bunker Panama S.A. See Case No. 14-51720, Dkt. 15 (Declaration of Adrian Tolson, at 13-14 (paras. 46-47). NuStar Supply is owed, and has not been paid, approximately USD $6.7 million for its bulk sale of bunker fuel oil that is on the EVA SCHULTE.

E. **Different Deals; Different Rights**

9. NuStar has deals with both USA and North America, but they are distinctly different deals. North America's floating gas station takes delivery of the bunkers NuStar Supply sells it. In contrast, USA never takes delivery of or equitable title to the bunkers NuStar sells it, but acts as agent for the individual vessels. NuStar charters bunker barges and tugs to take the fuel oil to the vessel buying it.

---

[7] The floating gas station purchases bunker fuel on its own behalf and re-sells it to vessels on the high seas. North America takes delivery of the bunkers, then floats out to sea and resells the bunker fuel to vessels too big to come into port.

10.     The Injunctive Motion blurs the distinction between the two operating debtors: USA and North America.  It is important to understand the distinctions between the business models of USA and North America to properly understand the rights of the parties involved and the effect of the Injunctive Motion's proposed injunction on the participants and non-participants to this proceeding.

11.     Why does this matter?  Because the omnibus relief Debtors request in their Injunctive Motion bundles all of USA's and North America's business into one transaction, treats them the same, and inappropriately seeks the same relief as to all transactions.

## III.
## ARGUMENT

**A.      O.W. Bunker North America, Inc.**

12.     With respect to North America's floating gas station, EVA SCHULTE, there are at least three potentially competing interests:  North America's Danish parent,[8] North America, and suppliers like NuStar Supply who have reclamation claims.  As to the floating gas station transactions, NuStar Supply sees some grounds for limited relief – because the floating gas stations may be within the jurisdictional reach of the Court because they may be owned or under the control of North America.  North America's problem is that all of the payments being made by vessels filling up at the floating gas station are being made to its Danish parent.  To the extent North America seeks §105(a)[9] relief to capture those payments, NuStar Supply does not oppose that request as long as NuStar Supply's reclamation interests are protected.[10]  *See* NuStar Supply's Motion for Adequate Protection; Alternatively, for Relief from the Automatic Stay to

---

[8] The Debtors' Danish parent is O.W. Bunker & Trading A/S, which, along with O.W. Supply & Trading A/S, is currently in a bankruptcy proceeding in probate court in Aalborg, Denmark.
[9] Unless otherwise noted, all statutory citations are to Title 11 of the United States Code.
[10] While NuStar Supply has sought reclamation against the goods and proceeds in connection with the bulk sales of goods on board the EVA SCHULTE, NuStar Supply reserves all rights, including but not limited to, the right to assert maritime liens and bring arrest proceedings against the EVA SCHULTE, and NuStar Supply's rights to seek an administrative expense priority for its claims under 11 U.S.C. § 503(b)(9).

Exercise Reclamation (seeking reclamation of fuel oil bunkers aboard the EVA SCHULTE vessel and payment of sale proceeds of such fuel oil as adequate protection of its reclamation rights). [14-51721 Dkt. 17]. NuStar Supply has and continues to assert reclamation rights in the bunkers on the floating gas station EVA SCHULTE, asserts reclamation rights in any proceeds of those bunker sales and would like those reclamation rights preserved by any §105(a) order the Court might enter. To effectively accomplish that protection, the order must allow the proceeds of any sales by the EVA SCHULTE to be impressed with NuStar Supply's reclamation rights and stored in an account segregated from all of North America's other accounts.[11] Nustar Supply objects to the procedures proposed by North America to the extent that it fails to protect NuStar Supply's reclamation rights by, at a minimum, segregating the product and proceeds of the product, impressing the product with NuStar's reclamation rights and providing NuStar with the procedural protections and rights it is entitle to under the rules.

