## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT -BRIDGEPORT DIVISION

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| O.W. Bunker Holding North America Inc.,[1] | : | Case No. 14-51720 (AHWS) |
| | : | |
| Debtor. | : | |
| | : | |
| In re | : | Chapter 11 |
| | : | |
| O.W. Bunker North America Inc.,[2] | : | Case No. 14-51721 (AHWS) |
| | : | |
| Debtor. | : | |
| | : | |
| In re | : | Chapter 11 |
| | : | |
| O.W. Bunker USA Inc.,[3] | : | Case No. 14-51722 (AHWS) |
| | : | |
| Debtor. | : | |
| | : | |

## DEBTORS' MOTION FOR ORDERS:

### (I)(A) AUTHORIZING AND ESTABLISHING SALE PROCEDURES RELATING TO THE SALE OF THE VOPAK OIL AND RELATED ASSETS, (B) APPROVING CERTAIN NOTICE PROCEDURES, AND (C) SCHEDULING A HEARING TO CONSIDER THE PROPOSED SALE; AND

### (II) AUTHORIZING AND APPROVING THE SALE OF THE VOPAK OIL AND, IF AN ASSIGNMENT IS SOUGHT, ASSUMPTION AND ASSIGNMENT OF THE VOPAK LEASE AND GRANTING CERTAIN RELATED AND FACILITATIVE RELIEF

---

[1] The last four digits of the debtor's taxpayer identification numbers is 7474.  The debtor's address is 281 Tresser Blvd., 2 Stamford Plaza, 15th Floor, Stamford, CT  06901.

[2] The last four digits of the debtor's taxpayer identification numbers is 7158.  The debtor's address is 281 Tresser Blvd., 2 Stamford Plaza, 15th Floor, Stamford, CT  06901.

[3] The last four digits of the debtor's taxpayer identification numbers is 3556.  The debtor's address is 2603 Augusta Drive, Suite 440, Houston, TX  77057.

The above-captioned debtors and debtors-in-possession (the "Debtors"), hereby move

(the "Motion") this court (the "Court") for the entry of orders:

> (i)      (a) authorizing and establishing the proposed sale
> procedures (the "Sale Procedures") (attached as Attachment I to
> the proposed form of sale procedures order attached hereto (the
> "Sale Procedures Order") for the sale of substantially all of the
> Debtors' oil stored at Vopak Terminal Los Angeles, Inc. (the
> "Vopak Terminal"), 401 Canal Street, Wilmington, California
> 90744 and nearby[4] and related assets (the "Vopak Oil"), as
> described more fully herein (the "Sale"), (b) approving the form
> and manner of the notice regarding the Sale and related Sale
> Hearing (the "Sale Notice"), and (c) setting the time, date and
> place of a later hearing (the "Sale Hearing") to consider approval
> of the Sale of the Vopak Oil;
>
> (ii)      (a) authorizing and approving the Sale of the Vopak Oil
> free and clear of any charge, claim, condition, equitable interest,
> lien (including without limitation any lien held or asserted by any
> governmental authority), option, pledge, security interest,
> mortgage, right of way, easement, encroachment, servitudes, right
> of first option, right of first refusal, or similar restriction, including
> restrictions of use, voting (in the case of any security or equity
> interest), transfer, receipt of income or exercise of any attribute of
> ownership, or other encumbrance, option or defect in title of every
> type and description, whether imposed by law, agreement,
> understanding or otherwise, including, without limitation, all liens,
> encumbrances, and interests in property as set forth in 11 U.S.C.
> §363 (collectively, the "Encumbrances and Interests"), (b) if an
> assignment is sought, approving assumption and assignment of the
> contract at the Vopak Terminal, and (c) waiving the fourteen-day
> stay imposed by Bankruptcy Rules 6004(h); and granting such
> other and further relief as the Court deems just and proper.

In support of this Motion, the Debtor relies on the Declaration of Adrian Tolson [D.I. 18]

(the "Tolson Declaration").  In further support of the Motion, the Debtor respectfully represents

as follows:

---

[4] Certain of such oil is believed to be on the David Fanning, operated by Harley Marine Services, Inc. ("Harley Marine").

## Jurisdiction, Venue and Predicates for Relief

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334(b).  Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2).

2.     The statutory bases for the relief requested herein are sections 105, 363, 365 and 503 of Title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure 2002, 6004, 6006, and 9014, (the "Bankruptcy Rules") and Local Bankruptcy Rule for the District of Connecticut 6004-1 (the "Local Rule").

