UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| O.W. Bunker Holding North America, Inc. | ) |
| | ) Case No. 14-51720 (AHWS) |
| Debtor | ) |
| | ) |
| | ) December 3, 2014 |

**OBJECTION TO SALE OF PRODUCT ON WESTOIL BARGES, AND IN THE ALTERNATIVE REQUEST FOR ADEQUATE PROTECTION**
**OBJECTION**

Westoil Marine Services, Inc. ("Westoil") objects to the sale by the debtors O.W. Bunker North America, Inc. ("OW-NA") and/or O.W. Bunker USA Inc. (collectively the "debtors") of fuel oil in the possession of Westoil, presently located on two barges owned by Westoil ("Westoil Possessed Fuel"), absent proof of ownership by the debtors of the Westoil Possessed Fuel; and if the debtors establish ownership of the Westoil Possessed Fuel, Westoil objects to the sale of the Westoil Possessed Fuel absent the provision of adequate protection to Westoil by way of the preservation of Westoil's maritime lien against the proceeds paid for the purchase of the Westoil Possessed Fuel.

AM 43224882.1

I.   **BACKGROUND**

Westoil is a California corporation conducting business and having offices at Terminal Island, California. Westoil is engaged in the business of transporting petroleum products and providing other marine transportation services and is the owner and operator of the fuel barges DAVID FANNING, ANNE ELIZABETH, and HANNAH 2801, which operate out of Terminal Island, California.

Prior to the bankruptcy filings in these consolidated proceedings, Westoil and O.W. Bunker North America, Inc. ("OW-NA") were parties to a business relationship pursuant to which OW-NA contracted with Westoil for Westoil to deliver the fuel to vessels to whom OW-NA had brokered the sale of fuel, using one or more of Westoil's fuel barges.

Prior to the bankruptcy filing by OW-NA, OW-NA requested that Westoil pick up at the Vopak Terminal, for delivery to one or more vessels, fuel oil cargo consisting of products known as MGO and RMB which OW-NA had brokered for sale to said vessels (the Westoil Possessed Fuel). Westoil took delivery of said fuel oil cargo on the barge ANNE ELIZABETH, and subsequently transferred that product to the DAVID FANNING, and in turn some of it the product was transferred to the HANNAH 2801, transfers routine to the business relationship between Westoil and OW-NA. As of December 2, 2014, the barge DAVID FANNING has on board 3,214 Gross Barrels, more or less, of MGO in two separate tanks (4P

AM 43224882.1

and 4S); and the barge HANNAH 2801 has on board 8,730 Gross Barrels, more or less, of RMG in four tanks (2P, 2S, 5P and 5S).

Based upon Westoil's prior dealings with OW-NA, it was and is Westoil's understanding that OW-NA brokers and sells fuel products to vessels, and engages Westoil to deliver to OW-NA's customers the fuel product the customers have purchased. As such, it is Westoil's understanding that the Westoil Possessed Fuel delivered by OW-NA to Westoil prior to these bankruptcy filing belongs to and is the property of the vessel purchasers, not OW-NA.

Following OW-NA's bankruptcy filing, neither OW-NA nor any of the debtors provided Westoil with further instructions with respect to delivery of the Westoil Possessed Fuel nor did any OW-NA personnel contact Westoil asserting it had ownership interest in the fuel. Indeed, OW-NA took no action consistent with ownership of said fuel but rather functionally abandoned such fuel. Westoil has been in physical possession of the Westoil Possessed Fuel continuously since taking delivery. Under general maritime law, upon taking delivery and possession of the Westoil Possessed Fuel, Westoil obtained a lien against the Westoil Possessed Fuel for all freight and demurrage charges incurred while Westoil remains in possession of the Westoil Possessed Fuel.

On November 14, 2014, the debtors in these proceedings filed their first day motions. The evidentiary support for those motions is the Declaration of Adrian Tolson, its general

AM 43224882.1

manager.  Nowhere in Mr. Tolson's declaration is there any claim made by the debtors to the Westoil Possessed Fuel nor is there any discussion of or reference to the Westoil Possessed Fuel delivered to and in the possession of Westoil located on the Westoil barges.  Mr. Tolson's declaration addresses, among other things, a request for relief on reclamation claims, and to establish a protocol for the remittance of accounts receivable, but does not assert any ownership or make any claim to the fuel products delivered to Westoil and in the possession of Westoil barges. *

