# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT (BRIDGEPORT)

| | |
|---|---|
| In re:<br>OW BUNKER HOLDING NORTH AMERICA INC., *et al.*<br>    Debtors. | Chapter 11<br>Case No. 14-51720 (AHWS) |
| SHV GAS SUPPLY & RISK MANAGEMENT SAS,<br>    Plaintiff,<br>-against-<br>OW BUNKER USA, INC., OW BUNKER HOLDING NORTH AMERICA INC., OW BUNKER NORTH AMERICA INC., NUSTAR ENERGY SERVICES, INC., AND ING BANK NV,<br>    Defendants. | Adversary Pro. No. |

## COMPLAINT FOR INTERPLEADER AND DECLARATORY RELIEF

Plaintiff SHV Gas Supply & Risk Management SAS ("SHV"), by and through its undersigned attorneys, files this Complaint for Interpleader and Declaratory Relief, and in support thereof, respectfully alleges as follows:

### A. NATURE OF ACTION

1. This is an action for interpleader to resolve competing claims to amounts owed the Debtors and/or other third parties pursuant to the sale and delivery of bunker fuel to the vessel Waregem (the "Vessel") in the Port of Houston on November 4-6, 2014. With respect to the payment of invoices for the fuel bunkers, the above-captioned debtors (the "Debtors"), NuStar Energy Services, Inc. ("NuStar"), and other third parties have conflicting claims as to the ownership of funds owed by SHV, for the purchase and receipt of the fuel by the Vessel. In particular, SHV is faced with demand for payment and the imminent threat of vessel arrest on or

before December 12, 2014, by NuStar, the supplier of fuel bunkers which SHV contracted to purchase from the Debtors, and with demand by the Debtors for payment for the very same fuel bunkers. ING Bank, NV ("ING") has also asserted before this Court that it has a senior right to all funds which may be paid by customers of the Debtors as receivables subject to a certain financing by ING of the Debtors' insolvent Danish parent company. SHV is faced with uncertainty as to the proper recipient of $521,568.11 owed pursuant to sale and delivery of the bunker fuel (the "Disputed Funds"). Prior to and in lieu of making any payment to one or more parties, SHV wishes to deposit into this Court the Disputed Funds sufficient to satisfy the conflicting claims and *inter alia*, obtain a declaration that the deposit of such funds will discharge SHV's obligations with respect to the payment of the fuel bunkers, and that such parties as may assert conflicting claims may pursue their claims against the deposited Disputed Funds, which shall also serve as the substitute *res* for any *in rem* action such parties may seek to commence, and further that upon deposit of the Disputed Funds with this Court such parties shall be enjoined from the threatened or actual arrest of the Vessel or other action against SHV.

### B.    PARTIES

2.    Plaintiff SHV is a foreign corporation organized and existing under the laws of France, with a registered office located at Le Monge, 22 Place des Vosges, La Defense 5, 92979 Paris La Defense Cedex, France.

3.    Defendant OW Bunker USA, Inc. (the "OW USA") is a corporation organized and existing under the laws of Texas, with its principal place of business located at 2603 Augusta Drive, Suite 440, Houston, TX 77057, and is a debtor before this Court.

4.    Defendant OW Bunker Holding North America Inc. ("OW Holding") is a corporation organized and existing under the laws of Connecticut, with an office and place of

business at 281 Tresser Blvd, 2 Stamford Plaza, 15th Floor, Stamford CT 06901, and is a debtor before this Court.

5. Defendant OW Bunker North America Inc. is a corporation or business entity organized and existing pursuant to the laws of Connecticut, with an office and place of business at 281 Tresser Blvd., 2 Stamford Plaza, 15th Floor, Stamford, CT 06901, and is a debtor before this Court.

6. Defendant NuStar is a corporation or business entity organized and existing pursuant to the laws of a state of the United States, with an office and place of business at 19003 IH-10, West, San Antonio, Texas 78257.

