**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| O.W. Bunker Holding North America Inc., *et al.*,[1] | : | Case No. 14-51720 |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER (1) ESTABLISHING
PROCEDURES TO SELL, TRANSFER, OR ABANDON CERTAIN
ASSETS AND (2) REJECTING CERTAIN LEASES**

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby move (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), under sections 105(a), 363, 365, and 554 of Title 11 of the United States Code (as amended, the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) establishing procedures and enabling the Debtors to sell, transfer, or abandon certain obsolete, excess, burdensome, or non-core assets with a *de minimis* value, without the need for further Court approval and (ii) rejecting certain leases. In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully state as follows:

**JURISDICTION**

1.  This Court has jurisdiction to consider this Motion under 28 U.S.C. §§157 and 1334. This is a core proceeding under 28 U.S.C. §157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§1408 and 1409.

---

[1] The last four digits of the Debtors' taxpayer identification numbers follow in parentheses: O.W. Bunker Holding North America Inc. (7474), O.W. Bunker North America Inc. (7158) and O.W. Bunker USA Inc. (3556). The Debtors' address is 281 Tresser Blvd., 2 Stamford Plaza, 15th Floor, Stamford, CT 06901.

2. The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), 363, 365, and 554 and Bankruptcy Rules 2002 and 6004.

**RELIEF REQUESTED**

3. By this Motion, the Debtors seek entry of an Order, establishing procedures enabling the Debtors to: (a) implement expedited procedures (the "Asset Sale Procedures") to sell certain obsolete, excess, burdensome, or non-core assets owned by the Debtors with a sale price of up to $250,000 (the "De Minimis Assets"), free and clear of all liens, claims, interests, and encumbrances (collectively, the "Liens"), without the need for further court approval; (b) implement expedited procedures (the "Asset Abandonment Procedures") to abandon certain De Minimis Assets to the extent that a sale or transfer thereof cannot be consummated; and (c) pay necessary fees and expenses incurred in connection with the sale or abandonment of De Minimis Assets.

4. In addition, the Debtors are also seeking authority from this Court to reject certain real property leases and pay the necessary fees and expenses incurred in connection with the rejection of said leases.

**BACKGROUND**

5. On November 13, 2014 (the "Petition Date"), each of the Debtors commenced a voluntary case in this Court (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On November 19, 2014, this Court ordered that the Debtors cases be jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and D. Conn. LBR 1015-1.

7.  The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the *Declaration of Adrian Tolson, General Manager of O.W. Bunker North America Inc., in Support of Chapter 11 Petitions and First Day Pleadings*, filed with the Court (the "Tolson Declaration") [D.I. 15].

8.  On November 26, 2014, the United States Trustee appointed the Official Committee of Unsecured Creditors of O.W. Bunker Holding North America, Inc., *et al.* (the "Committee").  No trustee or examiner been appointed in the Debtors' Chapter 11 Cases.

**I.     The Assets and Leases at Issue.**

9.  Debtor OW Bunker USA Inc. ("OWB-USA") currently leases 4,067 square feet of office space at 2603 Augusta Drive, Suite 444, Houston, TX  77057 from SP5 2603 Augusta, LP, a Delaware limited partnership (the "Houston Office Lease").  The Debtors signed the Houston Office Lease on January 29, 2013 with the lease term commencing on March 1, 2013 and running for a term of 65 calendar months.  Basic monthly rent under the lease is $5,422.67, with additional rent paid in the form of a 1.67% share of the entire building's operating costs, taxes, and electrical costs.  The initial security deposit was $31,071.90.

10.  The Debtors have concluded that centralizing remaining operations in Connecticut is in the best interest of the Debtors and, therefore, the Debtors intend to close the Houston office by December 31, 2014.  Therefore, Debtor OWB-USA Inc. no longer needs office space in Houston and will reject the Houston Office Lease.

