# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
### BRIDGEPORT DIVISION

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| O.W. Bunker Holding North America Inc., *et al.*,[1] | : | Case No. 14-51720 (AHWS) |
|  | : |  |
| Debtors. | : | Jointly Administered |
|  | : |  |
|  | : |  |
| O.W. Bunker Holding North America Inc., *et al.*, | : |  |
|  | : |  |
| Movants | : |  |
|  | : |  |
| vs. | : |  |
|  | : |  |
| Hold Harley Marine New York, Inc., | : |  |
|  | : |  |
| Respondent. | : | December 19, 2014 |
|  | : |  |

## MOTION OF DEBTORS AND DEBTORS-IN-POSSESSION TO: (I) HOLD HARLEY MARINE SERVICES NEW YORK, INC. IN CONTEMPT FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY; (II) RECOVER ANY DAMAGES SUSTAINED BY THE DEBTORS; AND (III) COMPEL TURNOVER OF PROPERTY OF THE ESTATES PURSUANT TO 11 U.S.C. §542

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion ("Motion") to: (i) Hold Harley Marine New York, Inc. ("Harley") in Contempt for Willful Violation of the Automatic Stay; (ii) Recover Any Damages Sustained by the Debtors; and (iii) Compel Turnover of Property of the Estates Pursuant to 11 U.S.C. §542.  In support of the Motion, the Debtors respectfully state as follows:

---

[1] The last four digits of the Debtors' taxpayer identification numbers follow in parentheses:  O.W. Bunker Holding North America Inc. (7474), O.W. Bunker North America Inc. (7158) and O.W. Bunker USA Inc. (3556).  The Debtors' address is 281 Tresser Blvd., 2 Stamford Plaza, 15th Floor, Stamford, CT  06901.

## JURISDICTION AND VENUE

1.      The Court has subject matter jurisdiction under 28 U.S.C. § 1334(b).   This

contested matter relates to the jointly administered Chapter 11 cases captioned *In re O.W. Bunker*

*Holding North America, Inc., et al.,* Case No. 14-51720 (AHWS), pending in the United States

Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court").

2.      Venue is proper under 28 U.S.C. § 1409.

3.      This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G).

Because this is a core proceeding, the Bankruptcy Court has jurisdiction and power under 28

U.S.C. § 157(b) to hear and finally determine this contested matter.

4.      This contested matter is commenced pursuant to 11 U.S.C. §§ 105(a) and 362(a);

and is also commenced pursuant to Federal Rules of Bankruptcy Procedure 9014 and 9020.

## BACKGROUND

5.      The Debtors are part of a family of global marine fuel logistics companies

ultimately owned by OW Bunker A/S, a Danish company (collectively, the "OW Bunker

Companies").  The OW Bunker Companies are in the business of global marine fuel supply.  The

Debtors conducted the North American operations for the OW Bunker Companies.

6.      On November 13, 2014 (the "Petition Date"), the Debtors filed voluntary petitions

under chapter 11 of Title 11 of the United Sates Code (the "Bankruptcy Code").  The Debtors

continue to operate as debtors-in-possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.  The Court has entered a final order for joint administration of these chapter

11 cases [Doc. ID No. 52].  The Court has not appointed a trustee or an examiner.

2

7.      The Office of the United States Trustee (the "U.S. Trustee") formed an official

committee of unsecured creditors of the Debtors on November 26, 2014 [Doc. ID No. 89].

8.      The background of the Debtors operations and financial structure are more fully

set forth in the *Declaration of Adrian Tolson, General Manager North America of O.W. Bunker*

*North America, Inc., in Support of Chapter 11 Petitions and First Day Pleadings,* filed with the

Court [D.I. 15] (the "Tolson Declaration") which is incorporated herein by reference.[2]

**The Debtors Relationship with Harley**

9.      Prior to the Petition Date, certain of the Debtors used the services of Harley to

transport oil owned by the Debtors for delivery to customers.  The barge CHABRIA SEA was

the vessel designated by Harley to perform these services.

10.      At the time of the bankruptcy, certain quantities of oil products owned by the

Debtors ware loaded onto the barge CHABRIA SEA.  As of the Petition Date,  Harley has

indicated that it has possession of approximately 339.74 metric tons of MGO and 2,713.96

metric tons of RMK/RHG, on the CHABRIA SEA (collectively, the "OWB Oil").

