IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| O.W. Bunker Holding North America, Inc.[1] | ) | Case No. 14-51720 (AHWS) |
| | ) | |
| Debtor | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| O.W. Bunker North America, Inc.[2] | ) | Case No. 14-51721 (AHWS) |
| | ) | |
| Debtor | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| O.W. Bunker USA, Inc.[3] | ) | Case No. 14-51722 (AHWS) |
| | ) | |
| Debtor | ) | |
| | ) | |
| | ) | |
| Harley Marine NY, Inc. and | ) | |
| Westoil Marine Services, Inc. | ) | |
| Movant/Creditor | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| O.W. Bunker Holding North America, Inc. | ) | |
| O.W. Bunker North America, Inc. | ) | December 24, 2014 |
| O.W. Bunker USA, Inc. | ) | |
| Respondent/Debtors | ) | |

---

[1] The last four digits of the Debtor's taxpayer identification number is 7474. The Debtor's address is 281 Tresser Blvd., 2 Stamford Plaza, 15th Floor, Stamford, CT 06901.

[2] The last four digits of the Debtor's taxpayer identification number is 7158. The Debtor's address is 281 Tresser Blvd., 2 Stamford Plaza, 15th Floor, Stamford, CT 06901.

[3] The last four digits of the Debtor's taxpayer identification number is 3556. The Debtor's address is 2603 Agusta Drive, Suite 440 Houston, TX 77057.

**OPPOSITION BY HARLEY MARINE TO MOTION FOR CONTEMPT AND CROSS
MOTION FOR RELIEF FROM STAY**

**I.      INTRODUCTION.**

The Debtors have moved the Court to hold Harley Marine NY, Inc. ("Harley") in

contempt of court for allegedly violating the automatic stay, for damages, and for a turnover of

oil products in Harley's possession on board a tank barge known as the CHABRIA SEA.[4]  The

Debtors are entitled to no such relief because Harley has not violated the stay and has caused

no damage whatsoever to the Debtors or to reclamation claimants Phillips 66 and Mieco.  As

for the turnover request, the Debtors have made no arrangements and given no instructions to

Harley with respect to the oil cargo in Harley's possession, and have done and proposed

nothing to adequately protect Harley's lien rights in that cargo.  Harley has taken no action

inconsistent with its rights as the holder of a general maritime lien for unpaid freight charges

against the fuel cargo on board the CHABRIA SEA, and, instead, Harley has worked with and

fully cooperated with the Debtors, Phillips 66 and Mieco in an effort to return the fuel cargo to

Phillips 66 and Mieco as proposed by the Debtors, Phillips 66 and Mieco.  To the extent the

fuel cargo on board the CHABRIA SEA constitutes property of the estate, and subject to

Mieco's and Phillips 66's reclamation rights, Harley should be granted relief from the

automatic stay.

**II.      BACKGROUND.**

Harley is a wholly owned subsidiary of Harley Marine Services, Inc.  Harley Marine

Services, Inc. also is the parent company which owns Westoil Marine Services, Inc.

("Westoil").  Harley's business relationship with the Debtors previously has been explained to

this Court in the form of Westoil's objection to the Debtors proposed sale of the Vopak oil

---

[4] The Debtors separately have moved to have this motion heard on an expedited basis, on January 6, 2015, at 10:00
a.m.  This motion was granted on December 22, 2014, dkt. no. 219.

{00842423-1}
AM 44200952.1

products in California (Docket No. 119), the content of which Objection is incorporated herein (the "Westoil Objection"). Harley is the entity through which oil products are transported in the New York and New Jersey area.

As explained in the Westoil Objection, both before and immediately after the Debtors Chapter 11 filings, it was Harley's understanding that the fuel oil loaded onto the Westoil barges in California and the CHABRIA SEA in New Jersey was not owned by the Debtors, and instead had been sold to vessel owners/customers of the Debtors on a brokerage basis. Both in the initial telephone discussion by Harley's counsel with counsel for the debtors, and in ensuing email correspondence, Harley sought confirmation and proof that the fuel cargo in Harley's possession actually was owned by the Debtors. The Debtors declined to provide any such confirming documentation (indeed, the first and only evidence provided is the invoices attached as Exhibit A to their motion filed on Friday, December 19, 2014). Significantly, at no time have the Debtors given instructions to Harley for delivery of the fuel cargo nor have they otherwise acted as one would expect an owner to act.

