**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 )
) Case No. 14-51720 (AHWS) |
| O.W. BUNKER HOLDING NORTH AMERICA, INC. *et al.*,[1] | ) )
) Jointly Administered ) |
| Debtors. | ) December 24, 2014 ) |

**JOINT MOTION OF THE DEBTORS AND THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS FOR TRANSFER OF VENUE OF CASES
TO UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN
DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1412 AND
RULE 1014(a)(1) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

O.W. Bunker Holding North America Inc., O.W. Bunker North America Inc., and O.W. Bunker USA Inc., debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), jointly with the Official Committee of Unsecured Creditors (the "Committee") of the Debtors appointed in the Chapter 11 Cases (the "Committee," and collectively with the Debtors, the "Movants"), by and through their undersigned counsel, hereby move, pursuant to 28 U.S.C. § 1412 and Rule 1014(a)(1) of the Federal Rules of Bankruptcy Procedure, for an order transferring the Chapter 11 Cases to the United States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court"). In support of this Motion,[2] the Movants respectfully represent as follows:

---

[1] The last four digits of the Debtors' taxpayer identification numbers follow in parentheses: O.W. Bunker Holding North America Inc. (7474); O.W. Bunker North America Inc. (7158); O.W. Bunker USA Inc. (3556). The Debtors' address is 281 Tresser Blvd., 2 Stamford Plaza, 15th Floor, Stamford, CT 06901.

[2] The Movants reserve the right to supplement this Motion prior to any hearing on the Motion.

**SUMMARY OF ARGUMENT**

1. These Chapter 11 Cases present the rare case of a material collision between maritime and bankruptcy jurisdiction. The Debtors' principal business was the purchase and sale of marine fuel oil, and virtually all of its assets consist of such marine fuel oil and the various claims that have arisen from its purchase and sale. Additionally, because a significant quantity of marine fuel oil sold, purchased or brokered by the Debtors was in transit on seagoing vessels at the time these Chapter 11 Cases were commenced, parties such as vessel owners and charterers also have claims, including lien claims arising under maritime law, that conflict with claims included in the property of the Debtors' bankruptcy estates.

2. Since the Chapter 11 Cases were commenced, at least thirteen interpleader actions have been filed in district courts (including ten in the United States District Court for the Southern District of New York) seeking an adjudication of claims relating to the Debtors' and their affiliates' transactions in marine fuel oil under principles of maritime law. These actions purport to discharge the Debtors' claims against various customers and suppliers. There are also at least eleven proceedings relating to the Debtors or their affiliates involving the arrest or potential arrest of seagoing vessels, which may lead to further interpleaders being filed in different parts of the country. Certain parties have argued that this Court cannot exercise jurisdiction over the maritime law issues in these interpleader proceedings because maritime jurisdiction resides exclusively in the District Courts. Likewise, because of the exclusivity in this Court of bankruptcy jurisdiction, those district courts handling the interpleader and other proceedings outside of the District of Connecticut may not lawfully or constitutionally exercise bankruptcy jurisdiction. The resulting separation of maritime and bankruptcy jurisdiction in different districts means that neither judicial system can afford complete relief to the parties or

resolve all the claims in one place. This separation will create enormous added costs and uncertainties for all parties in interest, including the Debtors.

3. The Movants believe that the best way to mitigate these expensive inefficiencies for the benefit of all parties in interest is to consolidate all of the pending interpleader proceedings and the Chapter 11 Cases in one jurisdiction such that a district court judge in such district could simultaneously exercise both maritime and bankruptcy jurisdiction over these proceedings. This could be accomplished by either (a) seeking by separate motions in courts around the country to transfer venue of pending and future interpleader actions to the District of Connecticut, coupled with a channeling injunction to direct future interpleader actions involving the Debtors to the same court, or (b) seeking by motion in this Court to transfer venue of the Chapter 11 Cases to the Southern District of New York, where most of the interpleaders are already pending, and asking the District Court there to take steps, including injunctive relief if appropriate, to direct other pending and future interpleaders to that same Court.

