UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | | |
|---|---|---|
| In the matter of | ) | Chapter 11 |
| | ) | |
| O.W. BUNKER HOLDING NORTH AMERICA INC. | ) ) | Case No. 14-51720(AHWS) Jointly Admininstered |
| | ) | |
| Debtor | ) ) | |

**CREDITORS BOMINFLOT AND O'ROURKE MARINE SERVICES
FOR AN ORDER CONVERTING THE DEBTORS' CHAPTER 11 BANKRUPTCY
CASES TO CASES UNDER CHAPTER 7 OF THE BANKRUPTCY CODE**

Creditors Bominflot and O'Rourke Petroleum ("Creditors")[1] hereby move as follows for an order converting these Chapter 11 cases of the debtors and debtors in possession, O.W. Bunker Holding North America Inc., O.W. Bunker North America Inc., and O.W. Bunker USA Inc. (collectively "Debtors"), to cases under Chapter 7.

**PRELIMINARY STATEMENT**

1.  From the beginning of these cases, Debtors have had no intention of reorganizing. Today, December 31st, is the last date on which Debtors will have more than two to three employees, all engaged in collection and accounting efforts to assist liquidation, not reorganization. As Debtors wrote with their recent motion to transfer:

> 5. . . . The Debtors are liquidating their assets while maintaining a small staff in Stamford to wind-up affairs, and the professionals who are now overseeing the liquidation are based in and around New York. . . .

This followed the testimony of debtor O.W. Bunker Holding North America Inc.'s then-

---

[1] Bomin Bunker Oil Corporation is Debtors' fourth (4th) largest unsecured creditor ( listed claim, $1,350,867.01) and O'Rourke Marine Services, their tenth (10th) largest unsecured creditor (listed claim, $1,089,294.04)(Debtors' list of 20 largest creditors, ECF 16) .

Chairman, Mr. Tolson, at the sparsely-attended December 22, 2014 341 Creditors Committee meeting,[2] confirming the intention to liquidate at least Debtors O.W. Bunker Holding North America Inc.and O.W. Bunker North America Inc., and with no intention presently for the operations of debtor O.W. Bunker USA Inc.   There is neither a viable business to reorganize nor an advantage to liquidating under Chapter 11.  This case already has, since its filing a month and a half ago, 242 docket entries.  It needs to be turned to liquidation, conserving the Estate's assets, and thereby maximizing creditor value.   The convenience and continued Estate funding of Chapter 11 Debtors' and Creditors' Committee counsel, and Debtors' business representative, is not a reason to continue in Chapter 11.  To conserve whatever value may still remain in the Debtors' assets, this Court now should be converted to cases under Chapter 7 and administered by a Chapter 7 Trustee in this District.[3]

## JURISDICTION AND VENUE

2.    The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested herein is 11 U.S.C. § 1112(b).

---

[2]    The U.S. Trustee, Debtors' counsel and business representatives, undersigned counsel, counsel for ING, for NuStar, and for one other creditor (about 8 persons total) attended the 341 meeting; even Creditors Committee counsel did not attend, nor did any members (or their counsel, except for NuStar) of the Creditors Committee attend.

[3]    Creditors oppose the motion to transfer.  There is no reason that the U.S. Bankruptcy Court, Southern District of New York - or the United States Trustee there - should newly receive and have to deal with this case as a Chapter 11 reorganization, when it is a liquidation which should be carried out by a Connecticut panel Trustee, located in Connecticut, where debtors' offices were located.

**BACKGROUND**

3. On November 13, 2014, Debtors filed their case as a voluntary Chapter 11 case. Debtors are (as set out in Mr. Tolson's November 14th First Day Motions affidavit, ECF 15) part of an "international family of companies owned, directly or indirectly, by the global corporate parent, OW Bunker A/S, a Danish Company (the "O.W. Bunker Companies"). The Debtors conduct the North American operations of the O.W. Bunker Companies." (Tolson Aff., para 8).

4. Debtors' filings followed the world-wide collapse of the O.W. Bunker companies, including liquidation proceedings of the parent O.W. company in Denmark. Subsequently, there have been liquidation proceedings brought around the world by and against other O.W. companies, in at least Spain, Singapore and Dubai.

5. Debtors' schedules disclose that most all of the receivables due Debtors are owing, from other parts of the O.W. Bunker Companies around the world, themselves insolvent including a number in active liquidation proceedings. A much smaller percentage of receivables are due from entities, several of which also are in insolvency proceedings.

