**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re:<br><br>O.W. BUNKER HOLDING NORTH AMERICA, INC. *et al.*,[1]<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 14-51720 (AHWS)<br>)<br>)<br>) Jointly Administered<br>)<br>) January 2, 2015<br>) |

**OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO REQUEST BY MIECO INC. FOR ALLOWANCE AND REIMBURSEMENT OF 11 U.S.C. § 503(b)(9) ADMINISTRATIVE EXPENSE**

The Official Committee of Unsecured Creditors (the "Committee") of the debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by and through its undersigned counsel, hereby objects to the *Motion For Allowance and Reimbursement of 11 U.S.C. § 503(b)(9) Administrative Expense* (the "Motion") filed by Mieco Inc. ("Mieco") on December 10, 2014 [DE 154]. In support of this Objection,[2] the Committee respectfully represents as follows:

**BACKGROUND FACTS**

1. On November 13, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Connecticut (the "Court"). The Debtors are operating their

---

[1] The last four digits of the Debtors' taxpayer identification numbers follow in parentheses: O.W. Bunker Holding North America Inc. (7474); O.W. Bunker North America Inc. (7158); O.W. Bunker USA Inc. (3556). The Debtors' address is 281 Tresser Blvd., 2 Stamford Plaza, 15th Floor, Stamford, CT 06901.

[2] The Committee reserves the right to supplement this Objection prior to the hearing on the Motion.

business and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On November 19, 2014, the Court ordered that the Chapter 11 Cases shall be jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and D. Conn. LBR 1015-1 under Chapter 11 Case No. 14-51720 (AHWS).

3. Prior to the Petition Date, the Debtors purchased marine fuel, oil and related goods on credit from numerous suppliers such as Mieco (collectively, the "Suppliers").

4. The Debtors anticipate that numerous Suppliers will file requests for reclamation of goods pursuant to § 546(c) of the Bankruptcy Code (the "Reclamation Claims"). Accordingly, on November 14, 2014, the Debtors filed the *Motion for Entry of Order Pursuant to 11 U.S.C. §§ 105 and 546(c) Establishing and Implementing Exclusive and Global Procedures for Treatment of Reclamation Claims* (the "Reclamation Procedures Motion") [DE 14]. No order has been entered yet concerning the Reclamation Procedures Motion.

5. To the extent Suppliers are not entitled to reclamation rights under section 546(c) of the Bankruptcy Code, they will likely submit requests for allowance and payment of administrative expenses pursuant to section 503(b)(9) of the Bankruptcy Code (the "503(b)(9) Claims").

6. The Reclamation Procedures Motion specifically preserves Suppliers' right to seek allowance and payment of administrative expenses under section 503(b)(9) of the Bankruptcy Code notwithstanding their lack of entitlement to an allowed Reclamation Claim. *See* DE 14 at 5, 7 n. 4 ("[a]ny Seller that fails to provide notice in the manner described in section 546(c) still may assert an administrative expense claim pursuant to section 503(b)(9) of

2

the Bankruptcy Code for goods delivered to the Debtors within 20 days before the Petition Date in the ordinary course of the Debtors' businesses").

7. Notably, the Reclamation Procedures Motion does not request entry of an order establishing and implementing exclusive procedures for treatment of these anticipated 503(b)(9) Claims.

8. By the instant Motion, Mieco requests allowance and payment of an administrative expense for the value of goods allegedly received by the Debtors within twenty (20) days prior to the Petition Date pursuant to section 503(b)(9) of the Bankruptcy Code.

9. By this Objection, the Committee requests that the Court defer consideration of all 503(b)(9) Claims by Suppliers (including the instant Motion) until later in the Chapter 11 Cases. Deferring final consideration of 503(b)(9) Claims will afford the Committee a reasonable opportunity to consider the complex factual and legal issues attendant to each 503(b)(9) Claim. Deferring final consideration of individual 503(b)(9) Claims on a piecemeal as-filed basis may also allow the Committee, the Debtors, and the Suppliers to resolve 503(b)(9) Claims without expensive and time-consuming litigation.

## JURISDICTION

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## ARGUMENT AND AUTHORITIES

11. Section 503(b)(9) of the Bankruptcy Code provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including … the value of any goods received by the debtor within 20

days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." *See* 11 U.S.C. § 503(b)(9).

12. The party seeking allowance and payment of an administrative expense under § 503(b)(9) bears the burden of proving each element of § 503(b)(9) by a preponderance of the evidence. *See In re NE Opco, Inc.*, 501 B.R. 233, 241 (Bankr. D. Del. 2013); *In re Plastech Engineered Products, Inc.*, 2008 WL 5233014, *2 (Bankr. E.D. Mich. Oct. 7, 2008). Administrative expense claims are subject to strict scrutiny because they enjoy a priority over other claims. *See In re Century Brass Products, Inc.*, 107 B.R. 8, 12 (Bankr. D. Conn. 1989).

