**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

| | |
|---|---|
| In re : | |
| : | **Chapter 11** |
| **O.W. BUNKER HOLDING NORTH** : | |
| **AMERICA, INC., et al.,**[1] : | **Case No. 14-51720 (AHWS)** |
| : | |
| **Debtors.** : | **Jointly Administered** |

**RESPONSE TO AMENDED MOTION FOR ORDER (A) DECLARING
THAT THE AUTOMATIC STAY DOES NOT APPLY TO INTERPLEADER
ACTIONS (B) OR, IN THE ALTERNATIVE, MODIFYING THE AUTOMATIC STAY**

NUSTAR ENERGY SERVICES, INC. AND NUSTAR SUPPLY & TRADING LLC (hereinafter, "**NuStar**") file this response to *Amended Motion for Order (A) Declaring that the Automatic Stay Does Not Apply to Interpleader Actions (B) or, in the Alternative, Modifying the Automatic Stay* (the "**Motion**"), and would show the Court as follows:

**I.
ARGUMENT**

**A.    Interpleader Actions Are Stayed.**

1.    The various civil interpleader actions (including the actions identified in the Motion) identified in the Joint Motion of Debtors and the Official Committee of Unsecured Creditors for a Transfer of Cases to United States Bankruptcy Court for the Southern District of New York Pursuant to 28 U.S.C. § 1412 and Rule 1014(a)(1) of the Federal Rules of Bankruptcy Procedure (the "**Interpleader Actions**"), Dkt. 229, Exhibit A, are subject to the automatic stay and cannot proceed without further order of this Court.  This includes  Such actions fall within the strictures of § 362(a) of the Bankruptcy Code (the "**Code**"), which stays, among other things,

---

[1] The last four digits of the Debtors' taxpayer identification numbers follow in parentheses:  O.W. Bunker Holding North America Inc. (7474); O.W. Bunker North America Inc. (7158); O.W. Bunker USA Inc. (3556).  The Debtors' address is 281 Tresser Blvd., 2 Stamford Plaza, 15th Floor, Stamford, CT  06901.

41376823.4                                          - 1 -

the commencement or continuation "of a judicial, administrative, or other action or proceeding against the debtor" that could have been brought prepetition. § 362(a)(1).[2] The stay protects a debtor's creditors as well as the debtor such that the debtor cannot waive the automatic stay. *Commerzanstalt v. Telewide Sys., Inc.*, 790 F.2d 206, 207 (2d Cir. 1986).

2. Movants rely upon the decision in *Price & Pierce International, Inc. v. Spicers International Paper Sales, Inc.*, 50 B.R. 25 (S.D.N.Y. 1985), for the proposition that the automatic stay does not stop an interpleader action. The court in *Price & Pierce* held that the automatic stay did not allow a defendant in an interpleader action to file for bankruptcy and hide behind the automatic stay. 50 B.R. at 26. Such an attempt would have "unduly handicap[ped] the efforts" of the other parties to resolve the dispute, particularly where it was unclear whether the debtor had any interest in the interplead funds. *Id.* Although *Price & Pierce* has been cited in passing by courts within the Second Circuit, the holding from the decision has *never* been adopted by the Second Circuit.

3. Movants' argue that the reasoning in *Price & Pierce*, as well as the inverse nature of proper interpleader actions[3] (whereby the defendant is akin to a plaintiff), supports a blanket rule that exempts interpleader actions from the scope of the automatic stay. Such a rule should be rejected for the same reasons outlined by the Sixth Circuit in *NLT Computer Services Corp. v. Capital Computer Systems, Inc.*. *See* 755 F.2d 1253, 1258-59 (6th Cir. 1985).

4. In *NLT Computer Services Corp.*, the Sixth Circuit dismissed any distinction between interpleader and other civil actions brought against a debtor premised upon quasi procedural roles. *Id.* Instead, the Sixth Circuit applied the plain language of the statute, stating:

---

[2] All statutory references are to Title 11 of the United States Code unless otherwise indicated.
[3] NuStar denies that the interpleader actions filed in the Southern District of New York are proper interpleader actions. Rather, they are attempts by vessel owners to improperly discharge their known statutory obligations to physical suppliers like NuStar, which obligations are independent from other obligations which such vessel owners undertook.

> We see nothing in the interim rule or in the Bankruptcy Code which could ever be construed as authorizing the continuation of the interpleader suit without some appropriate action having first been taken in the bankruptcy case itself. In our view, the trial judge in these proceedings was *in a position no different from that of any judge presiding in any other pending federal, state, or local court proceedings which could affect the assets of the bankrupt*. It certainly cannot seriously be claimed that were such a suit pending in another district court or in a state court, the judge of that court could proceed to decide that suit on the merits without a motion to lift the stay under 11 U.S.C. § 362(d) having first been filed in the bankruptcy proceeding itself.

