## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT (BRIDGEPORT)

| | |
|---|---|
| In re:<br><br>OW BUNKER HOLDING NORTH<br>AMERICA Inc., et al.[1]<br><br>    Debtors. | Chapter 11<br>Case No.  14-51720 (AHWS)<br><br>Adversary Pro No. _____ |
| SILVERSEA CRUISES LTD.<br><br>    Plaintiff,<br><br>        -against-<br><br>OW BUNKER USA, INC., OW BUNKER<br>HOLDING NORTH AMERICA INC., OW<br>BUNKER NORTH AMERICA INC., OW<br>BUNKER & TRADING A/S, OW BUNKER<br>A/S, ING BANK NV, CHEVRON MARINE<br>PRODUCTS, LLC and CALTEX<br>AUSTRALIA PETROLEUM PTY LTD<br>AND/OR CALTEX MARINE PRODUCTS<br>AND/OR CALTEX ENERGY QLD,<br><br>    Defendants. | <br><br><br><br><br><br><br><br>Jointly Administered |

## COMPLAINT FOR INTERPLEADER AND DECLARATORY RELIEF

Plaintiff, Silversea Cruises Ltd., by its attorneys, Hill, Betts & Nash LLP, in its

Complaint for Interpleader and Declaratory Relief, alleges as follows:

### A.      NATURE OF ACTION

1.      This Interpleader action is to resolve competing claims to amounts owed the

Debtors and/or other third parties pursuant to the sale and delivery of marine fuel (at times,

"bunkers," "bunker fuel," or "fuel") to the vessel SILVER DISCOVERER (the "Vessel") at the

Port of Cairns, Queensland, Australia, on or about November 3, 2014.  The above-captioned

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' taxpayer identification numbers, are as follows:  O.W. Bunker Holding North America Inc. (7474), O.W. Bunker North America Inc. (7158) and O.W. Bunker USA Inc. (3556).

debtors (the "Debtors"), Chevron Marine Products LLC, Caltex Australia Petroleum Pty Ltd. and/or Caltex Marine Products and/or Caltex Energy QLD (hereafter, collectively and/or individually "Chevron"), and/or other third parties, identified below, have conflicting claims as to the ownership of funds owed by plaintiff, for the purchase and receipt of such bunker fuel by the Vessel. In particular, plaintiff faces demands for payment and the threat of vessel arrest by the Debtors, by Chevron (the alleged unpaid physical supplier of the bunkers which plaintiff contracted to purchase from the Debtors) and ING Bank, NV ("ING"), as security agent under a security agreement dated December 19, 2013 (the "Security Agreement') with the Danish parent and other affiliates of the Debtors. ING has also asserted before this Court that it has a senior right to all funds which may be paid by customers of the Debtors as receivables subject to a certain financing by ING of the Debtors' insolvent Danish parent companies. Plaintiff is faced with uncertainty as to the proper recipient of the $124,861.82 owed pursuant to sale and delivery of the fuel (the "Disputed Funds"). Prior to and in lieu of making any payment to one or more parties plaintiff seeks relief: (1) to permit it to deposit into this Court the Disputed Funds sufficient to satisfy the conflicting claims; (2) *inter alia*, a declaration that: the deposit of such funds will discharge plaintiff's obligations with respect to the payment for the fuel, and that such parties as may assert conflicting claims may pursue their claims against the deposited Disputed Funds; which shall also serve as the substitute *res* for any *in rem* action such parties may seek to commence; and (3) further ordering that upon deposit of the Disputed Funds with this Court such parties shall be enjoined from the threatened or actual arrest of the Vessel, or a sister ship or associated vessel or other action against plaintiff by reason of the aforesaid claims.

## B.    PARTIES

2.    Plaintiff is a corporation organized and existing under the laws of the Bahamas,

with a registered office located at Sassoon House, Shirley Street & Victoria Ave., Nassau, The

Bahamas and a place of business at 110 East Broward Boulevard, Fort Lauderdale, Florida

33301.  Plaintiff operates a fleet of vessels in the cruise trade, including the MV SILVER

DISCOVERER.

3.    Defendant OW Bunker USA, Inc. (the "OW USA") is a corporation organized and

existing under the laws of Texas, with its principal place of business located at 2603 Augusta

Drive, Suite 440, Houston, TX 77057, and is a debtor before this Court.

4.    Defendant OW Bunker Holding North America Inc. ("OW Holding") is a

corporation organized and existing under the laws of Connecticut, with an office and place of

business at 281 Tresser Blvd, 2 Stamford Plaza, 15th Floor, Stamford, CT 06901, and is a debtor

before this Court.

5.    Defendant OW Bunker North America Inc. is a corporation or business entity

organized and existing pursuant to the laws of Connecticut, with an office and place of business

at 281 Tresser Blvd, 2 Stamford Plaza, 15th Floor, Stamford, CT 06901, and is a debtor before

this Court.

6.    On information and belief, defendants, OW Bunker A/S and O.W. Bunker &

Trading A/S are corporations or business entities organized and existing pursuant to the laws of

Denmark, with registered offices at Stigsborgvej 60, DK-9400, Norresundby, Denmark (the

"Danish OW Entities").

7.    On information and belief, defendant, Chevron Marine Products, LLC is a

corporation, with a place of business in the U.S.A., at 6001 Bollinger Canyon Road, Building L,

Floor 3, San Ramon, CA 94583 and/or 1500 Louisiana St. Houston, TX 77002 and is part of the

Chevron Group.

8.    On information and belief, defendants, Caltex Australia Petroleum Pty Ltd. and/or

Caltex Marine Products and/or Caltex Energy QLD, are Australian corporations or entities,

which are also in the Chevron Group and are affiliates of Chevron Marine Products LLC and

participated in arranging the physical supply of the bunker fuel referred to herein.

