# JAGER SMITH P.C.

COUNSELORS AT LAW

| | |
|---|---|
| ONE FINANCIAL CENTER | 900 THIRD AVENUE |
| FOURTH FLOOR | THIRTEENTH FLOOR |
| BOSTON, MA  02111 | NEW YORK, NY 10022 |
| telephone 617 951 0500 | telephone 212 683 3520 |

FRANCIS G. CONRAD

REPLY TO BOSTON OFFICE

WRITER'S EMAIL:  fconrad@jagersmith.com
WRITER'S FACSIMILE:  617 951 2414

February 13, 2015

Richard G. Placey, Esq.
Montgomery, McCraken, Walker & Rhoads LLP
1105 N. Market St., 15th Floor
Wilmington, DE 19801

Re:    In re O.W. Bunker Holding North America, Inc. *et al.*
       Case No. 14-51720

Dear Mr. Placey:

Montgomery, McCraken, Walker & Rhoads LLP ("Counsel"), on behalf of its clients O.W. Bunker Holdings North America, Inc. and its affiliated debtors (the "Debtors"), engaged me and Jager Smith P.C. ("Expert") as its expert in connection with the Debtors' above referenced bankruptcy case pending in the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Proceeding").  Specifically, in connection with the *Joint Motion of the Debtors and the Official Committee of Unsecured Creditors for Transfer of Venue of Cases to United States Bankruptcy Court for the Southern District of New York Pursuant to 28 U.S.C. § 1412 and Rule 1014(a)(1) of the Federal Rules of Bankruptcy Procedure* (the "Venue Motion"), I have been asked to opine on the issue of whether it would be more cost-effective and resource-efficient to transfer venue of the Bankruptcy Proceeding to the Southern District of New York, where numerous maritime actions concerning claims relating to the Debtors' transactions in marine fuel oil (the "Maritime Actions") are  pending currently.

The following constitutes my expert opinion regarding the questions and issues presented to me.

   **I.   Qualifications of Expert**

Specific to my opinion today, I am a Certified Insolvency & Restructuring Advisor and have been retained in that role as a financial advisor, trustee, fee examiner, plan administrator to

Richard G. Placey, Esq.
February 13, 2015
Page 2

debtors' large and small, adviser to creditors' committees, and as an expert on various topics related to bankruptcy both domestically and internationally. My opinion today is limited solely to the question of the efficiency and cost effectiveness of transferring the Bankruptcy Proceeding pending before the United States Bankruptcy Court for the District of Connecticut to the Southern District of New York.

I am an Adjunct Professor in the LL.M. Program in Bankruptcy at St. John's University School of Law in New York City and the M.B.A. Program at Adelphi University School of Business in Garden City, New York, and have been a professor at the American University of Bulgaria, where I taught international, US and EU law. I also maintain an accounting and consulting practice that is restricted specifically to financial and tax advice/consulting on bankruptcy, insolvency and business management matters. I am a Certified Public Accountant in the States of New York and Vermont (inactive).

I also maintain an Arbitration and Mediation Service that accepts only financial matters in dispute.

The dollar value of all case matters I have worked on ranges from small dollar cases to billions of dollars.

I am of counsel to Jager Smith P.C. ("Jager Smith"). Prior to joining Jager Smith, I served for 14 years as a United States Bankruptcy Judge for the United States Bankruptcy Court for the District of Vermont (1985-1999) and, during that time, served as a judge by designation in the Southern District of New York for the period of 1990 to 1997, the Eastern District of New York for the period of 1988 to 1999, the Northern District of Indiana for the period of 1986 to 1998, the Central District of California during the year 1987, the District of Colorado for the period of 1988 to 1990, as well as in the District of Maryland, District of Columbia, the Southern District of Florida and the Northern District of New York on various dates. I also served as a member of the Bankruptcy Appellate Panel Service for the Second Circuit for the period of its existence from 1997-1999.

I am admitted to the practice of law in the State of New York and Vermont (inactive), the Commonwealth of Massachusetts, the Supreme Court of the United States, the Second Circuit Court of Appeals, the United States Tax Court, and various federal district courts of the United States.

I express no legal opinion related to the transfer of venue to the Southern District of New York.

A copy of my full *curriculum vitae* is annexed hereto as <u>Exhibit A</u>, along with exhibits related to publications and expert testimony.

