Alvarez & Marsal Holdings, LLC
600 Madison Avenue, 8th Floor
New York, NY 10022
Phone: +1 212 759 4433
Fax: +1 212 759 5532

February 13, 2015

Mr. Richard Placey
Montgomery, McCracken, Walker & Rhoads LLP
1105 N. Market St., 15th Floor
Wilmington, DE 19801


Dear Mr. Placey:

At your request, I have considered the actions that may be required in order to maximize the recoveries of creditors in the jointly administered bankruptcy petition of O. W. Bunker Holding North America, Inc. et al, Case No. 14-51720 (AHWS), filed in the United States Bankruptcy Court for the District of Connecticut. While some of this may have been addressed in my deposition given on February 5, 2015, I am submitting this report to the extent that a formal report is deemed necessary.

For purposes of this letter, O.W. Bunker North America, Inc. ("North America") and O.W. Bunker USA, Inc. ("USA") are individually, each a "Debtor" and collectively, the "Debtors".


I. **Summary of Opinions and Views**

   (a) The Debtors' Statements and Schedules of Financial Affairs filed with the Bankruptcy Court on December 19, 2014 and amended most recently on January 8, 2015 indicate that the assets of each Debtor consist primarily of scheduled receivables. A significant factor in determining the recovery for creditors will be the Debtors' ability to collect these receivables, which may include the enforcement of Debtors' rights with respect to such receivables. I have been advised by maritime counsel that the Debtors have certain maritime liens related to certain of the receivables, which include among other rights, the right to arrest certain vessels. In reviewing certain records of the Debtors with maritime counsel, it has been determined that 82% and 99%, respectively, of the assets of North America and USA benefit from such maritime liens. This is summarized in Exhibits 2 and 3 to this report.

   (b) To the extent that the Debtors can limit the number of jurisdictions where they are required to pursue their enforcement rights generally, and their maritime rights specifically, it should reduce the costs associated with such enforcement, thereby providing a higher net recovery to the Debtors' creditors. To the extent that the

enforcement process could be concluded in a single jurisdiction, it should provide the most economical resolution.

(c) Currently, the Debtors have been notified, that in order to avoid the arrest of their vessels, certain customers have filed actions (the "Interpleader Actions") and deposited amounts with certain courts indicating that they do not know if the money is owed to a third party supplier of the Debtors, or if it is owed directly to the Debtors. Regardless of the resolution of the Interpleader Actions, the Debtors receive a benefit. If the money is owed to the Debtors, such amounts increase the available cash for the Debtors to distribute to their creditors. To the extent the amounts are determined to be owed to the suppliers, such suppliers' claims against the Debtors will be reduced by the amount of the payments, thereby increasing the percentage recoveries to the remaining creditors of the Debtors.

(d) Based on the most recently filed Monthly Operating Report and information gathered from the accounting system maintained by the Debtors' parent, O. W. Bunker A/S, a Danish company, there are approximately $56 million of receivables outstanding at North America. Based on information obtained through various court records, approximately $12 million has been deposited in the United States District Court for the Southern District of New York in Interpleader Actions. Separately, the Debtor's arrest actions have led to an additional $885,000 being deposited as security. Based on a review with maritime counsel, there are another $43 million of receivables for which maritime liens appear to remain available in favor of the Debtor. To enforce these liens in one place would allow for the most efficient cost of enforcement for the Debtors. This analysis is summarized in Exhibit 2.

(e) Based on the most recently filed Monthly Operating Report and information gathered from the accounting system maintained by the Debtors' parent, O. W. Bunker A/S, a Danish company, there are approximately $96 million of receivables outstanding at USA. Based on information obtained through various court records, approximately $25 million has been deposited in the United States District Court for the Southern District of New York in Interpleader Actions. (In some cases, North America and USA were involved in the same transaction, so certain Interpleader Actions involve both Debtors). Separately, approximately $16 million in arrest actions, Interpleader Actions and other enforcement actions have been commenced in jurisdictions other than the United States District Court for the Southern District of New York. Based on a review with maritime counsel, there are another $55 million of receivables for which maritime liens appear to remain available in favor of the Debtor. To enforce these liens in one place would allow for the most efficient cost of enforcement for the Debtors. This analysis is summarized in Exhibit 3.



II. **Facts and Data Considered**

    (a) Bankruptcy Schedules and Statements of Financial Affairs

    (b) Monthly Operating Reports

    (c) Information obtained from the court system as summarized in the Debtors' exhibits

    (d) NuStar Vessel Arrest Report (NS_000032 to NS_000035), provided by NuStar's counsel on January 23, 2015

    (e) Alvarez & Marsal's review of the Debtors' records which are accessed through the financial systems maintained by the Parent.

