# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## BRIDGEPORT DIVISION

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| O.W. Bunker Holding North America Inc., *et al.*,[1] | : | Case No. 14-51720 |
|  | : |  |
| Debtors. | : | Jointly Administered |
|  | : |  |

## EMERGENCY MOTION OF DEBTORS PURSUANT TO SECTIONS 363(b) AND 503(c) OF THE BANKRUPTCY CODE FOR AN ORDER AUTHORIZING EMPLOYEE CONTRACT *NUNC PRO TUNC* TO MARCH 1, 2015

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") respectfully submit this Motion (the "Motion"), pursuant to sections 105, 363(b) and 503(c) of title 11 of the United States Code (the "Bankruptcy Code"), for an order authorizing the Debtors' employment contract with Rene Broman, and authorizing the payments contemplated thereunder *nunc pro tunc* to March 1, 2015. In support of this Motion, the Debtors, by and through their undersigned counsel, respectfully state as follows:

## JURISDICTION AND VENUE

1.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157 (b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       The statutory basis for the relief requested herein is sections 105(a), 363(b), and 503(b).

---

[1]  The last four digits of the Debtors' taxpayer identification numbers follow in parentheses: O.W. Bunker Holding North America Inc. (7474), O.W. Bunker North America Inc. (7158) and O.W. Bunker USA Inc. (3556). The Debtors' address is 281 Tresser Blvd., 2 Stamford Plaza, 15th Floor, Stamford, CT  06901.

## RELEVANT FACTUAL BACKGROUND

3.        On November 13, 2014 (the "Petition Date"), each of the Debtors commenced a voluntary case in this Court (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.        On November 19, 2014, this Court ordered that the Debtors cases be jointly administered for procedural purposes pursuant to Bankruptcy Rule 1015(b) and D. Conn. LBR 1015-1.

5.        The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the *Declaration of Adrian Tolson, General Manager of O.W. Bunker North America Inc., in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 15] (the "Tolson Declaration").

6.        On November 26, 2014, the United States Trustee appointed the Official Committee of Unsecured Creditors of O.W. Bunker Holding North America Inc., et al. (the "Committee").  No trustee or examiner been appointed in the Debtors' Chapter 11 Cases.

### Employee Contract

7.        With Court approval, the Debtors intend to establish an employee contract for Rene Broman, which is essential to the Debtors' current transactional valuations, litigation strategy, financial analysis, and bankruptcy plan drafting.

8.        Prior to the filing of the Debtors' Chapter 11 Cases, Mr. Broman served as the Credit Manager for O.W. Bunker North America Inc.  Now, Mr. Broman supports Debtors'

counsel maritime lien enforcement actions, including the review of sales orders, purchase orders, and other transaction documents, the preparation of transaction related analyses; the maintenance of a transaction database, and the transfer, review and compilation of the Debtors' transaction data and records from the Danish parent.

9.    Although Mr. Broman recently informed the Debtors that he intends to leave the Debtors' employment at the end of March, the Debtors are hopeful of retaining Mr. Broman – and his valuable knowledge and experience – beyond such time.  The Debtors believe that the proposed employment agreement will increase their chances of retaining Mr. Broman's services.

10.    Mr. Broman is essential to ongoing lien enforcement efforts.  The Debtors and their counsel consider his knowledge of the transaction documents and his working relationship with personnel from other O.W. Bunker entities to be invaluable as they move forward with various maritime-related litigations and other efforts to maximize the value of the Debtors' estates.  As the Debtors anticipate the volume of interpleader actions and maritime enforcement proceedings to increase, Mr. Broman's transaction analyses, document identifications, and general assistance to Debtors' counsel will only increase the need for Mr. Broman's services.  In addition, Mr. Broman will be assisting with the preparation of the Debtors' 2014 motor fuel tax returns.

11.    In addition, the Debtors' financial advisor, Alvarez & Marsal, has advised the Debtors the institutional knowledge possessed by Mr. Broman is invaluable to the Debtors going forward.  Further, Mr. Broman cannot be replaced through the hiring of other professionals and experts without even greater cost to the Debtors and their estates.

12.     Mr. Broman's responsibilities will also be expanding with the recent departure of another employee.  The additional responsibilities that the Debtors intend to assign to Mr. Broman's include providing backup accounting and litigation support to the Debtors.  .

