## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF CONNECTICUT
## BRIDGEPORT DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 14-51720 (AHWS) |
| O.W. Bunker Holding North America Inc. *et al.*,[1] | Jointly Administered |
| Debtors. | Re D.I.: 542 |

## ING BANK N.V.'S (I) PRELIMINARY OBJECTION TO THE DEBTORS' MOTION TO APPROVE A SETTLEMENT AGREEMENT BETWEEN THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, NUSTAR ENERGY SERVICES, INC., NUSTAR SUPPLY & TRADING LLC, AND NUSTAR TERMINALS MARINE SERVICES N.V., AND (II) REQUEST FOR ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 105(A), 361, AND 363(E)

ING Bank N.V., as Security Agent (the "**Security Agent**"), hereby files this (i) preliminary objection to the Debtors' motion [Dkt. No. 542] (the "**Motion**") to approve a proposed settlement agreement (the "**Settlement Agreement**") between the Debtors,[2] the official committee of unsecured creditors in these cases (the "**Committee**"), NuStar Energy Services, Inc. ("**NuStar Services**"), NuStar Supply & Trading LLC ("**NuStar Supply**"), and NuStar Terminals Marine Services N.V. ("**NuStar Terminals**" and together with NuStar Services and NuStar Supply, "**NuStar**"), and (ii) request pursuant to 11 U.S.C. §§ 105(a), 361, and 363(e) for adequate protection of its interests in property subject to transfer. In support thereof, the Security Agent respectfully states as follows:

---

[1]     The last four digits of the US Debtor Companies' taxpayer identification numbers follow in the parentheses: O.W. Bunker Holding North America Inc. (7474), O.W. Bunker North America Inc. (7158) and O.W. Bunker USA Inc. (3556) (together, the "**Debtors**").

[2]     Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

## PRELIMINARY STATEMENT

1.      The Debtors and the Committee do not want these chapter 11 cases to continue before this Court.  The "at any cost" effort to obtain a transfer of venue to the District Court for the Southern District of New York, over the objections of NuStar, has resulted in remarkable fees and costs borne by the estates and its creditors and an extended delay in the administration of these *liquidating* cases.  The merits of a venue transfer here are questionable, based on the current record and circumstances.  Faced with the prospect of a decision on their motion to transfer venue, the Debtors and the Committee negotiated a purported global settlement of claims and disputes with NuStar—the effectiveness of which is expressly conditioned on this Court entering an order transferring the venue of these cases to the New York District Court.  The parties' respective negotiating leverage is apparent from the terms of the proposed settlement, which tip decidedly in favor of NuStar at the expense of the Debtors' estates.

2.      The benefits to the Debtors' estates from the Settlement Agreement are at best *de minimis* and at worst illusory; in any case, the compromises in the Settlement Agreement bear little relationship to the contested issues in the venue dispute.  Moreover, the Motion lacks information about the factual and legal bases necessary to support the relief requested, let alone evidence sufficient to warrant a determination by this Court that the Settlement Agreement is in the best interests of the estates.

3.      At the February 18, 2015, hearing on the venue transfer motion, before the filing of the Motion and Settlement Agreement, the Security Agent offered its support for the venue transfer where it might achieve greater efficiencies in the orderly liquidation of the Debtors' assets.  The Security Agent stands by the position, but recognizes that questions remain regarding the benefits of transferring these cases to the New York District Court, which

questions presumably would be more fully addressed if the trial on the venue transfer motion were to be completed.

4.      The Security Agent however cannot support the ill-considered Settlement Agreement, which appears to have been negotiated primarily to avoid a decision by this Court on the merits of the venue motion and without meaningful benefit to the estates.  Because the Settlement Agreement appears to achieve little more than neutralizing the most vocal opponent of venue transfer, while transferring certain estate assets for *de minimis* consideration at the expense of the estates, the Security Agent respectfully submits that the Settlement Agreement is not in the best interests of the estates based on the current record and the Motion therefore should be denied.