B. **O.W. Bunker USA Inc.**

13. USA is different. With respect to USA's role as agent for vessels, the competing interests are both numerous and, respectfully, outside of this court's reach and jurisdiction. This group includes ALL the vessel owners who used USA to locate a bunker supplier like Nustar Energy. In NuStar Energy's case this includes 31 vessels, none of which are flagged as U.S. ships. Respectfully, any U.S. Court's orders as to these vessels mean little unless they come within U.S. jurisdictional waters. The vessels are concerned about double or triple liability they might incur by paying the Debtors' Danish parent, USA, or suppliers like NuStar Energy with superior maritime liens. The only way to secure payment from these vessels is to arrest them or

---

[11] The Debtors seek to establish a Segregated Account to receive any payments by the vessel customers or other O.W. Bunker entities. If such a procedure is established, there should be separate accounts for each vessel sale and adequate accounting so that no funds are commingled and each reclamation claimant and maritime lien claimant can trace their proceeds.

threaten to arrest them. Vessel arrests can occur in any country with a recognized vessel arrest treaty.

14. The Injunctive Motion seeks relief beyond the limitations of due process and this Court's powers under §105(a). Section 105(a) allows a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]." §105(a). But the Second Circuit has repeatedly recognized that section 105 "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable laws, or constitute a roving commission to do equity." *E.g.*, *Solo v. Kalikow (In re Kalikow)*, 602 F.3d 82, 96–97 (2d Cir. 2010) (quoting *New England Dairies, Inc. v. Daily Mart Convenience Stores, Inc. (In re Daily Mart Convenience Stores, Inc.)*, 351 F.3d 86, 92 (2d Cir. 2003)) (internal punctuation omitted). As a result, §105(a) does not create a private right of action, and a bankruptcy court's equitable powers under §105(a) "must and can only be exercised within the confines of the Bankruptcy Code." *New England Dairies*, 351 F.3d at 92 (quoting *FDIC v. Colonial Realty Co.*, 966 F.2d 57, 59 (2d Cir. 1992)). Moreover, bankruptcy courts have no authority under §105(a), or otherwise, to issue orders that are outside the confines of unambiguous statutory provisions. *See Law v. Siegel*, 134 S. Ct. 1188, 1194–97 (2014). The Maritime Lien Act is one of those statutory provisions.

15. USA's reliance on §105(a) is misplaced, and this Court should deny the Injunction Motion as it relates to USA for several reasons. First, USA seeks an injunction by motion rather than the adversary proceeding required by the Federal Rules of Bankruptcy Procedure, a gambit that sidesteps the service and personal jurisdiction requirements imposed by requiring an adversary proceeding to obtain injunctive relief. Second, §105(a) cannot afford USA relief beyond the territorial borders of the United States. Third, USA has not pled the

required elements for an injunction to issue under §105(a). Fourth, although NuStar reads the relief requested as not enjoining vessel arrests, no cause exists to enjoin supplier vessel arrests as such arrests do not affect property of the estate. Fifth, if the vessel arrests are sought to be enjoined, USA fails to establish cause to enjoin vessel arrests and fails to establish benefit to the estate from enjoining vessel arrests. On the contrary, any vessel arrests benefit the estates. Arresting a vessel is the most effective way to get the vessels to pay a supplier. The vessel's payment to a supplier (in order to release a maritime lien) reduces the claims of the suppliers against the Debtors. In NuStar's case, the majority of NuStar's claims have § 503(b)(9) priority; a corresponding claim by the vessel owner against the Debtors would likely be a general unsecured claim. Sixth, the enjoining of vessel arrests against non-debtor parties and property (if such is being attempted by the Injunctive Motion) operates as a "taking" of NuStar's property under the Fifth Amendment of the U.S. Constitution, and greatly prejudices the rights NuStar (by seeking to stay *in rem* vessel arrests against vessels that are not property of the estate) without obtaining the result USA seeks (diversion of account receivable proceeds to the bankruptcy court).[12] Accordingly, the Injunctive Motion should be denied as to USA.

C. **Procedural Defect; Lack of Personal Jurisdiction; Lack of Service**

16. As a threshold matters, the Injunctive Motion is procedurally defective because Federal Rule of Bankruptcy Procedure 7001 requires the Debtors seek the requested relief by an adversary proceeding—not by a motion. See FED. R. BANKR. P. 7001(7)(injunctive or other equitable relief), 7001(1)(proceeding to recover money or property), and 7001(2)(proceeding to determine validity, priority or extent of lien); *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 763-64 (5th Cir. 1995); *In re St. Vincent's Catholic Med. Ctrs.*, 445 B.R. 264, 270 (Bankr. S.D.N.Y. 2011)("Courts have been near universal in reversing injunctions which have been

---

[12] See discussion below.

issued without compliance with Rule 7001"). An injunction or other equitable relief is only available through an adversary proceeding, unless provided by enforcing an order previously obtained such as a plan injunction. *Solo*, 602 F.3d at 93. As no previous orders exist here, an adversary proceeding is required to obtain the requested relief.