## Background

### A.     Introduction

3.     On November 13, 2014 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.     No creditors' committee has been appointed in this case.  No trustee or examiner has been appointed.

5.     A full description of the Debtors' business operations, corporate structures, capital structures, and reasons for commencing this case is set forth in the Tolson Declaration, which was filed contemporaneously with this Motion and which is incorporated herein by reference.

### B.     The Vopak Oil

6.     As part of Debtor O.W. Bunker North America, Inc.'s business, it has contracted for the storage of oil at the Vopak Terminal to support ordinary course deliveries to customers.

7.      More than 27,000 metric tons ("MT") of various grades of oil owned by one or more of the Debtors is currently stored at the Vopak Terminal, and smaller quantities are on a vessel or vessels in the Los Angeles area (including the David Fanning, owned/operated by Harley Marine).  A chart summarizing the nature and quantities of such oil is attached as Exhibit A.

8.      As more fully explained in the Tolson Declaration, the bankruptcy of the Debtors' parent entities in Denmark has led to the collapse of the Debtors' ongoing business amid, inter alia, doubts about the Debtors' ability to perform and concerns about liens and encumbrances on the product.

9.      Nevertheless, according to the Vopak Terminal, the monthly charges to store the Vopak Oil exceed $300,000.  If such oil is not sold by December, another month's charges will accrue (as they will for each month thereafter).

10.      Moreover, such oil is a commodity that is subject to significant price volatility, for which the Debtors have no hedges or other protection.[5]  Thus, the Debtors are fully exposed to substantial price volatility (in an apparently declining market), which could cost the Debtors hundreds of thousands or millions of dollars.

11.      In addition, as the Debtors' parent entities have ceased providing funding (in breach of their obligations), the Debtors' cash position is precarious and a sale by the first few days of December is critical.

12.      Thus, in the Debtors' judgment, to avoid losses and continuing costs the Vopak Oil should promptly be sold – to one or more buyers as necessary to obtain the best price. In light of the size of the transaction and free and clear issues, while such a sale may be

---

[5] 27,000 MT represents in excess of 150,000 barrels of oil, such that small price changes per MT or barrel can result in significant changes in total price.

considered ordinary course, the Debtors out of an abundance of caution seek approval to sell

pursuant to section 363 of the Bankruptcy Code.

## C.     The Proposed Sale

13.     Upon concluding that the Vopak Oil should be sold in bulk, the Debtors

and their financial advisers have, over the last several weeks, sought buyers for some or all of

this oil, and received indications of interest in the range of $350. to $500 per MT (depending on

the type of oil).

14.     This process is ongoing, as the Debtors seek more favorable offers; by

November 24, 2014, the Debtors believe they will have settled on a stalking horse bidder for the

purchase of the Vopak Oil.

15.     If the Debtors do identify a stalking horse for the sale of substantially all

of the Vopak Oil through a Bankruptcy Code section 363 process, and conclude that proposing a

stalking horse bid will help maximize the sale price and other benefits, the Debtors will file a

copy of such a bid by November 24, 2014.

16.     If approved, the Sale will maximize the value of the Debtors' estate by

liquidating the Vopak Oil, eliminating the Debtors' (currently unhedged) exposure to price

volatility on 27,500 MT of oil, and minimizing the storage charges.

17.     As described herein, subject to this Court's approval, the Debtors intend to

pursue a sale of substantially all of the Vopak Oil.

**D.      Proposed Timeline**

18.      The Debtors propose the following timeline in connection with the

procedural relief sought in this Motion.

| EVENT | DATE |
|---|---|
| November 21 [or24], 2014 | Sale Procedures Approved |
| December 1, 2014 at 4:00 p.m. EST | Deadline for Objections to the Sale and for Cure Objections |
| December 2, 2014 at 1:00 p.m. EST | Bid Deadline –Debtors thereafter determine if there are one or more Qualified Bid(s) (defined below) |
| December 2, 2014 at 6:00 p.m. EST | Debtors file notice of Qualified Bids (defined below) and the financial terms of same |
| December 4, 2014 beginning at 11:00 a.m. EST | Auction (by telephone) |
| Upon conclusion of the Auction | Debtors file Notice of result of Auction |
| Beginning of Sale Hearing | Deadline for supplemental objections based only upon Debtors' selection of best offer or offers. |
| December 5, 2014 at ____ a.m. EST | Sale Hearing, with closing to occur immediately upon approval |

19.      Absent a prompt sale pursuant to the proposed procedures and timeline,

storage charges will continue to accrue, the Debtors are unprotected from price volatility, and the

Debtors believe that the value of the Vopak Oil may be significantly compromised.  In addition,

since the price of oil is volatile, a very short period of time between the Auction and closing of

the Sale is critical to obtaining the highest price.  The Debtors therefore submit that the proposed

timeline is more than sufficient to complete a fair and open process that will maximize value for

the Debtors.