On November 18, 2014, the debtors filed a motion in these consolidated bankruptcy proceedings seeking authority to conduct an auction of fuel oil products located at the fuel oil tank farm operated by Vopak Oil at Vopak's terminal facility in Los Angeles, California.  The motion states that it is supported by the prior declaration of Mr. Tolson filed with the Court. While the motion makes reference to a small volume of fuel oil products located on the DAVID FANNING (paragraph 7 and appendix A), nothing in Mr. Tolson's declaration contains any evidentiary proof of ownership by the debtor entities of any of the Westoil Possessed Fuel located on the DAVID FANNING, and no schedules are on file which provide any evidentiary basis for such a claim.  Further, nothing filed by the debtors with the Court after the initial motion makes any further reference or claim to the Westoil Possessed Fuel on board the DAVID FANNING; indeed, the Westoil Possessed Fuel is not referenced in any of the notice

AM 43224882.1

or sale procedure papers on file with the court, and, to the contrary, these papers, and the email correspondence from Scott Anchin sent on November 24th, 2014, uniformly describe the fuel oil being sold as the Vopak inventory. Indeed, the transmittal email message issued by Scott Anchin of Alvarez & Marshall, who gave notice of the sale and auction procedure pursuant to this court's November 24,2014 order, informs the recipients of that email message that the oil products being sold consist of O.W.s "inventory of marine fuel stored in the Vopak Terminal in Los Angeles, CA." Moreover, while a procedure is set forth in the motion papers and filings for dealing with Vopak and its claims and lien rights for the Vopak fuel oil being sold (including the assumption and assignment of the Vopak Terminal lease), nothing on file references the rights of Westoil or provides any protocol for paying Westoil for its maritime lien claim or for the delivery and offloading of fuel from the Westoil barges. Similarly, the Order establishing the sale procedures, approving notice, scheduling a hearing on the sale, and granting related relief, nowhere references or makes provision for the sale of any of the Westoil Possessed Fuel on board the Westoil barges. Further, nothing in any of the four qualified bids filed with the court on Tuesday, December 2, 2014 references the Westoil Possessed Fuel in the possession of Westoil.

Westoil's first discussion with the debtors with respect to the Westoil Possessed Fuel did not occur until early in the afternoon of Wednesday, November 26, 2014, immediately prior

to the Thanksgiving week holiday, in the form of a telephone call from debtors' counsel Richard Placey (who initiated the call) to Westoil's Seattle, Washington counsel, Michael Gossler. In that conversation, Mr. Placey inquired about the location and status of the DAVID FANNING, and reported that the debtors claimed ownership of and the right to sell the fuel product located on the DAVID FANNING. Counsel for Westoil informed Mr. Placey in that conversation (1) that the fuel oil actually was located on two barges (the DAVID FANNING and HANNA 2801), (2) that Westoil's understanding is that OW-NA does not own the product and therefore has no right to sell it, and (3) that Westoil had initiated an action in federal court in Los Angeles to arrest the cargo on the vessels, placing it in the custody and within the security and protection of the federal district court located in Los Angeles. The arrest arrangements secured the cargo in the tanks on board the vessels.[1] The fuel cargo remains intact, on the vessels as if this date, subject to Westoil's lien rights, as had been the case from the date of the Chapter 11 filings in these cases (and it will remain so pending a decision by this Court on the debtors' right to sell it and a determination of Westoil's right to adequate protection. Westoil's counsel asked that the debtors send any documentation establishing proof of ownership of the Westoil Possessed Fuel by the debtors, and further informed the debtors'

---

[1] This action by Westoil was limited to requesting only that the U.S. Marshal take legal custody, with possession remaining on the Westoil barges, to preserve and protect the fuel cargo. No action has been take to sell or dispose of the Westoil Possessed Fuel or to otherwise alter physical possession of the Westoil Possessed Fuel as it existed on the date of the bankruptcy filings in these cases.

- 6 -

AM 43224882.1

counsel that he would need to discuss with Westoil the debtors' position that they had the right to sell the Westoil Possessed Fuel, and that given that it was afternoon on the Wednesday before Thanksgiving, he would not be in a position to address the issues further until the following Monday, December 1, 2014, following the Thanksgiving holiday.