7. Defendant ING is a bank organized and existing pursuant to the laws of the Netherlands with an office and place of business located at Bijlmerplein, 1102 MG Amsterdam, The Netherlands.

### C.    JURISDICTION AND VENUE

8. The preceding paragraphs are incorporated by reference as if fully set forth herein.

9. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1331, 1334, 1335, and 2361 and Rule 22 of the Federal Rules of Civil Procedure, as applied to this adversary proceeding by Rule 7022 of the Federal Rules of Bankruptcy Procedure.

10. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

11. Venue of this adversary proceeding in this district is proper pursuant to 28 U.S.C. § 1409(a).

12. This Court has personal jurisdiction over NuStar. NuStar transacts business within the United States, maintaining an address in the United States for service of process, appeared in the Debtors' chapter 11 cases, and has been participating in the Debtors' cases.

13. This Court has personal jurisdiction over ING. ING transacts business within the United States, maintaining an address in the United States for service of process, appeared in the Debtors' chapter 11 cases, and has been participating in the Debtors' cases.

### D. BACKGROUND

14. The preceding paragraphs are incorporated by reference as if fully set forth herein.

15. On September 22, 2014, SHV chartered the Vessel on a Shelltime 3 charterparty for a period of a minimum of 60 days or a maximum of 75 days at the charter's option.

16. On November 4, 2014, SHV ordered from the Debtor OW USA fuel bunkers to be loaded onboard and consumed by the Vessel. The bunkers were to be supplied to the Vessel in Houston, Texas. A true and correct copy of the sales order confirmation is attached hereto as Exhibit A.

17. On November 5-6, 2014, the bunkers were supplied to the Vessel in the Port of Houston.

18. On November 19, 2014, Debtor OW USA sent to SHV an invoice dated November 6, 2014 for the cost of the fuel to SHV demanding payment on or by December 5, 2014. A true and correct copy of the invoice for the cost of fuel is attached hereto as Exhibit B.

19. On November 12, 2014, SHV received an email from NuStar. A true and correct copy of the email is attached hereto as Exhibit C.

20. In the November 12, 2014 email, NuStar asserted that it sold fuel to the Debtor OW USA on October 5, 2014 as the agent for the Vessel. A true and correct copy of the invoice for the transaction that was attached to the November 12, 2014 email is attached hereto as Exhibit D.

21.    In the November 12, 2014 email, NuStar further asserted that the Debtor OW USA was in financial distress and had advised NuStar that the Debtor OW USA would not pay their invoice. NuStar requested that SHV pay NuStar directly the amount of $520,571.54, slightly less than the amount demanded by the Debtor OW USA, and threatened to assert a maritime lien against the Vessel if SHV did not pay.

22.    Subsequently, on November 12, 2014, following a request from SHV for further information in connection with NuStar's demands, NuStar emailed SHV NuStar's terms and conditions of the sale of marine fuels to Debtor OW USA. A true and correct copy of the terms and conditions is attached hereto as Exhibit E.

23.    Also on November 12, 2014, SHV received a letter dated November 10, 2014 from ING. A true and correct copy of the letter is attached hereto as Exhibit F.

24.    In the November 10, 2014 letter, ING demanded that SHV make certain payments to ING pursuant to an "English Omnibus Security Agreement dated 19 December 2013 between O.W. Bunker & Trading A/S and certain of its subsidiaries (as Chargors) and ING Bank N.V. as Security Agent" (the "2013 Security Agreement') under which the Debtors allegedly assigned certain rights in respect of their supply contracts as security to ING.

25.    On November 13, 2014, the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Connecticut (the "Court").

26.    On November 18, 2014, at the hearing before the Court on the "first day" motions filed with the Court on behalf of the Debtors, the Court agreed that the cases should be administratively consolidated.