11.  Debtor O.W. Bunker North America Inc. ("North America") currently leases 1,680 square feet of office space at 100 W. Broadway, Ste. 230, Long Beach, California  90802 from Danari Broadway, LLC, a Delaware limited liability company (the "Long Beach Office Lease").  The Debtors signed the Long Beach Office Lease on July 10, 2014 with the lease term

-3-

commencing on August 1, 2014 and running for a term of 13 calendar months. Basic monthly rent under the lease is $2,520.00, plus any additional use of the HVAC and electric utilities above standard usage rates for the building. The initial security deposit was $2,520.00.

12. Upon closing the sale of the Debtors' oil at the Vopak Terminal Los Angeles and the assumption of the Vopak Terminal lease by Aegean Bunkering, the Debtors no longer need to maintain an office in Long Beach, California. Therefore, the Debtors intend to reject the Long Beach Office Lease by December 31, 2014.

13. The De Minimis Assets related to the Houston Office and the Long Beach Office consist largely of a variety of office furniture, equipment and supplies, including, but not limited to, a video conference system, office telephones, a television, speakers, an Apple TV, Apple iPhones, and an Apple iPad.

14. North America leased three apartments in Stamford, Connecticut for use by certain of the Debtors' employees (the "Employee Apartment Leases"). The Debtors are continuing to consolidate their remaining operations in Stamford, Connecticut, which includes an evaluation of employee staffing levels. The Employee Apartment Leases consist of:

> 1. A lease with 1455 Washington-Connecticut, Inc. d/b/a Stamford Corner Apartments for 1455 Washington Boulevard, Apartment 126, Stamford Connecticut 06902 pertaining to the period of July 2, 2014 to July 2, 2015 at a rate of $2,119.00 per month, in addition to all utilities associated with its use. The lease is dated May 27, 2014, with an initial security deposit of $1,000.00.
>
> 2. A lease with 1455 Washington-Connecticut, Inc. d/b/a Stamford Corner Apartments for 1455 Washing Boulevard, Apartment 148, Stamford Connecticut 06902 pertaining to the period of November 2, 2013 to November 2, 2014 at a rate of $2,018.00 per month, in addition to all utilities associated with its use. The lease is dated October 20, 2013, with an initial security deposit of $1,000.00.
>
> 3. A lease with HPC-Five, LLC for 301 Commons Park South, Apartment 318, Stamford Connecticut 06902 pertaining to the period of June 21, 2014 to June 20, 2015 at a rate of $2,354.92 per month, in addition to all utilities associated with its use. The lease is dated June 24, 2014, with an initial security deposit of $750.00.

In connection with their evaluation, the Debtors have determined that the Employee Apartment Leases are no longer needed as the employees residing in the respective apartments have been terminated. Therefore, the Debtors intend to reject the Employee Apartment Leases.

15. OWB-USA and OWB North America together own five automobiles which were available for employee use. The five cars consist of a 2013 Nissan Rouge with approximately 6,500 miles, a 2015 Ford Explorer XLY with approximately 1,600 miles, a 2012 Audi Q7 with approximately 31,000 miles, a 2013 Audi Q5 with approximately 15,000 miles, and a 2012 BMW X1 with approximately 34,000 miles (collectively, the "Automobiles"). Because Debtors, in the exercise of their business judgment, have determined to release certain Stamford, Connecticut employees and close the Houston and Long Beach offices and consolidate remaining operations in Stamford, Connecticut, the Debtors no longer have need to keep the De Minimis Assets or the Automobiles.

16. By this Motion, the Debtors are proposing procedures to sell not only the identified De Minimis Assets and the Automobiles, but to also sell assets of the same type and dollar value as those described in this motion in the exercise of the Debtors' business judgment.