11.      The OWB Oil was loaded on to the CHABRIA SEA, "Free on Board."  Thus, the

risk of loss and title to the OWB oil passed to the Debtors at the time the OWB Oil was loaded

on the CHABRIA SEA.  *See* invoices attached hereto at Exhibit A.

**Harley's Knowledge of the Bankruptcy Cases and the Automatic Stay**

12.      Early on in these bankruptcy cases, on November 18, Debtors' counsel spoke to

Harley's inside counsel, Bobby Franco, and at Mr. Franco's request. called and left messages for

outside counsel, Michael Gossler, which were not returned that day.  On that same day, Debtors'

---

[2]   Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Tolson
Declaration.

3

counsel sent Mr. Gossler numerous filings in the bankruptcy cases.   True copies of email correspondence among the parties are annexed hereto at Exhibit B.   Harley was also formally served with other motions and filings in this case over the following 7-10 days.   Thus, Harley had full knowledge of the Debtors' bankruptcy cases and of the application of the automatic stay.

**Harley's Willful Violation of the Automatic Stay**

13.     Despite being fully aware of these bankruptcy cases, Harley nevertheless continued (and continues) to exercise dominion and control over all of the quantities of OWB Oil on the CHABRIA SEA and/or take further action in violation of the automatic stay.   Indeed, on or about November 21, 2014, eight (8) days after the Petition Date and three days after its bankruptcy counsel was contacted, Harley filed a Verified Complaint *in rem* for Unpaid Freight, Demurrage and Related Charges against the OWB Oil on its own vessel in the United States District Court for the District of New Jersey (the "*in rem* Action").   A true and correct copy of the verified complaint of the *in rem* Action is annexed hereto at Exhibit C.

14.     In the *in rem* Action, Harley alleged that "a maritime lien in favor of [Harley] now exists against the Cargo…" and it requested that the U.S. Marshal arrest the OWB Oil based upon this purported maritime lien.   *See* Exhibit C, ¶ 4.1.

15.     On November 24, 2014, a warrant was issued by the U.S. District Court for the District of New Jersey to arrest the OW Cargo on CHABRIA SEA.   A true and correct copy of the arrest warrant is annexed hereto at Exhibit D.   On November 25, 2014 the U.S. Marshal arrested the OW Cargo on the Barge CHABRIA SEA.   *See* Exhibit D.

16.     This is not a situation where a reclaiming party attempted to exercise maritime rights over its own product contained on a third-party vessel. Rather, this is a situation where Harley—without establishing cause to obtain relief from the automatic stay provisions of the

4

Bankruptcy Code—sought to assert a lien on the OWB Oil, which since the Petition Date is property of the Debtors' bankruptcy estate.

17.    In the meantime, Phillips 66 Company and Mieco, Inc. have sought reclamation of this cargo.  True and correct copies of these reclamation requests (without exhibits) are annexed hereto at <u>Exhibit E</u>.  Harley's knowing and intentional violation of the automatic stay has therefore made compliance with these requests impossible and has greatly harmed the Debtors.

18.    Instead of cooperating with the Debtors to facilitate the return of the OWB Oil so that they may address these reclamation requests, Harley has instead cavalierly taken actions to protect its purported interests in the OWB Oil in direct violation of the automatic stay thereby hindering the Debtors' estate property recovery efforts.[3]  These actions have prevented the Debtors from facilitating the return of the OWB Oil to reclaiming creditors causing them severe and possibly irreversible damages.  Moreover, as each day passes and the OWB Oil remains on the CHABRIA SEA, Harley alleges that its purported claim for freight and demurrage charges is increasing.  Thus, Harley's failure to return the OWB Oil to the Debtors is also a failure to mitigate any purported claims against the Debtors that Harley may have.

19.    Without having sought relief from the automatic stay, Harley has no basis or authority to exercise control over the OWB Oil. As noted above, the OWB Oil is subject to reclamation requests from Phillips 66 Company and Mieco, Inc.  The Debtors have been engaged with these entities as well as Harley to facilitate the return of the OWB Oil to these entities, to no avail.  Harley's refusal to return the OWB Oil to the Debtors and its actions taken in violation of

---

[3] Contemporaneously herewith, the Debtors have also commenced an adversary proceeding against Harley seeking to, among other things, avoid any purported lien that Harley may have in the OWB Oil and for turnover of the OWB Oil.

the automatic stay have interfered with the Debtors' ability to resolve certain reclamation requests and reduce the Debtors' potential liability therefor. Further, because of Harley's willful stay violation with respect to the OWB Oil, Mieco, Inc. has filed its own motion seeking the allowance of a section 503(b)(9) claim for its portion of the OWB Oil, that the Debtor will now have to contend with.