Harley has done nothing post-petition that in any respect has violated the stay or impaired the rights of the Debtors or of the reclamation parties (Phillips 66 and Mieco). When the Debtors, pre-bankruptcy, requested that Harley load fuel cargo onto the CHABRIA SEA, and when the cargo subsequently was so loaded pre-petition and transportation services commenced, the CHABRIA SEA immediately acquired a maritime possessory lien for freight charges against that cargo, which lien continues in existence post-petition until payment for freight charges has been made so long as Harley does not relinquish possession of the cargo through unconditional delivery of such. As discussed below, maintaining possession of the cargo post-petition, as a matter of law, is not a violation of the stay.

The Debtors' contention that the arrest proceeding violated the stay is a red herring and simply is incorrect, as that proceeding functionally changed nothing. The arrest proceeding in District Court in New Jersey did nothing but change the identity of the person in legal custody of the cargo for the benefit of Harley and any other person with rights in or to that cargo, preparatory to a potential future action to seek a sale of the cargo to enforce Harley's lien rights while concurrently avoiding unconditional delivery and thus the loss of Harley's fundamental maritime lien rights to be paid for freight charges incurred. A sale, of course, would require relief from stay if the cargo is owned by the Debtors, but Harley has at no time requested or pursued action to cause such sale to occur, i.e., it has initiated and taken no action to foreclose its fundamental maritime lien on the cargo. Just as it was on the date of the Chapter 11 filings in these proceedings, the fuel cargo remains on board the CHABRIA SEA, segregated in individual tanks containing only Mieco and Phillips 66 oil. That fuel cargo today remains subject to Harley's maritime lien, as well as to the rights of Phillips 66, Mieco and the Debtors, just as it did on the date of filing. Harley has done nothing, post-petition, to change or impair the rights of any party making claim to the fuel cargo, or to sell or otherwise dispose of said fuel cargo in derogation of the rights of any party in interest, and the Debtors identify no such action.

As was the case with the Vopak Oil loaded onto Westoil barges in Los Angeles, Harley has done nothing here other than to preserve its maritime lien rights, and Harley has fully cooperated in an effort to return the cargo to the reclamation parties, subject to the appropriate adequate protection of Harley's maritime lien rights. Indeed, over the course of the three plus weeks preceding the filing of the pending motion, Harley actively participated in negotiations with the Debtors, Phillips 66 and Mieco for the return of the fuel cargo on board the CHABRIA

SEA to Phillips 66, as proposed by the Debtors, and Harley agreed to alternative protocols for the protection of its lien rights as part of the delivery of the cargo to Phillips 66: (1) a cash payment by Phillips 66 to Harley in the amount of $250,000 (a discounted sum) in full satisfaction of its lien rights, or (2) with a cash deposit into a segregated account of the full amount of Harley's lien claim if any party wanted to dispute Harley's lien rights.

During the entire period of these negotiations, Harley has controlled possession and the ability to deliver the fuel cargo on board the CHABRIA SEA to the Debtors, Philllips 66 and Mieco.  Indeed, when it appeared (as of Wednesday, December 17, 2014) that an agreement had been achieved among all of the affected parties (the Debtors, Mieco, Phillips 66 and Harley), Harley filed with the District Court in New Jersey the *ex parte* papers necessary to release the arrest of the cargo as part of the process of delivering it to Phillips 66 (exactly as it did in Los Angeles in delivering the Vopak Oil on board the DAVID FANNING AND HANNAH 2801 to the purchaser of that oil in the section 363 sale).  The allegations, at paragraphs 17 and 18 of the Debtors' motion, that Harley has impaired the Debtors ability to facilitate the return of the fuel cargo is totally devoid of any factual support – indeed, the record is just the opposite.  The return of the fuel cargo to Phillips 66 failed last week not because of any action taken by Harley – but because the creditor's committee refused to consent to the stipulation and order that would have implemented the return of the fuel cargo to Phillips 66.