4. For a variety of reasons, including the time and expense required to consolidate all maritime and bankruptcy proceedings in a single court, as well the benefits for the economy and convenience of a significant number of parties in interest (and their professional representatives) of consolidating these proceedings as quickly as possible and in a forum in which the parties' costs will be as low as possible, the Movants believe that transferring the venue of these Chapter 11 Cases from this Court to the Southern District of New York is the preferable course. Venue in the Southern District of New York comports with the forum selection clause included in the Debtors' Terms and Conditions with Customers. As soon as such a transfer is directed, the Chapter 11 Cases would be assigned to a bankruptcy judge in the Southern District of New York, and District Judge Caproni, to whom all the interpleaders in New

York have been assigned, can promptly withdraw the reference from the transferee bankruptcy court of so much bankruptcy jurisdiction as is necessary to adjudicate all parties' rights, including as and to the Debtors and property of the estate, in the interpleader actions.

5. No party should be prejudiced by such a transfer. The Debtors are liquidating their assets while maintaining a small staff in Stamford to wind-up affairs, and the professionals who are now overseeing the liquidation are based in and around New York. Most of the major suppliers, customers and creditors, including the Committee, have offices and legal representatives in New York. There is no reason to believe that transfer would delay adjudication of any party's claims; and every reason to believe the timing would be quicker and expense would be less. The courts in New York are highly experienced, and there is therefore also no reason to believe that the quality of justice would be any less in New York than it would be in this Court.

6. For the foregoing reasons, and as set forth more fully below, the Movants respectfully move that this Court transfer venue of the Chapter 11 Cases to the United States Bankruptcy Court for the Southern District of New York pursuant to 28 U.S.C. § 1412 and Rule 1014(a)(1) of the Federal Rules of Bankruptcy Procedure.

## JURISDICTION

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. 157(b)(2). *See In re Oceanquest Feeder Service, Inc.*, 56 B.R. 715, 718-19 (Bankr. D. Conn. 1986). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND FACTS**

8. On November 13, 2014 (the "Petition Date"), each of the Debtors filed in this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

9. Prior to the Petition Date, the Debtors purchased marine fuel, oil and related goods on credit from suppliers (collectively the "Suppliers") for sale to third party ship-owners and operators (collectively the "Customers").

10. Specifically, as set forth in the Declaration of Adrian Tolson filed in these Chapter 11 Cases on November 14, 2014 (the "Tolson Declaration") [DE 15], O.W. Bunker North America Inc. ("North America") "sources fuel oil from oil companies and refineries, transports and stores the fuel oil, and blends the fuel to the specifications requested by its customers." *See* Tolson Affidavit at ¶ 12. North America "also sells fuel oil from barge to ships in port and at sea." *See id.*

11. Further, O.W. Bunker USA Inc. ("OWB-USA") "operates on the reselling side of the OW Bunker Companies' business." *See id.* at ¶ 13. "OWB-USA manages the bunker purchasing process on behalf of a customer by choosing the most competitive offer from a physical distributor, assessing fuel quality, and delivering the product to the customer." *Id.*

12. As set forth in the Tolson Declaration, the Debtors' business relies heavily on trade credit. *See id.* at ¶ 15. "Marine fuel is purchased by the OW Bunker Companies on credit and then delivered to the customer, also on credit." *Id.*

13. The collapse of the Debtors' parent companies and resulting withdrawal of trade credit "resulted in a severe liquidity crisis for the Debtors." *See id.* at ¶ 15. "With the bankruptcy of the Danish Entities … [t]he Debtors' vendors and creditors have refused credit,

accelerated payments for leases and other obligations, issued reclamation demands and ship arrests, and required cash upon delivery." *See id.* at ¶ 17. This liquidity crisis led directly to the filing of the Chapter 11 Cases. *See id.* at ¶ 17-18.

14. The Debtors' liquidity crisis and the filing of the Chapter 11 Cases has resulted in a flood of litigation by Suppliers against the Debtors, their Customers, and their respective maritime assets.

15. Specifically, the Customers have filed numerous proceedings seeking interpleader relief under Rule 22 of the Federal Rules of Civil Procedure (collectively, the "Interpleader Actions"). Attached to this Motion as **Exhibit A** is a schedule detailing the Interpleader Actions known or believed by the Movants to involve the Debtors, their Customers, and their respective maritime assets.[3]

16. By the Interpleader Actions, the plaintiff Customers seek to deposit amounts due to the Debtors for deliveries of fuel into the registry of the relevant court in order to prevent the Suppliers, the Debtors' purported secured creditor ING Bank N.V. ("ING"), and other parties from arresting their vessels and asserting maritime liens to recover amounts owed by the Debtors.