6. Debtors also now have no active operations. Debtor O.W. Bunker Holding North America Inc., Mr, Tolson's affidavit confirmed, at the time of filing "does not have any active operations" (*Id.* para 11). Debtor OW North America distributed oil, but its last oil to distribute, outside of some small quantities, was the Vopak Oil that this Court confirmed sold in the first part of December, 2014. Debtor O.W. U.S.A. re-sold oil by buying from physical distributors, but also has not operated in that capacity, since the Petition filing. (*See*, Tolson Aff., paras. 11-13).

## ARGUMENT

### Section 1112(b) Requires Conversion Upon Substantial or Continuing Loss and Absence Of A Reasonable Likelihood of Rehabilitation

7. 11 U.S.C. § 1112(b) states in pertinent part as follows:

(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, **the court shall convert a case under this chapter to a case under chapter 7** or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the **appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate**.

(2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, **and** the debtor or any other party in interest establishes that—

> (A) there is a reasonable likelihood that a plan will be confirmed within the time frames established in sections 1121 (e) and 1129 (e) of this title, or if such sections do not apply, within a reasonable period of time; and
>
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—
>
>> (i) for which there exists a reasonable justification for the act or omission; and
>>
>> (ii) that will be cured within a reasonable period of time fixed by the court.

(emphasis supplied). Thus, where "cause" is shown, the Court shall convert a Chapter 11 case to a Chapter 7 case upon the request of a party in interest absent "unusual circumstances," along with, a showing that Debtors can confirm a plan, and, meeting the other 11 U.S.C. § 1112(b)(2) criteria.

8. The 2005 amendments to section 1112(b) reduced the bankruptcy courts'

discretion to convert or dismiss a Chapter 11 case by changing "may" to "shall."  If cause for conversion or dismissal exists, discretion is limited to those instances in which the court makes specific findings that unusual circumstances "establish that the requested conversion or dismissal is not in the best interests of the creditors and the estate." *In re Broad Creek Edgewater*, LP, 371 B.R. 752, 759 (Bankr. D.S.C. 2007) (involuntary Chapter 7 debtor could not convert its case to one under Chapter 11 because cause existed for conversion or dismissal of the proposed Chapter 11 case); *see also In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 560 (Bankr. M.D. Pa. 2007) (noting the statutory language change "from permissive to mandatory" and finding cause existed to convert the debtor's cases where the estate was diminishing rapidly at the expense of creditors as extensive administrative costs from professional fees were accumulating while the case lingered in Chapter 11). Therefore, upon a showing of cause, the Court must convert the Debtors' Chapter 11 cases to Chapter 7 cases "absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate". 11 U.S.C. § 1112(b)(l).

9.    Section 1112(b)(4) lists non-exclusive grounds for conversion, including "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation". 11 U.S.C. § 1112(b)(4)(A). *See In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003) (cause existed to convert the Chapter 11 cases in part because of the debtor's negative postpetition cash flow and inability to pay current expenses); *In re 3868-70 White Plains Road, Inc.*, 28 B.R. 515, 519 (Bankr. S.D.N.Y. 1983) (cause existed to convert where the debtor's assets were fully collateralized and it had negative cash flow and an inability to pay current expenses).

10. The first prong of § 1112(b)(4)(A) requires a showing of a "substantial or continuing loss to or diminution of the estate". As noted in Collier, "If the estate has sustained a substantial loss following the commencement of the case, or the debtor is operating with a sustained negative cash flow after the commencement of the case, these facts are sufficient to justify a finding of 'substantial or continuing loss to ... the estate'". See 7 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy, ¶ 1112.04[5][a] at 1112-34 (15th ed. rev'd 2008).

11. The second prong of § 1112(b)(4)(A) requires an "absence of a reasonable likelihood of rehabilitation". As noted in Collier, "the standard under section 1112(b)(4)(A) is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort". See Collier, ¶ 1112.04[5][a] at 1112-36 (15th ed. rev'd 2008). *See also Quarles v. United States Trustee*, 194 B.R. 94, 97 (W.D. Va. 1996) (no likelihood of rehabilitation where debtor was losing money and only hope of reorganization depended on speculative outcomes in pending litigation); *In re Great Am. Pyramid J.V.*, 144 B.R. 780, 792 (Bankr. W.D. Tenn. 1992) ("A reorganization plan under chapter 11 must be more than a nebulous speculative venture and must have a realistic chance of success which would lead to rehabilitation, and if outside financing is needed, it must be clearly in sight".) (emphasis in original); *In re Imperial Heights Apartments, Ltd.*, 18 B.R. 858, 863-864 (Bankr. S.D. Ohio 1982) (no "reasonable likelihood of rehabilitation" where debtor's only asset was a potential lawsuit).