13. Claims under section 503(b)(9) of the Bankruptcy Code present at least six substantial legal and factual issues for discovery and evidentiary presentation.[3]

14. First, a claimant seeking allowance of an administrative expense under § 503(b)(9) must prove by a preponderance that the debtor "received" the goods delivered within twenty days prior to its bankruptcy filing. Generally, courts look to the Uniform Commercial Code ("UCC") to determine if and when goods were "received" by a buyer for § 503(b)(9) purposes. *See In re Wezbra Dairy*, 493 B.R. 768, 770-71 (Bankr. N.D. Ind. 2013). Under the UCC, receipt requires actual or constructive physical possession of the goods at issue by the buyer in addition to satisfaction of contractual delivery requirements by a seller. *See id.* at 770. Thus, a seller's as-agreed delivery of goods to a common carrier, intermediary, or end buyer does not qualify as receipt of the goods by a debtor for UCC or § 503(b)(9) purposes. *See In re Ningbo Chenglu Paper Products Manufacturing Co., Ltd.*, 2012 WL 3765171, *6-7 (D.N.H.

---

[3] The Committee does not intend this list of issues relating to the 503(b)(9) Claims to be exhaustive. The purpose of the Committee's discussion of issues relating to the 503(b)(9) Claims in this Objection is to illustrate the complexity and potential expense of piecemeal and premature adjudication of the 503(b)(9) Claims. The Committee reserves the right to raise any additional issues and to assert any additional defenses appropriate with respect to the Motion and any other §503(b)(9) Claim.

Aug. 29, 2012) (drop shipment does not constitute "receipt" by debtor for § 503(b)(9) purposes); *In re Cunningham & Co., Inc.*, 2006 WL 3791329, *2 (Bankr. E.D.N.Y. Dec. 21, 2006) (delivery to common carrier does not constitute "receipt" by debtor for § 503(b)(9) purposes). Delivery to an agent or bailee of a debtor may establish receipt via constructive possession for § 503(b)(9) purposes, but a court must carefully consider evidence regarding the relationship among the debtor, the supplier, and the purported agent or bailee before making this determination. *See In re Circuit City Stores, Inc.*, 432 B.R. 225, 226-230 (Bankr. E.D. Va. 2010) (considering evidence of terms of consignment arrangement between supplier and debtor to determine date of "receipt" of goods by debtor for § 503(b)(9) purposes); *In re Pridgen*, 2008 WL 1836950, *1-4 (Bankr. E.D.N.C. April 22, 2008) (considering documentary and testimonial evidence of terms of relationship among debtor, dealer and suppliers to determine date of "receipt" of goods by debtor for § 503(b)(9) purposes); *see also Plastech*, 2008 WL 5233014 at *4 (deferring determination of "receipt" issue because parties failed to introduce evidence of the facts regarding the relationship among the debtor, the claimant, and the purported agent for receipt of goods).

15. Second, a claimant seeking allowance of an administrative expense under § 503(b)(9) must prove by a preponderance that the debtor received "goods" within twenty days prior to its bankruptcy filing. "[A]llowed administrative expenses under § 503(b)(9) should only be for claims arising from the sale and delivery of goods to the Debtors, not from the provision of services." *See In re Circuit City Stores, Inc.*, 416 B.R. 531, 534 (Bankr. E.D. Va. 2009). Courts disagree as to whether the "predominant purpose" standard for determination of whether a transaction qualifies as a "sale of goods" under the UCC applies to determine whether a claim arises from receipt of "goods" under §503(b)(9). *See Circuit City*, 416 B.R. at 537-38 (under § 503(b)(9), "the Court must determine whether or not the transaction involved is one for the sale

5

of goods" under the "predominant purpose" test); *In re Plastech Engineered Products, Inc.*, 397 B.R. 828, 837-38 (Bankr. E.D. Mich. 2008) (under § 503(b)(9), a court should grant priority to portion of claim attributable to value of goods provided and exclude portion of claim attributable to value of services). Under either approach, a court considering allowance of an administrative expense under § 503(b)(9) must consider evidence relating to the provision of any services attendant to a purported sale of goods.