755 F.2d at 1258-59 (emphasis added).

5. Any distinction between an interpleader action and an unquestionably stayed civil proceeding against the debtor is abolished where the plaintiff seeks an injunction or temporary restraining order. *See In re Falls Bldg., Ltd.*, 94 B.R. 471, 480-81 (Bankr. E.D. Tenn. 1988). In such a situation, even a "nominal defendant" becomes a defendant "in the true sense" as it must take defensive actions to preserve its rights. *Cf. Motion* ¶ 6. Such was the situation in *In re Falls Building*, where the bankruptcy court held that the interpleader plaintiff's attempt to obtain a temporary restraining order constituted a stay violation. 94 B.R. at 481. Moreover, the court found such actions to be a "willful" violation of the stay and awarded attorneys' fees. *Id.* at 482.

6. Here, the Movants have taken the same actions as the plaintiffs in *In re Falls Building*, seeking to obtain or obtaining temporary restraining orders in the various Interpleader Actions preventing the arrest of their vessels. Such actions dissolved any procedural reversals peculiar to interpleader actions and pitted the interpleader plaintiffs against the debtor—who also had potential maritime rights against the vessels—thus presenting the textbook situation covered by the automatic stay.

7. Separate from judicial actions against the debtor, § 362(a) stays "any act to obtain possession of property of the estate . . . or to exercise control over property of the estate." § 362(a)(3). Where the debtor has even an arguable interest in property, such that the property

may be property of the estate, the filing of an interpleader may constitute an attempt to exercise control over property of the estate. *See Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 298 (5th Cir. 2005) (holding that a creditor may violate the automatic stay by unilaterally seizing property in which the estate has an arguable interest); *In re Grogg*, 295 B.R. 297, 305 (Bankr. C.D. Ill. 2003) (holding that filing of an interpleader of insurance proceeds in which the debtor likely held an interest would violate the automatic stay).

8. Based on the foregoing, this Court should hold that the automatic stay applies to the Interpleader Actions such that the Movants must carry their burden under § 362(d) before proceeding with the Interpleader Actions.

**B.   No Cause Exists for the Court to Grant Relief from the Stay.**

9. Section 362(d) requires a court to grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property [of the moving party]." § 362(d)(1). The Code does not define "cause," thus a court has discretion to determine what constitutes "cause" for relief from stay. Where the request relief involves litigation continuing in a foreign forum, courts in the Second Circuit consider twelve factors, including:

> (1) whether relief would result in a partial or complete resolution of the issues;
> (2) lack of any connection with or interference with the bankruptcy case;
> (3) whether the other proceeding involves the debtor as a fiduciary;
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> (5) whether the debtor's insurer has assumed full responsibility for defending it;
> (6) whether the action primarily involves third parties;
> (7) whether litigation in another forum would prejudice the interests of other creditors;
> (8) whether the judgment claim arising from the other action is subject to equitable subordination;
> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
> (11) whether the parties are ready for trial in the other proceeding; and
> (12) impact of the stay on the parties and the balance of harms.

*Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus.)*, 907 F.2d 1280, 1286 (2d Cir. 1990). The *Sonnax* Factors summarize the scant legislative history related to "cause" in this context. *Id.* at 1285–86 (citing S. Rep. No. 95–989, at 52, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5838).

10. The vast majority of the *Sonnax* factors either favor not granting relief from stay or do not apply in this case. Factors 2 and 6 favor denial of the Motion as the Interpleader Actions are both connected to and interfering with the Debtor's bankruptcy case. Far from involving only third parties, the relevant parties in the Interpleader Actions are engaged in both proceedings and have already litigated before this Court the liens at issue in the Interpleader Action. *See, e.g.*, *Ex Parte Application for Temporary Restraining Order and Motion for Restraining Order Pursuant to 28 U.S.C. § 2361 and 11 U.S.C. § 105(a), SHV Gas Supply & Risk Mgt. SAS v. OW Bunjer USA, Inc. (In re OW Bunker Holding North Am. Inc.)*, Adv. No. 12–05068 (Bankr. Dist. Conn. filed Dec. 4, 2014), ECF No. 3. For this latter reason, factor 7 favors denial as litigation in the foreign jurisdiction will prejudice creditors engaged in both jurisdictions, requiring the retention of new local counsel and the attendant time and expense. Factor 3 favors denial as the Debtor is engaged as a fiduciary to enforce its interests in estate property implicated by the Interpleader Actions. Having been filed only recently, factor 11 does not apply because the parties are not "ready for trial" in the Interpleader Actions. Finally, factors 10 and 12 favor denial because the interests of juridical economy and the balance of harms favors a centralized forum—the bankruptcy court, not a foreign jurisdiction.