9.    Defendant ING is a bank organized and existing pursuant to the laws of the

Netherlands with an office and place of business located at Bijlmerplein, 1102 MG Amsterdam,

The Netherlands and allegedly acts as the "Security Agent" for itself and other lenders with

regard to the Security Agreement.

## C.    JURISDICTION AND VENUE

10.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

11.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

§§1331, 1333, 1334, 1335, and 2361 and Rule 22 of the Federal Rules of Civil Procedure, as

applied to this adversary proceeding by Rule 7022 of the Federal Rules of Bankruptcy

Procedure.  This is an admiralty and maritime claim within the meaning of Federal Rules of Civil

Procedure 9(h).

12.    This is a core proceeding pursuant to 28 U.S.C. §157(b).

13.    Venue of this adversary proceeding in this district is proper pursuant to 28 U.S.C.

§1409(a).

14.    This Court has personal jurisdiction over each of the Debtors.

15.    This Court has personal jurisdiction over Chevron Marine Products, LLC which

transacts business within the United States.

16.    On information and belief, this Court has or shortly will have, personal jurisdiction over Caltex Australia Petroleum Pty Ltd. and/or Caltex Marine Products and/or Caltex Energy QLD, to the extent that they arranged the physical supply of bunkers referred to herein, and as affiliates of Chevron Marine Products, LLC, are obligated under Chevron's Global Terms of Sale for Marine Fuels, calling among other things for arbitration in New York.

17.    This Court has personal jurisdiction over ING.  ING transacts business within the United States, maintaining an address in the United States for service of process.  In addition, ING appeared in the Debtors' Chapter 11 cases, and has been participating in the Debtors' cases.

18.    Upon information and belief, the Court has personal jurisdiction over defendants OW Bunker A/S and O.W. Bunker & Trading A/S, *inter alia* by virtue of the appearance of ING in this proceeding, asserting rights of and/or as agent for the foregoing entities pursuant to powers granted in the Security Agreement between and among said entities (as Chargors) and ING.

## D.    **BACKGROUND**

19.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

20.    On information and belief, on or about October 29, 2014, Debtor OW USA ordered from Chevron fuel to be loaded on board and consumed by the Vessel.  The fuel was to be supplied to the Vessel in the port of Cairns, Queensland, Australia.  A true and correct copy of the related purchase order issued by FleetPro Ocean Inc. ("FleetPro") is attached hereto as Exhibit A.

21.    On November 3, 2014, the fuel was physically supplied to the Vessel in the Port of Cairns, Queensland, Australia. True and correct copies of the Bunker Delivery Notes are attached hereto as Exhibit B.

22.    On or about November 3, 2014, Debtor OW USA sent to plaintiff an invoice dated

that same date for the cost of the fuel to plaintiff demanding payment on or by December 3,

2014. A true and correct copy of the invoice for the cost of fuel is attached hereto as <u>Exhibit C</u>.

23.    On or after November 19, 2014, plaintiff received a demand letter of that same date

from ING. A true and correct copy of the letter is attached hereto as <u>Exhibit D</u>.

24.    In the November 19, 2014 letter, ING demands that plaintiff make certain payments

to ING pursuant to the Security Agreement under which the Debtors allegedly granted certain

powers and assigned certain rights in respect of their supply contracts as security to ING. In sum,

ING alleges rights to the Disputed Fund.

25.    On November 13, 2014, the Debtors filed voluntary petitions for relief under

Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States

Bankruptcy Court for the District of Connecticut (the "Court").

26.    On November 18, 2014, at the hearing before the Court on the "first day" motions

filed with the Court on behalf of the Debtors, the Court agreed that the cases (the "Cases")

should be administratively consolidated.

27.    As of the date of this Complaint, Chevron Marine Products, LLC is a member of the

Official Committee of Unsecured Creditors of the Debtors. Caltex Australia Petroleum Pty Ltd.

and/or Caltex Marine Products and/or Caltex Energy QLD have not appeared in the Debtors'

Cases, but are deemed by such parties to be "affiliates" of Chevron.

28.    On November 25, 2014, the Debtors commenced an adversary proceeding against

ING seeking, among other things, to avoid certain alleged liens conveyed to ING under the

Security Agreement (Adv. Pro. No. 14-05063). The adversary proceeding against ING remains

pending before this Court and ING's rights, if any, to the payments due to the Debtors from their

customers, have not yet been resolved.

29.    The Vessel is subject to arrest by defendants, asserting maritime liens.

30.    Due to the bankruptcy filings of the Debtors, it is anticipated that Chevron, ING, or

another party may each take immediate action to collect the funds alleged to be owed for the

bunkers, and do so in different courts, multiplying the risk of inconsistent determinations and

plaintiff's litigation costs and permitting a windfall for one party at the expense of the others.  In

addition, such litigation may adversely affect any right of the Debtors' to the Disputed Funds, the

basis of which derives from the Debtors' own obligation to pay for the fuel it ordered on behalf

of its customers.

### E.    RISK OF ARREST OF VESSEL AND THE NECESSITY FOR INTERPLEADER

31.    Under federal maritime law, the contract supplier of necessaries, including fuel, to a

vessel normally obtains a maritime lien against the vessel.  Under certain circumstances, a

physical supplier may also assert a maritime lien on that vessel.

32.    Claimants may have already asserted, or may assert rights to amounts owed for the

sale of necessaries to the Vessel, giving rise to a maritime lien under federal maritime law and/or

the Maritime Lien and Commercial Instruments Act, 46 U.S.C. §31301 *et seq.*

33.    Plaintiff cannot ascertain whether the Disputed Funds should be paid to the Debtor

OW USA, Chevron, any of the Danish Entities, or ING in order to extinguish any maritime liens

against the Vessel and to prevent its arrest.

34.    The Vessel regularly calls into ports on its cruise itinerary and could face arrest by

one or more of the defendants claiming to assert a maritime lien, which could cause harm to

plaintiff, delay the Vessel, and affect innocent third parties.