Richard G. Placey, Esq.
February 13, 2015
Page 3

## II. Sources of Authority Relied Upon

In preparing this report, I have drawn on my years of experience handling complex cases as a bankruptcy judge and as a financial advisor and consultant. I have reviewed certain documents and pleadings from both the Bankruptcy Proceeding and the Maritime Actions, including but not limited to:

(i) The Venue Motion [Docket No. 229];

(ii) *Statement of Clearlake Shipping PTE, Ltd. in Support of the Joint Motion of the Debtors and the Official Committee of Unsecured Creditors for Transfer of Venue* [Docket No. 236];

(iii) the *Objection to Joint Motion of the Debtors and the Official Committee of Unsecured Creditors for Transfer of Venue of Cases to United States Bankruptcy Court for the Southern District of New York Pursuant to 28 U.S.C. § 1412 and Rule 1014(A)(1) of the Federal Rules of Bankruptcy Procedure* [Docket No. 255];

(iv) the *Complaint for Interpleader* and a transcript of the December 18, 2014 hearing before Judge Caproni in the civil action styled as *Clearlake Shipping PTE LTD v. O.W. Bunker (Switzerland) SA et al.*, Case No. 14-9286 (S.D.N.Y.);

(v) the *Original Answer and Verified Claim* filed by O.W. Bunker USA, Inc. and affiliates in the civil action styled as *UPT Pool, Ltd., v. Dynamic Oil Trading (Singapore) Pte, Ltd. et al.*, Case No. 14-9262 (S.D.N.Y.);

(vi) The *Complaint* filed by the Debtors in the adversary proceeding styled as *O.W. Bunker Holding North America, Inc. et al. v. ING Bank, N.V.*, Adv. Pro. No. 14-05063 (Bankr. D. Conn.) (the "ING Adversary Proceeding");

(vii) A listing of interpleader actions found in <u>Exhibit A</u> to the *Memorandum of Law* [Docket No 71] filed on February 4, 2015 by the Debtors in the civil action styled as *SHV Gas Supply & Risk Mgmt. SAS v. OW Bunker USA, Inc. et al.*, Case No. 14-09720 (S.D.N.Y.). It is not known by me if other interpleader actions have been filed since the filed date of Debtors' brief; and

(viii) *Manual for Complex Litigation, Federal Judicial Center, 2004.*

## III. Summary Conclusion

It would be administratively and financially efficient and benefit the creditors of the Debtors' estates if the Bankruptcy Proceeding pending in the Bankruptcy court for the District of Connecticut was transferred to the Southern District of New York.

Richard G. Placey, Esq.
February 13, 2015
Page 4

### IV. Opinion

It is a given in litigation case management, not just bankruptcy, that having cases under the control of one judge (*e.g.*, multi-district litigation ("MDL") cases and consolidated cases in bankruptcy) make for more efficient administration of cases. One of the main goals of bankruptcy is to create a dividend for unsecured creditors. Actual facts and anecdotal evidence tell a story that bankruptcy is expensive and many people (including bankruptcy judges) rail against high administrative costs in bankruptcy cases. But, in comparison to M&A costs, administrative costs in bankruptcy are a bargain. When parties are exercising their legal rights upon debtor's corpse, every action of these creditors reduces the amount that can be paid toward a dividend.

This case cries out for consolidation in one judicial district. The question is, "Where?" I have no legal opinion on the ultimate venue. But, there is an economic gloss on this case that favors sending the Bankruptcy Proceeding to the Southern District of New York.

The economic gloss is the Maritime Actions now pending before District Judge Caproni in the Southern District of New York. Depending on the outcome of these Maritime Actions, the Debtors' estates are either enhanced or reduced. These Maritime Actions are vigorously contested. The choice of venue under the Debtors' agreements involved in these actions is New York. It is not for me to opine nor do I know why New York was chosen as the venue by the interpleaders but that is the choice by apparent agreement.

It is my opinion based upon my experience, if the parties to the New York venue agreements are forced to go to a place they did not choose, like Connecticut. the result will be long and protracted jurisdictional litigation. Ultimately there will be a winner in these disputes, but there is a guaranteed loser, and that is the bankruptcy estate. Jurisdictional disputes almost never add value to a bankruptcy estate. They just suck out of the grounded hull of a debtor's estate money that can go toward paying dividends. Jurisdictional certainty will make it more attractive for other ship owners to filed interpleader actions in a consolidated district.