    (f) Discussions with maritime counsel regarding maritime liens and enforcement rights

III. **Other Information**

A copy of my Alvarez & Marsal biography is attached.

I have not testified as an expert by trial or deposition in the last four (4) years. The compensation to be paid is as set forth in the retention application filed with the court in this case.

IV. **Exhibits**

1. Ray Dombrowski's Qualifications
2. O.W. Bunker North America, Inc. – Summary of Assets
3. O.W. Bunker USA, Inc. – Summary of Assets



I reserve the right to revise and update this analysis as more facts become available.

Dated: February 13, 2015

Respectfully submitted,

Ray Dombrowski
Managing Director
Alvarez & Marsal North America, LLC

**Exhibit 1**

**Ray Dombrowski's Qualifications**

Ray Dombrowski, Managing Director
Alvarez & Marsal North American Commercial Restructuring

With more than 20 years of financial restructuring experience, Mr. Dombrowski has served in interim Chief Executive Officer, Chief Financial Officer and Chief Restructuring Officer roles, as well as serving as an adviser to large and mid-size companies both in and out of bankruptcy. Mr. Dombrowski brings expertise across a wide range of industries, including energy, chemicals, financial services, transportation, real estate, telecommunications and entertainment. Some of his clients at A&M have included SIRVA, SLI, Allegheny Energy, VecTour, APW, Inc., Verestar, Inc., Great Basin Gold, Oxford Resources and Marchon Eyeware, as well as the Unsecured Creditors Committee of Kodak. He served as Chief Restructuring Officer of Chemtura Corporation, a $3 billion specialty chemical company, which, after having bonds trade at 19 cents on the dollar, successfully emerged from bankruptcy after paying all creditors in full, along with providing a return to the pre-petition equity. For his work in Chemtura, Mr. Dombrowski was the 2011 recipient of the Turnaround Management Association's Turnaround of the Year-Mega Company Award.

Mr. Dombrowski advised the creditors of Horizon Lines, and has advised a number of investors in connection with acquisitions and loans in the shipping industry.

Mr. Dombrowski also assists private equity firms with due diligence, integration and profit-improvement activities. He led select finance operations for a private equity sponsor of a $1.2 billion energy-related concern. Within nine months, he achieved $100 million in working capital improvements, reduced the company's leverage from 5.5:1 to 3.5:1, installed all Treasury policies and procedures for Sarbanes-Oxley compliance, and supported the company's successful initial public offering.  He served as CEO and oversaw the successful integration of two related businesses that had been acquired by a private equity investor. The integration work included personnel, distribution centers, supply chain, finance and marketing. He has advised a number of private equity firms, particularly in the shipping and energy sectors.   More recently, as CRO of the coal operations of Longview Power, Mr. Dombrowski directed the reorganization of that business, reducing production costs by nearly $11/ton in 7 months, and establishing a long range plan for the business.

Prior to joining A&M, Mr. Dombrowski served as Senior Vice President and CFO of Ogden Corporation, where he led the successful restructuring of the $3 billion conglomerate. In this role, he divested approximately $800 million of entertainment and aviation assets, and consolidated 24 separate financial facilities valued at $1.6 billion into a single facility, while reorganizing the company around its alternative energy and independent power business. Previously, he served for 14 years as a senior executive with Bell Atlantic Corporation, where he



was responsible for the company's $10 billion leasing, finance and real estate businesses, as well as structured finance for the corporation.   In this capacity he has financed over $5 billion of various energy projects.  While at Bell Atlantic, he also developed a reorganization strategy for the firm's Iusacell (Mexican cellular), Omnitel-Pronto Italia (Italian cellular and landline) and Telecom New Zealand investments.

Mr. Dombrowski earned a bachelor's degree, with honors, from the United States Merchant Marine Academy. He earned a juris doctor, with honors, and a master of laws degree in taxation from Temple University.   He is a member of the Financial Executives Institute and is a frequent lecturer on operational restructuring issues. He currently serves as the head of training and development for A&M's North American Commercial Restructuring Practice, which works in partnership with the Tuck School of Business at Dartmouth on training initiatives.