13.     Subject to the Court's approval, the new employment agreement (the "Employment Contract") with Mr. Broman would increase Mr. Broman's current salary from $20,000/month to $30,000/month.  The increase is a result of the expanded scope of responsibilities that Mr. Broman has taken on and is similar to the Debtors' pre-petition practice of providing additional salary to individuals taking on extra responsibility.

14.     Further, under the Employment Contract Mr. Broman would be entitled to a $10,000 bonus at the end of March if he completed several tasks, including (i) a memorandum for counsel delineating the general transactional process and procedures of the Debtors and that summarizes the transactional facts and key documents relating to each interpleader or arrest proceeding the Debtors are involved in; (ii) completion of all the work relating to tax preparation and filings; and (iii) assistance with completion of a claims analysis.  The Debtors hope that the salary increase will incentivize Mr. Broman to stay past March in light of the new responsibilities and that the bonus will provide counsel with a useable work product going forward should Mr. Broman leave.

**RELIEF REQUESTED**

15.     The Debtors seek authority pursuant to Bankruptcy Code section 363 to implement an employment contract for Mr. Broman.  Debtors respectfully submit that the Employment Contact will provide necessary incentives to the Participant to drive an expeditious chapter 11 process and maximize value for the Debtor's estates.

4

## BASIS FOR RELIEF REQUESTED

I.    **Authorization of the Employment Contract is Appropriate Pursuant to Bankruptcy Code Section 363(b).**

16.    Bankruptcy Code section 363(b) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under Bankruptcy Code section 363, this court may approve a debtor's request for relief when the debtor demonstrates a sound business justification for seeking such relief. *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983) ("[t]he rule we adopt requires that a judge determining a §363(b) application expressly find from the evidence presented before him [supports a] good business reason to grant the application.") The business judgment rule shields a debtor's management from judicial second guessing, "absent a showing of bad faith, self-interest, or gross negligence."

17.    As set forth above, the Debtors have articulated valid business reasons for the implementation of the Employment Contract. In their reasonable business judgment, the Debtors have determined that the implementation of the Employment Contract is in the best interests of the Debtors' estates and the stakeholders of theses Chapter 11 cases. In addition to his normal day-to-day responsibilities of managing the Debtors' business, Mr. Broman serves as one of the driving forces in bringing the Chapter 11 Cases to their ultimate resolution. Since the filing of the bankruptcy cases, Mr. Broman been asked to take on significant additional responsibilities, but due the chapter 11 filing, he has not been offered any incentive opportunities to compensate him for his enhanced responsibilities, as would be consistent with market practice and the Debtors' past business practices.

18.    The overall cost of the Employment Contract is reasonable in light of the size of the Debtors' estates and the collection and litigation processes that are occurring. Accordingly,

the Debtors believe that valid business reasons exist for the implementation of the Employment

Contract and, thus, its implementation should be approved.

19.    Once the debtor articulates a valid business justification for a particular form of

relief, the Court reviews the debtor's request under the "business judgment rule."  The business

judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial

second-guessing.  *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re*

*Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (*quoting Smith v. Van Gorkom*, 488

A.2d 858, 872 (Del. 1985)).  "The business judgment rule 'is a presumption that in making a

business decision the directors of a corporation acted on an informed basis, in good faith and in

the honest belief that the action was in the best interests of the company.'"  *See id*.  "Courts are

loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross

negligence."  *Id*. (citations omitted).  Therefore, courts "uphold the board's decisions as long as

they are attributable to any rational business purpose."  *Id*. (citation omitted).  "Parties opposing

the proposed exercise of a debtor's business judgment have the burden of rebutting the

presumption of validity."  *Id*. (citation omitted); see also *Comm. of Asbestos-Related Litigants v.*

*Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986)

("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a

decision made arbitrarily or capriciously), courts will generally not entertain objections to

debtors' conduct").

20.    In that regard, courts have found that a debtor's use of reasonable performance

bonuses and other incentives for employees is a valid exercise of a debtor's business judgment.

*See, e.g., In re Am. W. Airlines, Inc.*, 171 B.R. 674, 678 (Bankr. D. Ariz. 1994) (noting that it is

the proper use of a debtor's business judgment to propose bonuses for employees who helped

propel the debtor successfully through the bankruptcy process); *In re Interco Inc.*, 128 B.R. 229, 234 (Bankr. E.D. Mo. 1991) (stating that a debtor's business judgment was controlling in the approval of a "performance/retention program").