## BACKGROUND

5.      The Security Agent is the coordinator, agent, security agent, and a lender under that certain *USD 700,000,000 Multicurrency Revolving Borrowing Base Facilities Agreement*, dated December 19, 2013 (the "**Credit Agreement**"), and related guaranty, pledge, and security agreements, including that certain *English Omnibus Security Agreement*, dated December 13, 2013 (the "**Security Agreement**" and together with the Credit Agreement, the "**Finance Documents**").  Debtor O.W. Bunker North America Inc. ("**OWB North America**") is a borrower and guarantor of the obligations of the borrowers under the Finance Documents. Debtor O.W. Bunker USA Inc. ("**OWB USA**") is a guarantor of the borrowers' obligations under the Finance Documents.  Pursuant to the Security Agreement, each of OWB North America and OWB USA absolutely assigned all of their rights, title, and interests as of December 13, 2013, in their Supply Receivables, Intercompany Receivables, and Insurance Rights (each as defined in the Security Agreement) to the Security Agent as security for their

obligations under the Finance Documents. From the early days of these cases, the Security

Agent, the Debtors, and the Committee have been actively engaged in negotiations regarding the

terms of a potential cooperation agreement to coordinate collection efforts regarding such

collateral and related issues in a manner consistent with the overall global collection efforts

affecting OWB group entities, including the Debtors, for the benefit of their creditors and estates,

and to facilitate the resolution of these cases.

6.       On March 13, 2015, the Security Agent filed proofs of claim (collectively, the

"**Proofs of Claim**") against OWB North America and OWB USA on account of their obligations

arising from the Finance Documents, which proofs of claim were assigned claim number 19 in

case number 14-51721 and claim number 10 in case number 14-51722, respectively.

7.       The Debtors filed the Motion on March 19, 2015. On the same day, the Debtors

filed an *ex parte* motion to shorten notice of the Motion [Dkt. No. 543]. On March 20, 2015, this

Court entered an order limiting notice on the Motion and scheduling a hearing on the Motion for

April 1, 2015 [Dkt. No. 545]. On March 31, 2015, in consultation with the Security Agent and

NuStar, the Debtors continued the hearing on the Motion to April 22, 2015.

8.       Pursuant to the Motion and the Settlement Agreement, the Debtors propose to,

*inter alia*, assign to NuStar Services, free and clear of all claims and encumbrances or other

interests, including specifically the interests of the Security Agent, all of their right, title and

interests arising out of or related to (i) 20 transactions that are the subject of pending or

contemplated actions in the Southern District of Texas (the "**Texas District Court**"), and (ii) 3

transactions that are the subject of pending interpleader actions in the New York District Court

(together with the Texas District Court actions, the "**Category 1 Actions**" with respect to the

"**Category 1 Transactions**"). Settlement Agreement ¶¶ 14, 22, 29. The Debtors provide no

discussion of the legal basis for this assignment in the body of the Motion; the title of the Motion suggests that the Debtors assume they have the authority to do so pursuant to section 363(f) of the Bankruptcy Code.

9.      The Debtors' represent that the Category 1 Actions involve transactions in respect of which the Debtors acted as an "intermediary supplier (*i.e.*, not a contract supplier or physical supplier)." Motion at ¶ 13(b). While the "intermediary supplier" function is not described by the Debtors in the Motion, the Security Agent understands that, when acting as an intermediary supplier for non-U.S. O.W. Bunker affiliates, the relevant Debtor typically would purchase fuel oil from a physical supplier such as NuStar on open credit and on-sell such oil to the O.W. Bunker affiliate acting as the contract supplier on the transaction (*i.e.*, the O.W Bunker entity contracting directly with the customer for the supply of fuel oil). In such cases, (i) the relevant O.W. Bunker contract supplier would issue an invoice for payment to the customer, (ii) the Debtor acting as intermediary supplier would book a receivable owing from the contract supplier equal to the amount owing to the physical supplier plus an internal "markup" (all such receivables arising from the Category 1 Transactions are the subject of the "**Intercompany Claims**"), and (iii) the physical supplier would issue an invoice to the relevant Debtor for the physical supply of the fuel oil to the customer's vessel.

10.     The Debtors do not provide any information in the Motion with respect to the details of the transactions implicated by the Settlement Agreement or the value of the Intercompany Claims. However, based on a review of the information filed with the Texas District Court and the New York District Court, the Security Agent understands that NuStar is seeking payment from customers of approximately $14,408,000 in the Category 1 Actions alone—in light of the typical transaction structures, the Security Agent understands that the

aggregate amount of the Debtors' Intercompany Claims in respect of those transactions is likely greater than that amount.