17. Two outcome-determinative consequences of an adversary proceeding are expanded service requirements and the necessity of personal jurisdiction. Rule 7004(a) makes Federal Rule of Civil Procedure 4 operative in adversary proceedings. FED. R. BANKR. P. 7004(a). Accordingly, because the thirty-one vessels subject to the injunction are located internationally and not registered in the United States, USA must obtain international service of process to the owners of the vessels subject to the requested injunction. *See* FED. R. CIV. P. 4(f).

18. Even more important than expanded service requirements, an adversary proceeding requires personal jurisdiction. Service of process may establish personal jurisdiction only "[i]f the exercise of jurisdiction is consistent with Constitution and laws of the United States . . . ." FED. R. CIV. P. 7004(f). Accordingly, a bankruptcy court may exercise in personam jurisdiction only over parties who have sufficient minimum contacts with the United States. *A & W Publishers, Inc. v. Bison Books Ltd. (In re A & W Publishers, Inc.)*, 39 B.R. 666, 667 (S.D.N.Y. 1984) ("a minimum contacts test applies in bankruptcy to protect foreign corporations [persons] against being subject to jurisdiction in this country without due process of law"). Without minimum contacts to establish in personam jurisdiction, "bankruptcy court is precluded from exercising control over property of the estate located in a foreign country without the assistance of the foreign courts." *Sinatra v. Gucci (In re Gucci)*, 309 B.R. 679, 683–84 (S.D.N.Y. 2004) (quoting *In re Int'l Administrative Servs., Inc.*, 211 B.R. 88, 93 (Bankr. M.D. Fla. 1997)), *aff'd*, 197 F. App'x 58 (2d Cir. 2006).

19. The Debtors have not alleged sufficient facts to show that the vessel owners have sufficient minimum contacts to create personal jurisdiction. Accordingly, this Court cannot exercise personal jurisdiction through a §105(a) injunction absent some assistance from courts to which these entities are subject to jurisdiction.

D. **Congress Did Not Place the High Seas Within the Jurisdictional Reach of § 105(a)**

20. Section 105(a) does not grant a federal court power enforce relief beyond the territorial boundaries of the United States. "When it desires to do so, Congress knows how to place the high seas within the jurisdictional reach of a statute." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 440 (1989). Congress has not done so with §105(a).

21. The Supreme Court recently reaffirmed the long-standing principle that a statute is presumed not to apply extraterritorially unless Congress clearly expresses an "affirmative intention" to the contrary. *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1666 (2013) (quoting *EECO v. Arabian Am. Oil Co. (Aramco)*, 499 U.S. 244, 248 (1991); *Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869, 2878 (2010). Such an affirmative intention comes with clear and definite language within the statute itself. Indeed, Congress has provided numerous examples of sufficient language within the context of maritime law. *Amerada Hess*, 48 U.S. at 440 n.7 (citing 14 U.S.C. § 89, 18 U.S.C. § 7, and 19 U.S.C. § 1701 as a few examples of Congress's expression of extraterritorial intent).

22. Generic terms do not provide the clear and definite language necessary to set aside the presumption against extraterritoriality. In *Kiobel*, the Supreme Court rejected generic terms like "any" or "every" as sufficient indicators to rebut the presumption, such that a statute recognizing "any civil action" did not apply extraterritoriality. 133 S. Ct. at 1666. Likewise, in *Morrison*, the Supreme Court held that a general reference to foreign commerce in the definition of "interstate commerce" in 15 U.S.C. § 78c(a)(17) was insufficient to overcome the

presumption and make 15 U.S.C. § 78j(b), which used the term "interstate commerce," apply extraterritorially. 130 S. Ct. at 2882 (citing *Aramco*, 499 U.S. at 251).