20.      Moreover, since the Debtors' parent entities have ceased providing

funding, the Debtors needs for cash will become critical by December.

**Relief Requested**

21.      By this Motion, the Debtors seek:

(i)      A procedural order (a) authorizing and establishing the Sale Procedures, (b) approving the form and manner of Sale Notice attached to the Sale Procedures Order as Attachment II, (including notice of the procedure for potential assumption of the contract with the Vopak Terminal), and (c) setting the time, date, and place of the Sale Hearing (a proposed order is attached hereto as Exhibit B the "Sale Procedures Order"); and

(ii)      A subsequent, substantive order (a) authorizing and approving the Sale of the Debtors' rights, title, and interests in the Vopak Oil free and clear of all Encumbrances and Interests, and (b) if assignment is sought, approving assignment and assumption of the Vopak Lease (the "Sale Order");[6] and granting such other related and facilitative relief as the Court deems just and proper.

## I.      Approval of Sale Procedures Order

22.      Prior to consideration of an actual sale, the Debtors seek approval of, inter alia, sale procedures for the sale of a portion of the Debtor's assets – the Vopak Oil and related assets (including, potentially, the contract with the Vopak Terminal [the "Vopak Terminal Contract"]).  The Debtors do not believe that an appraisal is required in the circumstances of the sale of the Vopak Oil and so state in accordance with Local Rule 6004-1.

## A.      Sale Procedures

23.      The Debtors request authority to solicit bids for the Vopak Oil utilizing the Sale Procedures, substantially in the form attached as Attachment I to the Sale Procedures Order and summarized below.  The Sale Procedures describe, among other things, the assets to be sold, the manner in which bids become "qualified," the bidding process and the selection and approval of the Successful Bidder (as defined in the Sale Procedures).

---

[6] A proposed from of Sale Order will be submitted in advance of the Sale Hearing.

24.     To obtain the highest and best value, the Debtors propose to allow any

parties that may have an interest in purchasing the Vopak Oil an opportunity to make a bid, and

thereafter, the Debtors propose to conduct an auction.  The Sale Procedures were developed

consistent with the Debtors' objective of conducting a sale in a controlled, fair, and transparent

fashion, while obtaining the highest and best value.

25.     The material terms of the Sale Procedures are as follows:[7]

| | |
|---|---|
| **Assets to Be Sold** | *Description.*  The Vopak Oil (more fully described on <u>Exhibit A</u>) as is/where is and free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon; if an acceptable offer for assignment is received, the Vopak Terminal Contract. |
| **Qualification of Bidders** | *Obligation to Deliver Financial Information to Debtor.*  To participate in the bidding process, a party must submit to the Debtors reasonable evidence demonstrating the party's financial capability to pay for the Vopak Oil. |
| **Qualified Bids** | *Close of Bidding.*  The Debtors propose that competing bids be accepted until December 2, 2014 at 1:00 p.m.(EST).<br><br>*Form of Bid.*  In order to be eligible to participate in the Auction, a Bidder must deliver to the Debtors, counsel to the Debtors, the Debtors' financial advisor, and any legal and financial advisors to any statutory committee appointed in this case, a written purchase order for some or all of the Vopak Oil, which must provide or otherwise comply with, at minimum, the items noted below to be deemed a "<u>Qualified Bid</u>":<br><br><u>Quantities.</u>  Each Bid must specify the quantity of product that the Bid offers to purchase, the price offered per metric ton, must be for not less than the Minimum Bid Quantity for the relevant type of oil and specify the total price to be paid pursuant to such Bid.  For example, a bid for RMG 380 must be for not less than 2,000MT (and not more than the total amount available), and specify the price being offered per MT and the total price being paid.  A Bid may, in the discretion of the Bidder, be for the total amount available or specify a minimum amount and maximum amount of oil to be purchased if the Bid is accepted.<br><br><u>Payment Terms.</u>  Each Bid must provide for payment in cash or good |

---

[7] The following description of the Sale Procedures is a summary of the terms set forth in the Sale Procedures attached to the Sale Procedures Order as <u>Attachment I</u>.  To the extent of any conflict between this summary and the Sale Procedures, the terms of the Sale Procedures shall govern.  Capitalized terms used but not defined in this section shall have the meanings ascribed to them in the Sale Procedures.

funds upon closing, and that title shall not transfer until payment in good funds is made.