By email message dated December 1, 2014, from Westoil's Seattle counsel to counsel for the debtors, Westoil again requested that if one or both of the O.W. operating entities is claiming ownership of the Westoil Possessed Fuel on board Westoil's barges in Los Angeles, that the debtors provide some evidence of its ownership of that fuel. Westoil's counsel further advised that Westoil had no objection to the Westoil Possessed Fuel being included in the sale free and clear if the debtor(s) own it and have the authority to sell it, and if appropriate provisions are included in the sale order to protect Westoil's fundamental maritime lien rights (which are possessory in nature). Westoil further noted that any sale of the fuel oil on its barges assumes a prospective buyer (1) is aware that the fuel on board the two fuel barges is even part of the sale, and (2) that a prospective buyer wishes to purchase that relatively small quantity of fuel and take on the cost of delivery for the price being bid. Westoil further requested that if the debtors have notified prospective purchasers that fuel on board the DAVID FANNING is included in the sale, that the debtors forward a copy of anything published or otherwise provided to prospective buyers with regard to the Westoil Possessed Fuel. In

AM 43224882.1

response, the debtors provided neither proof of ownership nor any publication or notices to prospective purchasers referencing the Westoil Possessed Fuel.

## II. RELIEF REQUESTED

Having been unable to resolve informally with counsel issues related to the Westoil Possessed Fuel, Westoil seeks relief from the court in the form of either a determination that OW.-NA does not own the Westoil Possessed Fuel and will not be included as part of the sale or for adequate protection.[2] With respect to adequate protection, Westoil has no objection to the fuel oil being sold as part of the sale free and clear process provided that Westoil's claim of lien attaches to the sale proceeds up the to the amount of the lesser of the sale proceeds allocable to the sale of the product on the vessels or the amount of Westoil's lien and the anticipated cost of delivering the product to a buyer and removing the product from the tanks. Upon entry of such an order by this Court, Westoil will immediately arrange for delivery of the Westoil Possessed Fuel to the party (if any) who purchases the Westoil Possessed Fuel (including actin to dissolve the arrest order).

---

[2] Paragraph 9 of this Court's November 24, 2014 Order Establishing Sale Procedures etc. provides that any party in interest not present and represented by counsel at the November 19, 2014 hearing shall have until December 3, 2014 at 4:00 p.m. EST to file an objection. Westoil neither was present or represent by counsel at said hearing.

AM 43224882.1

### III.  BASIS AND LEGAL AUTHORITY FOR RELIEF

#### A.  Objection to Sale in the Absence of Ownership by the Debtors

By the express terms of Section 363(b)(1) of the Bankruptcy Code, the authority to "use, sell or lease" property applies only to "property of the estate." The only exception is for property co-owned by the debtor and third parties as a tenant in common, joint tenancy, or as a tenant by the entirety, under Section 356(h), which is not applicable in this case.

Here, Westoil's arrangement with OW-NA is that Westoil delivers to offshore vessels fuel oil sold by OW-NA to one or more vessels, and that the vessels taking delivery own the product. Westoil has requested evidence from the debtors that the debtors are the owners of the Westoil Possessed Fuel, and Westoil has been provided no such proof of ownership. As a matter of statute, the debtors have no authority to sell product which they do not own. If the debtors do not own the Westoil Possessed Fuel, they have no authority to sell it and their request to do so must be denied.

#### B.  Westoil is Entitled to Have Its Maritime Lien Rights Adequately Protected if the Westoil Possessed Fuel is Included in the Product to be Sold

Bankruptcy Code Section 363(e) authorizes the debtors to sell property of the estate free and clear of liens provided the five conditions set forth in that section are met, and provided the rights of any secured party are adequately protected. Section 363(d). The most common form

AM 43224882.1

of adequate protection is a replacement lien against the proceeds of the property being sold. As the Court is aware, Vopak has request similar protection.

Here, if the Court authorizes the requested sale of the Westoil Possessed Fuel, Westoil is entitled to a replacement lien on the portion of the sale proceeds represented by the sale of the Westoil Possessed Fuel, and those proceeds should be segregated and deposited into the registry of the Court, with Westoil's lien rights in those proceeds, and the amount of its lien, to be determined the Bankruptcy Court.

**WESTOIL MARINE SERVICES, INC.**
By its attorneys,


_/s/ Tara Trifon_
Tara Trifon (Bar # ct28415)
Edwards Wildman Palmer LLP
20 Church Street, 20th Floor
Hartford, Connecticut
Tel:    (860) 525-5065
Fax:   (860) 527-4198
e-mail:  ttrifon@edwardswildman.com

AM 43224882.1

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2014 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this document through the court's CM/ECF System.

/s/ *Tara L. Trifon*
Tara L. Trifon, Esq. (ct28415)
Edwards Wildman Palmer LLP
20 Church Street, 20th Floor
Hartford, CT 06103
Phone: (860) 525-5065
Fax: (860) 527-4198
ttrifon@edwardswildman.com
Its Attorney

AM 43224882.1