27. Thereafter the Court also heard argument with respect to reclamation claims procedures requested by the Debtors. NuStar withdrew its objections to the reclamations procedures sought by the Debtors with the agreement that NuStar (a) would be carved out of the reclamation claims procedures order to be issued by the Court, (b) would also establish a segregated account for any funds received by NuStar in connection with fuel supplied to the Debtors, and (c) that any disputes over such funds would be subject to further proceedings before this Court on January 6, 2015. See, docket entry with link to the recording of November 18, 2014 hearing, entered on the docket on November 19, 2014, for Debtor O.W. Holding, Case No. 14-51720. The January 6, 2015 hearing date is further recorded directly in the Court's November 19, 2014, docket entry on the docket for O.W. Holding, Case No. 14-51720.

28. Following the November 18, 2014 hearing before the Bankruptcy Court, NuStar has continued to threaten to arrest the Vessel and has sought security from SHV to avoid such arrest. To avoid the arrest of the Vessel, NuStar has insisted on security in a form inconsistent with its representations to the Debtors and before this Court on November 18, 2014, including as a condition to the form of security that all matters in dispute as between NuStar and SHV with respect to the payment for the fuel bunkers -- including any disputes with respect to the single segregated account which NuStar has established or will establish pursuant to its agreement with this Court -- be determined exclusively before the United States District Court, Southern District of Texas, Houston Division. NuStar has not reconciled, on the one hand, its existing commitment to have this Court address further disputes with respect to funds relating to the payment of fuel bunkers sold by the Debtors to customers, with its efforts, on the other hand, to deprive the Debtors of their opportunity to have disputes heard before this Court and to deprive this Court of

its jurisdiction over NuStar concerning payment for fuel bunkers sold by the Debtors to customers including SHV and Debtors' rights to payment for same.

29. On November 25, 2014, the Debtors commenced an adversary proceeding against ING seeking, among other things, to avoid certain liens conveyed to ING under the 2013 Security Agreement (Adv. Pro. No. 14-05063). The adversary proceeding against ING remains pending before this Court and ING's rights, if any, to the payments due to the Debtors from their customers has not yet been resolved.

30. The Vessel which is subject to arrest by Defendants asserting maritime liens is en route now from Europe to the Port of Houston, Texas in the United States, and is expected to reach the port on or before December 12, 2014.

31. Due to the bankruptcy filings of the Debtors, it is possible that NuStar, ING, or another party will each take immediate action to collect the funds owed for the fuel bunkers, and do so in different courts, multiplying the risk of inconsistent determinations and SHV's litigation costs as well as the risk of SHV's exposure, while potentially permitting a windfall for one party at the expense of the others. In addition, such litigation may adversely affect any right of the Debtors' to the Disputed Funds, the basis of which derives from the Debtors' own obligation to pay for the fuel it ordered on behalf of its customers.

E. **POSSIBLE ARREST OF VESSEL AND NECESSITY OF INTERPLEADER**

32. Under United States maritime law, the contract supplier of necessaries, including fuel, to a vessel obtains a maritime lien against the vessel. Under certain circumstances, a physical supplier may also assert a maritime lien on that vessel.

33. Claimants may have already asserted, or may assert rights to amounts owed for the sale of necessaries to the Vessel, giving rise to a maritime lien under the Maritime Lien and Commercial Instruments Act, 46 U.S.C. § 31301 *et seq.*

34. SHV cannot ascertain whether the Disputed Funds should be paid to the Debtor OW USA, NuStar, or ING in order to extinguish all maritime liens against the Vessel and to prevent its arrest.

35. The Vessel is due to call at the Port of Houston in the United States, and could face arrest by one or more of the Defendants claiming to assert a maritime lien, which could cause harm to SHV, delay the Vessel, and affect innocent third parties.

36. SHV presently has control over the Disputed Funds. SHV disclaims any interest in the cost of the supply of bunkers to the Vessel.

37. The competing claims of the Defendants or other third parties may expose SHV to multiple liabilities in connection with the payment of the Disputed Funds in order to extinguish competing maritime lien claims and/or other *in personam* or non-maritime claims.