## II.    The Asset Sale Procedures

17. The Debtors propose to implement the following Asset Sale Procedures for the sale or transfer of De Minimis Assets:

> 1. With regard to the sale or transfer of De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a sale price less than or equal to $100,000:
>
>> a. the Debtors are authorized to consummate such transactions if the Debtors determine in the reasonable exercise of their business judgment that such sales are in the best interests of their estates, without further order of the Court or notice to any party;
>>
>> b. any such transactions shall be deemed final and fully authorized by the Court and free and clear of Liens with such Liens attaching only to the

sale proceeds with the same validity, extent, and priority as immediately prior to the transaction; and

c. good faith purchasers of such assets shall be entitled to the protections of section 363(m) of the Bankruptcy Code

2. With regard to the sale or transfer of De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a sale price greater than $100,000 and less than or equal to $250,000:

a. the Debtors are authorized to consummate or authorize such transactions, as applicable, if the Debtors determine in the reasonable exercise of their business judgment that such sales are in the best interests of their estates, without further order of the Court, subject to the procedures set forth herein;

b. the Debtors shall, at least ten (10) calendar days prior to closing, effectuating, or authorizing such sale or transfer, give written notice of such sale or transfer substantially in the form attached as Exhibit 1 to Exhibit A attached hereto (each notice, a "Sale Notice") to (a) the U.S. Trustee and (b) any of the following parties that are affected by such sale or transfer: (i) counsel to the official committee of unsecured creditors appointed in these chapter 11 cases; (ii) counsel to any creditor asserting a Lien on the relevant assets; (iii) those parties requesting notice pursuant to Bankruptcy Rule 2002 (collectively, the "Sale Notice Parties");

c. the content of the notice sent to the Sale Notice Parties shall consist of: (a) identification of the assets being sold or transferred; (b) identification of the Debtor(s) that directly own such assets; (c) identification of the purchaser of the assets; (d) the purchase price and terms of payment, including the cash and other consideration to be paid by the purchaser; (e) the marketing or sales process, including any commissions to be paid to third parties used to sell or auction the assets; (f) the significant terms of the sale or transfer; (g) a statement as to whether the assets are encumbered or unencumbered; and (h) the identities of any known parties holding or asserting Liens in the relevant assets;

d. if no written objection by any of the Sale Notice Parties is received by Debtors' counsel or filed with this Court within ten (10) calendar days of the date of such notice (the "Sale Objection Deadline"), the Debtors are authorized to immediately consummate such sale or transfer;

e. if the terms of a proposed sale or transfer are materially amended after transmittal of the Sale Notice but prior to the Sale Objection Deadline, the Debtors will send a revised Sale Notice to the Sale Notice Parties. The Sale Objection Deadline will be extended such that the Sale Notice Parties

will have an additional five calendar days to object in accordance with the Asset Sale Procedures;

f.  if a written objection by a Sale Notice Party is received by Debtors' counsel by the Sale Objection Deadline and such objection cannot be resolved by the Sale Objection Deadline, the Sale Notice Party shall file the objection with this Court and such assets shall only be sold upon withdrawal of such written objection or further order of the Court;

g.  any such transactions shall be free and clear of all Liens with such Liens, if any, attaching only to the sale proceeds with the same validity, extent, and priority as had attached to such assets immediately prior to the transaction;

h.  the Debtors shall not commingle the proceeds from the sale of unencumbered assets with encumbered cash;

i.  good faith purchasers of assets shall be entitled to the protections of section 363(m) of the Bankruptcy Code; and

j.  commencing on January 1, 2015, and every month thereafter, the Debtors shall file a report with the Court listing all assets sold or transferred pursuant to the Asset Sale Procedures for the preceding month, including the names of the purchasing parties and the sale price for each such transaction.  The Debtors' obligations to file such reports pursuant to this Order shall terminate thirty (30) days after confirmation of a plan of reorganization.