20.     Under these circumstances, a finding of contempt against Harley for willful violation of the automatic stay is warranted and an award of actual damages to the Debtors is appropriate. Further, Harley should be directed to turnover the OWB Oil because it is property of the Debtors' estates.

## ARGUMENT

21.     Pursuant to section 541 of the Bankruptcy Code, all property of a debtor becomes property of the debtor's bankruptcy estate upon the filing of a petition under chapter 11, and all such estate property is protected by the automatic stay under section 362 of the Bankruptcy Code, from acts to obtain possession of or interface with such property. Congress intended to prevent creditors from retaining property of the debtor in derogation of the bankruptcy procedure and the broad goals of debtor protection. *Christopher Weber v. SEFCU, In re Weber*, 719 F.3d 72, 80 (2d Cir. 2013). Further, section 542 of the Bankruptcy Code grants a debtor's estate a possessory interest in property that may not have been held by the debtor at the commencement of its case and requires entities holding any such property to turn that property over to the debtor or trustee. *United States v. Whiting Pools, Inc.*, 462 U.S. 183, 205-06 (1983).

22.     Under section 105(a) of the Bankruptcy Code, a court may enter any order, process or judgment that it deems necessary to carry out the provisions of the Bankruptcy Code. Parties that willfully violate the automatic stay are subject to contempt and a debtor may be

awarded damages as a result of such violations. *In re Chateaugay Corporation*, 920 F2d 183 (2d Cir. 1990) (contempt proceedings are the proper means of compensation and punishment for willful violations of the automatic stay, *citing Fidelity Mortg. Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 51, 57 (2d Cir.1976)) (allowing imposition of costs, including reasonable attorney's fees under civil contempt powers for acts which bankruptcy judge found were done with "knowledge" of automatic stay and "deliberate[ ]" disregard of bankruptcy rules regarding requirements for relief), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977)); *In re First RepublicBank Corp.*, 113 B.R. 277, 279 (Bankr. N.D. Tex. 1989) (recognizing power of bankruptcy court under § 105 of the Bankruptcy Code to impose contempt sanctions for violations of automatic stay).

23.     Here, it cannot be disputed that Harley had knowledge of the bankruptcy proceedings and the automatic stay, yet nevertheless effected the post–petition arrest of the OW Oil without authority to so.  Further, Harley continues to exercise control over the OW Oil even though it is obligated to return it to the Debtors pursuant to section 542 of the Bankruptcy Code.

24.     Thus, Harley has willfully violated the automatic stay.  Harley has also refused to deliver property to the Debtors' estate when at all relevant times, Harley and its counsel knew that the Debtors were in bankruptcy.  Harley is preventing the Debtors from addressing reclamation requests with respect to the OWB Oil and otherwise interfering with and impairing the Debtors' rights in and to their property.  Under these circumstances, the Debtors submit that this willful and intentional conduct is punishable as contempt.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that Harley be: (i) found in contempt for willfully violating the automatic stay; (ii) liable for any damages sustained by the Debtors; (iii) compelled to turn over the OW Oil; and (iv) for such further relief the Court deems just and proper.

Dated:  Hartford, Connecticut
      December 19, 2014

<div style="margin-left: 40%;">

Respectfully submitted,

 */s/ Patrick M. Birney*          
Michael R. Enright, Esq. (ct10286)
Patrick M. Birney, Esq. (ct19875)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT  06103
Telephone: (860) 275-8290
Facsimile:  (860) 275-8299
menright@rc.com
pbirney@rc.com

- and -

Natalie D. Ramsey, Esq. (NY #5242730)
    (admitted *pro hac vice*)
Joseph O'Neil, Esq. (NY #2596435)
    (admitted *pro hac vice*)
Davis Lee Wright, Esq. (NY #4761300)
    (admitted *pro hac vice*)
MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
437 Madison Avenue, 29th Floor
New York, NY 10022 (215) 772-1500
Telephone: (212) 867-9500
Facsimile:  (212) 599-1759
nramsey@mmwr.com
jo'neil@mmwr.com
dwright@mmwr.com

*Proposed Counsel for the Debtors and Debtors in Possession*

</div>