To be clear, Harley is not in the business of storing fuel cargo using its tank barges as storage facilities – it is in the fuel delivery business.  As such, from the inception of the filing of these cases it has been Harley's objective to offload the fuel cargo in exchange for payment of its maritime lien (or for adequate protection by way of a deposit in the amount of its maritime lien) as soon as reasonably practical.  In the absence of a consensual resolution of its

lien rights, or the posting of adequate protection in the form of a segregated cash deposit to which its lien rights attach, Harley's sole remedy is to obtain relief from stay and foreclose its maritime lien by way of a marshal's sale of the fuel cargo (with any proceeds of such a sale in excess of Harley's lien to be available to the Debtors or reclamation parties as their rights appear). Harley hereby cross-moves for relief from stay to facilitate that remedy.

## III.    BASIS AND LEGAL AUTHORITY FOR RELIEF.

### A.    Opposition to Motion for Contempt; No Willful Violation of the Stay Has Occurred.

It has been undisputed for more than 150 years that a vessel has a lien upon the cargo it is transporting for the costs and charges associated with such transportation, and that this lien is a maritime lien under which the cargo is subject to an arrest *in rem* and thereafter may be sold to satisfy such charges. The most frequently cited case in support of this legal principle is *4,885 Bags of Linseed*, 66 U.S. 108 (1861) in which it was stated:

> "Undoubtedly the ship-owner has a right to retain the goods until freight is paid, and has, therefore, a lien upon them for that amount…the ship-owner may enforce his lien by a proceeding *in rem* in the proper court…this lien…is analogous to the lien given by the common law to the carrier on land, who is not bound to deliver them to the party until his fare is paid…"

Shortly thereafter, the Supreme Court further elaborated upon this basic right of a vessel owner to retain goods and to cause their arrest pursuant to its maritime lien for freight. In *The Bird of Paradise*, 72 U.S. 545 (1866), the Court stated:

> Ship-owners, unquestionably, as a general rule, have a lien upon the cargo for freight, and consequently may retain the goods…until the payment is made…(l)egal effect of such lien is, that the ship-owner, as carrier by water, may retain the goods until the freight is paid, or he may enforce the same by a proceeding *in rem* in the District Court.

There is no case law to the contrary. Rather, case law uniformly validates a shipowner's maritime lien for freight upon cargo for which it has provided transportation

Case 14-51720    Doc 228    Filed 12/24/14    Entered 12/24/14 14:32:38    Desc Main
Document    Page 7 of 11

services so long as possession has not been relinquished, and the corollary right to arrest that cargo *in rem* and cause it to be sold to satisfy charges incurred in transportation. *See*: Benedict of Admiralty, Volume 2, Chapter III, Section 44, Ship's Claim for Unpaid Freight (2003); Gilmore & Black , The Law of Admiralty, Section 3-45, at p. 187, Carriage Liens (Second Edition, 1975); Sorkin, Goods In Transit, Part I, Section 26.03, Ship Owner's Lien On Cargo For Freight, Demurrage and Charges (2003).

As the holder of a possessory lien, Harley's retention of possession of the fuel cargo, directly and then through the custodianship of the United States Marshal, is not a violation of the stay. The fuel cargo physically is in the identical location as it was on the date of filing: in segregated cargo holds within the barge CHABRIA SEA. Harley has taken no action to sell or otherwise dispose of the fuel cargo, and, to the contrary, has taken steps to protect that cargo and has worked in conjunction with the Debtors to honor the reclamation rights of Phillips 66 and Mieco while concurrently maintaining possession and thereby preserving Harley's own custodial maritime lien.

As the holder of a valid possessory lien, Harley did not violate the stay by retaining possession of the fuel cargo. *See In re Ingram*, 508 B.R. 98, 102-03 (Bankr. E.D. Wis. 2014). Bankruptcy Code § 362(b)(3) provides that the filing of a bankruptcy petition does not stay an "act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under § 546(b) . . ." Section 546(b)(1)(B) in turn provides that a trustee's rights and powers "are subject to any generally applicable law that . . . provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation." In other words, a

creditor's post-petition possession of property necessary to the perfection of a pre-petition lien does not violate the stay. *See Boggan v. Hoff Ford, Inc. (In re Boggan)*, 251 B.R. 95 (9th Cir. BAP 2000) (mechanic did not violate the stay by refusing to release possession of vehicle where possession was necessary for statutory lien). *In re Ingram*, at age 102.