17. The Movants anticipate that further interpleader actions will be filed as vessels subject to potential arrest approach and arrive in the United States and ports abroad.

---

[3] The Movants request that the Court take judicial notice of the dockets and papers filed in the Interpleader Actions solely as evidence of the pendency and status of and positions taken by the parties in the Interpleader Actions for the purpose of this Motion. The Movants reserve the right to intervene in the Interpleader Actions, to contest the allegations and arguments of the parties in the Interpleader Actions, and to take all appropriate measures to protect their constituencies and the Debtors' estates in the Interpleader Actions. Nothing in this Motion is intended to waive any substantive arguments or claims of the Movants, including the right to contest jurisdictional positions taken by NuStar or other parties in this Court or any other venue.

18. Unfortunately, these interpleader actions give rise to a material conflict between the potentially exclusive maritime jurisdiction of federal district courts and the indisputably exclusive bankruptcy jurisdiction of this Court. The Interpleader Actions unquestionably relate to both maritime issues (potential liens against vessels and substitute *res* for supply of "necessaries" and other services) and bankruptcy issues (resolution of claims belonging to and asserted against the Debtors' estates). Certain parties have argued that this Court cannot exercise jurisdiction over any maritime issues. However, any court other than this Court handling any Interpleader Actions may not lawfully or constitutionally exercise the bankruptcy jurisdiction exclusively vested in this Court.

19. This Court has already considered and commented upon this conflict in the context of two Interpleader Actions filed in this Court as adversary proceedings: (i) *OSG Ship Management, Inc. and 1372 Tanker Corp. v. O.W. Bunker USA Inc., Chemoil Corp., Chemoil Middle East DMCC, and GPS Chemoil LLC FZC*, Case No. 5:14-ap-5065 (Bankr. D. Conn. Nov. 26, 2014) (the "OSG Adversary"); and (ii) *SHV Supply & Risk Management SAS v. OW Bunker USA, Inc., OW Bunker Holding North America, Inc., OW Bunker North America Inc., NuStar Energy Services, Inc., and ING Bank, N.V.*, Case No. 5:2014-ap-5068 (Bankr. D. Conn. Dec. 3, 2014) (the "SHV Adversary," and together with the OSG Adversary, the "Interpleader Adversaries").

20. In both Interpleader Adversaries, certain parties disputed this Court's jurisdiction over *in rem* admiralty claims involving vessels not owned by the Debtors. Specifically, in the SHV Adversary the claimant Supplier, NuStar Energy Services Inc. ("NuStar"), filed a Response arguing that "there is no subject matter jurisdiction of the bankruptcy court to preside over maritime proceedings." *See* SHV Adversary, DE 6 at 2. This

7

position reflects NuStar's oft-repeated position that this Court lacks jurisdiction over any efforts "to impair or impede NuStar's right to perfect maritime liens and/or arrest vessels," even if NuStar seeks to do so in order to collect claims against the Debtors from the Debtors' Customers and their vessels. *See* DE 40 at 2.

21. According to the Customer in the SHV Adversary, this Court questioned its jurisdiction over the Interpleader Actions and encouraged the Customer to re-file its action in a district court with definitive maritime jurisdiction. *See* SHV Adversary, DE 8 at 1. As a result, the Customer dismissed the SHV Adversary and reasserted its interpleader claim as a new proceeding in the United States District Court for the Southern District of New York (the "New York District Court"). *See SHV Gas Supply & Risk Management SAS and Exmar Shipping BVBA as owner of the Waregem v. O.W. Bunker USA Inc., O.W. Bunker Holding North America Inc., O.W. Bunker North America Inc., NuStar Energy Services, Inc., and ING Bank N.V.*, Case No. 1:14-cv-9720-VEC (S.D.N.Y. Dec. 10, 2014), DE 1 at 9.