12. "Rehabilitation" as used in section 1112(b)(4)(A) is not synonymous with "reorganization". Instead, "Rehabilitation signifies that the debtor will be reestablished on a sound financial basis, which implies establishing a cash flow from which current obligations can

be met". *In re Rundlett*, 136 B.R. 376, 380 (Bankr. S.D.N.Y. 1992) (granting creditors' motion to convert Chapter 11 case to Chapter 7 where debtor's use of estate property resulted in continuing loss or diminution of the estate, there was not a reasonable likelihood of rehabilitation and the debtor would be unable to effectuate a plan) (*citing In re Kanterman*, 88 B.R. 26, 29 (S.D.N.Y. 1988)) (affirming conversion of Chapter 11 case to Chapter 7 upon creditors' showing continuing diminution to the estate and absence of reasonable likelihood of rehabilitation).

13. A debtor "should not continue in control of its business beyond a point at which reorganization no longer remains realistic," if creditor recoveries are eroding. *In re AdBrite Com.*, 290 B.R. at 215; *In re Johnston*, 149 B.R. 158, 161 (B.A.P. 9th Cir. 1992) (granting motion to convert debtor's Chapter 11 case to Chapter 7 where the debtor lacked the ability to effectuate plan of reorganization because it had no income and further delay would prejudice creditors by eroding their position).

**The Debtors Have Suffered Substantial and Continuing Losses
and Have No Reasonable Prospect of Rehabilitation**

14. The Debtors have no positive cash flow. The Estate, however, continues to have expense as it incurs debt to Debtors' counsel, Unsecured Creditors Committee counsel, and its business advisors in Chapter 11. The "continuing loss" or "diminution" standard can be satisfied if the value of estate assets are actually depreciating in an economic, rather than an accounting, sense. 5 Collier on Bankruptcy ¶ 1112.03[i], at 1112-18 (15th ed. 1994). .In a similar case where debtor's operations amounted, essentially, to only a "pile of cash," *Friedberg v. Neier (In re Friedberg)*, 2013 U.S. Dist. LEXIS 55987 (D. Conn. Mar. 5, 2013), the United States District Court for the District of Connecticut affirmed this Court's decision converting a Chapter 11 to a

Chapter 7 case, as follows:

> The Bankruptcy Court did not abuse its discretion when it ordered the conversion in this case. Its finding of cause, due to a determination that there was "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," was not based on clearly erroneous or insufficient factual findings or on an erroneous view of the law. 11 U.S.C. § 1112(b)(4)(A). Neier testified that conversion was in the best interest of the creditors and that conversion would be less expensive than if the case were to remain under Chapter 11. April 25 Hearing Tr. at 57:15-18, 58:1-4. Indeed, the Bankruptcy Court found that conversion would avoid diminution of the Estate because it would result in lower U.S. Trustee fees and other administrative costs, such as those associated with a disclosure statement and plan. See supra, at Part II; April 25 Hearing Tr. at 95:6-9, 96:21-24. Neier also testified that the assets of Estate had been liquidated, and only cash remained. Id. at 49:9-13. Thus, there was sufficient evidence for the Bankruptcy Court to conclude that there was no reasonable likelihood of rehabilitation of the Estate.

15.    Liquidation of the Debtors' assets is the only reasonable course for this case to take, and it can be done more efficiently by a Chapter 7 trustee than by the Debtor and Chapter 11 professionals. As the court wrote in *DCNC N.C. I, L.L.C. v. Wachovia Bank, N.A.*, 2009 U.S. Dist. LEXIS 93046 (E.D. Pa. Oct. 5, 2009):

> Bankruptcy courts should proceed in a deliberate manner when confronted with a motion under Section 1112(b) and should not "precipitously sound the death knell for a Chapter 11 debtor by prematurely converting or dismissing the case." *In re Tracey Service Company, Inc.*, 17 B.R. 405, 409 (Bankr. E.D. Pa. 1982). Nevertheless, if the Chapter 11 case cannot achieve a reorganization within the statutory requirements of the Code, then there is no point in expending estate assets on administrative expenses, or delaying creditors in the exercise of their non-bankruptcy law rights. *First Jersey Nat'l Bank v. Brown (In re Brown)*, 951 F.2d 564, 572 (3d Cir. 1991).

## **CONCLUSION**

For all these reasons, Creditors respectfully request that the Court convert these Chapter 11 cases to Chapter 7 cases.

Dated: December 31, 2014.

/s/ J., Stephen Simms
_____
J. Stephen Simms
(Admitted *pro hac vice*)
Simms Showers LLP
201 International Circle
Baltimore, Maryland 21030
443-290-8704
jssimms@simmsshowers.com

Bominflot and O'Rourke Counsel