16. Third, a claimant seeking allowance of an administrative expense under § 503(b)(9) must prove by a preponderance that it "sold" the goods received by the debtor within twenty days prior to its bankruptcy filing. This requires that the claimant prove title to the goods at issue immediately before receipt by the debtor, and transfer of such title to the debtor along with actual or constructive possession of the goods in exchange for a price. *See In re Goody's Family Clothing, Inc.*, 401 B.R. 131, 136 (Bankr. D. Del. 2009). Merely shipping or supplying goods to a debtor within twenty days before filing does not entitle a claimant to an administrative expense under § 503(b)(9); the claimant must produce evidence that it owned the goods when shipped and effectively passed such ownership to the debtor. *See id.*

17. Fourth, a claimant seeking allowance of an administrative expense under § 503(b)(9) must prove by a preponderance that it sold the goods received by the debtor in "the ordinary course of such debtor's business." This requires consideration of evidence regarding a debtor's ordinary purchasing practices, procedures, and terms, and the good faith of the debtors and the claimant in entering into the transaction at issue. *See* UCC § 1-201(b)(9).

18. Fifth, a claimant seeking allowance of an administrative expense under § 503(b)(9) must prove the "value" of the goods received by the debtor by a preponderance of the evidence. An objector may argue that the proper measure of value to a debtor is not the price

6

charged by a supplier but the amount the debtor could receive in resale, or the market or liquidation value of the goods at issue. One court has held that the price agreed to between the claimant and the debtor prior to receipt is presumptively equal to the value of the goods received for § 503(b)(9) purposes, but an objecting party may rebut such presumption with "evidence indicating that, under the facts and circumstances of a particular transaction, the purchase or invoice price is not an appropriate or relevant indicator of the 'value' obtained by the Debtors." *See In re SemCrude, L.P.*, 416 B.R. 399, 405 (Bankr. D. Del. 2009).

19. Finally, even if a claimant seeking allowance of an administrative expense under § 503(b)(9) establishes its entitlement to an administrative expense by a preponderance of the evidence, any resulting administrative expense may be subject to setoff for prepetition claims of the debtor against the claimant under § 553 of the Bankruptcy Code. *See In re Brown & Cole Stores, LLC*, 375 B.R. 873, 878-81 (9th Cir. BAP 2007) (finding that § 553(a) applies to §503(b)(9) claims).[4] This requires adjudication of any claims a debtor may have against a claimant before final allowance and payment of the administrative expense proven under § 503(b)(9). *See id.*

20. Taking these issues into account, it is possible that adjudication of the instant Motion (and other 503(b)(9) Claims) will involve extensive and expensive discovery and evidentiary presentation in this Court.

---

[4] Section 502(d) of the Bankruptcy Code likely does not apply to § 503(b)(9) claims. *See ASM Capital LP v. Ames Department Stores, Inc.*, 582 F.3d 422, 432 (2d Cir. 2009) (holding that § 502(d) does not apply to § 503(b)(1) administrative claims); *In re TI Acquisition, LLC*, 410 B.R. 742, 749-51 (Bankr. N.D. Ga. 2009) (finding that § 502(d) does not apply to § 503(b)(9) claims). The existence of an avoidance action against an administrative claimant may, however, justify deferral of payment of an administrative claim until after the avoidance action is adjudicated. *See id.* at 751. "[I]f the Court were to order immediate payment and the Debtor later obtained a judgment against SPI in its avoidance action and SPI was unable to pay, other creditors would be prejudiced." *Id.* Thus, the existence of an avoidance action against a Supplier, even if not a valid defense to such Supplier's 503(b)(9) Claim, may nevertheless justify deferral of payment on such 503(b)(9) Claim.

21. For example, consider the "receipt" issues raised by the Motion. In the Motion, Mieco alleges that "Mieco, as seller, delivered to the Debtor, as buyer, 2,767.99 barrels of marine gas oil, free on board the vessel, the Chabria Sea, at P66 Tremley Point, New Jersey." *See* DE 154 at 2. The *CHABRIA SEA*, however, is not owned or operated by the Debtor, but is a barge apparently operated by Harley Marine Services, Inc. ("Harley Marine"). *See* http://www.harleymarine.com/equipment-list.asp?Type=Barge. Thus, according to its own allegations in the Motion, Mieco did not provide the Debtors with actual physical possession of the goods at issue within twenty days prior to the Petition Date. Therefore, in order to establish its entitlement to an administrative expense under § 503(b)(9), Mieco must prove by a preponderance that Harley Marine's receipt of the goods on the *CHABRIA SEA*, perhaps on behalf of the Debtors, qualifies as constructive possession (and thus receipt) of the goods by the Debtors. This will require discovery and presentation of evidence relating to the relationship between the Debtors and Harley Marine and ordinary business, agency, and bailment terms in the bunker fuel delivery and brokering markets. Although the Debtors may have retained Harley Marine as a service provider, that alone does not render Harley Marine an agent or bailee sufficient for constructive possession purposes. *See In re Trico Steel Co., L.L.C.*, 282 B.R. 318, 322-23 (Bankr. D. Del. 2002) (finding that stevedores hired by buyer were "mere intermediaries" with insufficient interest to take constructive possession of goods on behalf of buyer under UCC).