11. Factors 4, 5, 8, and 9 do not apply in this case. No specialized tribunal has been established to hear these cases, but the general jurisdiction provided by 28 U.S.C. § 1333 creates jurisdiction over the Interpleader Actions in U.S. federal District Court. Likewise, the Debtor's

insurer is not involved in the Interpleader Actions, and equitable subordination is not relevant here. Finally, the result of the Interpleader Actions will not result is a judicial lien relevant to the Debtor's bankruptcy case.

12. Indeed, only one factor, if at all, possibly favors granting relief from stay. That factor, that relief from stay might result in partial or complete resolution of the issues, is unsettled. First, it is speculative to assert that granting relief from the stay will result in resolution of the interests at issue. The District Court for the Southern District of New York has itself requested briefing on its in rem jurisdiction over vessel arrest proceedings where the vessel has never entered the territorial jurisdiction of Southern District of New York, and many parties have challenged the court's personal and subject matter jurisdiction. Moreover, multiple parties are asserting interests in excess of the interpleaded funds. Finally, it is unclear as to whether the proposed "transfer" of liens in the Interplead Actions will suffice as a maritime lien is perfected by arresting a vessel. Second, the District Court in the Southern District of New York has an outstanding show cause order as to why the consolidated Interpleader Actions should not be transferred to the District of Connecticut. So granting relief from stay may be superfluous as the Interpleader Actions may soon be transferred to a venue with both maritime and bankruptcy jurisdiction. As a result, this factor lends minimal support to granting relief from the automatic stay.

13. The *Sonnax* Factors overwhelmingly favor a finding that "cause" does *not* exist to grant relief from the automatic stay. Accordingly, this Court should deny the Motion.

C. **The Movants' Reliance on *Stern* Is Misplaced.**

14. The Movants' reliance on *Stern v. Marshall*, 131 S. Ct. 2594 (2010), as grounds for why the stay should be lifted is a red herring. *Stern* concerned the constitutional authority of a bankruptcy court to enter a final order in a matter reserved for determination by an Article III

41376823.4                                                - 6 -

court. The Movants' argue that, under *Stern*, the stay must be lifted because "[s]imply put . . . the SDNY [sic] is the only court with authority to determine the *in rem* maritime claims at issue in the Interpleader Actions . . . ." Motion ¶ 61. But whether a bankruptcy court in one jurisdiction can determine a matter filed in a foreign district court has no consequence on the separate question of whether the filing itself is stayed under § 362.

15. Section 1333 of title 28 grants U.S. District Courts original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1). The statute does not limit jurisdiction to the Southern District of New York. The Interpleader Actions could have been filed in the District of Connecticut without violating the automatic stay because the District Court could exercise both admiralty or maritime jurisdiction pursuant to § 1333(1) as well as bankruptcy jurisdiction pursuant to § 1334(a). *See In re Grogg*, 295 B.R. at 307. Such an action could have also been filed as adversary proceeding in this Court with withdrawal of the reference as a remedy to allay any jurisdictional or authority concerns of maritime law. As a result, any argument concerning *Stern* and the constitutional authority of bankruptcy courts misses the mark and is irrelevant as to whether the automatic stay applies or should be lifted.

## II.
## PRAYER

WHEREFORE, NuStar hereby respectfully request this Court deny the Amended Motion for Order (A) Declaring that the Automatic Stay Does Not Apply to Interpleader Actions (B) or, in the Alternative, Modifying the Automatic Stay, and grant such other and further relief to which NuStar is entitled, either at law or in equity.

DATED:  January 2, 2015.

                **FULBRIGHT & JAWORSKI LLP**

By:  */s/ David L. Barrack*
David L. Barrack
Connecticut State Bar No. 400666
Connecticut Fed. Bar No. CT10155
666 Fifth Avenue
New York, NY   10103-3198
Telephone:  (212) 318-3000
Telecopier:  (210) 318-3400
david.barrack@nortonrosefulright.com

Eric Henzy
Connecticut State Bar No. 12849
1 Financial Plaza, 21st Floor
REID AND RIEGE, PC
Hartford, CT  06103
Telephone:  (860) 240-1081
Telecopier:  (860) 240-1002ehenzy@rrlawpc.com

*Attorneys for NuStar Energy Services, Inc. and*
*NuStar Supply & Trading LLC*

OF COUNSEL:

Michael M. Parker
Texas State Bar 00788163 (admitted *pro hac vice*)
Steve A. Peirce
Texas State Bar 15731200 (admitted *pro hac vice*)
FULBRIGHT & JAWORSKI LLP
300 Convent Street, Suite 2200
San Antonio, Texas 78205
Telephone:  (210) 224-5575
Facsimile:  (210) 270-7205
michael.parker@nortonrosefulbright.com
steve.peirce@nortonrosefulbright.com

*Attorneys for NuStar Energy Services, Inc. and*
*NuStar Supply & Trading LLC*