35.    Plaintiff presently has control over the Disputed Funds but disclaims any interest

therein.

36.    The competing claims of the defendants or other third parties may expose plaintiff to multiple liabilities in connection with the payment of the Disputed Funds in order to extinguish competing maritime lien claims and/or other *in personam* or non-maritime claims.

37.    Such liability may include not only the cost of posting security to free the Vessel or associated vessels from each arrest, as may be pursued by parties asserting maritime liens, as well as the potential for multiple litigations over the same Disputed Funds in different jurisdictions

38.    In addition, there would be substantial loss and damage to plaintiff caused by delay to the Vessel or associated vessels for every day lost sitting idle in port subject to an arrest, disrupting the cruise itinerary and giving rise to potential claims by passengers.

39.    Plaintiff is entitled to deposit with the Court the Disputed Funds representing the amount due for the bunkers and require that the Debtors, Chevron, and any other claimant interplead; among themselves to establish their respective rights to the invoiced funds.

40.    After depositing the Disputed Funds with the Court, plaintiff is entitled to be discharged from further liability with respect to the Disputed Funds.  The Vessel is similarly entitled to be discharged from any maritime liens against them arising from the supply of the bunkers and free from any further threat of arrest and/or action by all parties asserting claims to payment from the Disputed Funds.

## F.    INTERPLEADER REQUIREMENTS

41.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

42.    The respective claims to the Disputed Funds by the Debtors and other defendants are adverse and conflicting and are made without collusion.  Plaintiff is unable to determine which, if any, of the claims are valid and/or in what amount(s).

43.   Plaintiff cannot pay the Disputed Funds to any party without this Court's determination of the respective interests in such Disputed Funds.

44.   Because plaintiff lacks knowledge or information sufficient to determine the rights of any party to the Disputed Funds, plaintiff contests the alleged rights of all parties asserting a claim to the Dispute Funds in its possession.  Due to the amount at issue, which is in excess of $500, plaintiff is willing to place the Disputed Funds into the Court's registry, preserving the Disputed Funds and reserving all rights and claims thereto, pending a determination by this Court of the respective rights to such Disputed Funds.

45.   Plaintiff has no interest as a claimant in the Disputed Funds.

## G.     AUTOMATIC STAY NOT APPLICABLE

46.   The preceding paragraphs are incorporated by reference as if fully set forth herein.

47.   This is not an action to obtain possession of property held by the Debtors, as required for the invocation of the automatic stay under Section 362 of the Bankruptcy Code; rather, it is an action that seeks to place the Disputed Funds within the control of the Court (or other court to which this Court may decide to transfer this action), to determine whether the Disputed Funds or some part of thereof, rightfully belongs to the Debtors or third party(ies).

48.   While the Debtors are named as defendants herein, their status in that regard is nominal.  In making a claim to the Disputed Funds, a Debtor would be a claimant, fulfilling the role of a plaintiff in this action.

## H.     RESERVATION OF RIGHT TO TRANSFER

49.   The plaintiff reserves the right to seek transfer of this action pursuant to Rule 7087 of the Federal Rules of Bankruptcy procedure, invoking 28 U.S.C. § 1412, as may be necessary for the determination of maritime claims or otherwise.

## I.     CONCLUSION AND PRAYER

BASED UPON THE FOREGOING, plaintiff respectfully requests that the Court enter an order:

(1)     Directing plaintiff to deposit the Disputed Funds into the Court's registry;

(2)     Upon plaintiff's deposit of the Disputed Funds into the Court's registry, releasing and discharging plaintiff from any and all liability to any defendant and any other interested persons and all those claiming through or acting with them, or claiming any interest, beneficial or legal, through such party or through others in the Disputed Funds;

(3)     Upon plaintiff's deposit of the Disputed Funds into the Court's registry, releasing and discharging the Vessel from any and all liability to any defendant and any other interested persons and all those claiming through or acting with them, or claiming any interest, beneficial or legal, through such party or through others in the Disputed Funds;

(4)     Requiring all parties and all other individuals or entities claiming a right to the Disputed Funds to appear and assert their respective claims to such Disputed Funds, if any;

(5)     Enjoining all parties and all other interested persons from instituting or pursuing any proceedings in any court, federal or state, domestic or foreign, against plaintiff for the recovery of such Disputed Funds, on account of any party's purported claims or rights to such Disputed Funds;

(6)     Enjoining all parties and all interested persons from instituting or pursuing any proceedings in any court, federal or state, domestic or foreign, affecting the property and res involved in this action of Interpleader, including but not limited to the arrest or attachment of the Vessel or any sister ship or associated ship, pursuant to Supplemental Admiralty Rule C, or other *in rem* or *quasi in rem* proceeding, to enforce any maritime and/or maritime lien claims until the further order of the Court;

(7)    If the Court deems it necessary, declaring that the automatic stay pursuant to section 362 of the Bankruptcy Code does not apply to this action of Interpleader; or modifying the stay, as appropriate, under section 362(d)(1), to permit this action to proceed; and

(8)    Granting plaintiff such other and further relief, at law or in equity, as may be just, including but not limited to its costs and attorneys' fees in this action.