The ING Adversary Proceeding, in which the Debtors have asserted claims to avoid a preference against ING, is an example why this Bankruptcy Proceeding and the Maritime Actions should be heard in a single venue. This preference action allegation is asserted in many of the Maritime Actions and should be heard by the same judge to reduce the possibility of inconsistent rulings and the costs of trying similar facts in different actions. In my experience, I have seen a district judge withdraw the reference from the bankruptcy judge, refer back to the bankruptcy judge matters within his or her jurisdiction, and then supervise the case and expedite appeals. In some matters the courts hold a joint hearing or trial in order to eliminate jurisdictional issues and appeals of same. This procedure is almost always cost-effective.

With the Bankruptcy Proceeding and Maritime Actions consolidated in one district, the district judge would be in a position to further expedite these cases by entering a case

Richard G. Placey, Esq.
February 13, 2015
Page 5

management order similar to what is recommended in many complex cases. In fact, many cases today use case management orders to increase efficiency of the litigation. A good case management order saves money and administrative expenses, and reduces some of the scheduling conflicts of lawyers, which in turn expedites the conclusion of a bankruptcy case. In my experience, the faster a case exits bankruptcy the greater the dividend for creditors.

There are also automatic stay issues which could be expedited by consolidating the Bankruptcy Proceeding and Maritime Actions in one jurisdiction. Having all matters in one district would save the estate money that would be spent on litigation, thus preserving funds for creditors.

Finally, I have little or no expertise in admiralty law, but reading the transcript of a hearing held before District Judge Caproni in December 2014 tells me that the Maritime Actions will be complex matters. Consolidation of all matters similar to that done pursuant to an MDL order would reduce expenses to the estate. Consolidated proceedings eliminate overlap and duplication of effort, and save the estate money.

## V. Compensation

My compensation for the preparation of this expert report will be determined upon appropriate application to the Bankruptcy Court under Title 11 of the United States Code and the Federal Rules of Bankruptcy Procedure.

## VI. Conclusion

In my expert opinion, transferring the Bankruptcy Proceeding to the Southern District of New York will increase the efficiency of estate administration and possibly increase the amount of dividends available for creditors.

Very truly yours,

/S/ Francis G. Conrad

Francis G. Conrad

# FRANCIS G. CONRAD
## Exhibit A

| | |
|---|---|
| PO Box 68, Huletts Landing, NY 12841 - 0068 | PO Box 80, Point Lookout, N.Y.11569 |
| (O) (802) 683 9555 | (O) (516) 835 2287 |

Fconrad@vermontel.net
Fax (810) 815 2441)
Skype (802 342.4244)

___

### EXPERIENCE

**1999 - Present**  **Adjunct Professor, St. John's University law school** LLM program in bankruptcy.

**2002 – Present**  **Business Strategy Advisors of Vermont (BSA) and Cross-Continental Arbitration and Mediation Services. (C-CAMS)**
Principal in this multi-disciplinary practice firm that provides strategic services to lawyers, accountants, courts, foreign governments, startup and troubled companies, including CRO and Director Services. Bankruptcy, debtor/ creditor representation, asbestos and commercial arbitration, mediation and trust representation, and multinational case representation, restructuring and turnarounds, and forensic investigations.

**2002 – Present**  **Jager Smith PC, Boston, MA, of counsel.**   International representation in Insolvency and arbitration.

**2005 – 2013**  **Weiser LLP, and Bederson and Company, LLP, Certified Public Accountants.**
Partner in the bankruptcy restructuring groups providing debtor and creditor financial advisor representation and expert testimony.

**1999 - 2002**  **Director - PricewaterhouseCoopers, LLP, Business Regeneration Group**
Performed bankruptcy consulting services, risk management, and educational programs to staff and Served as the U.S. liaison for cross-border bankruptcies.

**1985 - 1999**  **United States Bankruptcy Judge for the District of Vermont**
Bankruptcy Appellate Panel Judge (1996-1999).Served in the Southern and Eastern Districts of New York, 1988-1999.
Extensive work overseas facilitating the privatisation and modernization of economies and drafting and revising debtor-creditor/insolvency laws including Albania, Bulgaria, China, Croatia, Lithuania, Philippines, Romania, Russia, Thailand, and Ukraine. Continued this work with PwC and BSA.

**1967 - Present**  **Law School and College Professor**
Full-time (1973-1982) and adjunct faculty at several colleges and universities in New York and New England. Specifically teaching finance, accounting, business law, management and ethics.