**Exhibit 2**
**O.W. Bunker North America, Inc.**
**Summary of Assets**

| Assets [1] | Balance as of Dec. 31, 2014 | % of Total Assets | Comments |
|---|---:|---:|---|
| Cash, incl. Restricted Cash | $ 9,206,931 | 12.8% | |
| Inventory | 1,858,652 | 2.6% | |
| Scheduled Receivables, gross | 59,648,322 | 82.7% | See lien status below |
| Deposits for Lien Enforcement actions | 938,000 | 1.3% | Cosco Pireaus, held in escrow |
| Fixed Assets | | | |
|    Vehicles | 57,706 | 0.1% | |
|    Furniture & Office Equipment | 15,000 | 0.0% | |
| Intangibles & Tax Assets | | | ING Preference Recovery; Claims vs D&O policy |
|    Litigation Claims | - | 0.0% | and OW Bunker A/S (parent) |
|    Tax Prepayment | - | 0.0% | Prepaid income taxes were paid on Debtor's |
|    Tax Loss Carryback | - | 0.0% | behalf in 2014 |
| Other Assets | | | |
|    Amounts Held in Escrow | 367,727 | 0.5% | |
|    Security Deposits | 34,052 | 0.0% | |
|    Interest in Insurance Policies | - | 0.0% | |
| **Total Assets** | **$ 72,126,389** | **100%** | |

| Lien Status of Scheduled Receivables | Balance as of Dec. 31, 2014 |
|---|---:|
| Total Scheduled Receivables [1] | $ 59,648,322 |
|   Less: Estimated Amounts Collected by ING [2] | (3,144,539) |
| **Total Scheduled Receivables, net of est. collections** | **$ 56,503,782** |
| | |
| **Lien Collection Status** | |
|   Proceedings Instituted [3] | |
|     New York Interpleaders | 12,052,433 |
|     Debtor Enforcement actions | 885,478 |
|   Subtotal, Proceedings Instituted | $ 12,937,911 |
| | |
|   Proceedings Not Yet Instituted | |
|     NA is only lienholder | 19,681,965 |
|     NA has lien; others may assert lien | 23,883,907 |
|   Subtotal, Proceedings Not Yet Instituted | $ 43,565,871 |
| | |
| **Total Scheduled Receivables, net of est. collections** | **$ 56,503,782** |

**Note:**
(1) Amounts based on information available to date including records obtained from Parent company's financial system
(2) Amounts have not been verified with ING or customers
(3) In some cases, the interpleader amounts differ from the Debtor's transaction records

**Exhibit 3**
**O.W. Bunker USA, Inc.**
**Summary of Assets**

| Assets [1] | Balance as of Dec. 31, 2014 | % of Total Assets | Comments |
|---|---:|---:|---|
| Cash | $ 56,882 | 0.1% | |
| Inventory | - | | |
| Scheduled Receivables, gross | 98,082,386 | 99.0% | See lien status below |
| Fixed Assets | | | |
|    Vehicles | 35,000 | 0.0% | |
|    Furniture & Office Equipment | 13,000 | 0.0% | |
| Intangibles & Tax Assets | | | ING Preference Recovery; Claims vs D&O policy |
|    Litigation Claims | - | 0.0% | and OW Bunker A/S (parent) |
|    Tax Prepayment | 889,444 | 0.9% | Prepaid income taxes were paid on Debtor's |
|    Tax Loss Carryback | - | 0.0% | behalf in 2014 |
| Other Assets | | | |
|    Security Deposits | 31,072 | 0.0% | |
|    Interest in Insurance Policies | - | 0.0% | |
| **Total Assets** | **$ 99,107,784** | **100%** | |

| Lien Status of Scheduled Receivables | Balance as of Dec. 31, 2014 |
|---|---:|
| **Total Scheduled Receivables** [1] | $ 98,082,386 |
|    Less: Estimated Amounts Collected by ING [2] | (1,614,314) |
| **Total Scheduled Receivables, net of est. collections** | $ 96,468,072 |
| | |
| **Lien Collection Status** | |
| <u>Proceedings Instituted</u> [3] | |
|    New York Interpleaders | 25,021,940 |
|    Debtor Arrest actions | 884,969 |
|    Nustar Arrest actions & Interpleaders [4] | 12,059,218 |
|    Other Enforcement actions | 3,240,997 |
|    Subtotal, Proceedings Instituted | $ 41,207,124 |
| | |
| <u>Proceedings Not Yet Instituted</u> | |
|    USA & NA are lienholders | 2,330,824 |
|    USA has lien; others may assert lien | 13,880,714 |
|    USA creditor has lien | 39,049,410 |
|    Subtotal, Proceedings Not Yet Instituted | $ 55,260,948 |
| | |
| **Total Scheduled Receivables, net of est. collections** | $ 96,468,072 |

**Note:**
*(1) Amounts based on information available to date including records obtained from Parent company's financial system*
*(2) Amounts have not been verified with ING or customers*
*(3) In some cases, the interpleader amounts differ from the Debtor's transaction records*
*(4) Excludes interpleaders filed in New York*