21.     This and other courts have appointed similar incentive programs as valid exercises of business judgment.  *See, e.g.*, *In re Dana Corp.*, 358 B.R. 567,576-77 (Bankr. S.D.N.Y. 2006) (approving assumption of modified employment agreements that incentivize executives to increase value of estate); *In re Residential Capital, LLC*, 491 B.R. 73, 88 (Bankr. S.D.N.Y. 2013) (approving key employee retention program and incentive programs); *In re Borders Grp., Inc.*, 453 B.R. 459, 470 (Bankr. S.D.N.Y. 2011) (approving key employee compensation and incentive plans*); In re Mervyn's Holdings, LLC*, No. 08-11586 (KG) (Bankr. D. Del. Oct. 30, 2009) (approving task and target-based incentive plan for certain members of debtor's management); *In re KB Toys, Inc.*, No. 08-13269 (KJC) (Bankr. D. Del. Jan. 14, 2009) (approving incentive plan based on successfully completing identifiable "tasks" consistent with targets, which plan applied to certain members of debtor's management); *In re Nobex Corp.*, No. 05-20050, 2006 WL 4063024, at *2 (Bankr. D. Del. Jan 19, 2006) (approving incentive pay outside of ordinary course where it was "an appropriate exercise of the Debtor's business judgment.").

22.     In the present case, authorizing the Debtors to provide the Employment Contract to Mr. Broman will accomplish a similarly sound business purpose.  The Debtors have determined that the costs associated with additional post-petition compensation payments pursuant to the Employment Contract are more than justified by the benefits that the Debtors will realize (and have already realized) by creating appropriate incentives for the expanded responsibilities of Mr. Broman, whose experience, skills, and diligent efforts are critical for the

Debtors to maximize the value of their estates as they reorganize.  The Debtors believe that the modest salary increase and bonus are reasonable in light of the circumstances of these cases and are warranted under applicable case law.  *See, e.g., In re Global Home Products, LLC*, 2007 Bankr. LEXIS 758, at *15 (Bankr. D. Del. March 6, 2007) ("The reasonable use of incentives and performance bonuses are considered the proper exercise of a debtor's business judgment."); *In re Nobex Corp*., 2006 Bankr. LEXIS 417 (Bankr. D. Del. Jan 19, 2006) (approving incentive pay outside of ordinary course where it was "an appropriate exercise of the Debtor's business judgment.").

## II.     The Employment Contract is Justified by the Facts and Circumstances of These Chapter 11 Cases

23.     The Employment Contract was designed with the Debtors goal of maximizing the value of the Debtors estates and creditor recoveries through formulation of a plan.  Retention of Mer. Broman is essential to achieving this goal due to the knowledge and relationships only they possess.

24.     Section 503(c) of the Bankruptcy Code is applicable to all bankruptcy cases filed after October, 2005.  It provides criteria for courts to use in approving certain types of payments to insiders and "other transfers of obligations that are outside of the ordinary course of business." Section 503(c) contains: (1) a general prohibition of retention plans for insiders of a debtor; (2) limitations on severance payments to insiders of a debtor; and (3) standards governing other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the Petition.  11 U.S.C. § 503(c).

25.    Although a byproduct of the Employment Contract may be that Mr. Broman is

encouraged to remain with the Debtors, that effect does not convert the Employment Contract

into a retention-driven plan.  *See Dana Corp.*, 358 B.R. at 576-77; *In re Global Home Prods.*,

369 B.R. 778, 786 (Bankr. D. Del. 2007) (finding that proposed incentive plans were "primarily

incentivizing and only coincidentally retentive" and noting, "[t]he fact . . . that all compensation

has a retention element" did "not reduce the Court's conviction that [the debtors'] primary goal"

in approving the incentive plans was "to create value by motivating performance").  A plan that

indirectly causes its participants to remain employed does not detract from the Employment

Contract's primary purpose, which is to motivate Mr. Broman to maximize value to the Debtors'

estates and ensure recoveries are maximized.