11.    In addition to the Category 1 Actions, the Debtors have agreed to assign to NuStar Services all of their *in rem* maritime rights in two further arrest actions (the "**In Rem Claims**") involving transactions in which one of the Debtors acted as the contract supplier, one pending in the Texas District Court involving the vessel M/N GLOBAL LEADER, in respect of which NuStar is seeking payment of $1,426,118.79, and the other pending in the Maritime Court of Panama involving the vessel M/V NORWEGIAN JEWEL, in respect of which NuStar is seeking payment of $512,557.31 (the "**Category 2 Actions**"). Settlement Agreement ¶ 15. The Motion provides no details of the amounts owing to the Debtors from the customers in the transactions underlying the Category 2 Actions on account of unpaid invoices or how the proposed transfer of the In Rem Claims will impact the Debtors' ability to collect on those invoices directly from the customers.[3]

12.    In return for the assignments contemplated by the Settlement Agreement, including the assignment of the Intercompany Claims and the In Rem Claims (collectively, the "**Assigned Claims**"), the Debtors stand to receive a $151,000 cash payment from NuStar (the "**Cash Payment**") and what Debtors represent as a "dollar for dollar reduction in NuStar Services' [and as to the LNG Finima Proceedings, NuStar Terminal's] as yet to be determined claim[s]" against the Debtors to the extent NuStar Services or NuStar Terminals make recoveries in the various arrest and interpleader actions implicated by the Settlement Agreement (and after

---

[3]      In addition to the Category 1 Actions and the Category 2 Actions, the Debtors agree in the Settlement Agreement to assign all of their interests in a completed arrest action in Belize that involved the vessel UMGENI, subject to a subsequent allocation of the proceeds to be agreed between the Debtors and NuStar Services or otherwise determined by this Court. Settlement Agreement ¶ 45.

NuStar Services and NuStar Terminals have the opportunity to argue they should recover their costs of collection before any credit is given). Motion ¶ 21; Settlement Agreement ¶¶ 51-53.[4]

## PRELIMINARY OBJECTION[5]

13.     The purpose of Bankruptcy Rule 9019 is "to ensure that creditors be given notice of the settlement and provided with the opportunity to object," and to permit the court "to independently review the settlement to ensure that it is in the estate's best interest." *Nickless v. McGrail & McGrail (In re Dooley)*, 399 B.R. 340, 349 (Bankr. D. Mass. 2009) (citation omitted); *see also In re Iridium Operating LLC*, 478 F.3d 452, 461-62 (2d Cir. 2007).   A proposed settlement should be approved pursuant Bankruptcy Rule 9019 only if it is "both fair and equitable and in the best interests of the estate." *Liu v. Silverman (In re Liu)*, 166 F.3d 1200 (2d Cir. 1998) (internal quotations and citations omitted); *In re First Conn. Consulting Group, Inc.*, No. 02-50852 2014 WL 5092269, *3 (Bankr. D. Conn. 2014 Oct. 9, 2014) ("a bankruptcy court must make an informed and independent judgement as to whether a proposed compromise is fair and equitable") (internal quotation omitted).   In considering a proposed settlement, a "court must act independently and for the benefit of all parties in interest." *In re Texaco*, 84 B.R. 893, 901 (Bankr. S.D.N.Y. 1988).

14.     The Debtors bear the burden of demonstrating that the Settlement Agreement is in the best interests of the estate. *In re MF Global Inc.*, 466 B.R. 244, 248 (Bankr. S.D.N.Y. 2012). The court may not simply adopt the Debtors' position that the Settlement Agreement is fair and equitable, but rather must make its own independent inquiry into the merits of that position.   *In*

---

[4]     Solely with respect to the Category 2 Actions, NuStar has agreed to pay to the Debtors 10% of any recoveries it makes in the M/N GOLDEN LEADER action and the lesser of 1% or $5,000 on account of any recoveries it makes in the M/V NORWEGIAN JEWEL action, in each case less NuStar's costs of recovery. Settlement Agreement ¶ 20.

[5]     The Security Agent files this "preliminary" objection pursuant to agreement with the Debtors, the Committee, and NuStar that the Security Agent shall be entitled to supplement this objection, if needed, as the record develops.