23. Section 105(a) contains no clear and definite language sufficient to overcome the presumption against extraterritoriality. And the general language "wherever located" in § 541(a) is indistinguishable from the generic terms rejected by the Supreme Court in *Kiobel* and *Morrison*. *See* §541(a) (defining property of the estate to include property listed "wherever located and by whomever held"); *Barclay v. Swiss Fin. Corp. (In re Bankr. Estate of Midland Euro Exch. Inc.)*, 347 B.R. 708, 717-18 (Bankr. C.D. Cal. 2006) (refusing to apply §541(a) and §548 extraterritorially). The same generic language in §541(a) is also found in the jurisdictional provisions governing bankruptcy estates in title 28. 28 U.S.C. §1334(e) (conferring exclusive jurisdiction upon the district court "of all of the property, wherever located, of the debtor" on the petition date) (emphasis added). To the extent that §1334(e) creates extraterritorial jurisdiction, the presumption against extraterritoriality prevents a bankruptcy court from exporting the substantive law of the United States. *See Sinatra*, 309 B.R. at 683–84 (holding that Italian law applied to a debtor's real property located in Rome notwithstanding §1334(e)). Without clear and definite language, the Debtors cannot displace the presumption against extraterritoriality and fashion relief abroad under §105(a).

### E.     Fails to Establish Elements Necessary for Enjoining Vessel Arrests

24. Even assuming the requested relief is available under § 105(a), the Debtors cannot satisfy the elements necessary for injunctive relief. The party requesting an injunction under § 105(a) must satisfy the test for an injunction. *Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086, 1094 (9th Cir. 2007); *see also* S. Rep. No. 95–589, at 51 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5838 (stays or injunctions under § 105(a) "will not be automatic upon the commencement of the case, but will be granted or

issued under the usual rules for the issuance of injunctions"). Injunctive relief should issue only upon a clear showing of either (1) probable success on the merits and possible irreparable injury, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *D.D. v. N.Y. City Bd. of Educ.,* 465 F.3d 503, 510 (2d Cir. N.Y. 2006); *Sonesta Int'l Hotels Corp. v. Wellington Assoc.*, 483 F.2d 247, 250 (2d Cir. N.Y. 1973).

**F.    Fails to Establish Cause to Enjoin Vessel Arrests**

25.    To the extent that the Injunctive Motion seeks to enjoin vessel arrests, no cause for the §105(a) injunction exists. Respectfully, the Court has no subject matter jurisdiction over the over the vessels or vessel arrests contemplated. Under maritime law, vessel arrests are *in rem* proceedings against the vessel (not the bunkers) by a maritime lienholder (a bunker supplier). *Chugach Timber Corp. v. Northern Stevedoring & Handling Corp. (In re Chugach Forest Prods.)*, 23 F.3d 241, 244-45 (9th Cir. Alaska 1994). The vessels are not property of the estate. Having sold the bunker fuel oil to the vessels (acting as agent for vessel owners), USA has no title to the bunker fuel oil. Therefore, the bunker fuel oil sold is not property of the estate. Even if the bunker fuel oil was property of the estate, the *in rem* vessel arrests concern only claims made against the vessel, not against the bunker fuel oil. *Chugach*, 23 F.3d at 244-45 (maritime lien against the vessel was not a stay violation even though debtor's property was aboard the vessel). Therefore the vessel arrests in no way affect the Debtors or Debtors' estates.

**G.    No Benefit to the Estate from Enjoining Vessel Arrests**

26.    No §105(a) injunction should issue to enjoin vessel arrests because there is no benefit to the estate in doing so. First, an order directing the foreign vessels to do something or not do something is outside the jurisdiction of the court and will likely be ignored by the vessel owners. Second, arresting the vessels in foreign courts and when they are in US waters will

cause the vessel owners to pay the charges for the fuel oil they are burning. This is a benefit to the estate because it will reduce pay NuStar Energy's claim against the USA, and a majority of NuStar's claims are entitled to administrative priority pursuant to §503(b)(9). Satisfying NuStar's §503(b)(9) claims should benefit the estate, especially since any resultant claim against the estate by vessel owners would likely not have § 503(b)(9) priority.

### H.    Fifth Amendment Taking of NuStar Energy's Property

27.    The proposed, indefinite §105(a) injunction would act to take NuStar's property without just compensation. The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. Art V. These two clauses—the Due Process Clause and the Takings Clause—form the basis of the Fifth Amendment's protections for private property rights.