Executed Purchase Order.  Each Bid must include executed transaction documents sufficient to bind the Bidder if approved by the Court and signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to purchase the Vopak Oil (which may include related assets).  Each such offer must provide a commitment to close within two (2) business days of approval of the Sale (which time may be extended by agreement) and provide for payment to occur contemporaneously with closing.

Minimum Bid(s).  Each Bid must propose a purchase price that, in the Debtors' reasonable judgment after consultation with their financial and legal advisors (and after giving effect to and aggregating all Bids meeting the applicable Minimum Bid Quantity and any offers to assume the Vopak Terminal Contract), is likely to result in a value to the Debtors greater than the larger of either (I) such minimum per metric ton price for each product as the Debtors may specify by filing same on or before November 26, 2014 or (II) the sum of (1) the price offered by the stalking horse bidder, (2) $5,000 (the maximum amount of the Expense Reimbursement); plus (3) $100,000.

Proof of Financial Ability.  Each Bid must contain such financial and other information that will allow the Debtors to make a reasonable determination as to the Bidder's financial and other capabilities to consummate the transactions contemplated, and if assignment of the Vopak Contract is sought, provide adequate assurance of future performance.  Acceptable information may include, inter alia, the following:  (a) written evidence of the Bidder's internal resources and proof of any funding commitments, or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors; (b) contact names and numbers for verification of financing sources; (c) the Bidder's current financial statements (audited if they exist) or other similar financial information reasonably acceptable to the Debtor; and/or (d) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors, demonstrating that such Bidder has the financial ability to close.

Corporate Authority.  Each Bid must include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization.

Disclosure of Identity of Bidder.  Each Bid must fully disclose the identity and contact information of each entity that will be bidding for or purchasing the Vopak Oil or otherwise participating in connection

with such Bid.  Each Qualified Bidder will be required to confirm that it has not engaged in any collusion with respect to the Auction or the proposed sale.

<u>Contingencies</u>.  Each Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of further investigations.

<u>Irrevocable</u>.  Each Bid must be irrevocable until conclusion of the Sale Hearing, provided that if such Bid is accepted and approved by the Court as the Successful Bid or the Backup Bid, such Bid shall continue to remain irrevocable.

<u>Compliance with Information Requests</u>.  The Bidder submitting the Bid must have complied with reasonable requests for additional information from the Debtors (as described above) to the reasonable satisfaction of the Debtor.

<u>Termination Fees</u>.  The Bid (other than that of the stalking horse) must not entitle the Bidder to any expense payments, break-up fee, termination fee or similar type of payment or reimbursement.

<u>Bid Deadline.</u>  To be considered, the Auction Parties (listed under Access to Product Information) must receive the Bid in writing (including via email), on or before **<u>December 2, 2014</u> at <u>1:00 p.m.</u> (EST)** (the "<u>Bid Deadline</u>").

| | |
|---|---|
| **Auction** | In the event that the Debtors timely receive one or more Qualified Bids the Debtors shall: (I) file notice of same and the financial terms of each Qualified Bid by December 2, 2014 at 6:00 p.m. (EST) and (II) conduct an auction (the "<u>Auction</u>").  The Auction will take place starting at 11:00 a.m. (EST) on December 4, 2014 at via telephone conference call to be arranged by the Debtors and with live dial in information to be provided to each Qualifying Bidder by the Debtors, or at such other place, date and time as may be designated in writing by the Debtors.  The Auction shall be governed by the Sale Procedures, and the Debtors will file notice of the result upon conclusion. |
| **Expense Reimbursement** | If a stalking horse is proposed, the Debtors seek approval of an expense reimbursement to the stalking horse in the amount of its expenses in inspecting and testing the oil, up to $5,000.00 (the "<u>Expense Reimbursement</u>"). |
| **Modification of Sale Procedures** | *Modification by Debtors Permitted.*  The Sale Procedures may be modified by the Debtors as they may determine to be in the best interests of the estate, *provided* that any such modifications are not inconsistent with any Bankruptcy Court order. |
| **Back-Up Bidder(s)** | *Debtors to Select Back-Up Bidder(s)*:  If feasible, the Debtors will designate the Qualified Bidder(s) with the next highest or otherwise best Bid at the Auction as the Backup Bidder.  The Backup Bidder shall be |

| | required to keep its Backup Bid open and irrevocable until five (5) business days after the auction. |
|---|---|
| **Notice of Result of Auction** | The Debtor will file a notice of the winning Bidder(s) upon conclusion of the Auction. |

26.      The Debtors submit that implementation of the Sale Procedures is in the best interests of the Debtors, the estate, and the creditors in that it provides a structure and format for other potentially interested parties to formulate a bid for the Vopak Oil, thereby enabling the Debtors to obtain the highest and best offer for such asset.