38. Such liability may include not only the cost of posting security to free the Vessel from each arrest as may be pursued by parties asserting maritime liens, as well as the potential for multiple litigations over the same Disputed Funds in different jurisdictions, but the cost of delay to the Vessel in excess of $40,000 per day for every day she sits idle in port subject to an arrest.

39. SHV is entitled to deposit with the Court the Disputed Funds representing the amount due for the bunkers and require that the Debtors, NuStar, and any other claimant interplead among themselves to establish their respective rights to the invoiced funds.

40. After depositing the Disputed Funds with the Court, SHV is entitled to be discharged from further liability with respect to the Disputed Funds. The Vessel is similarly entitled to be discharged from any maritime liens against them arising from the supply of the

bunkers and free from any further threat of arrest by all parties asserting claims to payment from the Disputed Funds.

### F. INTERPLEADER REQUIREMENTS

41. The preceding paragraphs are incorporated by reference as if fully set forth herein.

42. The respective claims to the Disputed Funds by the Debtor and NuStar are adverse and conflicting and are made without collusion. SHV is unable to determine which, if any, of the claims are valid and/or in what amount(s).

43. SHV cannot pay the Disputed Funds to any party without this Court's determination of the respective interests in such Disputed Funds.

44. Because the SHV lacks knowledge or information sufficient to determine the rights of any party to the Disputed Funds, SHV contests the alleged rights of all parties asserting a claim to the Disputed Funds in its possession. Due to the amount at issue, which is in excess of $500, SHV is willing to place the Disputed Funds into the Court's registry, preserving the Disputed Funds and reserving all rights and claims thereto, pending a determination by this Court of the respective rights to such Disputed Funds.

45. SHV has no interest as a claimant in the Disputed Funds.

### G. CONCLUSION AND PRAYER

BASED UPON THE FOREGOING, SHV respectfully requests that the Court enter an order:

(1) directing SHV to deposit the Disputed Funds into the Court's registry;

(2) upon SHV's deposit of the Disputed Funds into the Court's registry, releasing and discharging SHV from any and all liability to any defendant and any other interested persons and

all those claiming through or acting with them, or claiming any interest, beneficial or legal, through such party or through others in the Disputed Funds;

(3) upon SHV's deposit of the Disputed Funds into the Court's registry, releasing and discharging the Vessel from any and all liability to any defendant and any other interested persons and all those claiming through or acting with them, or claiming any interest, beneficial or legal, through such party or through others in the Disputed Funds;

(4) requiring all parties and all other individuals or entities claiming a right to the Disputed Funds to appear and assert their respective claims to such Disputed Funds, if any;

(5) enjoining all parties and all other interested persons from instituting or pursuing any proceedings in any court, federal or state, domestic or foreign against SHV for the recovery of such Disputed Funds, on account of any party's purported claims or rights to such Disputed Funds;

(6) enjoining all parties and all interested persons from instituting or pursuing any proceedings in any court, federal or state, domestic or foreign affecting the property and *res* involved in this action of interpleader, including but not limited to the arrest of the Vessel pursuant to Supplemental Admiralty Rule C to enforce any maritime lien claims until the further order of the Court; and,

(7) granting SHV such other and further relief, at law or in equity, to which it may show itself justly entitled, including but not limited to its costs and attorneys' fees in this action.

Dated: December 3, 2014
       Stamford, CT

                          **CUMMINGS & LOCKWOOD LLC**

                          By: \s\ John F. Carberry

                              John F. Carberry, Esq.
                              6 Landmark Square
                              Stamford, CT 06901
                              Telephone: (203) 351-4280
                              Facsimile: (203) 708-3933
                              Email: jcarberry@cl-law.com

                                    *and*

                          **REED SMITH LLP**
                              Andrea J. Pincus (*pro hac vice admission pending*)
                              599 Lexington Avenue
                              New York, New York 10022
                              Telephone: (212) 521-5400
                              Facsimile: (212) 521-5450
                              Email: apincus@reedsmith.com

                              *Attorneys for Plaintiff SHV Gas Supply & Risk Management SAS*