### III.  Asset Abandonment Procedures

18.  To the extent the Debtors are unable to sell De Minimis Assets, the Debtors seek authority to abandon De Minimis Assets with a book value as recorded in the Debtors' books and records of $250,000 or less in accordance with the following procedures (the "<u>Asset Abandonment Procedures</u>"):

1.  the Debtors shall, at least ten (10) calendar days prior to abandonment of De Minimis Assets, give written notice of such abandonment substantially in the form attached as Exhibit 2 to Exhibit A attached hereto (each notice, an "<u>Abandonment Notice</u>") to (a) the U.S. Trustee and (b) any of the following parties that are affected by such abandonment: (i) counsel to the official committee of unsecured creditors appointed in these chapter 11 cases; (ii) counsel to any creditor asserting a Lien on the relevant assets; and (iii) those parties requesting notice pursuant to Bankruptcy Rule 2002 (collectively, the "<u>Abandonment Notice Parties</u>");

-7-

2. the Abandonment Notice shall: (i) contain a description in reasonable detail of the assets to be abandoned; (ii) identify the Debtor(s) that directly own such assets; (iii) set forth the Debtors' reasons for such abandonment; (iv) identify the entity to which the assets are being abandoned (if any); and (v) identify any known parties holding or asserting Liens or other interests in the relevant assets.

3. if no written objection by any Abandonment Notice Party is received by Debtors' counsel or filed with this Court within ten (10) calendar days of service of such Abandonment Notice (the "<u>Abandonment Objection Deadline</u>"), the Debtors may immediately proceed with the abandonment;

4. if the terms of a proposed abandonment are materially amended after transmittal of the Abandonment Notice but prior to the Abandonment Objection Deadline, the Debtors will send a revised Abandonment Notice to the Abandonment Notice Parties.  The Abandonment Objection Deadline will be extended such that the Abandonment Notice Parties will have an additional five calendar days to object in accordance with the Asset Abandonment Procedures; and

5. if a written objection by an Abandonment Notice Party is received by Debtors' counsel by the Abandonment Objection Deadline and such objection cannot be resolved prior to the Abandonment Objection Deadline, the Abandonment Notice Party shall file the objection with this Court and the relevant assets shall only be abandoned upon withdrawal of such written objection or further order of the Court.

## **BASIS FOR RELIEF**

**I.    The Asset Sale Procedures and Asset Abandonment Procedures are Appropriate and in the Best Interests of the Debtors' Estates.**

19. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Bankruptcy courts regularly authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor. *See, e.g., In re Trans World Airlines, Inc.*, No. 01-00056, 2001 Bankr. LEXIS 980 at *29 (Bankr. D. Del. Apr. 2, 2001); *Meyers v. Martin (In re Martin)*, 91 F.3d 389 (3d Cir. 1996); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

20. The Debtors anticipate that they currently possess (or may come into possession of) certain De Minimis Assets that they may desire to sell, transfer, or abandon during the course of these chapter 11 cases. The Asset Sale Procedures and the Asset Abandonment Procedures will enable the Debtors to defray or avoid any operational, carrying, storage, or other expenses associated with the De Minimis Assets, protect the Debtors against the possible declining value of certain De Minimis Assets, and minimize the opportunity costs, as well as any potential health and safety risks, associated with delays in the sale or abandonment of De Minimis Assets. Moreover, the Asset Sale Procedures will enable the Debtors to take advantage of sale opportunities that are available only for a limited time, and will monetize otherwise unusable assets and provide additional funds for the Debtors' operations.

21. Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value [and benefit] to the estate." 11 U.S.C. § 554(a). The Debtors expect to take all reasonable steps to sell De Minimis Assets that are no longer beneficial to their operations. The costs associated with sales of certain De Minimis Assets, however, may exceed the anticipated proceeds of such De Minimis Asset sales. The inability to consummate a commercially reasonable sale of De Minimis Assets would indicate that these assets have no meaningful monetary value to the Debtors' estates. Further, the costs of storing and maintaining such De Minimis Assets may burden the Debtors' estates. In such circumstances, the abandonment of De Minimis Assets pursuant to the Abandonment Procedures is in the best interests of the Debtors' estates.