Harley has engaged in no willful violation of the stay, is not in contempt of Court, and caused no damage to the Debtors, Phillips 66 or Mieco.

**B.      The Debtor's Request for a Turnover Order Must Be Denied Absent a Provision for Adequate Protection.**

The Debtors also seek relief in the form of a turnover of the oil cargo.  This request by the Debtors' is notable for a number of reasons.  First, the Debtors have at no time prior to the filing of the pending motion made any request of Harley to turnover to the Debtors the fuel cargo on the CHABRIA SEA.   The only turnover request has been in the context of the negotiations on the Phillips 66 and Mieco reclamation claims, and Harley fully has cooperated in those negotiations and agreed to deliver the fuel cargo to Phillips 66 and Mieco in exchange for payment of its lien or an adequate protection deposit.

Second, the Debtors have made no arrangements for the delivery and offloading of the fuel cargo on the CHABRIA SEA.  Where and how is it to be turned over?  What arrangements have the Debtors made in this regard?  And what is the proposed adequate protection?

Third, given the possessory nature of its lien, Harley is entitled to an adequate protection order as part of any turnover of the fuel cargo, as otherwise it would be deprived of its lien rights without due process of law. *In re Ingram*, at pages 102-103. The Debtors ignore this basic right, as in addition to making no delivery arrangements and providing no delivery instructions, they propose no adequate protection whatsoever.

IV.    **Cross Motion for Relief from Stay.**

If the Court determines that the fuel cargo is property of the estate, Harley requests that

the Court grant relief from stay for cause to enable Harley to proceed to foreclose its maritime

lien by scheduling a marshal's sale.

Under 11 USC 362(d)(1), the Court "shall grant relief" from the automatic stay "for

cause, including the lack of adequate protection of an interest in property of such party in

interest…." Because the statute uses the word "including," a lack of adequate protection "is

but one example of 'cause' for relief from stay." *In re Ellis*, 60 B.R. 432, 435 (9th Cir. BAP

1985); 11 U.S.C. § 102(3). What constitutes "cause" is determined on a case by case basis

upon consideration of the totality of the circumstances. *In re Castlerock Properties*, 781 F.2d

159, 163 (9th Cir. 1986); *In re Kennedy*, 165 B.R. 488, 490 (Bankr. W.D. Wash. 1994). The

debtor bears the burden to disprove the existence of cause, even where the debtor alleges that

equity in the property provides adequate protection. *In re Gauvin*, 24 B.R. 578, 580

(B.A.P. 9th Cir. 1982).

Cause exists in this case. The Debtors are not operating or engaging in any business,

and this case is nothing more than a liquidation proceeding masquerading as a Chapter 11

reorganization. The marshal's sale process is a process regularly used to sell property that is

subject to a maritime lien, particularly for freight charges. Notice is published and interested

parties are notified directly. Any excess proceeds above those necessary to pay Harley's claim

of lien are distributable to any party that establishes an interest in the proceeds. Unlike the

Vopak fuel located in Los Angeles, the debtors have taken no action to sell or otherwise

dispose of this product, and every day the fuel cargo remains on board the CHABRIA SEA is

another day of demurrage accruing at the rate of $450 per hour ($10,800 per day). As a result,

the value of the product is declining daily as demurrage charges accrue. The only means

{00842423-1}
AM 44200952.1

available for Harley to dispose of its collateral is through the marshal's sale process.  Relief

from stay should be granted to facilitate that disposal at the earliest possible date.

**HARLEY MARINE NY, INC., AND**
**WESTOIL MARINE SERVICES, INC.**
By its attorneys,


_____/s/ Tara Trifon_____
Tara Trifon (Bar # ct28415)
Edwards Wildman Palmer LLP
20 Church Street, 20th Floor
Hartford, Connecticut
Tel:    (860) 525-5065
Fax:    (860) 527-4198
e-mail:  ttrifon@edwardswildman.com

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on December 24, 2014 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this document through the court's CM/ECF System.

*/s/ Tara L. Trifon*

Tara L. Trifon, Esq. (ct28415)
Edwards Wildman Palmer LLP
20 Church Street, 20th Floor
Hartford, CT 06103
Phone: (860) 525-5065
Fax: (860) 527-4198
ttrifon@edwardswildman.com
Its Attorney