22. The OSG Adversary has also been dismissed and re-filed in the New York District Court based on this Court's comments about the extent of its authority and jurisdiction. *See OSG Ship Management, Inc. and 1372 Tanker Corp. v. O.W. Bunker USA Inc., O.W. Bunker Middle East DMCC, Chemoil Corporation, Chemoil Middle East DMCC, GPS Chemoil LLC FZC, and ING Bank N.V.*, Case No. 1:14-cv-9973-VEC (S.D.N.Y. Dec. 18, 2014), DE 6 at 8.

23. Additionally, one Customer has filed in this Court a Motion seeking an order declaring that the automatic stay imposed by these Chapter 11 Cases does not apply to the Interpleader Actions or, in the alternative, modifying the stay to allow the Interpleader Actions to proceed in the New York District Court. *See* DE 173. Among other things, the Customer argues

8

that "[a] District Court is the only court under Article III of the Constitution with original jurisdiction over maritime actions." *See id.* at 11.

24. The bulk of the Interpleader Actions are now pending in the New York District Court. *See* Exhibit A. This comports with the forum selection clauses included in the Debtors' Terms and Conditions with Customers, a copy of which is attached hereto as **Exhibit B**. Those Terms and Conditions generally provide that "any disputes and/or claims arising in connection with these conditions and/or any Agreement governed by them [or] any dispute and/or claim arisen in connection with a Vessel detained by Seller at any port, place or anchorage within the United States shall be submitted to the United States District Court for the Southern District of New York." *See* Exhibit B at ¶ P5.[4] While there may be a question whether such forum selection clauses are enforceable in the bankruptcy context, it is nevertheless likely that due to the existence of these clauses the bulk of future interpleader cases involving the Debtors will continue to be filed in the Southern District of New York.

25. According to pleadings filed in the Interpleader Actions, certain agreements relating to the Debtors' relationships with Suppliers also provide for exclusive jurisdiction in the New York District Court. *See OSG Ship Management, Inc. et al. v. O.W. Bunker USA Inc. et al.*, Case No. 1:14-cv-9973-VEC (S.D.N.Y. Dec. 18, 2014), DE 6 at 2-6.

26. On December 18, 2014, Judge Caproni held a status conference involving all of the parties in the Interpleader Actions in the New York District Court in order to discuss how the parties should proceed with the Interpleader Actions in light of these Chapter 11 Cases.

---

[4] The Movants do not concede that these forum selection clauses govern any substantive disputes arising under or relating to these Chapter 11 Cases. The Movants believe, however, that the forum selection clauses, even if not binding, are relevant to any potential transfer of the Chapter 11 Cases, as they evidence that the Debtors and the Customers agreed their disputes must be litigated in the New York District Court.

A Declaration of Davis Wright summarizing the relevant discussions at the status conference is attached hereto as **Exhibit C**.

27. The key issue at the conference was how to consistently and efficiently adjudicate all of the bankruptcy and maritime issues raised by these Chapter 11 Cases and the Interpleader Actions. *See* Exh. C at ¶ 4. This Court has in prior hearings raised similar concerns and has requested that the parties develop a global solution.

28. The Movants maintain that the only way to ensure a consistent and efficient adjudication of all of the bankruptcy and admiralty claims and disputes amongst the Debtors, their Suppliers, their Customers, and ING is to bring all of these claims together in a single district court with both bankruptcy and admiralty jurisdiction.

29. At the status conference, the parties discussed either (i) transferring the Interpleader Actions to the United States District Court for the District of Connecticut (the "Connecticut District Court"), which could then withdraw the reference of any admiralty-related issues pending in this Court; or (ii) transferring venue of the Chapter 11 Cases to the New York Bankruptcy Court, from which any admiralty issues could be withdrawn for resolution by Judge Caproni in the New York District Court. *See id.* at ¶ 5.

30. On December 19, 2014, Judge Caproni issued an order to show cause why the Interpleader Actions pending before her should not be transferred to the Connecticut District Court. The Movants initially supported this proposed transfer.

31. However, after performing further research and analysis the Movants now believe it would be in the interests of justice and the convenience of the parties for this Court to transfer the Chapter 11 Cases to the New York Bankruptcy Court pursuant to 28 U.S.C. § 1412 and Rule 1014(a)(1) of the Federal Rules of Bankruptcy Procedure.