22. In addition to the expense required to adjudicate complicated factual and legal issues, the 503(b)(9) Claims may impose serious practical problems for the outcome of the Chapter 11 Cases. The Debtors were concerned enough about the volume of the Reclamation Claims to file the Reclamation Procedures Motion. Reclamation Claims often give rise to

503(b)(9) Claims. If a substantial amount of 503(b)(9) Claims are filed and allowed, then the Debtors may be rendered administratively insolvent. Even if the Debtors are not rendered administratively insolvent, the amount of potential or allowed 503(b)(9) Claims may have a substantial impact on the Debtors' financing and cash collateral needs, plan negotiations, and the confirmation process. However, if a limited numbers of 503(b)(9) Claims are filed, then the practical implications of allowance of the 503(b)(9) Claims may be limited. The Committee would prefer to know the amount and thus the practical implications of the 503(b)(9) Claims before committing to object to and litigate every 503(b)(9) Claim on a piecemeal basis.

23. Taking these considerations into account, it would be premature to begin adjudicating 503(b)(9) Claims such as the Motion at this early stage in the Chapter 11 Cases. Although it may not be necessary to create a separate procedure for the submission and resolution of the 503(b)(9) Claims (as with the Reclamation Claims), it would be prudent to defer the time-consuming and costly process of adjudication and payment of individual 503(b)(9) Claims until after any claims bar date at the very earliest. This will allow the Committee time to investigate and consider the total amount of unsecured claims submitted; the amount of any unsecured claims evidencing potential 503(b)(9) Claims; the documentation submitted by Suppliers in support of their proofs of claim and Reclamation Claims; the ordinary course business practices and relationships between the Debtors, the Suppliers, and potential agents and bailees; and any claims that the Debtors may have against the Suppliers for setoff purposes. Consideration of these issues may obviate the need for the Committee to file an individual objection requiring specific evidence and a full evidentiary hearing on each 503(b)(9) Claim. Further, the Committee may be able to work with the Debtors and the Suppliers to reconcile and

reach agreement on undisputed 503(b)(9) Claims, further reducing the costs of the 503(b)(9) Claim adjudication process.

24. The Court has authority to defer allowance and payment of the 503(b)(9) Claims. Although § 503(b)(9) requires allowance of qualifying administrative expense claims, it does not provide any mandatory timeframe for allowance and payment of such claims. The timing of payment of § 503(b)(9) claims is within the discretion of the court. *See In re TI Acquisition, LLC*, 410 B.R. 742, 751 (Bankr. N.D. Ga. 2009). A court's discretion to control the timing of payment of administrative expenses should be used to ensure an orderly and equal distribution among creditors and prevent a race to a debtor's assets. *See In re Shihai*, 392 B.R. 62, 68 (Bankr. S.D.N.Y. 2008). The burden is on the claimant to prove that immediate payment of an administrative expense is necessary. *See NE Opco*, 501 B.R. at 259.

25. Mieco has not alleged in the Motion any particular prejudice or hardship requiring immediate consideration and payment of its purported 503(b)(9) Claim. The Committee represents that immediate consideration and payment of Mieco's 503(b)(9) Claim would prejudice the Debtors' estates and other creditors by imposing potentially unnecessary litigation and discovery costs. Accordingly, the Court should exercise its discretion to defer adjudication and payment of Mieco's 503(b)(9) Claim until a later date in these Chapter 11 Cases - at the very least, until after the general claims bar date.

26. If the Court declines to exercise its discretion to defer consideration of the Motion, the Committee reserves the right to take discovery and present evidence at a full evidentiary hearing on the Motion and any other individual 503(b)(9) Claims.

## CONCLUSION

27.	For the reasons stated above, the Committee respectfully requests that the Court defer consideration of the 503(b)(9) Motion and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
       January 2, 2015

*/s/ Gregory F. Lang*
**HUNTON & WILLIAMS LLP**
Peter S. Partee, Sr. (admitted *pro hac vice*)
Michael P. Richman (admitted *pro hac vice*)
Andrew Kamensky (admitted *pro hac vice*)
Gregory F. Lang (ct14112)
200 Park Avenue
New York, NY 10166-0136
Telephone: (212) 309-1000
Facsimile: (212) 309-1847
ppartee@hunton.com
mrichman@hunton.com
akamensky@hunton.com

*Proposed Counsel for The Official Committee of Unsecured Creditors of O.W. Bunker Holding North America Inc., et al.*

85075.000002 EMF_US 53587353v2