Dated: Southport, Connecticut
      January 30, 2015

Respectfully submitted,

LENNON MURPHY CAULFIELD &
PHILLIPS, LLC

Patrick F.  Lennon (ct11950)
Tide Mill Landing
2425 Post Road, Suite 302
Southport CT 06890
Tel: 203-256-8600 / 203-255-5700
Fax: 203-256-8615 / 203-255-5702

HILL, BETTS & NASH LLP

By: _____
James D. Kleiner (ct00595)
(*pro hac vice* application pending)
One World Financial Center
200 Liberty Street, 26th Floor
New York, New York 10281
Telephone: (212) 839-7000
Facsimile: (212) 466-0514
Email: jkleiner@hillbetts.com
      mjaffe@hillbetts.com
*Attorneys for Plaintiff Silversea Cruises Ltd.*

# EXHIBIT A

| Purchase Order No.: 0034278 | | Revision: 0 |
|---|---|---|

SILVERSEA CRUISES LTD.
C/O FLEETPRO OCEAN INC (AS AGENTS ONLY)
ON BEHALF OF THE SHIPS OWNERS
4770 BISCAYNE BLVD,PH-A, MIAMI, FL 33137

**Fax:** 305-573-5177                    **Phone:** 305-573-6355 EXT
                                                       231

**Contact:** FLEETPRO-CODARCEA,        stelian.codarcea@fleetpro-
STELIAN                                 psm.com

**Tax Id:**

---

**Supplier:** O.W. BUNKER USA INC.                    **Ship To:**
2603 AUGUSTA DRIVE, SUITE 440
HOUSTON, TEXAS 77057
Houston, TX USA

**Phone:** +1 281 946 2300   **Fax:** +1 281 946 2301   **Phone:**           **Fax:**

**e-mail:** mrs@owbunker.com; hst@owbunker.com;   **e-mail:**
Houston@owbunker.com

**Contact:** HANS STAAL; MICHAEL BRUNOE-SOERENSEN   **Contact:**

**Vendor Ref.:** MICHAEL                              **Port:** CAIRNS

---

**Issue Date:** 10/29/2014   **Contract No.:**   **PO Type:** PO   **RFQ No.:** 0020662

**Account No.:** 663510   **Local Tax:** Exempt   **National Tax:** Subject   **Delivery By:** 11/03/2014

**FOB:**                                          **Ship Via:**

**Terms:**                                        **Invoice To:** SILVERSEA CRUISES LTD.
                                                  C/O FLEETPRO OCEAN INC (AS AGENTS ONLY)
                                                  ON BEHALF OF THE SHIPS OWNERS
                                                  4770 BISCAYNE BLVD,PH-A, MIAMI, FL 33137
                                                  ... X

                                                  **Phone:**           **e-mail:**

---

Remarks:  INV # 190-11145 // 124,861.82 USD // 144.516 MT DELIVERED //
=================================================

MGO 195 MT
LOCATION: CAIRNS - AUSTRALIA
DATE: NOV 03 2014
ETA: 07:30
ETD: 16:30

MUST NOTIFY/CORRELATE WITH BELOW LISTED SHIP'S AGENT
FOR DELIVERY IN DUE TIME

=================================================

TO: MASTER OF M/V SILVER DISCOVERER
INCHCAPE SHIPPING SERVICES
UNIT 1, 22 MARTYN STREET
CAIRNS, QUEENSLANLD
4870 AUSTRALIA
PH: + 617 4051 5211
FAX: + 617 4051 5082
EMAIL: CRUISEOPS.CAIRNS@ISS-SHIPPING.COM
CONTACT: TINA FLECKNOE
MOB: + 61 409 762 023

=================================================

QTY: 150 - 195 MT  (APPROX. 195MT - 234,000 LITRES)
PLEASE NOTE WE CAN ONLY DO 70 MT EVERY THREE HOURS PROVIDED THERE IS NO DELAYS
BASIS: DELIVERED TO VESSEL FLANGE
DELIVERY: VIA TRUCK
KIND REGARDS
O W BUNKER USA INC.
MICHAEL BRUNØ-SØRENSEN
(+1) 281-734-0127 CELL

---

**Terms &
Conditions:**   STATED TERMS & CONDITIONS ARE INCORPORATED IN THIS PURCHASE ORDER AND MADE PART THEREOF.

THE REQUESTED GOODS/SERVICES ARE FOR USE ON BOARD A FOREIGN FLAG VESSEL ENGAGED IN INTERNATIONAL
TRADE AND IS EXEMPT FROM FEDERAL, STATE AND LOCAL SALES, USE AND EXCISE TAXES OF ALL KINDS.

Purchase Order No.:   0034278                                                                   Revision: 0

MATERIAL SAFETY DATA SHEETS ( MSDS ) MUST ACCOMPANY ALL APPLICABLE PRODUCTS. FOR ORDERS CONSISTING OF 'HAZARDOUS GOODS', THE MATERIAL SAFETY DATA SHEETS 'MUST' BE SUPPLIED TOGETHER WITH: 'SHIPPERS DECLARATION' ( FOR AIR FREIGHT TRANSPORTS ) OR WITH 'DANGEROUS CARGO NOTE' ( FOR SEA FREIGHT TRANSPORTS ).

UPON DISPATCHING THE GOODS, THE VENDORS/SUPPLIERS, MUST NOTIFY THE CONSIGNEE AND FLEETPRO VIA E-MAIL, WITH COPIES OF SHIPPING DOCUMENTS INCLUDING BUT NOT LIMITED TO:
AIR WAY BILL/TRACKING NUMBER, COMMERCIAL/CUSTOMS INVOICE, PACKING LIST, MSDS'S IF APPLICABLE ETC.
CONSIGNING & SHIPPING INSTRUCTIONS, MUST BE FOLLOWED ACCORDINGLY.
VENDORS/SUPPLIERS ARE RESPONSIBLE FOR THE DELIVERY OF ORDERED GOODS TO THE RESPECTIVE CONSIGNEE AS PER INSTRUCTED IN THE PURCHASE ORDER.

"MUST" ADDRESS THE INVOICE AS PER LISTED IN THE PO'S 'INVOICE TO' FIELD ( BILLING DETAILS )  VESSEL NAME AND PO NUMBER MUST BE CLEARLY SPECIFIED ON THE INVOICE. PLEASE REMIT INVOICES TOGETHER WITH THE BACK-UP DOCUMENTS AS APPLICABLE ( EX. SHIPPING DOCS., DELIVERY NOTES/RECEIPTS, WORK REPORTS ETC. )

'ACCOUNTS PAYABLE' CONTACT:  TEL: 305-573-6355 EXT.252;

IF INVOICING 'ELECTRONICALLY': EACH INVOICE 'MUST BE SENT INDIVIDUALLY' ( A SEPARATE E-MAIL MESSAGE FOR EACH INVOICE REMITTANCE )
MUST ENSURE THAT THE 'SUBJECT FIELD' OF THE E-MAIL MESSAGE LISTS THE FOLLOWING: VESSEL NAME, PO NUMBER, INVOICE NUMBER.