**1978 - 1985**  **Attorney at Law**
Partner, Law Offices of Dick, Hackel & Hull, Rutland, Vermont. (1979-1985).
Practice areas included taxation; commercial acquisitions; sales; malpractice defense and bankruptcy.
Deputy County Attorney and Public Defender for Putnam County, New York (1978-1979).

**1970 - 1985**  **Certified Public Accountant**
Senior Accountant, Peat, Marwick, Mitchell & Co. (KMPG) (1970-1974).
Self Employed (1974-1985). Practice areas included federal taxation of Americans overseas; not for profits; restructurings; and small business organisations.
Tax Editor for Research Institute of America.
Chairperson of Vermont State Board of Accountancy (1980-1988).

**1968 - 1970**  **United States Army**

### EDUCATION

**1977**  **Fordham Law School -** J.D.
**1972**  **John G. Hagan Graduate School of Business** - M.B.A., financial management
**1967**  **Manhattan College** -B B.A., accounting and economics

### PROFESSIONAL CERTIFICATIONS AND ASSOCIATIONS

**1978 - Present**  Member of Bar:  New York, Massachusetts, Vermont, Supreme Court of the United States, several Federal Courts, Tax Court and the 2nd Circuit Court of Appeals.

**1972 – present**  Certified Public Accountant; Certified Insolvency and Restructuring Adviser, and Certified Fraud Examiner.
Significant professional activity and Chairmanships in several professional organizations.
Significant professional speaking engagements and publications

### OTHER RELEVANT EXPERIENCE

Labor Negotiator (1973-1982).
CEO of dot.com startup (1999-2002).
Prefect (full time) for emotionally disturbed and criminally involved juveniles (1963-1967) (1970).
Teacher in the Vermont Prison School (1997- 98).
Fire fighter; Emergency Medical Technician; Fire and EMT Instructor (1970 - present).
Published Poet.

# List of publications since 1993
## Exhibit B

**Work in Progress:**

"**How does a person become an appointed Chapter 7 Trustee,**" and "**Conducting Corporate Investigations in this Era of Low expectations.**" "**Proofs of Claim in a Chapter 15.**"Some of these titles may change as the research and writing is performed.

"**Speeding up Arbitrations,**" which will be published in the Journal of Dispute Resolution of the American Bar Association? Date unknown.

**Tax Services:**

    **Editor Research Institute of America, New York State Tax Volume,** 1972 - 79.

    **Editor Research Institute of America, Vermont State Tax Volume,** 1980 - 85.

**Bankruptcy Treatise:**

    **Norton's Treatise on Bankruptcy Law, West Publishing:**
    **Contributing editor to the sections and supplements on Executory Contracts and Professional Retention,** 1994 – 2004.

**Book Chapters:**

"**Turnaround Management,**" University of Michigan press, two chapters on bankruptcy. 2003.

"**Bankruptcy Litigation**" **Chapter 35,** Financial Services Handbook, Wiley, Fall 2001.

Contributed to the Federal Judicial Center publications on "**Jury Trials in Bankruptcy,**" "**Intercircuit Assignments,**" "**Pre-Trial and Complex Case Management**" and "**Case Management for Bankruptcy Judges,**" 1985 – 1999.

**Articles:**
    Presented paper and speech on Mediator Selection to the Turnaround Management Association and Credit Institute of New York, January, 2014

    Present article on Mexican law at ABI leadership conference, Dec, 2012

    "**A Comparison of Panamanian Insolvency Law with International Law,**" Panama City, 2012.

    "**A Primer on the New Chinese Bankruptcy Law,** " Singapore, 2011

    "**Section 363(k) Sales**" and "**Recent Case Developments in Bankruptcy.**"   Presented

**at AIRA conference in San Diego, June 2010.**

"**THE EUROPEAN UNION'S NEW MEDIATION DIRECTIVE,**" published in The Mediation Works Journal, September, 2009.

"**Comparative Provisions of United States and Singaporean Bankruptcy Law**," a Presentation to the New York State and Singaporean Law Center, October, 2009.

"**Section 363 Sales – Like No Sales Process You Have Seen Before,**" a presentation to The New York State and Singaporean Law Center, October, 2009.

"**TOUSA – Creditors and Experts Beware,**" a sub presentation of Recent Bankruptcy Developments to distressed debt and hedge fund investor's conference sponsored by "The   Deal," Washington, DC, November, 2009.