26.    The Debtors do not believe that Mr. Broman is an "insider" within the meaning of

section 101(31)(B) of the Bankruptcy Code.  Nevertheless, even if Mr. Jensen is determined to

be an insider, the Debtors believe the Employment Contract is a performance based incentive

plans and 503(c)(1) does not apply to performance-based incentive plans.  *Global Home

Products*, 2007 Bankr. LEXIS 758, at * 14 ("If [the proposed plans] are plans to incentivize

management, the analysis utilizes the more liberal business judgment review under § 363."); *In

re Nobex Corp.*, Case No. 05-20050, 01/12/06 Hearing Tr. at 67 (Bankr. D. Del. 2006) (MFW);

*In re Calpine Corp.*, Case No. 05-60200, 04/26/2006 Hearing Tr. at 87 (Bankr. S.D.N.Y. 2006

(BRL).  Indeed, Judge Lifland has held that:

> If sections 503(c)(1) and (c)(2) are not operative, a court may consider
> whether the payments are permissible under section 503(c)(3), which
> limits payments made to management and employees, among other things,
> outside of the ordinary course, unless such payments are shown to be
> justified under the facts and circumstances of the chapter 11 case.  As one
> treatise points out, the test appears to be no more stringent a test than the
> one courts must apply in approving any administrative expense under
> section 503(b)(1)(A).

*In re Dana Corporation*, 358 B.R. 567, 576-77 (Bankr. S.D.N.Y. 2006).

27.     The ruling in *Dana Corp.* is particularly informative.  That decision provides a detailed analysis on whether a debtor's requested employee incentive plan meets the business judgment standard.  The court there balanced different factors to determine whether the incentive plan was permitted under section 503(c), including:

> (a) whether the plan is calculated to achieve the desired performance;
>
> (b) whether the costs of the plan are reasonable within the context of the debtor's assets;
>
> (c) whether the scope of the plan is fair and reasonable;
>
> (d) whether the plan is consistent with industry standards;
>
> (e) whether the debtor engaged in due diligence related to the need for the plan, the employees that needed to be incentivized, and what type of plans are generally available in a particular industry; and
>
> (f) whether the debtor received independent counsel in performing due diligence and creating and authorizing incentive compensation.

*Id*. at 576-77 (Bankr. S.D.N.Y. 2006)).  The Employment Contract requested here is a reasonable exercise of the Debtors' sound business judgment because it was carefully designed with assistance from Alvarez & Marsal, and it seeks to incentivize a key employee's performance to continue the Debtors' day-to-day operations, assist the Debtors' counsel in plan formation and other litigation in this bankruptcy, and ensure the maximization of the Debtors' value, which are the Debtors' highest priorities during these chapter 11 cases.

28.     First, the Employment Contract is calculated to achieve desired performance.  The incentive increases are directly linked to the expanded scope of Mr. Broman's responsibilities and assisting the Debtors' counsel in obtaining the required information and documentation relating to plan formation and assistance in other interpleader and enforcement actions.  The additional work product will be invaluable to Debtors' counsel moving forward in these cases.

These are the very actions and planning that will allow for the Debtors to maximize the value of their estates and provide for the best creditor recovery, the Debtors' top priority during this time.

29.     Second, the payments contemplated in the Employment Contract are reasonable and fair because the Employment Contract allows for cost savings for the Debtors.  First, Mr. Broman has taken on additional work and increased the scope of his responsibilities.  The Debtors will now need him to take on even more responsibilities.  Additionally, while Mr. Broman will be provided an increase in salary, an entire position and the salary associated with it will be eliminated upon his assumptions of that employee's responsibilities, resulting in a $5,000 per month cost savings overall.  Mr. Broman has significant  knowledge of the financials, records, transactions, and relationships that will assist the Debtors in effectively prosecuting and defending litigation in these cases, in formulating a plan, and in maximizing the Debtors assets. Further, the cost to hire an additional professional or expert to do this activities will not save the Debtors any money, and will cause delay during that professional's or expert's familiarization with the case, coupled with the potential loss of intimate company knowledge

30.     Third, the Employment Contract is reasonable in scope because it only applies to one of the four employees remaining from the original pool of approximately 30 employees.  Mr. Broman is a necessary employee and a key driver of the success to the Debtors' bankruptcy and resultant litigation because he has intimate knowledge of the key financials, documents, and transactions that are necessary for the Debtors to maximize the Debtors' estates and to deliver value to the creditors.  The Debtors must rely on the efforts of Mr. Broman to assist counsel, and his performance will have a great impact on achieving those goals.