*re Soup Kitchen Int'l Inc.*, 506 B.R. 29, 37 (Bankr. E.D.N.Y. 2014); *Protective Comm. for Indep.*
*Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (observing that
"it is essential that every important determination in reorganization proceedings receive the
informed, independent judgment of the bankruptcy court") (internal quotation omitted).    In
performing this analysis, the court must consider the fairness of the settlement to all parties,
including those who did not settle. *In re Masters, Mates & Pilots Pension Plan*, 957 F.2d 1020,
1026 (2d Cir. 1992) (holding that "where the rights of one who is not a party to a settlement are
at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial
stamp of approval," and requiring determination that "no one has been set apart for unfair
treatment").

      15.     The Debtors have failed to meet their burden under Bankruptcy Rule 9019—they
fail to articulate the statutory authority permitting the transfer of the Assigned Claims, fail to
provide adequate protection of the Security Agent's interests (assuming the proposed transfer of
Security Agent's collateral is pursuant to section 363 of the Bankruptcy Code), and fail to
demonstrate that, even if there is a valid statutory basis for the transfer and the Security Agent's
interests are adequately protected, the Settlement Agreement is in fact fair and equitable and in
the best interests of the Debtors' estates.    On the record presently before the Court, the
Settlement Agreement cannot be approved.

**I.     The Debtors Have Not Demonstrated that the Settlement Agreement Is Fair and
Equitable and in the Best Interests of the Debtors' Estates**

     **1.    *The Debtors Have Provided No Basis for Determining the Value of the Assets
Proposed To Be Transferred Pursuant to the Settlement Agreement***

      16.     The Debtors have the burden of demonstrating that they are receiving fair value in
return for the property being conveyed pursuant to section 363(f).    *See, e.g., In re Integrated*

*Res., Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well established principle of bankruptcy law that the . . . [debtor's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate."); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (stating that in bankruptcy sales a "primary objective of the Code [is] to enhance the value of the estate at hand"). For that reason, a bankruptcy sale process is almost universally subjected to some kind of market test of the value of the assets being sold. *See, e.g., In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) (stating that "court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

17.    Here, the Debtors do not propose any market test for the value of the Assigned Claims, which have an apparent face value of millions of dollars and which the Debtors propose to assign to NuStar for a lump sum cash payment of $151,000. Rather, they seek approval of a privately negotiated sale for a price that is unsupported by any evidence of market value. Without market testing of any kind, it is impossible to determine whether the proposed settlement is fair and equitable and in the best interests of the Debtors' estates, let alone to determine whether the Security Agent's interests are adequately protected by attaching to a mere $151,000 in cash proceeds. The Motion should be denied on that basis alone.

**2.    *Consideration Obtained by the Debtors through the "Credit" Mechanism of the Settlement Agreement is Illusory***

18.    The Debtors suggest in the Motion that they have received valuable consideration for the Assigned Claims in addition to the Cash Payment. In particular, the Debtors report that they will "also receive a reduction of NuStar Services' and NuStar Terminal[s'] Section 503(b)(9) and other claims for the recoveries obtained by them in the [Category 1 Actions, the

Category 2 Actions and the actions involving the OCEAN FRIEND, the RIGEL LEADER, the WAREGEM, the UMGENI, and the OSTE]." Motion ¶ 13(b).

19.    The effect of the "credit" mechanism of the Settlement Agreement appears to be that, if and to the extent NuStar Services makes recoveries from third parties on account of debts allegedly owing to NuStar Services by the Debtors, then NuStar Services' disputed priority and general unsecured claims will be reduced dollar-for-dollar by those recoveries. NuStar Terminals agrees to the same "credit" mechanism and confirms in a footnote to the Settlement Agreement that its claim against the Debtors is equal to the claim it has asserted directly against the vessel LNG FINIMA in a pending arrest action in the Texas District Court.

20.    There is no evidence that this "credit" feature of the Settlement Agreement provides the Debtors with any value at all. If and to the extent NuStar Services or NuStar Terminals make recoveries in respect of pre-petition fuel supplies, which supplies the Security Agent understands provide the bases for their claims against the Debtors, their entitlement to receive distributions from the Debtors on account of such claims will be reduced by an amount equal to such recoveries *by operation of law*. It is hornbook law that a creditor cannot "collect more, in total, than the amount it is owed." *Nuveen Mun. Trust v. Withumsmith Brown, P.C.*, 692 F.3d 283, 295 (3d Cir. 2012) (citing *Ivanhoe Bldg. & Loan Assn. v. Orr*, 295 U.S. 243, 245-246 (1935); *see also In re Sacred Heart Hosp.*, 182 B.R. 413, 417 (Bankr. E.D. Pa. 1995) (observing that "a creditor can seek to prove its entire claim in the bankrupt's case notwithstanding the existence of third party collateral or guarantees of payment so long as the claimant does not seek to recover more than one full payment of its claim from whatever source"). The "credit" mechanism in the Settlement Agreement provides nothing more to the Debtors than that to which they are already entitled by the "single satisfaction" rule.