28.    Under a Takings Clause analysis, the Court must consider whether (1) a "taking" occurred; (2) the taking was for "public use;" and (3) the compensation in exchange was "just compensation." *Kelo v. City of New London*, 545 U.S. 469, 477–78 (2005). What constitutes a "taking" is a fact-intensive analysis, including not only some physical invasion private property but also a host of other harms including economic harms. *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124–27 (1978). "Public use" has been interpreted broadly to include "economic development," *Kelo*, 545 U.S. at 489–90, but "it has long been accepted that the sovereign may not take the property of *A* for the sole purpose of transferring it to another private party *B*, even though *A* is paid just compensation," *Id.* at 477. "Just compensation" is measured by "the market value of the property at the time of the taking contemporaneously paid in money." *United States v. 50 Acres of Land*, 469 U.S. 24, 29 (1984) (quoting *Olson v. United States*, 292 U.S. 246, 255 (1934)).

29. As a superior maritime lien claimant, NuStar has a right to foreclose its maritime lien by arresting *in rem* vessels in the United States and numerous other jurisdictions throughout the world. A lien is a property right. *In re Olivas*, 129 B.R. 122, 125 (Bankr. W.D. Tex. 1991). USA has a similar right to foreclose its maritime lien for its commissions for bunker fuel oil sales. The proposed §105(a) injunction seeks to take away NuStar's second remedy: assertion of maritime liens and vessel arrests. The automatic stay DOES NOT stay *in rem* property arrests by suppliers like NuStar. *Chugach,* 23 F.3d at 244-45. Nor do vessel arrests harm USA, because USA has no title to the bunkers on the vessels, and USA can still seek to arrest vessels and foreclose its maritime lien for its own commission as agent for the vessels. Among other things, the Injunctive Relief Motion seeks an order that requires suppliers such as NuStar to release its lien on vessels and transfer any funds received from a vessel owner to the Debtors' accounts, even though the Debtors have no ownership in or rights to those funds. This is an improper taking. *Olivas*, 129 B.R. at 125 ("this court cannot impose, in the name of enforcing the automatic stay, an affirmative duty on the creditor to release a lien. Such a result would be a de facto taking of the Bank's property without due process of law in violation of the Fifth Amendment to the Constitution.").

I. **Debtors are Liquidating, Not Reorganizing**

30. Nothing about the facts of this case suggest that the Debtors will be able to reorganize or have any intention of reorganizing. The Debtors lack any financing, and relied entirely on their Danish parent for same. The Danish parent's credit facility has evaporated and the Danish parent is in insolvency proceedings. The Debtors' have ceased operations. The Debtors' appear to lack the employees to continue under either of their business models.

31. The Debtors lack anything to reorganize and are not trying to reorganize, but trying to liquidate, and therefore are not entitled to any presumption or favorable treatment a reorganizations proceeding might receive.

## IV.
## PRAYER

NuStar Energy seeks an order denying the relief requested in the Debtors' Injunctive Motion as it applies to Debtor USA. NuStar Supply seeks an order denying the relief requested in Debtors' Injunctive Motion, unless the Injunctive Motion is appropriately modified to NuStar Supply's satisfaction to address concerned raised herein.

DATED: November 17, 2014.    **NUSTAR ENERGY SERVICES, INC. and NUSTAR SUPPLY & TRADING LLC**


By: */s/ Eric Henzy*
    Eric Henzy
    Federal Bar No. ct12849
    Reid and Riege, P.C.
    One Financial Plaza, 21st Floor
    Hartford, CT  06103
    Telephone:  (860) 240-1081
    Telecopier:  (860) 240-1002
    ehenzy@rrlawpc.com
    Its Attorneys

OF COUNSEL:

Michael M. Parker
Texas State Bar 00788163 (Pro Hac Vice Motion to be filed)
Steve A. Peirce (Pro Hac Vice Motion to be filed)
Texas State Bar 15731200
FULBRIGHT & JAWORSKI LLP
300 Convent Street, Suite 2200
San Antonio, Texas 78205
Telephone:  (210) 224-5575
Facsimile:  (210) 270-7205
michael.parker@nortonrosefulbright.com
steve.peirce@nortonrosefulbright.com

*Attorneys for NuStar Energy Services, Inc. and NuStar Supply & Trading LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of November, 2014, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Eric Henzy*