27.      If the Debtors propose a stalking horse, they will do so on the basis that doing so represents the best opportunity for the Debtors to maximize the value of the Vopak Oil assets and to serve as a basis for conducting an auction to seek higher and/or better offers.

28.      If a stalking horse is proposed, the Debtors seek approval of an expense reimbursement to the stalking horse in the amount of its expenses in inspecting and testing the oil, up to $5,000.00.  A stalking horse bid under such circumstances encourages bidding by providing assurance that the product being sold has been tested (since it is being sold "as is").

**B.      Notice Procedures (including notice of the potential assignment of the Vopak Terminal Contract)**

**1.      General**

29.      The Debtors propose to give notice within two (2) business days after the entry of the Sale Procedures Order of the time and place of the Auction, the time and place of the Sale Hearing, and the objection deadline for the Sale Hearing by sending the Sale Notice, substantially in the form attached as Attachment II to the Bidding Procedures Order, to (i) any potentially interested buyers identified by the Debtors and their financial advisers; (ii) all entities known to have asserted any lien, claim, interest or encumbrance in or upon any of the Vopak Oil; (iii) legal and financial advisors to any statutory committee appointed; (iv) parties included on the Debtors' Consolidated List of Twenty-one (21) Largest Unsecured Claims; and (v) all parties

receiving notices of filings in this Case through the Court's ECF System, including those parties who have filed the appropriate notice requesting notice of all pleadings filed in the Case.[8]

### 2.    Vopak Terminal Contract

30.    Since the Vopak Oil is at the Vopak Terminal, it is possible that a buyer may wish to or offer to assume the Vopak Terminal Contract.  Thus the Debtors also propose a set of procedures to facilitate the Sale, which would involve the assumption and assignment of that contract if the Debtors accept an offer from a successful bidder to assume that contract.  The Sale Notice also includes notice of the proposed Assumption and Assignment Cure Amount with respect to that contract.  The Debtors will serve the Sale Notice and the Sale Procedures Order on Vopak Terminal Los Angeles, 401 Canal Street, Wilmington, California 90744 and email a copy to its Associate General Counsel (to whom the Debtors counsel have spoken about this matter), Scott Grossman, at scott.grossman@vopak.com) and to any counsel who appear in the case of Vopak Terminal.

31.    The Debtors request that unless Vopak Terminal files and serves an objection by the applicable deadline its should (a) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such contract, and the Debtors shall be entitled to rely solely upon the Cure Amount, and (b) be forever barred and estopped from asserting or claiming against any person or entity that any additional amounts are due or defaults exist, or conditions to assumption and assignment must be satisfied with respect to such contract.

32.    In the event that an objection is timely filed and served, the objection must set forth (i) the basis for the objection and (ii) the amount the party asserts as the Cure Amount.

---

[8] For avoidance of doubt, such notice will be sent to Vopak Terminal and Harley Marine, both of which are in physical possession of some of the Vopak Oil.

After receipt of the objection, the Debtors will attempt to reconcile any differences in the Cure Amount. In the event that the Successful Bidder does seek to assume such contract, immediately after the conclusion of the Auction, the Debtors will serve notice upon Vopak Terminal identifying the Successful Bidder.

### 3.    Encumbrances and Interests

33.    As noted, the Debtors need to sell the Vopak Oil both to protect and realize upon its value and to generate cash from which to operate.

34.    The Debtors do not believe that any person or entity (including, without limitation, individuals, partnerships, joint ventures, corporations, estates, governmental units, and trusts) holds an Encumbrance or Interest of any type in or to the Vopak Oil or to the proceeds of any Sale, and thus believe that the proceeds are unencumbered cash.