22. Accordingly, the Asset Sale Procedures and Asset Abandonment Procedures are in the best interests of the Debtors' estates, their creditors, and other parties in interest and should

be approved. In light of the demonstrable benefits of streamlined procedures to sell or abandon de minimis assets, courts in this circuit have approved similar procedures in large chapter 11 cases. *See, e.g., In re Calpine Corp.*, No. 05-60200 (BRL) (Bankr. S.D.N.Y. Mar. 1, 2006) (authorizing sales up to $15 million); *In re NRG Energy, Inc.* No. 03-13024 (PCB) (Bankr. S.D.N.Y. May 19, 2003) (authorizing sales up to $2 million and abandonment procedures); *In re Borders Group, Inc.*, 453 B.R. 477 (Bankr. S.D.N.Y. 2011) (authorizing sales up to $1 million); *In re Mesa Air Grp.*, No. 10–10018, 2010 WL 5264003 (Bankr. S.D.N.Y. Feb. 25, 2010) (approving de minimis asset sale procedures for assets sold up to $750,000).

23.  Courts in other districts have also approved procedures similar to the Asset Sale Procedures and Abandonment Procedures in the chapter 11 cases of large energy companies. *See, e.g., In re Visteon Corp.*, No. 09-11786 (Bankr. D. Del. July 16, 2009) (authorizing sales up to $10 million); *In re Flying J, Inc.*, No. 08-13384 (Bankr. D. Del. Feb. 19, 2009) (authorizing asset sales up to $5 million); *In re Edison Mission Energy.* No. 12-49219 (Bankr. N.D. Ill Jan. 17, 2013) (authorizing sales up to $5 million and abandonment procedures); *In re Nat'l Energy & Gas Trans., Inc.,* No. 03-30459 (Bankr. D. Md. Dec. 09, 2003) (authorizing sales of de minimis assets up to $200,000); *In re Mirant Corp.*, No. 03-46590 (Bankr. N.D. Tex. Oct. 1, 2003) (authorizing sales not to exceed $150,000 and abandonment of certain assets not to exceed $50,000).

**II.    The Court Should Approve the De Minimis Asset Sales Free and Clear of Liens Under Section 363(f) of the Bankruptcy Code.**

24.  Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in such property if: (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sales price of the property exceeds the value of all liens on the property; (d) the interest is in

bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.  11 U.S.C. § 363(f).

25. The Debtors propose to sell or transfer the De Minimis Assets in a commercially reasonable manner, and expect that the value of the proceeds from such sales or transfer will fairly reflect the value of the property sold.  Pursuant to the Asset Sale Procedures, any party with a Lien on De Minimis Assets sold or transferred shall have a corresponding security interest in the proceeds of such sale or transfer with the same validity, extent, and priority as immediately prior to the transaction.  Moreover, the Debtors propose that if a party in interest fails to timely object to a De Minimis Asset sale consistent with the Asset Sale Procedures, such party shall be deemed to "consent" to such De Minimis Asset sale within the meaning of section 363(f)(2) of the Bankruptcy Code.  As such, the requirements of section 363(f) of the Bankruptcy Code would be satisfied for any proposed sales or transfers free and clear of liens, claims, encumbrances, and other interests.

### III. De Minimis Asset Sales Should Be Entitled to the Protections of Bankruptcy Code Section 363(m).

26. Section 363(m) of the Bankruptcy Code provides in relevant part that the reversal or modification on appeal of an authorization under section 363(b) of a sale or lease of property does not affect the validity of a sale or lease under such authorization to a purchaser who bought or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.  11 U.S.C. § 363(m). The Second Circuit has held that: "While the Bankruptcy Code does not define the "good faith" that protects transactions pursuant to section 363(m) (or, for that matter, the "good faith" that courts require in approving section 363 sales in the first place), the Second Circuit has explained that: 'Good faith of a purchaser is shown by the integrity of his conduct during the

course of the sale proceedings…'" *In re Gen. Motors Corp.*, 407 B.R. 463, 494 (Bankr. S.D.N.Y. 2009) *aff'd sub nom. In re Motors Liquidation Co.*, 428 B.R. 43 (S.D.N.Y. 2010) and *aff'd sub nom. In re Motors Liquidation Co.*, 430 B.R. 65 (S.D.N.Y. 2010) (quoting *In re Gucci*, 126 F.3d 380, 390 (2d Cir. 1997) (citation omitted).