32. The Movants believe that the New York Bankruptcy Court will be the most convenient and least objectionable of the potential venues where the matters could be consolidated.[5]

## ARGUMENT AND AUTHORITIES

**I. LEGAL STANDARD FOR TRANSFER – 28 U.S.C. § 1412 AND RULE 1014(a)(1)**

33. Section 1412 of title 28 of the United States Code provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." *See* 28 U.S.C. § 1412.[6]

34. Rule 1014(a)(1) of the Federal Rules of Bankruptcy Procedure provides that "[i]f a petition is filed in the proper district, the court, on the timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, may transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties." *See* F.R.B.P. 1014(a)(1).

35. "The decision to transfer venue lies within the sound discretion of the court and is based on 'an individualized, case-by-case consideration of convenience and fairness.'" *In re Suntech Power Holdings Co., Ltd.*, 2014 WL 6152761, *14 (Bankr. S.D.N.Y.

---

[5] The Movants note that it is irrelevant whether the Chapter 11 Cases could have been properly commenced in the New York Bankruptcy Court under 28 U.S.C. § 1408. A bankruptcy case commenced in a proper district under § 1408 may be transferred to a court in *any* other district under § 1412 and Rule 1014, including a court in a district in which the case could not have been properly commenced under § 1408. *See In re AP Industries, Inc.*, 117 B.R. 789, 797-98 (Bankr. S.D.N.Y. 1990). Commentators have acknowledged that it would be acceptable for a debtor to commence a case in a "proper" jurisdiction with the express purpose of immediately transferring the case to an "improper" jurisdiction under § 1412. *See id.*

[6] Notwithstanding the use of the term "district court" in § 1412, a bankruptcy court may issue an order transferring a bankruptcy case under § 1412. *See Oceanquest*, 56 B.R. at 719-20.

11

Nov. 17, 2014) (quoting *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1391 (2d Cir. 1990)). "The party seeking to change venue bears the burden of proof by a preponderance of the evidence." *Id.*

36. Under § 1412 and Rule 1014(a)(1), "[t]he interests of justice and the convenience of the parties are written in the disjunctive, and considered separately." *Id.* at *15.

37. "The 'interest of justice' is a flexible standard which considers whether a transfer of venue would promote timeliness, fairness, the efficient administration of the bankruptcy estate, and judicial economy." *See In re Raytech Corp.*, 222 B.R. 19, 25 (Bankr. D. Conn. 1998). "[T]he court system itself has an interest in the efficient judicial administration of its cases." *See U.S. v. State Street Bank and Trust Co. (In re Scott Cable Communications, Inc.)*, 263 B.R. 6, 8 (Bankr. D. Conn. 2001). The relevant factors for a determination of whether a proposed transfer is in the "interest of justice" include: "the proximity of creditors of every kind to the court; the proximity of the debtor to the court; proximity of the parties' attorneys; the proximity of witnesses necessary for the administration of the estate; the location of the assets; the economic administration of the estate; and the necessity for ancillary administration if liquidation should result." *See Raytech*, 222 B.R. at 26. A court may also consider whether "(i) transfer would promote the economic and efficient administration of the bankruptcy estate; (ii) the interests of judicial economy would be served by the transfer; (iii) the parties would be able to receive a fair trial in each of the possible venues; (iv) either forum has an interest in having the controversy decided within its borders; (v) the enforceability of any judgment would be affected by the transfer; and (vi) the plaintiff's original choice of forum should be disturbed." *Suntech*, 2014 WL 6152761 at *15-16. The most important factor is "the economic and efficient administration of the estate." *See id.* at *16.

38. "Convenience of the parties generally involves consideration of the location of the parties and their counsel, the location of the proof, and the ability to compel otherwise unwilling witnesses to testify." *See id.* at *17. In determining if convenience justifies transfer under § 1412 and Rule 1014(a)(1), a court should consider practical issues such as the cost of travel and lodging for parties' representatives, counsel, and witnesses. *See In re Windtech*, 73 B.R. 448, 451 (Bankr. D. Conn. 1987).

## II. APPLICATION TO THE INSTANT CASES

39. The Movants submit that transfer of these Chapter 11 Cases to the New York Bankruptcy Court will be in the interest of justice and will best serve the convenience of all parties to these Chapter 11 Cases.