MUST SEND INVOICE VIA E-MAIL TO: FPOINVOICES@FLEETPRO-PSM.COM .

FLEETPRO OCEAN INC. ON BEHALF OF THE OWNERS ( AS AGENTS ONLY )

| No. | Qty Unit | Description | | | Unit Price | Extended Price |
|---|---|---|---|---|---|---|
| | | SILVER DISCOVERER (SLD) | IMO No.:  8800195 | Hull No.: | | |
| | | 663510 FUEL OIL BUNKER [] ( 663510 FUEL OIL BUNKER ) | | | | |
| | | Model: | Type: | | | |
| | | Serial No.: | Size: | Year Made: | | |
| | | Req. No. : 0059698 | Proj. No.: | Dept.: OPEX - ENGINE | | |
| 1. | 195.00 MT | MGO // GLOBAL LIMIT SULPHURE LIMIT MAX 1.50 % | | | 864.0000 | 168,480.00 |
| | | 8271649 | MGO 1.5 % SULPHURE | | | |
| | | Account No.: 663510 FUEL AND DIESEL OIL | | Project No.: | | |

|  | |
|---|---|
| Item Subtotal: | 168,480.00 |
| Local Tax: | 0.00 |
| National Tax / VAT: | 0.00 |
| Freight: | 0.00 |
| Discount (0.00% except as otherwise noted): | 0.00 |
| Total Cost: | 168,480.00 |

Currency:   USD
PO Created: 10/29/2014
Confirming: STELIAN
ISSUED BY FLEETPRO-CODARCEA, STELIAN 305-573-6355
EXT 231

Purchasing Authority:_____

# EXHIBIT B

# MARINE

CALTEX  AUSTRALIA

**Bunker Delivery Note**   Caltex Marine Products

Caltex Australia Petroleum Pty Ltd ABN 17 000 032 128
GPO Box 3916, Sydney NSW 2001
Telephone +61 2 9668 1536     Facsimile +61 2 8870 1774     Email: marine@caltex.com.au

BDN Number: 005135

| | |
|---|---|
| Vessel Name | SILVER DISCOVERER |
| IMO Number | 7800195 |
| Customer Name | |
| Customer Number | 131215 |
| Port | TRINITY CNS |
| Berth | #2/3 |

| **Completion Date** | |
|---|---|
| Commencement Date | 3/11/14 |
| Meter Ticket Number | 96175232 |
| CALTEX ORDER NUMBER | 1451/540 |
| Meter/Time | Start 0645  Finish 1150 |
| Time Alongside | 0800 |
| Normal Time worked | |

**Delivery Method**

| | |
|---|---|
| Barge Name | |
| Barge Voyage Number | |
| Ex-pipe Terminal | |
| Supply Point/Tank No./Batch No. | |
| Road Truck Wagon | COD04 |

**Barge Surcharge**
(As per schedule. Overtime hours beyond 8.00am to 5.00pm – also weekends and Public Holidays)

| Date | Number of Crew Employed | From | To |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

| Sample No | Fuel Oil | MDO/MGO | Other |
|---|---|---|---|
| Vessel | | | |
| MARPOL | | | |
| Caltex Sample 1 | 119147 | | |
| Caltex Sample 2 | 119156 | | |

| Specification | Units | Fuel Oil | MGO/Diesel |
|---|---|---|---|
| Product Grade | | | |
| Viscosity @ 50°C | CSt | | Max 4.5@40°C |
| Sulphur | % m/m | | 10 max mg/kg |
| Pour Point | °C | | . |
| Flash Point | °C | | Min 64°C |
| Aluminium / Silicon | mg/kg | | |

| Specification | Units | Fuel Oil | MGO |
|---|---|---|---|
| Water Content | % Vol | | |
| Observed Temperature | °C | | 27 |
| Density @ 15°C | Kg/m3 | | 837 |
| Measured Litres | Litres | | 33002 |
| Standard Litres | @ 15°C | | 32667 |
| **METRIC TONNES DELIVERED MT** | | | |

Chief Engineer invited to witness dips, temperatures and sampling?   (Accepted) Declined

Failure by customer to witness barge soundings/dips/ullages may adversely affect the customer's ability in substantiating quantity claims.

Notice of Protest Issued?     Yes / No

Reason:

**For Caltex Marine Products**

The above quantity is delivered in good order and condition for use as bunkers, together with a representative sample in relation to the International Convention for the Prevention of Pollution from Ships 1973/8 Consolidated Edition,1997 the fuel oil supplied is hereby certified to be in conformity with regulation 14 (1) of Annex VI (less than 4.5 % sulphur content).4 (a) if applicable (less than 1.5% sulphur content for use in SECA) and regulation 18. I)namely to be of acceptable specification. Signed:

Signature of Caltex Representative

Jesse Ohha
Name in Block Letters

QLD 4870
60 Draper St, Portsmith
Phone: (07) 4051 1455
Fax: (07) 4031 1214
Stamp

For vessel representative – foreign going (VAT Free/ GST Free / Duty Free) I certify that the goods are required for the use as stores on the above named ship that is entitled, for the voyage in question, to receive stores free of Customs & Excise duties.

Yes / No

For vessel representative – received above quantity in good order with a sealed representative sample.

Signature of Captain / Chief Engineer

Sergei
Name in block letters

Cairns
Next port of call

Stamp

All our bunker deliveries are subject to Caltex Term of Sale (Marine Marketing.) which customer acknowledges having received.