"**Bankruptcy Developments,**" **moderator** and presenter, TMA-CT, April, 2009.

"**Representing a Creditor in Workouts and Bankruptcy,**" a presentation to the National Association of Credit Unions, May 2009.

"**The New EU Directive on Mediation,**" a presentation to AIRA, June 2009.

"**AIRA Toolbox – Small to Medium Size Companies and Chapter 11 – Representing the Secured Creditor – 7.5 hour presentation,**"   AIRA June 2009.

"**Judges in Europe and the United States Are Not Rubber Stamps,**" the lead article in the German law firm of Shultz and Braun's year in review. January, 2009.

"**Chapter 15 since 2005,**" presented to the Lowenstein law firm. November, 2008.

**State Owned Enterprises in China:   "Are they dying dinosaurs, Dynamic dynamos or fairy godmothers?"  A lengthy paper on the state of State Owned Enterprises in China**.  Shanghai Investing and Restructuring Conference, September, 2008

**Cross-Border Bankruptcy Update: Do United States Bankruptcy Courts Have the Final Say," Co-authored with a former student Richard Corbi Esq.  of Skadden Arps.** American Bankruptcy Law Journal, July/ August 2008.

"**The Economic Outlook for Outsourcing in 2008 -2009,**" presented to Outsourcing Conference, sponsored by Touro Graduate School of Business. June, 2008.

"**Selecting an Expert in Preference Litigation,**" AIRA June 2007.

"**A Case Study in Cross-Border Case Management,**" AIRA June 2007

**"Reinventing the Renaissance Person – Time to Change with the Changing Economy,"** Turnaround Management Association, April 2007.

**"Insolvency Accountants and Financial Advisors in the Global Economy",** NYSSCPA's, September 2006.

**"The New Chapter 15,"** NYSSCPA's," September, 2006.

**"Cross-border Case Management,"** AIRA, June 2006

**"Fraudulent Conveyances," AIRA, June 2006**

**"Bankruptcy Tax Issues under the Code Changes,"** the University of Kansas Tax Institute, November 2005.

**"Accountants and Financial Advisors in the Global Economy,"** New York State Society of CPA's, September 2005

**"Public Relations in Chapter 11,"** June 2005, AIRA

**"Preference Expert Reports and Testimony under Rule 26,"** AIRA 2004.

**"Distressed Debt Market and Current Developments,"** AIRA, 2004.

**"Bankruptcy tax issues during a Chapter 7 and 11 case," and "Forensic Modeling for Preferences,"** Association of Insolvency and Restructuring Advisors.  (AIRA 2004).

**"International Restructuring," World Bank," INSOL** World, May, 2004.

"**Indemnification of Professionals in Bankruptcy,"** AIRA, April 1, 2003.

**"Post-Confirmation of the Bankruptcy Court,"** AIRA, April 1, 2003.

"**Chapter 11 Plan Outline,"** AIRA, April 1, 2003

**"Preference Litigation,"** AICPA Litigation Conference, November 2003.

**"Bankruptcy Taxation for Bankruptcy Parishioners,"** Great Plains Tax Institute, Lincoln, Nebraska, December 5-6, 2002.

**"Ethics after Enron,"** American Conference Institute, September 20, 2002.

"**Valuation of Intellectual Property in Bankruptcy,"** AIRA, May 2002.

**"Reclamation… is not Revitilisation of a Brownfield, But is a Secret Lien Inside and Outside of Bankruptcy,"** AIRA, May 2002.

**"Set-off and Recoupment. Doctrines Often Confused But Never Together,"** AIRA, May 2002.

**"Bankruptcy Litigation, Insurance and Mass Torts,"** ABA, litigation section, February 2002.

"**Mass Torts in Bankruptcy,"** Lexis and Meale, November 2001.

**"I have always known that at last I would take this road," –The reasons why companies fail and how to rescue them,"** New York Law Journal, August 27, 2001.

**"The New Changes for Rule 2014, Real Change or More of the Same,"** Aspen Institute, March 2001.

**"Proposed Changes in the New Bankruptcy Bill,"** Coauthored with D. DiNapoli. Bingham-Dana Institute, May 2001.

**"Distressed Debt Markets for the Upcoming Year,"** International Research Institute, June 2001.

**"The Lenders Tightrope, Economic Forecast for 2001-2002,"** International Research Institute, June 2001.

**"Valuation of Dot. Coms in Bankruptcy,"** (Am.Bankr.Inst.l L.Rev.  Summer, 2001).

**"E commerce firms in Bankruptcy,"** (International Bar Association, September 2000).

"**How to value retail inventories for adequate protection purposes,"** coauthored with K. Regan and published in Bankruptcy Court Decisions, July 2000.