31.     Fourth, the Debtors consulted Alvarez & Marsal to provide advice in designing the Employment Contract.  Alvarez & Marsal made its recommendations based upon a

thoughtful and thorough review of potential alternative replacements and strategies. The Debtors

and their counsel discussed their options with Alvarez & Marsal and created the current

Employment Contract after a through cost-benefit review to the Debtors bankruptcy estate and

litigation strategies. Therefore, the Debtors' consultation with Alvarez & Marsal and the

approval by the Debtors' current management demonstrates a reasonable exercise of sound

business judgment.

32.    Fifth, the Debtors and Alvarez & Marsal reviewed multiple options and

alternatives and the resulting impacts and discussed in detail which employees would have the

greatest impact on the restructuring process.

33.    Sixth, Debtors have worked with Alvarez & Marsal in determining which

employees were necessary to the formulation of a bankruptcy plan and assistance with litigation

and what the appropriate incentive would be to expand their responsibilities. These efforts

constitute sufficient due diligence to meet the business judgment standard. Even *if* the Debtors

had not obtained outside advice, this one factor would not preclude approval of the Employment

Contract. As noted above, the application of the *Dana* "factors" is a holistic endeavor. *Id.* at

571. Moreover, in *In re American Home Mortgage Holdings*, Judge Sontchi articulated the

holistic application of the factors while considering the interim approval of a retention plan. In

approving that plan, in part on an interim basis, Judge Sontchi stated that:

> Did the debtor receive independent counsel from some sort of expert?
> Frankly, I don't consider those overtly significant, and certainly
> understandable that they weren't done in the context of what was an
> extremely quick meltdown of the debtors' business.

Transcript of August 7, 2007, Hearing at 110, *In re American Home Mortgage Holdings, et al.*,

Case No. 07-11047 (CSS) (Bankr. D. Del.).

12

34.    The order is requested *nunc pro tunc* to March 1, 2015, as Mr. Broman recently informed the Debtors of his desire to leave, and an agreement regarding the Employment Contract, subject to court approval, was then made to start as of March 1, 2015.

35.    For all these reasons, the Debtors submit that the Employment Contract is justified by the facts and circumstances of these chapter 11 cases.

### RESERVATION OF RIGHTS

36.    Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease pursuant to Bankruptcy Code section 365; or (e) otherwise affect the Debtors' rights under Bankruptcy Code section 365 to assume or reject any executory contract with any party subject to this Motion.

### NOTICE

37.    Notice of this Motion will be given to (a) the United States Trustee for the District of Connecticut; (b) counsel to the Committee; and (c) any other entity that has filed a notice of appearance in these Chapter 11 Cases and requested electronic service.  The Debtors submit that, under the circumstances, no other or further notice is required.

### NO PRIOR REQUEST

38.    No previous request for the relief sought herein has been made to this Court or any other court.

13

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request the Court to enter an order,

substantially in the for attached hereto as Exhibit A, granting the relief requested in the Motion

and such other and further relief as may be just and proper.

Dated: Hartford, Connecticut
       March 12, 2015

                    Respectfully submitted,

                     */s/ Patrick M. Birney*
                    Michael R. Enright, Esq. (ct10286)
                    Patrick M. Birney, Esq. (ct19875)
                    ROBINSON & COLE LLP
                    280 Trumbull Street
                    Hartford, CT  06103
                    Telephone: (860) 275-8290
                    Facsimile:  (860) 275-8299
                    menright@rc.com
                    pbirney@rc.com

                    - and -

                    Natalie D. Ramsey, Esq. (NY #5242730)
                          (admitted *pro hac vice*)
                    Joseph O'Neil, Esq. (NY #2596435)
                          (admitted *pro hac vice*)
                    Davis Lee Wright, Esq. (NY #4761300)
                          (admitted *pro hac vice*)
                    MONTGOMERY, McCRACKEN,
                    WALKER & RHOADS, LLP
                    437 Madison Avenue, 29th Floor
                    New York, NY 10022
                    Telephone: (212) 867-9500
                    Facsimile:  (212) 599-1759
                    nramsey@mmwr.com
                    jo'neil@mmwr.com
                    dwright@mmwr.com

                    *Counsel for the Debtors and Debtors in Possession*

2