21.    Even if the Settlement Agreement's "credit" mechanism could somehow reduce the Debtors' claims pools to a greater extent than would be the case absent the agreement, any added value to the Debtors' estates is put in further doubt by the possibility that vessels that pay NuStar Services and NuStar Terminals on account of the Debtors' failure to pay for pre-petition fuel supplies and thus arguably stand as surety to the Debtors' obligations to NuStar Services and NuStar Terminals, may seek to assert subrogation claims against the Debtors. *See* 11 U.S.C. § 509. As such, it is not clear that, in the event NuStar Services or NuStar Terminals successfully collect debts owed to them directly from vessels by virtue of applicable maritime law, the Debtors' estates will realize any benefit at all since the estates will continue to face the specter of subrogation claims asserted by those vessels.

3.    ***The Consideration Associated with a Reduction in NuStar Supply's 503(b)(9) Claim Is Similarly Illusory***

22.    The Security Agent also fails to see how the reduction of NuStar Supply's priority 503(b)(9) claim provides the Debtors with any value that is not otherwise afforded to them by operation of the single satisfaction rule. Pursuant to the Settlement Agreement, the majority of the reduction in NuStar Supply's priority claim is equal to the amounts NuStar Supply has recovered through the sale of previously reclaimed fuel supplies: $2,410,012.27 in respect of the NuStar Reclaimed Fuel Proceeds, and $421,489.26 in respect of the Other Fuel Proceeds. Only $623,436.50 of the total $3,454,938.03 agreed reduction of NuStar Supply's priority claim appears to be the product of any "give" by NuStar—that portion of the reduction relates to a resolution of the parties' competing claims as to who should bear the burden of the decline in value of the fuel reclaimed by NuStar Supply due to the extended period of time between the date NuStar Supply made its reclamation demand and the date on which it was actually permitted to reclaim the fuel from the Debtors. The remaining $2,831,501.53 of the reduction is, as far as

the Security Agent can determine on the record currently before the Court, equal to the proceeds actually recovered by NuStar Supply in its efforts to recover the value of its claims against the Debtors from other sources. Again, by operation of the single satisfaction rule, any distribution NuStar receives on account of its claims against the Debtors would be reduced by at least the $2,831,501.53 it has already recovered in respect of those claims—a result that holds true with or without the Settlement Agreement.

23.    As for the $623,436.50 reduction in NuStar Supply's priority claim attributable to the Market Value Loss, the Debtors provide no information on which this Court can base a conclusion that the compromise represented by that figure is fair and equitable and in the best interests of the Debtors' estates. In particular, the Debtors do not disclose the total value of the claim NuStar Supply was asserting against the Debtors on account of the depreciation in fuel prices between the time that NuStar made its reclamation demand and when it was permitted to physically reclaim the fuel. Without that information, as well as more details on the nature and scope of the market loss dispute than are provided in the single paragraph of the Settlement Agreement addressing this issue (Settlement Agreement ¶ 7), the true value of the Market Value Loss deduction from NuStar Supply's priority is simply unknown.

24.    At bottom, the deal struck appears to be as follows: in return for NuStar (i) agreeing to drop its opposition to the Debtors' efforts to transfer the venue of these cases to the New York District Court and (ii) conditionally agreeing to venue in the New York District Court for six pending interpleader actions, the Debtors will (a) transfer the Assigned Claims (the value of which the Debtors have not established) for a mere $151,000, (b) agree to coordinate future vessel arrests with NuStar and (c) allow NuStar Supply's priority 503(b)(9) claim in the amount of $3,317,509.55. Given the limited and highly questionable direct benefits that the

Debtors and their creditors will obtain if the Settlement Agreement is approved, the Security Agent respectfully submits that the Debtors have not met their burden of demonstrating that approval of the Settlement Agreement would be fair and equitable and in the best interests of their estates.