### C.    Request to Set a Date for the Sale Hearing

35.    The Debtors intend to present the Successful Bid and the Backup Bid, for approval by the Court pursuant to the provisions of sections 105, 363, and 365 of the Bankruptcy Code at the Sale Hearing to be scheduled by the Court. The Debtors respectfully request that any such Sale Hearing be scheduled on or about **December 5, 2014**. Upon the failure to consummate a sale of the Vopak Oil after the Sale Hearing because of the occurrence of a breach or default under the terms of the Successful Bid, or upon the non-approval of this Court, the next highest or otherwise best Back-Up Bid, if any, as disclosed at the Sale Hearing, shall be deemed the Successful Bid without further order of the Court, and the parties shall be authorized to consummate the transaction contemplated by the Back-Up Bid.

36.    The Debtors further request, pursuant to Bankruptcy Rule 9014, that any and all objections to the relief to be considered at the Sale Hearing be filed by November 26,

2014, with supplemental objections based only on the selection of the best offer or offers

permitted at the Sale Hearing.

II.     **Approval of the Sale of the Vopak Oil Free and Clear, and Approval of Any Proposed Assumption and Assignment**

      37.    The Debtors request that the Court hold that upon Closing the conveyance

of the Debtors' interest in the Vopak Oil will be a legal, valid, and effective transfer of such oil,

and, to the fullest extent permitted by sections 105, 363(f), and 365 of the Bankruptcy Code, or

other applicable law, vests or will vest the buyer with all right, title, and interest of the Debtors in

and to the Vopak Oil free and clear of Encumbrances and Interests.

      38.    As noted above, the Debtors do not believe that there are any

Encumbrances and Interests in or to the Vopak Oil, and thus no Encumbrances or Interests of

any kind or nature whatsoever will attach to the proceeds of the Sale.  If any such Encumbrances

and Interests are asserted, Debtors reserve the right to challenge the extent, validity, priority and

effect of the Encumbrances and Interests.

      39.    In the event an offer to assume the Vopak Terminal Contract is accepted,

the Debtors will further request that the Court approve the assumption, assignment and of such

contract the Cure Amounts.

      40.    The Debtors will further request that the Court grant related and

facilitative relief, including but not limited to a direction that any entity holding the oil being

sold transfer it to the buyer.

**<u>Basis for Relief</u>**

A.     **The Sale of the Vopak Oil Is a Product of the Debtors' Reasonable Business Judgment**

      41.    Section 363(b)(1) of the Bankruptcy Code provides:  "[t]he Trustee, after

notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate." 11 U.S.C. §363(b)(1). Section 105(a) of the Bankruptcy Code provides

in relevant part: "[t]he Court may issue any order, process, or judgment that is necessary or

appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).

42.     Virtually all courts have held that approval of a proposed sale of assets of

a debtor under section 363 of the Bankruptcy Code outside the ordinary course of business and

prior to the confirmation of a plan of reorganization is appropriate if a court finds that the

transaction represents a reasonable business judgment on the part of the debtor.  See Comm. of

Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063 1070-1071 (2d Cir.

1983); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986); see also In re

Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991) (holding that the following non-

exclusive list of factors may be considered by a court in determining whether there is a sound

business purpose for an asset sale:  "the proportionate value of the asset to the estate as a whole;

the amount of elapsed time since the filing; the likelihood that a plan of reorganization will be

proposed and confirmed in the near future; the effect of the proposed disposition of the future

plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised

values of the property; and whether the asset is decreasing or increasing in value") (quoting In re

Lionel Corp., 722 F.2d at 1071; Stephens Indus., Inc. v. McClung, 789 F.2d 386, 391 (6th Cir.

1986); In re Ionosphere Clubs, Inc., 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); In re Phoenix

Steel Corp., 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that the elements necessary for

approval of a section 363 sale in a chapter 11 case are "that the proposed sale is fair and

equitable, that there is a good business reason for completing the sale and the transaction is in

good faith").

43.     The "sound business reason" test requires a debtor to establish four

elements in order to justify the sale or lease of property outside the ordinary course of business,

namely:  (1) that a sound business purpose justifies the sale of assets outside the ordinary course of business; (2) that accurate and reasonable notice has been provided to interested persons; (3) that the debtor has obtained a fair and reasonable price; and (4) good faith.  See generally Lionel, 722 F.2d at 1071; Abbotts Dairies, 788 F.2d 143; Stephens Indus., 789 F.2d at 390.  A debtor's showing of a sound business purpose need not be unduly exhaustive, but rather a debtor is "simply required to justify the proposed disposition with sound business reasons."  In re Baldwin United Corp., 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).  Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case.  Lionel, 722 F.2d at 1071.