27. The Debtors submit that any agreement that results in the sale of De Minimis Assets will be an arm's-length transaction entitled to the protections of section 363(m), and the Debtors request that section 363(m) be deemed to apply to each sale of De Minimis Assets in accordance with the Asset Sale Procedures.

### IV. Approval of Proposed De Minimis Asset Sales and Abandonments on Shortened and Limited Notice Is Appropriate.

28. The notice and hearing requirements contained in sections 363(b)(1) and 554(a) are satisfied if appropriate notice and an opportunity for a hearing are provided in light of the particular circumstances. See 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" to mean such notice and an opportunity for a hearing "as [are] appropriate in the particular circumstances"). Moreover, "a requirement of 'notice and a hearing' really means notice and the opportunity for a hearing . . . the Bankruptcy Code is explicit in defining 'after notice and a hearing' as 'authorizing an act without an actual hearing if such notice is given properly' and no interested party requests a hearing." *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 618 (7th Cir. 2002) (citing 11 U.S.C. § 102(1)(B)) (emphasis in original); *Clear Blue Water, LLC v. Oyster Bay Management Co., LLC*, 476 B.R. 60, 73 (E.D.N.Y. 2012).

29. Generally, Bankruptcy Rules 2002(a)(2) and 2002(i) require debtors in possession to provide a minimum of 21 days' notice by mail of proposed sales of property outside the ordinary course of business to "the debtor, the trustee, all creditors and indenture trustee" as well as any committee appointed under section 1102 of the Bankruptcy Code. *See* Bankruptcy

Rule 2002(a)(2), 2002(a)(i).  Courts are authorized to shorten the 21-day notice period generally applicable to asset sales, or to direct another method of giving notice, upon a showing of "cause."  *See* Bankruptcy Rule 2002(a)(2).  Moreover, courts are authorized to limit notice of asset sales outside of the ordinary course of a debtor's business, even without a prior showing of cause, to any official committee appointed under section 1102 of the Bankruptcy Code and any creditor or equity holder requesting notice.  *See* Bankruptcy Rule 2002(i).

30. The proposed Asset Sale Procedures and Asset Abandonment Procedures provide all interested parties with sufficient notice and an opportunity to object.  Moreover, the procedures provide that if an interested party objects to a proposed sale or abandonment, the Debtors may not proceed with such De Minimis Asset disposition without seeking Court approval and providing the objecting party an opportunity for a hearing.  Because the Asset Sale Procedures and Asset Abandonment Procedures are reasonably calculated to provide interested parties notice, an opportunity to object and, if necessary, a hearing, the proposed procedures satisfy applicable due process standards.  Therefore, the Debtors propose to streamline the process and shorten the applicable notice periods as described in the Asset Sale Procedures and Asset Abandonment Procedures.

## V. Rejection of the Employee Apartment Leases, the Houston Office Lease, and the Long Beach Office Lease Reflect Sound Business Judgment

31. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  For the benefit of the estate, a debtor may, under section 365 of the Bankruptcy Code, relieve itself of burdensome agreements where performance still remains. *See In re Chateaugay Corp.*, 10 F.3d 944, 954–55 (2d Cir. 1993) (Bankruptcy Code section 365 allows "a debtor to reject executory contracts in order to relieve the estate of burdensome

obligations…."); *see also In re Lyondell Chem. Co.*, No. 13 CIV. 3881 RA, 2014 WL 975507, at *4 (S.D.N.Y. Mar. 11, 2014).