40. The separation of maritime and bankruptcy jurisdiction resulting from the positions taken by the parties in the Interpleader Actions and in this Court means that neither this Court nor the district courts can afford complete relief to the parties or resolve all relevant claims in one place. This Court may not be able to determine if Suppliers have valid maritime liens on the Customers' vessels or establish a substitute *res* for such liens, and the district courts cannot determine the validity and amount of the Debtors' claims against the Customers or the entitlement of ING to payment of amounts ostensibly due to the Debtors under applicable invoices.

41. Continuing separation of maritime and bankruptcy jurisdiction will create enormous added costs and uncertainties for all parties in interest, including the Debtors, and may result in prejudicial delay and inconsistent adjudication.

42. While it is possible that this separation of exclusive jurisdiction could be resolved by transfer of all pending and future interpleader actions to the Connecticut District

Court, it is clear that most parties in interest, including the Movants, favor maintaining the Interpleader Actions in the New York District Court. The New York District Court has already played an active role in managing the Interpleader Actions. The New York District Court has now consolidated management of the Interpleader Actions pending there before United States District Judge Valerie E. Caproni, who has entered numerous temporary restraining orders and allowed Customers to deposit funds in the registry of the New York District Court in order to prevent arrest of vessels. *See* Exhibit A. The existence of forum selection clauses providing for exclusive jurisdiction in the New York District Court also weighs in favor of maintaining existing and future interpleader actions in that Court.

43. Absent such a transfer the Movants would have to engage in costly and uncertain jurisdictional and venue litigation at the expense of the Debtors' estates to force Customers and Suppliers to bring the Interpleader Actions to this Court. In the meantime, the Debtors may be obligated to participate in each of the Interpleader Actions to protect their rights to the funds at issue, and to defend against discharge of the respective plaintiff's obligation to the Debtors. The expense and uncertainty of such litigation outweigh the benefit to the Debtors of maintaining the Chapter 11 Cases in this Court.

44. Thus, the Movants submit that the only alternative that will resolve the jurisdictional conflict between this Court and the maritime jurisdiction of the bankruptcy courts without costly and time-consuming venue litigation is transfer of the Chapter 11 Cases to the New York Bankruptcy Court.

45. The transfer should not prejudice any party, and the New York Bankruptcy Court should be the most convenient transferee venue for the Chapter 11 Cases. Counsel for the Movants, the Suppliers, the Customers, and ING are generally all located in New

14

York, and those without New York counsel should find such counsel easy to secure. Thus, it will be considerably more efficient and less costly (for the Debtors' estates and for the parties) to handle all matters in New York, where local counsel and travel will not be required. Further, the parties' representatives will likely find it easier and cheaper to travel to New York than to Connecticut or any other transferee jurisdiction, if they are not located in New York already.

## CONCLUSION

46. For the reasons stated above, the Movants respectfully request that the Court grant this Motion, enter an order transferring the Chapter 11 Cases to the New York Bankruptcy Court, and grant such other and further relief as the Court deems just and proper.

Dated: December 24, 2014

**MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP**

By: /s/ Natalie D. Ramsey
Natalie D. Ramsey (NY #5242730)
(admitted *pro hac vice*)
Joseph O'Neil (NY #2596435)
(admitted *pro hac vice*)
Davis Lee Wright (NY #4761300)
(admitted *pro hac vice*)
437 Madison Avenue, 29th Floor
New York, NY 10022

-and-

**ROBINSON & COLE LLP**
Michael R. Enright (ct10286)
Patrick M. Birney (ct19875)
280 Trumbull Street
Harford, CT 06103
Telephone: (860) 275-8290
Facsimile: (860) 275-8299
menright@rc.com
pbirney@rc.com

**HUNTON & WILLIAMS LLP**

By: /s/ Gregory F. Lang
Peter S. Partee, Sr.
(admitted *pro hac vice*)
Michael P. Richman
(admitted *pro hac vice*)
Andrew Kamensky
(admitted *pro hac vice*)
Gregory F. Lang (ct14112)
200 Park Avenue
New York, NY 10166-0136
Telephone: (212) 309-1000
Facsimile: (212) 309-1847
ppartee@hunton.com
mrichman@hunton.com
akamensky@hunton.com

*Proposed Counsel for The Official Committee of Unsecured Creditors of O.W. Bunker Holding North America Inc., et al.*

*Proposed Counsel for the Debtors and
Debtors in Possession*

16