Original Form – Caltex        Pink – Caltex        Green – Ship        Blue – Caltex Carrier

# MARINE

CALTEX AUSTRALIA

**Bunker Delivery Note**      Caltex Marine Products

Caltex Australia Petroleum Pty Ltd ABN 17 000 032 128
GPO Box 3916, Sydney NSW 2001
Telephone +61 2 9668 1536      Facsimile +61 2 8870 1774      Email: marine@caltex.com.au

**BDN Number:** 005136

| Vessel Name | SILVER DISCOVERER | | **Completion Date** | | |
|---|---|---|---|---|---|
| IMO Number | 8400195 | | Commencement Date | 3 / 11 / 14 | |
| Customer Name | | | Meter Ticket Number | 80175130 | |
| Customer Number | 131215 | | **CALTEX ORDER NUMBER** | | |
| Port | CNS | | Meter/Time | Start: 1000   Finish 1315 | |
| Berth | TRINITY 2/3 | | Time Alongside | 1145 | |
| **Delivery Method** | | | Normal Time worked | | |

| **Delivery Method** | |
|---|---|
| Barge Name | |
| Barge Voyage Number | |
| Ex-pipe Terminal | |
| Supply Point/Tank No./Batch No. | |
| Road Truck Wagon | 4H1 MAIN |

**Barge Surcharge**
(As per schedule. Overtime hours beyond 8.00am to 5.00pm – also weekends and Public Holidays)

| | Date | Number of Crew Employed | From | To |
|---|---|---|---|---|
| | | | | |
| | | | | |

| Sample No | Fuel Oil | MDO/MGO | Other |
|---|---|---|---|
| Vessel | | | |
| MARPOL | | | |
| Caltex Sample 1 | 1119147 | | |
| Caltex Sample 2 | 1119156 | | |

| Specification | Units | Fuel Oil | MGO/Diesel | Specification | Units | Fuel Oil | MGO |
|---|---|---|---|---|---|---|---|
| Product Grade | | | | Water Content | % Vol | | |
| Viscosity @ 50°C | CSt | | Max 4.5@40°C | Observed Temperature | °C | | |
| Sulphur | % m/m | | 10 max mg/kg | Density @ 15°C | Kg/m3 | | 28 |
| Pour Point | °C | | ■ | Measured Litres | Litres | | 837 |
| Flash Point | °C | | Min 64°C | Standard Litres | @ 15°C | | 36002 |
| Aluminium / Silicon | mg/kg | | | **METRIC TONNES DELIVERED MT** | | | 35614 |

| Chief Engineer invited to witness dips, temperatures and sampling? | Accepted / Declined | Notice of Protest Issued?      Yes / No |
|---|---|---|
| Failure by customer to witness barge soundings/dips/ullages may adversely affect the customer's ability in substantiating quantity claims. | | Reason: |

**For Caltex Marine Products**

The above quantity is delivered in good order and condition for use as bunkers, together with a representative sample. In relation to the International 1970 Convention for the Prevention of Pollution from Ships 1973/8 Consolidated Edition,1997 the fuel oil supplied is hereby certified to be in conformity with regulation 14 (1) of Annex VI (less than 4.5 % sulphur content).4 (a) if applicable (less than 1.5% sulphur content) (to use in SECA and regulation 18 )namely to be of acceptable specification. Signed:

CALTEX ENERGY QLD
Phone: (07) 4051 1455
Fax: (07) 4031 1214

Signature of Caltex Representative         Name in Block Letters  J. O'HARA      Stamp

For vessel representative – foreign going (VAT Free/ GST Free / Duty Free) I certify that the goods are required for the use as stores on the above named ship that is entitled, for the voyage in question, to receive stores free of Customs & Excise duties.

Yes / No

For vessel representative – received above quantity in good order with a sealed representative sample.

SERGEI                          LOU PAUL

Signature of Captain / Chief Engineer      Name in block letters      Next port of call      Stamp

All our bunker deliveries are subject to Caltex Term of Sale (Marine Marketing.) which customer acknowledges having received.

| Original Form – Caltex | Pink – Caltex | Green – Ship | Blue – Caltex Carrier |
|---|---|---|---|

# MARINE
CALTEX  AUSTRALIA

**Bunker Delivery Note** — Caltex Marine Products

Caltex Australia Petroleum Pty Ltd ABN 17 000 032 128
GPO Box 3916, Sydney NSW 2001
Telephone +61 2 9668 1536      Facsimile +61 2 8670 1774      Email: marine@caltex.com.au

BDN Number: 005137

| Vessel Name | SILVER DISCOVERER |
| IMO Number | 8400195 |
| Customer Name | |
| Customer Number | 131715 |
| Port | (N) |
| Berth | TRINITY 2/3 |

| **Delivery Method** | |
| Barge Name | |
| Barge Voyage Number | |
| Ex-pipe Terminal | |
| Supply Point/Tank No./Batch No. | |
| Road Truck Wagon | COD04 |

| **Completion Date** | |
|---|---|
| Commencement Date | 3/11/14 |
| Meter Ticket Number | 8101751133 |
| **CALTEX ORDER NUMBER** | |
| Meter/Time | Start: 1230   Finish 1430 |
| Time Alongside | 1320 |
| Normal Time worked | |