**"Nursing home industry in crisis – issues and implications,"** coauthored with D. Smith and James Horan and published in Bankruptcy Court Decisions, April 2000.

 "**A Primer on Ukrainian Bankruptcy,"** published in Bankruptcy Court Decisions, May 2000.

**"Current Trends in Distressed Debt,**" The Institute for International Research, April 2000.

**"Investing in Eastern Europe and What Accession means to The Balkans,"** The International Research Institute and presented in New York City on April 11, 2000.

**"Pre-Packaged Bankruptcies in Romania,"** prepared for Carana Corp., a USAID subcontractor and presented in Romania during 1998 and 1999.

.

**"Valuations in Bankruptcy,"** prepared for the Carana Corp., a USAID subcontractor and presented in Romania in 1998. The materials were used later by other subcontractors for Carana Corp.

**"Orderly and Effective Insolvency Systems,"** prepared for the Conference for Appellate Judges of Romania and delivered in 2000. Also presented in four previous seminars for Syndic (bankruptcy) judges, administrators, liquidators, trustees, lawyers and accountants in various cities in Romania in 1998 and 1999.

**"The Reorganization and Liquidation Plan,"** prepared for the Conference of Syndic Judges and presented in May 1999.

**"Ukraine's New Security Law,"** seminar material and articles prepared for DAI, a subcontractor for USAID and delivered to a Colloquium of Judges, lawyers and bankers in Kiev, Ukraine, 1998.

**"Analysis of Management,"** 1998, seminar material prepared for Deloitte Touche Tomachu for delivery in USAID programs in Romania.

**"How an Administrator Takes Control of A Company in Liquidation/ Reorganization,"** seminar material prepared for Carana Corp., a USAID contractor for delivery in USAID programs in Romania. One section was delivered by the author in November 1998.

**"Valuation of Assets & Enterprises in Bankruptcy,"** prepared for a September 1998 conference for the Association of Insolvency Accountants.

**"China's New Insolvency Law,"** prepared and presented for a September 1998 seminar in China sponsored by the International Republican Institute.

**"The US Insolvency System,"** prepared and presented for a September 1998 seminar in China sponsored by the International Republican Institute.

**"Financial Analysis for Eastern European Judges,"** 1995, and updated through 2000. This substantial material of several hundred pages is considered a primer on accounting, economics, marketing, financial management and bankruptcy for insolvency professionals and Judges in Eastern Europe.

**"Exorcizing Executoriness: Functionalist Arguments and Incantations to Avoid meeting the Devil in the Woods,"** coauthored with O. McGill and published in Norton's Annual Survey on Bankruptcy Law, 1995 - 1996

**Stetson University College of Law Bankruptcy Symposium, 1993:**
"**Classification of Claims and Interests,**"
"**A Layman's primer for the Seasoned Bankruptcy Practitioner,**"
"**Challenging Confirmation of Chapter 11 Reorganization Plans.**"

"**Combined Activity and Quality Measures for Bankruptcy Judges: Work Measurement Charts Path to Improvement and Efficiency,**" 1993, coauthored with G. Huyler, Am Bankr L J.

"**The Tree Divorce Courts of the United States or How to be Divorced From the Same Person Three Times but Married Only Once,**" 1992, University of Nebraska Great Plains Tax Institute.

"**Tax Considerations in Bankruptcy or is Your Malpractice Insurance Current?**" 1992, University of Nebraska Great Plains Tax Institute.

"**Farm Bankruptcies: Planning and Practice under Chapter 12,**" 1993, United States Department of Agriculture Seminar on Farm Bankruptcies.

"**Opportunities for CPA's in Bankruptcy,**" 1993, Attorney-CPA Conference.

"**The Attorney-CPA as Expert Witness,**" 1993, Attorney-CPA Conference.

There are no articles available for review prior to 1993

Exhibit C

Disclosure Under Rule FRBP 26

I, Francis G. Conrad, have not been deposed or testified as an expert in a court of competent jurisdiction or any other forum in the last Five years.