**II.     The Debtors Provide No Statutory Basis for the Transfer of the Assigned Claims to NuStar; The Debtors Must Provide Adequate Protection of the Security Agent's Interests**

25.     The Debtors do not discuss in the Motion on what authority they are permitted to transfer property of their estates to NuStar Services.  The only provision cited in the Motion for the relief sought by the Debtors is Bankruptcy Rule 9019.  Motion ¶ 14.  Apart from the reference to section 363(f) in the title of the Motion, the Motion does not refer to sections 361 and 363 of the Bankruptcy Code or otherwise provide any meaningful analysis of the issues.  As such, the Motion is substantively deficient and does not provide a basis to approve the Settlement Agreement.

26.     For the purposes of this preliminary objection, the Security Agent assumes that the Debtors seek to transfer the Assigned Claims to NuStar Services pursuant to section 363(b) of the Bankruptcy Code, and that the Debtors seek to make such transfer free and clear of the Security Agent's interests pursuant to section 363(f) of the Bankruptcy Code, based on the reference to that section and "free and clear" in the title of the Motion.  Section 363(f) of the Bankruptcy Code authorizes a debtor to sell property of the estate under section 363(b) of the Bankruptcy Code free and clear of liens and other interests of an entity in such property, but only if one of five requirements is met. 11 U.S.C. § 363(f).  The Debtors bear the burden of proving they have satisfied one of the requirements of section 363(f) of the Bankruptcy Code. *Dishi & Sons v. Bay Condos LLC*, 510 B.R. 696, 711 (S.D.N.Y. 2014) (citing *In re Daufuskie Island*

*Properties*, LLC, 431 B.R. 626, 637 (Bankr. D.S.C. 2010)).  The Debtors cannot meet that burden because Motion contains no discussion of either section 363(b) or section 363(f) of the Bankruptcy Code, or how they might be satisfied in connection with the transfer of the Assigned Claims.

27.    On the assumption that the Debtors are seeking to transfer the Assigned Claims to NuStar pursuant to 363(b) and 363(f) of the Bankruptcy Code, the Security Agent hereby requests adequate protection of its interests in the Assigned Claims pursuant to sections 105(a), 361, and 363(e) of the Bankruptcy Code.  Section 363(p)(1) of the Bankruptcy Code provides that the Debtors bear the burden of demonstrating the Security Agent's interests are adequately protected and if they are not section 363(e) provides, in turn, that this Court must either prohibit the transfer or condition the transfer on the Debtors' providing adequate protection to the Security Agent.

28.    As discussed above, the Motion is entirely devoid of evidence related to the value of the Assigned Claims.  The Security Agent has requested that the Debtors clarify their understanding of both the face value and the expected realizable value of the Assigned Claims and to provide evidentiary support for each figure.  However, on information and belief, the face value of the Assigned Claims is far in excess of the Cash Payment to which the Security Agent's liens will attach pursuant to the Settlement—such attachment representing the only protection provided to the Security Agent's interests by the Settlement Agreement.  In light of the complete factual void as to the value of the Assigned Claims, the Court must prohibit their transfer—on the record there is simply no way to determine if the Security Agent's interests have been adequately protected as required by section 363(e) of the Bankruptcy Code.

29.     To the extent the Court determines, notwithstanding the foregoing, that the Assigned Claims may be transferred to NuStar, the Security Agent respectfully submits that in the circumstances such transfer must be conditioned on the Debtors' providing the Security Agent with replacement liens on the Debtors' unencumbered assets equal to the full face value of the Assigned Claims.

## CONCLUSION

WHEREFORE, for the foregoing reasons the Security Agent respectfully requests that the Court deny the Motion and grant such other and further relief as the Court deems just and proper.

Dated: April 8, 2015
Bridgeport, Connecticut

**HALLORAN & SAGE LLP**

By:    /s/Craig I. Lifland
      Craig I. Lifland (ct00976)
      225 Asylum Street
      Hartford, Connecticut 06103
      Tel:  (860) 241-4303
      Fax:  (203) 218-4749
      lifland@halloransage.com

**ALLEN & OVERY LLP**

      Daniel J. Guyder
      Laura R. Hall (*pro hac vice* pending)
      Joseph Badtke-Berkow (*pro hac vice* pending)
      1221 Avenue of the Americas
      New York, New York 10020
      Tel:  (212) 610-6300
      Fax:  (212) 610-6399
      daniel.guyder@allenovery.com
      laura.hall@allenovery.com
      joseph.badtke-berkow@allenovery.com

      *Attorneys for ING Bank N.V., as Security Agent*