44.    The proposed procedures for, and the sale of the Debtors' interests in the Vopak Oil, meet the "sound business reason" test.  First, compelling business purposes justify the sale.  Here, the liquidation of the Debtors' parent entities has rendered ongoing sales in the ordinary course challenging to say the least, storage charges are mounting and the Debtors are fully exposed to volatile price fluctuations for a very large amount of a commodity product.  The Debtors believe that a prompt sale of the Vopak Oil conducted pursuant to the Sale Procedures presents the best opportunity to realize the maximum value of the Vopak Oil and minimize further changes.  The Debtors further believe that the benefit to creditors will be adversely affected absent a prompt sale.  See Lionel, 722 F.2d at 1071 (noting that of the factors a court must evaluate on motion under section 363(b), "most important perhaps, [is] whether the asset is increasing or decreasing in value").

45.    The Sale Procedures are also justified by sound business purposes – they are designed to maximize the value received for the Vopak Oil and to provide the Debtor with liquidity needed to operate.  Finally, the Sale Procedures satisfy the good faith requirement.

46.     As set forth above, the Debtor has demonstrated compelling and sound

business justifications for the sale of the Vopak Oil pursuant to the Sale Procedures.

**B.     Any Purchaser Should be Granted the Protection of Bankruptcy Code Section 363(m)**

47.     The Debtors request the Court to find that any ultimate purchaser is

entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in

connection with the Sale.

48.     Specifically, Bankruptcy Code section 363(m) provides that:

> [t]he reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property
> does not affect the validity of a sale or lease under such
> authorization to an entity that purchased or leased such property in
> good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale or lease were
> stayed pending appeal.

11 U.S.C. §363(m).  Section 363(m) of the Bankruptcy Code thus protects the purchaser of

assets sold pursuant to section 363 from the risk that it will lose its interest in the purchased

assets if the order allowing the sale is reversed on appeal.

49.     While the Bankruptcy Code does not define "good faith," the Third Circuit

in Abbotts Dairies held that:

> [t]he requirement that a purchaser act in good faith … speaks to the
> integrity of his conduct in the course of the sale proceedings.
> Typically, the misconduct that would destroy a purchaser's good
> faith status at a judicial sale involves fraud, collusion between the
> purchaser and other bidders or the trustee, or an attempt to take
> grossly unfair advantage of other bidders.

788 F.2d at 147 (citations omitted); see generally Marin v. Coated Sales, Inc., (In re Coated

Sales, Inc.), 1990 WL 212899, at *2 (S.D.N.Y. Dec. 13, 1990) (holding that party must

demonstrate "fraud, collusion, or an attempt to take grossly unfair advantage of other bidders" to

show lack of good faith); see also In re Pisces Leasing Corp., 66 B.R. 671, 673 (E.D.N.Y. 1986)

(examining facts of each case, concentrating on "integrity of [an actor's] conduct during the sale proceedings") (quoting In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1198 (7th Cir. 1978)).

50.    As the Debtors will demonstrate at the Sale Hearing, the Purchaser is entitled to all of the protections of Bankruptcy Code section 363(m).

**C.    The Sale of the Vopak Oil Should Be Free and Clear of Liens and Claims Pursuant to Section 363(f) of the Bankruptcy Code**

51.    Pursuant to, and to the fullest extent permitted by, section 363(f) of the Bankruptcy Code, the Debtors seek authority to sell and transfer the Debtors' right, interest, and title in the Vopak Oil to the Successful Bidder free and clear of all liens, claims, encumbrances and other interests, with such liens, claims, encumbrances, and other interests to attach to the Proceeds of the Sale, subject to any rights and defenses of the Debtors and other parties-in-interest with respect thereto.  Under section 363(f) of the Bankruptcy Code, a debtor may sell all or part of its property free and clear of any and all liens, claims, encumbrances, or interests in such property if:  (i) such a sale is permitted under applicable non-bankruptcy law; (ii) the party asserting such a lien, claim, or interest consents to such sale; (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (iv) the interest is the subject of a bona fide dispute; or (v) the party asserting the lien, claim, or interest could be compelled, in a legal or equitable proceeding, to accept monetary satisfaction for such interest.  11 U.S.C. §363(f); see also Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot), 94 B.R. 343, 345 (E.D. Pa. 1988) (holding that section 363(f) is written in the disjunctive and that a court may approve a sale "free and clear" provided at least one of the requirements is met).

52.    To the extent that any Encumbrances and Interests may be asserted, one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied. Those holders of Encumbrances and Interests who do not object or who withdraw their

objections to the Sale or the Motion will be deemed to have consented to the Motion and Sale

pursuant to Bankruptcy Code section 363(f)(2).  The Debtors believe that any holders of

Encumbrances and Interests who might object fall within one or more of the other subsections of

Bankruptcy Code section 363(f).