32. The decision to assume or reject an unexpired lease is a matter within the debtor's "business judgment." *See In re Minges*, 602 F.2d 38, 43 (2d Cir. 1979) (determining whether executory contract may be rejected is subject to the "business judgment" test); *see also In re Orion Pictures Corp.*, 4 F.3d 1095, 1099 (2d Cir. 1993); *In re Balco Equities Ltd., Inc.*, 323 B.R. 85, 98-99 (Bankr. S.D.N.Y. 2005); *In re Old Carco LLC*, 406 B.R. 180, 188 (Bankr. S.D.N.Y. 2009) (*citing In re Penn Traffic Co.*, 524 F.3d 373, 383 (2d Cir. 2008)). The business judgment standard mandates that a court approve a debtor's business decision "absent a showing of bad faith, or an abuse of business discretion…." *Id.* at 99 (*quoting In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr.S.D.N.Y.1994)); *see also Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (noting that, absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course"). Accordingly, "[a]court should defer to a debtor's decision that rejection of a contract would be advantageous[,]" unless evidence is presented that establishes that the debtor's decision was one taken in bad faith or in abuse of its business discretion. *In re MF Global Holdings Ltd.*, 466 B.R. 239, 242 (Bankr. S.D.N.Y. 2012).

33. In this case, the Debtors, in their sound business judgment, have determined to retain only certain employees in connection with the consolidation of their operations, rendering the Employee Apartment Lease superfluous. The Debtors have also determined that the Houston Office and the Long Beach Office Leases are neither compatible with the Debtors' ongoing business needs nor a source of potential value for the Debtors' future operations, creditors, or other parties in interest. Absent rejection, the Houston Office and the Long Beach Office Leases

impose ongoing obligations on the Debtors and their estates that are an unnecessary drain on the Debtors' resources. Accordingly, to avoid incurring additional unnecessary expenses associated with the Houston Office and the Long Beach Office Leases, the Debtors seek to reject the Houston Office and the Long Beach Office Leases effective December 31, 2014. Rejection of the Employee Apartment Leases and the Houston Office and the Long Beach Office Leases are appropriate under the circumstances and reflect the Debtors' sound business judgment.

## WAIVER OF BANKRUPTCY RULES 6004(A) AND 6004(H)

34. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## NOTICE

35. Notice of this Motion will be given to (a) the United States Trustee for the District of Connecticut; (b) counsel to the Committee; and (c) any other entity that has filed a notice of appearance in these Chapter 11 Cases and requested electronic service. The Debtors submit that, under the circumstances, no other or further notice is required.

## **NO PRIOR REQUEST**

36. No prior request for the relief sought in this Motion has been made to this or any other court.

Dated: Bridgeport, Connecticut
       December __, 2014

                                Respectfully submitted,

                                */s/*
                                Michael R. Enright, Esq. (ct10286)
                                Patrick M. Birney, Esq. (ct19875)
                                ROBINSON & COLE LLP
                                280 Trumbull Street
                                Hartford, CT 06103
                                Telephone: (860) 275-8290
                                Facsimile: (860) 275-8299
                                menright@rc.com
                                pbirney@rc.com

                                - and -

                                Natalie D. Ramsey, Esq. (NY #5242730)
                                    (admitted *pro hac vice*)
                                Joseph O'Neil, Esq. (NY #2596435)
                                    (admitted *pro hac vice*)
                                Davis Lee Wright, Esq. (NY #4761300)
                                    (admitted *pro hac vice*)
                                MONTGOMERY, McCRACKEN, WALKER &
                                RHOADS, LLP
                                437 Madison Avenue, 29th Floor
                                New York, NY 10022 (215) 772-1500
                                Telephone: (212) 867-9500
                                Facsimile: (212) 599-1759
                                nramsey@mmwr.com
                                jo'neil@mmwr.com
                                dwright@mmwr.com

                                *Proposed Counsel for the Debtors and Debtors in Possession*