**Barge Surcharge**
(As per schedule. Overtime hours beyond 8.00am to 5.00pm – also weekends and Public Holidays)

| Date | Number of Crew Employed | From | To |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

| Sample No | Fuel Oil | MDO/MGO | Other |
|---|---|---|---|
| Vessel | | | |
| MARPOL | | | |
| Caltex Sample 1 | 1119147 | | |
| Caltex Sample 2 | 1119156 | | |

| Specification | Units | Fuel Oil | MGO/Diesel | Specification | Units | Fuel Oil | MGO |
|---|---|---|---|---|---|---|---|
| Product Grade | | | | Water Content | % Vol | | |
| Viscosity @ 50°C | CSt | | Max 4.5@40°C | Observed Temperature | °C | | 32 |
| Sulphur | % m/m | | 10 max mg/kg | Density @ 15°C | Kg/m3 | | 857 |
| Pour Point | °C | | ▪ | Measured Litres | Litres | | 33002 |
| Flash Point | °C | | Min 64°C | Standard Litres | @ 15°C | | 32585 |
| Aluminium / Silicon | mg/kg | | | **METRIC TONNES DELIVERED MT** | | | |

| Chief Engineer invited to witness dips, temperatures and sampling? | Accepted / Declined | Notice of Protest Issued?   Yes / No |
|---|---|---|
| Failure by customer to witness barge soundings/dips/ullages may adversely affect the customer's ability in substantiating quantity claims. | | Reason: |

**For Caltex Marine Products**

The above quantity is delivered in good order and condition for use as bunkers, together with a representative sample in relation to the International Convention for the Prevention of Pollution from Ships 1973/8 Consolidated Edition,1997 the fuel oil supplied is hereby certified to be in conformity with regulation 14 (1) of Annex VI (less than 4.5 % sulphur content).4 (a) if applicable (less than 1.5% sulphur content) (as of ISPS24 and regulation 18 (1)namely to be of acceptable specification Signed:

Signature of Caltex Representative

J. NOHARA

Name in Block Letters

60 Draper St, Portsmith
Phone: (07) 4051 1455
Fax: (07) 4031 1214
Stamp

For vessel representative – foreign going (VAT Free/ GST Free / Duty Free) I certify that the goods are required for the use as stores on the above named ship that is entitled, for the voyage in question, to receive stores free of Customs & Excise duties.

Yes / No

For vessel representative – received above quantity in good order with a sealed representative sample.

| Signature of Captain / Chief Engineer | SERGEI | COUTAL | Stamp |
|---|---|---|---|
| | Name in block letters | Next port of call | |

All our bunker deliveries are subject to Caltex Term of Sale (Marine Marketing.) which customer acknowledges having received.

| Original Form – Caltex | Pink – Caltex | Green – Ship | Blue – Caltex Carrier |

# MARINE
CALTEX **AUSTRALIA**

**Bunker Delivery Note**   Caltex Marine Products

Caltex Australia Petroleum Pty Ltd ABN 17 000 032 128
GPO Box 3916, Sydney NSW 2001
Telephone +61 2 9666 1536     Facsimile +61 2 8870 1774     Email: marine@caltex.com.au

BDN Number: 005138

| | |
|---|---|
| Vessel Name | |
| IMO Number | SILVER DISCOVERER |
| Customer Name | |
| Customer Number | 131215 |
| Port | CAIRNS |
| Berth | TRINITY #2 +3 |
| Delivery Method | |
| Barge Name | |
| Barge Voyage Number | |
| Ex-pipe Terminal | |
| Supply Point/Tank No./Batch No. | |
| Road Truck Wagon | 411 MBW |

| | |
|---|---|
| **Completion Date** | 3-11-14 |
| Commencement Date | 3-11-14 |
| Meter Ticket Number | 80175 112G |
| **CALTEX ORDER NUMBER** | |
| Meter/Time | Start: 1300    Finish 1600 |
| Time Alongside | 1430 |
| Normal Time worked | |

**Barge Surcharge**
(As per schedule. Overtime hours beyond 8.00am to 5.00pm – also weekends and Public Holidays)

| Date | Number of Crew Employed | From | To |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

| Sample No | Fuel Oil | MDO/MGO | Other |
|---|---|---|---|
| Vessel | | | |
| MARPOL | | | |
| Caltex Sample 1 | | | |
| Caltex Sample 2 | | | |

| Specification | Units | Fuel Oil | MGO/Diesel | Specification | Units | Fuel Oil | MGO |
|---|---|---|---|---|---|---|---|
| Product Grade | | | | Water Content | % Vol | | |
| Viscosity @ 50°C | CSt | | Max 4.5@40°C | Observed Temperature | °C | | 243 |
| Sulphur | % m/m | | 10 max mg/kg | Density @ 15°C | Kg/m3 | | .832 |
| Pour Point | °C | | | Measured Litres | Litres | | 36404 |
| Flash Point | °C | | Min 64°C | Standard Litres | @ 15°C | | 35951 |
| Aluminium / Silicon | mg/kg | | | **METRIC TONNES DELIVERED MT** | | | |

Chief Engineer invited to witness dips, temperatures and sampling?     (Accepted) / Declined

Failure by customer to witness barge soundings/dips/ullages may adversely affect the customer's ability in substantiating quantity claims.

Notice of Protest Issued?     (Yes) No

Reason:

**For Caltex Marine Products**
The above quantity is delivered in good order and condition for use as bunkers, together with a representative sample. In relation to the International Convention for the Prevention of Pollution from Ships 1973/8 Consolidated Edition,1997 the fuel oil supplied is hereby certified to be in conformity with 14 (1) of Annex VI (less than 4.5 % sulphur content).4 (a) if applicable (less than 1.5% sulphur content for use in SECA) and regulation 14 (1)namely to be of acceptable specification. Signed:

Signature of Caltex Representative

CHRIS TRACE
Name in Block Letters     Stamp

For vessel representative – foreign going (VAT Free/ GST Free / Duty Free) I certify that the goods are required for the use as stores on the above named ship that is entitled, for the voyage in question, to receive stores free of Customs & Excise duties.

Yes / No

For vessel representative – received above quantity in good order with a sealed representative sample.

Signature of Captain / Chief Engineer

SERGE
Name in block letters

Next port of call     Stamp

All our bunker deliveries are subject to Caltex Term of Sale (Marine Marketing.) which customer acknowledges having received.