53.     A sale free and clear of Encumbrances and Interests is necessary to

maximize the value of the Vopak Oil.  Indeed, the issues and confusion sown by the liquidation

of the Debtors' parent entities has caused concerns on the part of potential buyers, has made

ongoing sales problematic and will chill bidding absent the ability to purchase the Vopak Oil free

and clear of all Encumbrances and Interests.  A sale of the Vopak Oil other than one free and

clear of all Encumbrances and Interests would yield substantially less value for the estate.

54.     The Debtors have satisfied each of the first, second, third, fourth and fifth

requirements in section 363(f), and satisfaction of any one is sufficient.  Moreover, Courts have

held that they have the equitable power to authorize sales free and clear of interests that are not

specifically covered by section 363(f).  See, e.g., In re Trans World Airlines, Inc., 2001 WL

1820325 at *3, 6 (Bankr. D. Del. March 27, 2001); Volvo White Truck Corp. v. Chambersburg

Beverage, Inc. (In re White Motor Credit Corp.), 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).

Approving the Sale free and clear of all adverse interests is warranted.

55.     To the extent necessary to the Sale, the Debtors request such other and

facilitative relief as needed, including a direction to Vopak Terminal and Harley Marine to

release the oil to the buyer(s) and otherwise comply with their contractual obligations.

**D.    Waiver of Automatic Fourteen-Day Stay Under Bankruptcy Rules 6004(h) and
        6006(d)**

56.     Pursuant to Bankruptcy Rule 6004(h), unless the Court orders otherwise,

all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are

automatically stayed for fourteen days after entry of the order.  Likewise, orders authorizing the

assignment of execution contracts are stayed pursuant to Bankruptcy Rule 6006(d).  The purpose of these rules is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented.  See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h); Advisory Committee Notes to Fed. R. Bankr. P. 6006(d).

57.    Although such rules and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen-day stay period, commentators agree that the fourteen-day stay period should be eliminated to allow a sale or other transaction to close immediately where there has been no objection to the procedure.  See generally 10 Collier on Bankruptcy, 6004.11 (16th ed. 2011).  Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time necessary to file such appeal.  Id.

58.    Because of the price volatility, the potentially diminishing value of the Vopak Oil, and the ongoing storage costs, the Debtors need the flexibility to close this sale immediately after all closing conditions have been met or waived.  Indeed, since the Vopak Oil is a commodity subject to such price volatility, any proposed buyer that cannot close within a period of few days is likely to significantly discount any offer to hedge against such volatility, thus reducing the amount the Debtors realize on the sale.  The Debtors hereby request that the Court waive the stay period under Bankruptcy Rules 6004(h) and 6006(d).

**Notice**

59.    Notice of this Motion is being provided to:  (i) the Office of the United States Trustee; (ii) counsel for any official committee appointed in this case; (iii) all entities known to have asserted a lien or interest in the Vopak Oil; (iv) the creditors included on the Debtors' Consolidated List of Twenty-one (21) Largest Creditors; (v) all parties receiving notices of filings in this case through the Court's ECF System, including all entities that have

filed notices of appearance or requests for notice under Bankruptcy Rule 2002 in this case and (vi) for avoidance of doubt, specifically to Vopak Terminal and Harley Marine (directly and to their counsel, if known).  The Debtors respectfully submit that no other or further notice need be provided.

**Conclusion**

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed orders attached hereto; and (iii) grant such other relief as it deems just and proper.

Dated: Bridgeport, Connecticut
       November 18, 2014

Respectfully submitted,

  */s/ Michael R. Enright*
Michael R. Enright, Esquire (CT No. 10286)
Patrick M. Birney (CT No. 19875)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT  06103
Telephone:  (860) 275-8290
Facsimile:  (860) 275-8299
Email: menright@mmwr.com
and
Natalie D. Ramsey, Esq. (NY #5242730)
       (admitted *pro hac vice*)
Joseph O'Neil, Esq. (NY #2596435)
       (admitted *pro hac vice*)
Davis Lee Wright, Esq. (NY #4761300)
       (admitted *pro hac vice*)
MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
437 Madison Avenue, 29th Floor
New York, NY 10022 (215) 772-1500
Telephone: (212) 867-9500
Facsimile:  (212) 599-1759
nramsey@mmwr.com
jo'neil@mmwr.com
dwright@mmwr.com
*Proposed Counsel for the Debtors*