Original Form – Caltex          Pink – Caltex          Green – Ship          Blue – Caltex Carrier

# EXHIBIT C



M/V  SILVER DISCOVERER
AND/OR OWNERS/CHARTERERS

Silversea Cruises Ltd
c/o. FleetPro Ocean Inc. ( As agents only )
On behalf of the shipowners
4770 Biscayne Blvd Miami
Miami, 33137
United States

| | |
|---|---|
| DATE OF INVOICE : | 03. November 2014 |
| INVOICE NO : | 190-11145 |
| ORDER NO. : | 190-10992 |
| DATE OF SUPPLY : | 03. November 2014 |
| DUE DATE : | 03. December 2014 |

PORT: CAIRNS
YOUR REFERENCE: PO 0034278

| Quantity supplied | Quality/description | Price/per | Invoice amount |
|---|---|---|---|
| 144,516  MT | Gasoil 0,1% | 864,00  MT | 124.861,82 |

| | | | |
|---|---|---|---|
| Your VAT No. | | VAT Amount | USD | 0,00 |
| Our VAT No. | 99-0373556 | Total | USD | 124.861,82 |

The prices are excl. all taxes and/or other fees.

**TERMS OF PAYMENT** 30 days from date of delivery With value date not later than DUE DATE or previous working day
when it is a holiday. In case of delays in payment interest will be charged in accordance with our valid General Terms and Conditions

| | |
|---|---|
| **BANK:** | ING Bank N.V. |
| **ACCOUNT:** | IBAN: NL26 INGB 0020 1180 31 |
| | IBAN: NL10 INGB 0651 3696 81 |
| | SWIFT: INGBNL2A |

USD and all other currencies
EUR

**O.W. BUNKER USA INC.**
2603 Augusta Drive
Suite 440
USA-TX 77057 Houston

Phone: +1 281 946 2300
Fax: +1 281 946 2301

Internet: http://www.owbunker.com

EIN: 99-0373556

Per telegraphic transfer directly to our account without deduction
of bank charges which are for buyers account.

# EXHIBIT D

755.cc1

## pwc  ING

### NOTICE OF APPOINTMENT OF RECEIVERS AND ASSIGNMENT

To: Silversea Cruises Ltd

Ft. Lauderdale

19 November 2014

Dear Sirs,

**English Omnibus Security Agreement dated 19 December 2013 between O.W. Bunker Trading A/S and certain of its subsidiaries (as Chargors) and ING Bank N.V. as Security Agent (the Security Agreement)**

*Appointment of Receivers*

1.     Please be informed that Paul David Copley, Ian David Green and Anthony Victor Lomas, each of PricewaterhouseCoopers LLP, 7 More London Riverside, London, SE1 2RT United Kingdom (the Receivers) were appointed as joint receivers of the Security Assets (as defined in the Security Agreement) on 12 November 2014.

*Assignment*

2.     We refer to any notice(s) invoices or confirmations received by you pursuant to the Security Agreement (the Notices) under which you have been given notice that the relevant chargor or chargors as the case may be (the Chargor), has assigned by way of security to ING Bank N.V. (the Security Agent) all its rights in respect of all supply contracts with you as may be constituted or supplemented by the OWB general terms and conditions as provided to you and as amended, restated or supplemented from time to time (the Contracts), including without limitation the following unpaid invoices under the supply contracts as listed in schedule 1 to this letter.

3.     This letter also constitutes notice to you that under the Security Agreement the relevant Chargor has assigned by way of security to the Security Agent all its rights in respect of the Contracts.

4.     You must pay all amounts payable under any invoice issued in respect of the Contracts to the account with ING Bank N.V. specified in that invoice.

5.     Any amendment to these payment instructions may not be made without the express written consent of the Security Agent. Any payment by you to an account with ING Bank N.V. specified in an invoice will extinguish the corresponding payment obligation to the relevant Chargor in respect of that particular invoice under the relevant Contract.

6.     **Please note that any payment by you which is not made in full compliance with the payment instructions in this notice will NOT extinguish the relevant payment obligation to the relevant Chargor in respect of invoices under the relevant Contract and you will remain fully liable for all amounts outstanding.**

*Miscellaneous*

7.      The relevant Chargor:

   (a)    remains liable under the Contracts to perform all obligations assumed by it under the Contracts; and

   (b)    none of the Security Agent, its agents, the Receivers or any other person will at any time be under any obligation or liability to you under or in respect of the Contracts.

8.      Notwithstanding that the accounts specified in an invoice are held in the name of a Chargor (as an administrative matter), the underlying receivables are being collected by the Security Agent and any payment to any such account therefore constitutes a payment to the Security Agent and does not constitute a payment to that Chargor.

9.      All rights, powers and discretions of the relevant Chargor under the Contracts are now exercisable by, and notices must be given to, ING Bank N.V. or as it directs.

10.     This letter and any non-contractual obligations arising out of or in connection with it are governed by English law.

Please acknowledge receipt of this letter as a matter of urgency by signing the acknowledgement and sending a copy of the signed letter back to the Security Agent at ING Bank N.V., Bijlmerplein 888, 1102 MG Amsterdam, The Netherlands (Loc.code: AMP N 04 046) Attention: Agency Desk – Ops IT Banking Wholesale Lending Operations Agency.

If you have any questions in relation to this letter please contact Alina Klarner at PricewaterhouseCoopers LLP on +447922226044 or alina.klarner@uk.pwc.com.

Yours faithfully,

**SIGNED by Paul David Copley for and on behalf of the Chargor as the Chargor's agent and without personal liability pursuant to powers granted in the Security Agreement including the power contained in Clause 17 (Power of Attorney) of the Security Agreement.**

......................................

Signed by ING Bank N.V. (in its capacity as Security Agent) for and on behalf of the Chargor pursuant to the powers granted in the Security Agreement including the power contained in Clause 17 (Power of Attorney) of the Security Agreement.

We hereby acknowledge the terms set out above:

......................................

Silversea Cruises Ltd