**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| In re: | Chapter 11 |
| O.W. Bunker Holding North America Inc., *et al.*,[1] | Case No. 14-51720 (JAM) |
| Debtors. | (Jointly Administered)<br>**Reference:  Docket No. 1171** |

**ORDER CONFIRMING THE DEBTORS'**
**FIRST MODIFIED LIQUIDATION PLANS**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"),

having:[2]

    a.    commenced, on November 13, 2014 (the "<u>Petition Date</u>"), these chapter 11 cases (these "<u>Chapter 11 Cases</u>") by filing voluntary petitions in the United States Bankruptcy Court for the District of Connecticut (the "<u>Bankruptcy Court</u>") for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>");

    b.    continued to operate their businesses and manage their properties as debtors in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code;

    c.    filed, on October 14, 2015, (i) the *Debtors' Liquidation Plans* [Docket No. 1017], (ii) the *Disclosure Statement with Respect to Debtors' Liquidation Plans* [Docket No. 1018], and (iii) the *Motion for Order (I) Approving Disclosure Statement, (II) Approving Procedures to Solicit Acceptances of Liquidation Plans, and (III) Establishing Procedures and Deadlines for Notice, Discovery, and Objections to Confirmation of the Liquidation Plans* [Docket No. 1021];

    d.    filed on October 26, 2015, the *First Amended Disclosure Statement with Respect to the Debtors' Liquidation Plans* [Docket No. 1089];

---

[1]    The last four digits of the Debtors' taxpayer identification numbers follow in parentheses:  O.W. Bunker Holding North America Inc. (7474), O.W. Bunker North America Inc. (7158) and O.W. Bunker USA Inc. (3556).  The Debtors' address is: OW Bunker c/o Alvarez & Marsal, LLC, Attn: Scott Anchin, 600 Madison Avenue, 7th Floor, NY, NY 10022.

[2]    Capitalized terms used but not otherwise defined in these findings of fact, conclusions of law, and order (collectively, the "<u>Confirmation Order</u>") have the meanings given to them in the *Debtors' First Modified Liquidation Plans* dated November 19, 2015 [Docket No. 1171], attached hereto as **<u>Exhibit A</u>** (the "<u>Plan</u>"). The rules of interpretation set forth in Article I.B of the Plan apply to this Confirmation Order.

e.    filed on October 28, 2015, the *Notice of Filing Revised P. 38 and Revised Exhibit C to Debtors' First Amended Disclosure Statement* [Docket No. 1108];

f.    obtained, on October 29, 2015, entry of the *Order (A) Approving First Amended Disclosure Statement, (II) Approving Procedures to Solicit Votes on the Debtors' Liquidation Plans, and (III) Establishing Notice and Objection procedures for Confirmation for the Debtors' Liquidation Plans* [Docket No. 1112] (the "Disclosure Statement Order") approving of the Disclosure Statement, solicitation procedures (the "Solicitation Procedures"), and related notices, forms, and ballots (collectively, the "Solicitation Packages");

g.    caused the Solicitation Packages and the *Notice of (A) Approval of First Amended Disclosure Statement, (B) Voting Procedures for the Plan, (C) Scheduling of the Confirmation Hearing, and (D) Procedures for Filing Objections and Responses to Confirmation of the Plan* [Docket No. 1126] (the "Confirmation Hearing Notice") advising of, among other things, the deadline for objecting to confirmation of the Plan, to be distributed beginning on or about November 3, 2015 (the "Solicitation Date"), in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Disclosure Statement Order, and the Solicitation Procedures, as evidenced by, among other things, the affidavit of service filed at [Docket No. 1217] (the "Solicitation Affidavit");

h.    filed on November 9, 2015, the *Motion of Debtors Pursuant to Local Bankruptcy Rule 3019.1 for an Order Permitting Certain Non-Adverse and/or Non-Material Modifications to the Plan* [Docket No. 1134] which was approved by the Court on November 18, 2015 [Docket No. 1163];

i.    filed, on November 10, 2015, the *Status Report Regarding Plan-Related Matters* [Docket No. 1136];

j.    filed, on November 18, 2015 in accordance with the Disclosure Statement Order, the *Plan Supplement to the Debtors' First Modified Liquidation Plans* [Docket No. 1166];

k.    filed, on November 19, 2015 the *Debtors' First Modified Liquidation Plans* [Docket No. 1171];

l.    filed, on December 3, 2015, the *Declaration of Davis Lee Wright Certifying Voting on, and Tabulation of Ballots Accepting and Rejecting, Debtors' First Modified Liquidation Plans* [Docket No. 1224], which declaration was admitted into evidence at the Confirmation Hearing held on December 10, 2015 (the "Confirmation Hearing") as Debtors' Exhibit 3 (the "Voting Report");

m.    filed, on December 9, 2015, the *Debtors' Memorandum of Law in Support of Confirmation of Debtors' First Modified Liquidation Plans* [Docket No. 1231] (the "Confirmation Brief");

n.      filed on December 9, 2015, the Declaration of Hans Staal Jonassen in Support of the Debtors' First Modified Liquidation Plans [Docket No. 1234], which declaration was admitted into evidence at the Confirmation Hearing as Debtors' Exhibit 1 (the "<u>Jonassen Declaration</u>");

o.      filed on December 9, 2015, the Declaration of Scott Anchin in Support of the Debtors' First Modified Liquidation Plans [Docket No. 1235] which declaration was admitted into evidence at the Confirmation Hearing as Debtors' Exhibit 2 (the "<u>Anchin Declaration</u>");

p.      filed on December 9, 2015, the Debtors' proposed *Order Confirming the Debtors' First Modified Liquidation Plans* [Docket No. 1233]; and

q.      proffered at the Confirmation Hearing the additional testimony of Scott Anchin (the "<u>Anchin Proffer</u>")

The Committee having filed on December 8, 2015, the Official Committee of Unsecured

Creditors' Memorandum of Law in Support of Plan Release Provisions and Reply to U.S.

Trustee's Objection [Docket No. 1229].

This Court having:

a.      entered the Disclosure Statement Order on October 29, 2015;

b.      set December 3, 2015, at 4:00 p.m. (prevailing Eastern Time) as the deadline for voting on the Plan and deadline for filing objections in opposition to the Plan. Disclosure Statement Order, ¶¶12 & 18;

c.      set December 10, 2015, at 10:00 a.m (prevailing Eastern Time) as the date and time for the commencement of the Confirmation Hearing in accordance with Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code. *Id.*,¶ 15;

d.      reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Voting Report, the Jonassen Declaration, the Anchin Declaration, and all pleadings, exhibits, statements, responses, and comments regarding confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of these Chapter 11 Cases;

e.      held the Confirmation Hearing;

f.      heard the statements and arguments made by counsel in respect of confirmation;

g.      considered all oral representations, documents, filings, Debtors' Exhibits 1-3 and the Anchin Proffer, and other evidence presented at the Confirmation Hearing; and

h.      considered and taken under advisement the Objection of the United States Trustee to the Release and Exculpation provisions of the Plan (the "UST Objection") [Docket No. 1222], and having overruled any other objections to the Plan and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated;

NOW, THEREFORE, after due deliberation thereon and good cause appearing therefor,

the Court hereby makes and issues the following findings of fact and conclusions of law:

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>[3]

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, AND DECREED THAT:

**A. Jurisdiction and Venue.**

1.      On the Petition Date, the Debtors commenced these Chapter 11 Cases.  Venue in this Court was proper as of the Petition Date and remains proper under 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2). The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1334.  The Court has jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

**B. Eligibility for Relief.**

2.      The Debtors were and continue to be entities eligible for relief under Section 109 of the Bankruptcy Code.

**C. Commencement and Joint Administration of the Chapter 11 Cases.**

3.      On November 19, 2014, the Court entered an order [Docket No. 52] authorizing the joint administration and procedural consolidation of these Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b) and Rule 1015-1 of the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the District of Connecticut (the "<u>Local Bankruptcy</u>

---

[3]   To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Rules"). The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

4.      On November 26, 2014, the U.S. Trustee appointed the Committee representing the interests of the Debtors' unsecured creditors in these Chapter 11 Cases [Docket No. 89]. The Committee was thereafter reconstituted on November 3, 2015 [Docket No. 1125].

**D.  Plan Supplement.**

5.      The Plan Supplement filed by the Debtors on November 18, 2015 [Docket No. 1166] complies with the terms of the Plan, and the Debtors provided good and proper notice of the filing in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and the facts and circumstances of these Chapter 11 Cases. No other or further notice is or will be required with respect to the Plan Supplement.

**E.  Modifications to the Plan.**

6.      Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan described or set forth in the Confirmation Brief (at pp. 48-50) or this Confirmation Order constitute technical changes (collectively, "Technical Modifications"), changes with respect to particular Claims by agreement with Holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Equity Interest, including with respect to the Technical Modifications. The Technical Modifications are consistent with the disclosures previously made pursuant to the Disclosure Statement and solicitation materials served pursuant to the Disclosure Statement Order, and notice of the Technical Modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases.

7.     In accordance with Federal Rule of Bankruptcy Procedure 3019 and D. Conn. LBR. 3019.1, these modifications, including the Technical Modifications, do not require additional disclosure under Section 1125 of the Bankruptcy Code or the resolicitation of votes under Section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

**F.  Objections Overruled.**

8.     The Martin Energy Services, LLC's Reservation of Rights and Limited Objection to Debtors' First Modified Liquidation Plans was resolved and therefore withdrawn on December 9, 2015 [Docket No. 1232; filed December 9, 2015].  The ruling on the UST Objection to confirmation of the Plan ("Confirmation") is set forth below in ¶¶ 31-38 of these Findings of Fact and Conclusions of Law.

**G.  Disclosure Statement Order.**

9.     On October 29, 2015, the Court entered the Disclosure Statement Order [Docket No. 1112], which, among other things:  (a) fixed December 3, 2015, at 4:00 p.m. (prevailing Eastern Time), as the deadline for voting to accept or reject the Plan (the "Voting Deadline"), as well as the deadline for objecting to the Plan (the "Plan Objection Deadline").

**H.  Transmittal and Mailing of Materials; Notice.**

10.     As evidenced by the Solicitation Affidavit and the Voting Report, the Debtors provided due, adequate, and sufficient notice of the Plan, the Disclosure Statement, the Disclosure Statement Order, the Scheduling Order, the Solicitation Packages, the Confirmation Hearing Notice, the Plan Supplement, and all the other materials distributed by the Debtors in connection with confirmation of the Plan in compliance with the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), the Local Bankruptcy Rules, and the procedures set forth in the Disclosure Statement Order.  The Debtors provided due, adequate,

and sufficient notice of the Plan Objection Deadline, the Confirmation Hearing (as may be continued from time to time), and any applicable bar dates and hearings described in the Disclosure Statement Order in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order.  No other or further notice is or shall be required.

### I.   Solicitation.

11.     The Debtors solicited votes for acceptance and rejection of the Plan in good faith, and such solicitation complied with Sections 1125 and 1126, and all other applicable Sections of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure 3017, 3018, and 3019, the Disclosure Statement Order, and all other applicable rules, laws, and regulations.  Jonassen Declaration at ¶¶44 - 48.

### J.   Voting Report.

12.     Prior to the Confirmation Hearing, the Debtors filed the Voting Report.  The procedures used to tabulate ballots were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules, and all other applicable rules, laws, and regulations.  Voting Report at ¶¶15 - 22.

13.     As set forth in the Plan and the Disclosure Statement, Holders of Claims in Classes 3, 4, 9, and 10 (collectively, the "Voting Classes"), were eligible to vote to accept or reject the Plan in accordance with the Solicitation Procedures.  Holders of Claims in Classes 1, 2, 7, and 8 (collectively, the "Deemed Accepting Classes"), are Unimpaired and conclusively presumed to accept the Plan and, therefore, could not vote to accept or reject the Plan.  Holders of Claims and Equity Interests in Classes 5, 6, 11, and 12 (collectively, the "Deemed Rejecting Classes"), are Impaired under the Plan, entitled to no recovery under the Plan, and are therefore deemed to have rejected the Plan.  Voting Report at ¶¶ 7 - 14.

14.     As evidenced by the Voting Report, each Voting Class voted to accept the Plan.

Voting Report at ¶¶20 - 22 and Exhibit A.

**K.  Bankruptcy Rule 3016.**

15.     The Plan is dated and identifies the Entities submitting it, thereby satisfying

Federal Rule of Bankruptcy Procedure 3016(a).  The Debtors appropriately filed the Disclosure

Statement and Plan with the Court, thereby satisfying Federal Rule of Bankruptcy Procedure

3016(b).

**L.  Burden of Proof.**

16.     The Debtors, as proponents of the Plan, met their burden of proving the elements

of Sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence at

the Confirmation Hearing.

**M. Compliance with the Requirements of Section 1129 of the Bankruptcy Code.**

17.     The Plan complies with all applicable provisions of Section 1129 of the

Bankruptcy Code as follows:

**a.      Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of
the Bankruptcy Code.**

18.     The Plan complies with all applicable provisions of the Bankruptcy Code,

including Sections 1122 and 1123, as required by Section 1129(a)(1) of the Bankruptcy Code.

**i.      Sections 1122 and 1123(a)(1)—Proper Classification.**

19.     The classification of Claims and Equity Interests under the Plan is proper under

the Bankruptcy Code.  In accordance with Sections 1122(a) and 1123(a)(1) of the Bankruptcy

Code, Article III of the Plan provides for the separate classification of Claims and Equity

Interests into twelve (12) different Classes, based on differences in the legal nature or priority of

such Claims and Equity Interests.  Valid business, factual, and legal reasons exist for the separate

classification of the various Classes of Claims and Equity Interests created under the Plan, the

classifications were not implemented for any improper purpose, and the creation of such Classes

does not unfairly discriminate between or among Holders of Claims and Equity Interests.

Administrative Claims, Fee Claims, and Priority Tax Claims, addressed in Article II of the Plan,

have not been classified and are thus excluded from the Classes of Claims and Equity Interests

set forth in the Plan pursuant to Section 1123(a)(1) of the Bankruptcy Code.  Jonassen

Declaration at ¶¶ 29 - 32.

20.     In accordance with Section 1122(a) of the Bankruptcy Code, each Class of Claims

or Equity Interests contains only Claims or Equity Interests substantially similar to the other

Claims or Equity Interests within that Class.  Accordingly, the Plan satisfies the requirements of

Sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

### ii.      Section 1123(a)(2)—Specification of Unimpaired Classes.

21.     Article III of the Plan specifies that Claims in the Deemed Accepting Classes are

Unimpaired under the Plan.  Additionally, Article II of the Plan specifies that Administrative

Claims and Priority Tax Claims are Unimpaired, although the Plan does not classify these

Claims.  Jonassen Declaration at ¶ 33.  Accordingly, the Plan satisfies the requirements of

section 1123(a)(2) of the Bankruptcy Code.

### iii.     Section 1123(a)(3)—Specification of Treatment of Impaired Classes.

22.     Article III of the Plan specifies the treatment of each Impaired Class under the

Plan. Jonassen Declaration at ¶ 33.  Accordingly, the Plan satisfies the requirements of Section

1123(a)(3) of the Bankruptcy Code.

### iv.     Section 1123(a)(4)—No Discrimination.

23.     Article III of the Plan provides the same treatment to each Claim or Equity

Interest in any particular Class, as the case may be, unless the Holder of a particular Claim or

9

Equity Interest has agreed to a less favorable treatment with respect to such Claim or Equity

Interest.  Jonassen Declaration at ¶ 33.  Accordingly, the Plan satisfies the requirements of

Section 1123(a)(4) of the Bankruptcy Code.

> ### v.      Section 1123(a)(5)—Adequate Means for Plan Implementation.

24.     The Plan and the various documents included in the Plan Supplement provide

adequate and proper means for the Plan's execution and implementation, including: (a) the

formation of the OWB NA Liquidating Trust and the OWB USA Liquidating Trust; (b) the ING

Settlement; (c) the transfer of the ING Bank Security Interests to the Liquidating Trusts; (d) the

consummation of the additional transactions contemplated by the Plan including but not limited

to the dissolution of OWB Holding; (e) the cancellation of certain existing agreements,

obligations, instruments, and Equity Interests; (f) the continued vesting of the assets of the

Debtors' Estates in the respective Liquidating Trusts; and (g) the execution, delivery, filing, or

recording of all contracts, instruments releases, and other agreements or documents in

furtherance of the Plan.  Jonassen Declaration at ¶¶ 35-36.  Accordingly, the Plan satisfies the

requirements of Section 1123(a)(5) of the Bankruptcy Code.

> ### vi.      Section 1123(a)(6)—Non-Voting Equity Securities.

25.     These Debtors are liquidating and no non-voting equity securities will be issued.

Jonassen Declaration at ¶ 37.  As such, the Plan satisfies the requirements of Section 1123(a)(6)

of the Bankruptcy Code.

> ### vii.      Section 1123(a)(7)—Directors, Officers, and Trustees.

26.     The Trustee for each of the Liquidating Trusts was disclosed as part of the Plan

Supplement.  Jonassen Declaration at ¶¶ 38-39; Plan Supplement Exhibit 3.  Accordingly, the

Plan satisfies the requirements of Section 1123(a)(7) of the Bankruptcy Code.

**b.      Section 1123(b)—Discretionary Contents of the Plan.**

27.      The Plan contains various provisions that may be construed as discretionary but

not necessary for confirmation under the Bankruptcy Code.  Jonassen Declaration at ¶¶ 40-41.

Any such discretionary provision complies with Section 1123(b) of the Bankruptcy Code and is

not inconsistent with the applicable provisions of the Bankruptcy Code.  Thus, the Plan satisfies

Section 1123(b).

**i.      Impairment/Unimpairment of Any Class of Claims or Equity
Interests.**

28.      Article III of the Plan Impairs or leaves Unimpaired, as the case may be, each

Class of Claims and Equity Interests, as contemplated by Section 1123(b)(1) of the Bankruptcy

Code.  Jonassen Declaration at ¶ 41.

**ii.      Assumption and Rejection of Executory Contracts and Unexpired
Leases.**

29.      Article XI of the Plan provides for the rejection of the Debtors' Executory

Contracts and Unexpired Leases unless such Executory Contract or Unexpired Lease appears on

the Assumption Schedule or: (a) was previously assumed or rejected by the Debtors pursuant to a

Final Order; (b) was rejected by the Debtors by order of the Bankruptcy Court as of the Effective

Date, which order becomes a Final Order after the Effective Date; (c) is the subject of a motion

to assume that is pending on the Effective Date; or (d) is otherwise assumed pursuant to the Plan.

Jonassen Declaration at ¶ 42.

**iii.      Compromise and Settlement.**

30.      Section 1123(b)(3)(A) of the Bankruptcy Code and Federal Rule of Bankruptcy

Procedure 9019 permit a plan to provide for "the settlement or adjustment of any claim or

interest belonging to the debtor or to the estate."  The Plan incorporates the terms and provisions

of the ING Settlement.  Jonassen Declaration at ¶ 41(iii).  The terms of the ING Settlement are

fair, reasonable, and in the best interests of the Debtors' estates and claim holders, and fall above the lowest point in the range of reasonableness.

### iv.    Debtor Release.

31.    The releases of claims and Causes of Action by the Debtors described in Article VIII.D.1 of the Plan in accordance with Section 1123(b)(3)(A) of the Bankruptcy Code represent a valid exercise of the Debtors' business judgment under Federal Rule of Bankruptcy Section 9019 (the "Debtor Release"), and the UST Objection to the Debtor Release is overruled.  The Debtor Release is an integral element of the Chapter 11 Cases, including the ING Settlement, and the failure to effect the Debtor Release would seriously impair the Debtors' ability to confirm the Plan.  A Debtor's or a Liquidating Trustee's pursuit of the Claims released pursuant to the Debtor Release is not in the best interest of the Estates' various constituencies because the costs involved would likely outweigh any potential benefit from pursuing such Claims or the consideration received from the Released Parties in exchange for the Debtor Release.  Jonassen Declaration at ¶¶90-92.

32.    The Debtor Release appropriately offers protection to parties that constructively participated in the Debtors' restructuring process including but not limited to Adrian Tolson and Hans Staal Jonassen, in their respective capacities as officers and/or directors of the Debtors, ING Bank, the Lenders, the Global Receivers, and the Committee which, among other things, played a significant role in formulating the Plan and negotiating related settlements with parties-in-interest.  Such protections from liability facilitated the participation of many of the Debtors' stakeholders in the negotiations and compromises that led to the Plan.  Specifically, the Released Parties under the Plan made significant contributions to the Chapter 11 Cases, including working to ensure that the Debtors were able to maximize the value of their estates for the benefit of the Debtors' creditors and negotiating the ING Settlement.  The Debtor Release is appropriate

because each of the Released Parties share an identity of interest with the Debtors and the

Debtors' directors and officers, waived claims associated with these Chapter 11 Cases, and

actively participated in these Chapter 11 Cases.  Jonassen Declaration at ¶¶ 6, 90 – 95; Anchin

Proffer.

33.    The scope of the Debtor Release is appropriately tailored under the facts and

circumstances of these Chapter 11 Cases.  In light of, among other things, the value provided by

the Released Parties to the Debtors' Estates and the critical nature of the Debtor Release to the

Plan, the Debtor Release is approved.

### v.    Release by the ING Parties

34.    The release by the ING Releasing Parties (the "ING Release"), set forth in Article

VIII.D.3 of the Plan, is an essential provision of the ING Settlement which helped to form and is

an integral component of the Plan and the UST Objection to the ING Release is overruled.  The

ING Release is purely consensual and the basis for its approval is identified by the Second

Circuit in *Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re

Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 142 (2d Cir. 2005) ("*Metromedia*"), *see also In

re DSBD North America, Inc.,* 419 B.R.179, 217 (Bankr. S.D.N.Y. 2009).  Additionally, the ING

Release is approved on the alternative basis that the ING Released Parties have made a

substantial contribution to the Estates, and the unique circumstances of these Chapter 11 Cases

warrant approval of the ING Release under *Metromedia.  See* Jonassen Declaration at ¶¶ 91-92.

### vi.    Releases by Releasing Non-Debtor Parties.

35.    The release by Releasing Non-Debtor Parties (the "Third Party Release"), set

forth in Article VIII.D.2 of the Plan, is an essential provision of the Plan.  Jonassen Declaration

at ¶¶ 83 – 95.  The Third Party Release is purely consensual, and may be approved pursuant to

applicable Second Circuit law including *Metromedia*.  The UST Objection to the Third Party

Release is overruled.

36.    All Holders of Impaired Claims (other than an ING Releasing Party) were

instructed on the applicable Ballots that they would be deemed to have consented to the Third

Party Release unless such individual Holder declined the applicable OWB USA Class A Election

or the OWB NA Class A Election, and also "checked the box" to opt-out of the Third Party

Release.  Voting Report at 24-27; Jonassen Declaration at ¶¶ 85 - 89.  The Releasing Non-Debtor

Parties have consented to the Third Party Release after due and adequate notice procedure

approved by this Court and other courts in the Second Circuit.  *See*, *e.g.*, *In re Genco Shipping &*

*Trading Limited, et al.,* 513 B.R. 233, 271 (Bankr. S.D.N.Y. 2014); *In re DSBD North America,*

*Inc.* 419 B.R.179, 217 (Bankr. S.D.N.Y. 2009), *In re Calpine Corp.*, 05-60200 2007 WL

4565223 (Bankr. S.D.N.Y. December 19, 2007).  The Releasing Non-Debtor Parties are

contractually bound by the Third Party Release to the extent set forth in Article VIII.D.2 of the

Plan.

37.    Additionally, the Third Party Release is approved on the alternative basis that the

Released Parties have made a substantial contribution to the Estates, and the unique

circumstances of these Chapter 11 Cases warrant approval of the Third Party Release under

applicable Second Circuit law including *Metromedia*.  *See* Jonassen Declaration at ¶¶ 6, 90 – 95;

Anchin Proffer.

### vii.    Exculpation.

38.    The Exculpation provisions set forth in Article VIII.C of the Plan are essential to

the Plan, appropriately exclude exculpation for gross negligence and willful misconduct, and the

UST Objection to the Exculpation provisions is overruled.  The record in these Chapter 11 Cases

supports the Exculpation provisions set forth in Article VIII.C of the Plan, which are

appropriately tailored to protect the Exculpated Parties from inappropriate litigation.  Jonassen

Declaration at ¶¶ 96 – 97.

### viii.    Injunction.

39.    The injunction provision set forth in Article VIII.E of the Plan is essential to the

Plan and is necessary to implement the Plan and to preserve and enforce the Debtor Release, the

ING Release, the Third Party Release, and the Exculpation provisions in Article VIII.D of the

Plan.  The injunction provision is appropriately tailored to achieve those purposes.

### ix.    Preservation of Claims and Causes of Action.

40.    Article VIII.F of the Plan appropriately provides for the preservation by the

Debtors of the Litigation Claims in accordance with Section 1123(b)(3)(B) of the Bankruptcy

Code.  Litigation Claims not released by the Debtors or exculpated under the Plan will be

retained by the applicable Liquidating Trust.  The provisions regarding Litigation Claims in the

Plan are appropriate and in the best interests of the Debtors, their respective Estates, and Holders

of Claims.  For the avoidance of any doubt, Litigation Claims released or exculpated under the

Plan will not be retained by the Debtors or vested with the applicable Liquidating Trust.

### c.    Section 1123(d)—Cure of Defaults.

41.    Article XI.B of the Plan provides for the satisfaction of Cure Claims associated

with each Executory Contract and Unexpired Lease to be assumed in accordance with

Section 365(b)(1) of the Bankruptcy Code.  Any monetary defaults under each Assumed

Executory Contract or Unexpired Lease shall be satisfied, pursuant to Section 365(b)(1) of the

Bankruptcy Code, by payment of the Cure Claim in Cash on or as soon as reasonably practicable

after the first to occur of (i) thirty (30) days after the determination of the Cure Claim, and (ii)

the Effective Date or such other date as may be set by the Bankruptcy Court, or on such other

terms as agreed to by a Debtor or Liquidating Trust and the non-Debtor counterparty to such

Executory Contract or Unexpired Lease.  Any disputed cure amounts will be determined in accordance with the procedures set forth in Article XI.B of the Plan, and applicable bankruptcy and nonbankruptcy law.  As such, the Plan provides that the Debtors or the Liquidating Trusts will cure, or provide adequate assurance that the Debtors or the Liquidating Trust will promptly cure defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with Section 365(b)(1) of the Bankruptcy Code.  Thus, the Plan complies with Section 1123(d) of the Bankruptcy Code.

> **d.    Section 1129(a)(2)—Compliance of the Debtors and Others with the Applicable Provisions of the Bankruptcy Code.**

42.    The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by Section 1129(a)(2) of the Bankruptcy Code, including Sections 1122, 1123, 1124, 1125, 1126, and 1128, and Federal Rules of Bankruptcy Procedure 3017, 3018, and 3019.  *See* Jonassen Declaration at ¶¶ 44; Solicitation Affidavit; Voting Report at ¶¶ 3- 14.

43.    The Debtors and their agents solicited votes to accept or reject the Plan after the Court approved the adequacy of the Disclosure Statement, pursuant to Section 1125(a) of the Bankruptcy Code and the Disclosure Statement Order.  Voting Report at ¶¶ 3 - 14; Jonassen Declaration at ¶¶ 46 – 48.

44.    The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in Section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of Section 1125(e), and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules, and all other applicable rules, laws, and regulations and are entitled to the protections afforded by Section 1125(e) of the

Bankruptcy Code and the Exculpation provisions set forth in Article VIII.C of the Plan. Voting

Report at ¶¶ 3 - 22; Jonassen Declaration at ¶¶ 46 – 48.

45.     The Debtors and their agents have participated in good faith and in compliance

with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and

distribution of recoveries under the Plan and therefore are not, and on account of such

distributions will not be, liable at any time for the violation of any applicable law, rule, or

regulation governing the solicitation of acceptances or rejections of the Plan or distributions

made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to

the Plan. *See* Voting Report at ¶¶ 3 - 22; Jonassen Declaration at ¶¶ 46 – 48.

**e.      Section 1129(a)(3)—Proposal of Plan in Good Faith.**

46.     The Debtors have proposed the Plan in good faith and not by any means forbidden

by law. Jonassen Declaration at ¶¶ 51 – 54. In determining that the Plan has been proposed in

good faith, the Court has examined the totality of the circumstances surrounding the filing of

these Chapter 11 Cases, the Plan itself, and the process leading to its formulation. The Debtors'

good faith is based upon the facts and record of these Chapter 11 Cases, the Disclosure

Statement, the Disclosure Statement Hearing, and the record of the Confirmation Hearing and

other proceedings held in these Chapter 11 Cases.

47.     The Plan is the product of arm's-length negotiations by and among the Debtors,

the Debtors' disinterested directors and managers, ING Bank, and the Committee.

Accordingly, the requirements of Section 1129(a)(3) of the Bankruptcy Code are satisfied.

**f.      Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable.**

48.     Any payment made or to be made by the Debtors or the Liquidating Trustees for

services or costs and expenses in connection with the Chapter 11 Cases, or in connection with

the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval

of the Court as reasonable.  Jonassen Declaration at ¶ 55.  Accordingly, the Plan satisfies the

requirements of Section 1129(a)(4).

> **g.**      **Section 1129(a)(5)—Disclosure of Directors and Officers and Consistency with the Interests of Creditors and Public Policy.**

49.      The Debtors have identified the Liquidating Trustees as part of their Plan

Supplement.  Jonassen Declaration at ¶¶ 57 – 58; Plan Supplement at Exhibit 3.  Accordingly,

the Debtors have satisfied the requirements of Section 1129(a)(5) of the Bankruptcy Code.

> **h.**      **Section 1129(a)(6)— Rate Changes.**

50.      The Plan does not contain any rate changes subject to the jurisdiction of any

governmental regulatory commission and therefore will not require governmental regulatory

approval.  Jonassen Declaration at ¶ 59.  Therefore, Section 1129(a)(6) of the Bankruptcy Code

does not apply to the Plan.

> **i.**      **Section 1129(a)(7)—Best Interests of Holders of Claims and Equity Interests.**

51.      The evidence in support of the Plan that was proffered or adduced at the

Confirmation Hearing, including pursuant to the Jonassen Declaration and the Anchin

Declaration, and the facts and circumstances of these Chapter 11 Cases, establishes that Holders

of Allowed Claims and Equity Interests in every Class will recover as much or more value under

the Plan on account of such Claim or Equity Interest, as of the Effective Date, than the amount

such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7

of the Bankruptcy Code.  Anchin Declaration at ¶¶ 18 – 33; Jonassen Declaration at ¶¶ 60 – 67;

Plan Supplement Exhibit 8 (Updated Liquidation Analysis).  Accordingly, the Debtors have

satisfied the requirements of Section 1129(a)(7) of the Bankruptcy Code.

**j.      Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Certain Impaired Class.**

52.      Because the Plan has not been accepted by the Deemed Rejecting Classes, the Debtors seek Confirmation under Section 1129(b), rather than Section 1129(a)(8), of the Bankruptcy Code.  Jonassen Declaration at ¶¶ 68 – 70 (acceptance by voting classes).  Thus, although Section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and thus satisfies Section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below.  As a result, the requirements of Section 1129(b) are satisfied.

**k.      Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.**

53.      The treatment of Administrative Claims, Professional Fee Claims, and Priority Tax Claims under Article II of the Plan satisfies the requirements of, and complies in all respects with, Section 1129(a)(9) of the Bankruptcy Code.  Jonassen Declaration at ¶ 71.

**l.      Section 1129(a)(10)—Acceptance by at Least One Impaired Class.**

54.      As set forth in the Voting Report, each Impaired Class that is entitled to vote on the Plan has voted to accept the Plan.  Specifically, Holders of Claims in Classes 3, 4, 9, and 10 voted to accept the Plan.  As such, there is at least one Class of Claims that is Impaired under the Plan and has accepted the Plan, determined without including any acceptance of the Plan by any insider (as defined by the Bankruptcy Code).  Voting Report at ¶¶ 20 - 22 and Exhibit A; Jonassen Declaration at ¶¶ 72 - 73.  Accordingly, the requirements of Section 1129(a)(10) of the Bankruptcy Code have been satisfied.

**m.    Section 1129(a)(11)—Feasibility of the Plan.**

55.    Though the Debtors' cases are liquidating, the evidence supporting the Plan proffered or adduced by the Debtors at or before the Confirmation Hearing, including the Jonassen Declaration and the Anchin Declaration:  (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other evidence; (c) establishes that the Plan is feasible; and (d) establishes that the Liquidating Trusts will have sufficient funds available to meet their obligations under the Plan—including sufficient amounts of Cash to reasonably ensure payment of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Professional Fee Claims, and other expenses in accordance with the terms of the Plan and Section 507(a) of the Bankruptcy Code.  Anchin Declaration at ¶¶ 3-15; Jonassen Declaration at ¶¶ 74 - 75.

56.    Accordingly, the Plan satisfies the requirements of Section 1129(a)(11) of the Bankruptcy Code.

**n.    Section 1129(a)(12)—Payment of Statutory Fees.**

57.    Article II.C of the Plan provides that all fees payable pursuant to Section 1930(a) of the Judicial Code, as determined by the Court at the Confirmation Hearing in accordance with Section 1128 of the Bankruptcy Code, will be paid by the applicable Debtor (on the Effective Date) or each of the applicable Liquidating Trusts, or the Disbursing Agent on behalf of each of the applicable Liquidating Trusts (after the Effective Date) for each quarter (including any fraction of a quarter) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.  Jonassen Declaration at ¶ 76.  Accordingly, the Plan satisfies the requirements of Section 1129(a)(12) of the Bankruptcy Code.

      **o.**      **Section 1129(a)(13)—Retiree Benefits.**

58.      The Debtors do not have any retiree plans.  Jonassen Declaration at ¶ 77.

Therefore, Section 1129(a)(13) of the Bankruptcy Code does not apply.

      **p.**      **Sections 1129(a)(14), (15), and (16)—Domestic Support Obligations, Individuals, and Nonprofit Corporations.**

59.      The Debtors do not owe any domestic support obligations, are not individuals,

and are not nonprofit corporations.  Therefore, Sections 1129(a)(14), 1129(a)(15), and

1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

      **q.**      **Section 1129(b)—Confirmation of Plan Over Nonacceptance of Impaired Class.**

60.      Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the

Plan, the Plan may be confirmed pursuant to Section 1129(b)(1) of the Bankruptcy Code

because:  (a) each Voting Class voted to accept the Plan; and (b) the Plan does not discriminate

unfairly and is fair and equitable with respect to the Deemed Rejecting Classes.  Anchin

Declaration at ¶¶ 18-31; Jonassen Declaration at ¶¶ 78 - 80.  As a result, the Plan satisfies the

requirements of Section 1129(b) of the Bankruptcy Code.  Thus, the Plan may be confirmed even

though Section 1129(a)(8) of the Bankruptcy Code is not satisfied.  After entry of the

Confirmation Order and upon the occurrence of the Effective Date, the Plan shall be binding

upon the members of the Deemed Rejecting Classes.

      **r.**      **Section 1129(c)—Only One Plan.**

61.      Other than the Plan (including previous versions thereof), no other plan has been

filed in these Chapter 11 Cases.  Jonassen Declaration at ¶ 81.  Accordingly, the requirements of

Section 1129(c) of the Bankruptcy Code have been satisfied.

**s.      Section 1129(d)—Principal Purpose of the Plan Is Not Avoidance of Taxes or Section 5 of the Securities Act.**

62.     No governmental unit has requested that the Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act.  As evidenced by its terms, the principal purpose of the Plan is not such avoidance.  Jonassen Declaration at ¶ 82.  Accordingly, the requirements of Section 1129(d) of the Bankruptcy Code have been satisfied.

**t.      Section 1129(e)—Not Small Business Cases.**

63.     These Chapter 11 Cases are not small business cases, and accordingly, Section 1129(e) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**u.      Satisfaction of Confirmation Requirements.**

64.     Based upon the foregoing, the Plan satisfies the requirements for plan confirmation set forth in Section 1129 of the Bankruptcy Code.

**v.      Good Faith.**

65.     The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders. The Plan accomplishes this goal.  Accordingly, the Debtors have been, are, and will continue acting in good faith if they proceed to:  (a) consummate the Plan, the Liquidating Trust Agreements, and the other agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed or contemplated by this Confirmation Order.  Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

**w.**     **Conditions to Effective Date.**

66.     The Plan shall not become effective unless and until the conditions set forth in

Article XIII.A of the Plan have been satisfied or waived pursuant to Article XIII.B of the Plan.

**x.**     **Implementation.**

67.     All documents and agreements necessary to implement the Plan, including those

contained in the Plan Supplement, and all other relevant and necessary documents have been

negotiated in good faith and at arm's length, are in the best interests of the Debtors, and shall,

upon completion of documentation and execution, be valid, binding, and enforceable documents

and agreements not in conflict with any federal, state, or local law.

**y.**     **Vesting of Assets.**

68.     Except as otherwise provided in the Plan, on the Effective Date, all property in

each Estate, all Litigation Claims, and any property acquired by any of the Debtors pursuant to

the Plan shall vest in each applicable Liquidating Trust, free and clear of all Liens, Claims,

charges, Equity Interests, or other encumbrances.  Except as otherwise provided in the Plan, on

and after the Effective Date, each of the Liquidating Trusts may use, acquire, or dispose of

property and compromise or settle any Litigation Claims without supervision or approval by the

Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**z.**     **Retention of Jurisdiction.**

69.     The Court properly retains jurisdiction over the matters set forth in Article X and

other applicable provisions of the Plan.

## ORDER

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF

LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:

1.     This Confirmation Order confirms the Plan.

2.      This Confirmation Order approves the Plan Supplement.

3.      All Holders of Claims that voted to accept the Plan are conclusively presumed to have accepted the Plan as modified, including as modified by the Technical Modifications.

4.      The Plan and this Confirmation Order will be effective and binding on all parties in interest, including:  (a) the Debtors; (b) the Committee; (c) ING Bank; (d) the Lenders; and (e) all Holders of Claims and Equity Interests.

5.      The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Court that the Plan, the Plan Supplement, and any related document or exhibit will be approved in their entirety.

A.      **Objections.**

6.      To the extent that any objections (including any reservations of rights contained therein) to confirmation of the Plan have not been withdrawn, waived, or settled prior to entry of this Confirmation Order, are not cured or ruled on by the relief granted in this Confirmation Order, or have been otherwise resolved as stated by the Debtors on the record of the Confirmation Hearing, all such objections (including any reservation of rights contained therein) are hereby overruled.

B.      **Findings of Fact and Conclusions of Law.**

7.      The findings of fact and the conclusions of law set forth in this Confirmation Order constitute findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 9014.  All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to Confirmation are hereby incorporated into this Confirmation Order to the extent not inconsistent herewith.  To the extent that any of the following constitutes

findings of fact or conclusions of law, they are adopted as such.  To the extent any finding of fact

or conclusion of law set forth in this Confirmation Order (including any findings of fact or

conclusions of law announced by the Court at the Confirmation Hearing and incorporated herein)

constitutes an order of this Court, it is adopted as such.

**C.  The Releases, Injunction, Exculpation, and Related Provisions Under the Plan.**

8.       The following releases, injunctions, exculpations, and related provisions set forth

in Article VIII of the Plan are hereby approved and authorized in their entirety:

**a.       The Debtor Release.**

9.       **As of the Effective Date, for good and valuable consideration, the adequacy**

**of which is hereby confirmed, including without limitation the service of the Released**

**Parties in facilitating the expeditious liquidation or dissolution of the Debtors and the**

**implementation of the transactions contemplated by the Plan, each of the Debtors, and any**

**Person seeking to exercise the rights of a Debtor's Estate, including without limitation the**

**Liquidating Trusts, the Liquidating Trustees acting on behalf of the Liquidating Trusts, or**

**other successors to the Debtors or any Estate representative appointed or selected pursuant**

**to Section 1123(b)(3) of the Bankruptcy Code, hereby irrevocably, absolutely and**

**permanently releases, waives, and discharges all the Released Parties and their respective**

**property from any and all Claims or Causes of Action that the Debtors would have been**

**legally entitled to assert in their own right (whether individually or collectively) or on**

**behalf of the Holder of any Claim or Equity Interest or other Person, based in whole or in**

**part upon any act or omission, transaction, agreement, event, or other occurrence taking**

**place on or before the Effective Date arising out of or in any way related to the Debtors, the**

**Chapter 11 Cases, or the Plan, including, for the avoidance of doubt, all such Claims or**

**Causes of Action that the Debtors or the Estates have or may have related to the allegations**

asserted by the Debtors in the ING Bank Adversary Proceeding (including any Claims or

Causes of Action arising under Sections 547 and 548 of the Bankruptcy Code and

applicable state fraudulent conveyance law); provided, however, that there shall be no such

release on account of Claims or liabilities in respect of any contractual obligation owed by

such Person to a Debtor under the Plan or in any contracts, instruments, or agreements

delivered under the Plan; and provided, further, that the foregoing provisions of this

Article VIII.D.1. shall have no effect on the liability of any of the Released Parties for gross

negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order.

       **b.**        **The ING Release**

       10.      **As of the Effective Date, in exchange for their rights and distributions**

hereunder, each of the ING Releasing Parties shall be deemed to have released, waived,

and discharged, irrevocably, absolutely, and permanently, each of the ING Released

Parties and their respective property from any and all Claims or Causes of Action based in

whole or in part upon any act or omission, transaction, agreement, event, or other

occurrence taking place on or before the Effective Date arising out of or in any way related

to the Debtors, the Chapter 11 Cases, or the Plan; provided, however, that the foregoing

provisions of this Article VIII.D.3. shall have no effect on (a) the liability of the ING

Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as

determined by a Final Order or (b) any Cause of Action brought derivatively by a

Liquidating Trust and in respect of which Cause of Action a Liquidating Trust has

standing (pursuant to the Plan) to pursue except to the extent such Cause of Action is

released pursuant to the Plan; provided, further, that the foregoing provisions of this

Article VIII.D.3. shall not operate to waive or release the rights of the ING Releasing

Parties to object to Professionals' fee applications (and Fee Claims asserted thereunder) filed with the Bankruptcy Court after August 20, 2015.

      c.      **The Third Party Release.**

      11.      As of the Effective Date, in exchange for their rights and distributions hereunder, each of the Releasing Non-Debtor Parties (regardless of whether a Releasing Non-Debtor Party is a Released Party) shall be deemed to have released, waived, and discharged, irrevocably, absolutely, and permanently, each of the Released Parties and their respective property from any and all Claims or Causes of Action based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising out of or in any way related to the Debtors, the Chapter 11 Cases, or the Plan; provided, however, that the foregoing provisions of this Article VIII.D.2. shall have no effect on (a) the liability of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order or (b) any Cause of Action brought derivatively by a Liquidating Trust and in respect of which Cause of Action a Liquidating Trust has standing (pursuant to the Plan) to pursue except to the extent such Cause of Action is released pursuant to the Plan; provided, further, that the foregoing provisions of this Article VIII.D.2. shall not operate to waive or release any Claims or Causes of Action held by a Releasing Non-Debtor Party with respect to Professionals' final fee applications or Fee Claims in the Chapter 11 Cases.

      d.      **Exculpation.**

      12.      Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including without limitation the service of the Exculpated Parties in facilitating the expeditious liquidation or dissolution of the Debtors and the implementation of the

transactions contemplated by the Plan, none of the Exculpated Parties shall have or incur

any liability to any Holder of a Claim or Equity Interest or any other Person for any act or

omission arising out of or in connection with the Debtors' liquidation or dissolution, or the

Chapter 11 Cases, on or before the Effective Date, regardless of whether such act or

omission occurred or failed to occur, respectively, before or after the Petition Date,

including without limitation the commencement of the Chapter 11 Cases, the negotiation

and execution of the Disclosure Statement, the negotiation, execution and performance of

the Plan, the solicitation of votes for and the pursuit of the Confirmation Order, the

Effective Date, the consummation of the Plan, or the administration of the Plan or the

Distributions to be made under the Plan; provided, however, that the foregoing provisions

of this Article VIII.C. shall have no effect on the liability of the Exculpated Parties for gross

negligence, willful misconduct, fraud or criminal conduct as determined by a Final Order.

The Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to

their duties and responsibilities under and in connection with the Plan.

e.      **Injunction.**

13.      **In addition to the injunction provided under Sections 524(a) and 1141 of the

Bankruptcy Code, the Confirmation Order shall permanently enjoin the commencement or

prosecution by any Person, directly, derivatively or otherwise, of any Claims, Causes of

Action or liabilities released or exculpated pursuant to the Plan, including without

limitation the Claims and Causes of Action released in Article VIII.D.1-3. hereof; provided,

however, that  parties may obtain copies of the purchase order, bunker delivery receipt,

and/or invoice in matters in which a Debtor was an Intermediary Supplier from the

applicable Liquidating Trustee without seeking leave from the Bankruptcy Court.**

**f.    Liquidating Trust Agreement.**

14.    The Liquidating Trust Agreements are approved in their entirety without modifications.  The Debtors are authorized to enter into the Liquidating Trust Agreements and perform all of their obligations thereunder.

**D.  Post-Confirmation Notices, Professional Compensation, and Bar Dates.**

15.    In accordance with Federal Rules of Bankruptcy Procedure 2002 and 3020(c), no later than seven (7) Business Days after the Effective Date, the Debtors or the Liquidating Trusts must cause notice of Confirmation and occurrence of the Effective Date (the "Notice of Confirmation") to be served by United States mail, first-class postage prepaid, by hand, or by overnight courier service to all parties served with the Confirmation Hearing Notice; provided that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Confirmation Hearing Notice but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  No further notice is necessary.

16.    The Notice of Confirmation will constitute sufficient notice of the entry of the Confirmation Order to such filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

**E.  Notice of Subsequent Pleadings.**

17.    Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in these Chapter 11 Cases after the Effective Date will be limited to the following parties:  (a) the United States Trustee; (b) ING Bank; and (c) any party known to be directly affected by the relief sought by such pleadings.

**F.  Retention of Jurisdiction.**

18.     Notwithstanding entry of this Confirmation Order and the occurrence of the Effective Date, this Court shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, the Plan and this Confirmation Order to the fullest extent permitted by law, including, among other things, jurisdiction over the governance and operations of the OWB NA Liquidating Trust and the OWB USA Liquidating Trust, and each of the matters described in Article X of the Plan.   Specifically, in connection with governance and operation of the Liquidation Trusts, in addition to the matters described in Article X of the Plan, this Court shall retain jurisdiction to resolve all matters necessary to effectuate the terms of the Liquidating Trust Agreements, including, without limitation, to determine, adjudicate, or decide any motion or application to: (i) appoint a replacement Liquidating Trustee; (ii) remove a Liquidating Trustee for cause; (iii) address disputes among beneficiaries of the Liquidating Trusts and the applicable Liquidating Trustee related to access to books and records; (iv) extend the duration of a Liquidating Trust; (v) relieve the Liquidating Trustee, its agents or employees of any duties under the applicable Liquidating Trust Agreement; or (vi) divide assets of a Liquidating Trust.

**G.  Reports.**

19.     After the Effective Date, the Debtors have no obligation to file with the Court or serve on any parties reports that the Debtors were obligated to file under the Bankruptcy Code or a Court order, including monthly operating reports (even for those periods for which a monthly operating report was not filed prior to the Effective Date); *provided, however,* that the Debtors will comply with the U.S. Trustee's quarterly reporting requirements.  From confirmation through the Effective Date, the Debtors will file such reports as are required under the Local Bankruptcy Rules.  Notwithstanding anything contained in this Confirmation Order, the

Liquidating Trustees will cause such periodic reports to be filed as may be required pursuant to

the Liquidating Trust Agreements.

**H.  Effectiveness of All Actions.**

20.    Except as set forth in the Plan, all actions authorized to be taken pursuant to the

Plan shall be effective on, prior to, or after the Effective Date pursuant to the Confirmation

Order, without further application to, or order of the Court, or further action by the respective of

the Debtors and/or the Liquidating Trustees.

**I.  Approval of Consents and Authorization to Take Acts Necessary to Implement Plan.**

21.    This Confirmation Order shall constitute all approvals and consents required, if

any, by the laws, rules, and regulations of all states and any other governmental authority with

respect to the implementation or consummation of the Plan including but not limited to a

determination that OWB Holding is deemed dissolved for all purposes as of the Effective Date

without the need for further action to be taken by any Person as described in Article VI.1 of the

Plan.  Any documents, instruments, or agreements, and any amendments or modifications

thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan

Supplement, the Disclosure Statement, and any documents, instruments, securities, or

agreements, and any amendments or modifications thereto are deemed approved.

22.    **Plan Implementation Authorization**.  The Debtors or the Liquidating Trustees,

as the case may be, and their respective directors, officers, members, agents, and attorneys,

financial advisors, and investment bankers are authorized and empowered from and after the date

hereof to negotiate, execute, issue, deliver, implement, file, or record any contract, instrument,

release, or other agreement or document related to the Plan, as the same may be modified,

amended and supplemented, and to take any action necessary or appropriate to implement,

effectuate, consummate, or further evidence the Plan in accordance with its terms, or take any or

all corporate actions authorized to be taken pursuant to the Plan, whether or not specifically

referred to in the Plan or any exhibit thereto, without further order of the Court. To the extent

applicable, any or all such documents shall be accepted upon presentment by each of the

respective state filing offices and recorded in accordance with applicable state law and shall

become effective in accordance with their terms and the provisions of state law. Pursuant to the

laws of the State of Connecticut and any comparable provision of the business corporation laws

of any other state, as applicable, no action of the Debtors' boards of directors will be required to

authorize the Debtors to enter into, execute and deliver, adopt or amend, as the case may be, any

such contract, instrument, release, or other agreement or document related to the Plan, and

following the Effective Date, each of the Plan documents will be a legal, valid and binding

obligation of the Debtors, enforceable against the Debtors and the Liquidating Trusts in

accordance with the respective terms thereof.

**J. Binding Effect.**

23.     On the date of and after entry of this Confirmation Order and subject to the

occurrence of the Effective Date, the Plan and its related documents shall bind any Holder of a

Claim or Equity Interest and such Holder's respective successor and assigns, whether or not: (a)

the Claim or Equity Interest is Impaired under the Plan; (b) such Holder has accepted the Plan;

(c) such Holder failed to vote to accept or reject the Plan or voted to reject the Plan; (d) such

Holder is entitled to a distribution under the Plan; (e) such Holder will receive or retain any

property or interests in property under the Plan; and (f) such Holder has filed a Proof of Claim in

these Chapter 11 Cases. The Plan and its related documents constitute legal, valid, binding, and

authorized obligations of the respective parties thereto and shall be enforceable in accordance

with their terms. Pursuant to Section 1142(a) of the Bankruptcy Code, the Plan and its related

documents shall apply and be enforceable notwithstanding any otherwise applicable

nonbankruptcy law.

### K.  The ING Settlement

24.     The ING Settlement is hereby approved and the Debtors and the Liquidating

Trusts, as applicable, are authorized and directed to take all actions as are necessary to effectuate

the terms of the ING Settlement.

25.     The ING Bank Direct Claim against OWB USA is Allowed in the amount of

$760,000,000 and the ING Bank Direct Claim Against OWB NA is Allowed in the amount of

$760,000,000.  Nothing in this paragraph shall modify the treatment of the Claims Allowed

herein as provided in the Plan including but not limited to their treatment as Allowed Secured

Claims in part and Allowed ING Bank Deficiency Claims in part.

26.     The ING Bank Assignee Claim against OWB USA is Allowed in the amount of

$46,826,269 and the ING Bank Assignee Claim Against OWB NA is Allowed in the amount of

$50,727,221.  Nothing in this paragraph shall modify the treatment of the Claims Allowed herein

as provided in the Plan including but not limited to their treatment as General Unsecured Claims

despite their assertion, at least in part, as Administrative Claims.

27.     The Clerk of the Court, and, as necessary, ING Bank and the Debtors, are

authorized and directed to take all necessary and appropriate actions to give effect to the

allowance of the ING Bank Claims pursuant to the Plan and this Order, including arranging for

necessary amendments to the claims registers maintained in these Chapter 11 Cases.

### L.  The Liquidating Trustees.

28.     Following the Effective Date, the Debtors' current officers and directors will be

released from their duties and obligations to the Debtors and all of the assets of the Debtors'

estates will vest with the applicable Liquidating Trust.  The initial Liquidating Trustees were

identified in the Plan Supplement and their appointment is approved.

### M. Liquidation Trusts as Successors

29.    The Liquidating Trusts shall be the successor to the applicable Debtor and its

Estate for the purposes of Sections 1123, 1129, and 1145 of the Bankruptcy Code and with

respect to all pending Litigation Claims and other litigation-related matters. The Liquidating

Trusts shall succeed to the attorney-client privilege of the applicable Debtor and its Estate with

respect to all Litigation Claims and other litigation-related matters, or portions thereof. The

applicable Liquidating Trustee shall be substituted as the party litigant in all adversary

proceedings pending in which one or more Debtors are a party or a party-in-interest.

### N.  Release of Liens.

30.    Except as otherwise specifically provided in the Plan or in any contract,

instrument, release, or other agreement or document created pursuant to the Plan, on the

Effective Date and concurrently with the applicable distributions made pursuant to the Plan and,

in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is

Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security

interests against any property of the Estates shall be fully released and discharged, and all of the

right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other

security interests shall revert to the Debtors and their successors and assigns, in each case,

without any further approval or order of the Bankruptcy Court and without any action or filing

being required to be made by the Debtors; provided, however, that nothing in the Plan or this

Confirmation Order shall cancel, release, hinder, or otherwise affect the ING Bank Security

Interests, which shall be fully and finally transferred to the applicable Liquidating Trusts on the

Effective Date in accordance with Article V.4 of the Plan.

**O.  Injunctions and Automatic Stay.**

31.     Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in these Chapter 11 Cases pursuant to Section 362 of the Bankruptcy Code or any order of the Court entered as of the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect through and including the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

32.     Except as otherwise provided in the Plan or this Confirmation Order, every person shall be and hereby is permanently enjoined from commencing or prosecuting, directly, derivatively or otherwise, any of the Claims, Causes of Action or liabilities released or exculpated pursuant to the Plan, including without limitation the Claims and Causes of Action released in Article VIII.D.1-3 of the Plan.  Furthermore, parties to any pending or future action related to the delivery of marine fuel bunkers may obtain copies of the purchase order, bunker delivery receipt, and/or invoice from the applicable Liquidating Trustee in matters in which a Debtor was an Intermediary Supplier without seeking leave from the Bankruptcy Court; *provided, however*, that parties seeking further discovery must petition this Bankruptcy Court for leave to seek such discovery.

**P.  Cancellation of Existing Securities and Agreements.**

33.     Except as otherwise provided in the Plan, including but not limited to the ING Bank Security Interests which are transferred to the Liquidating Trusts with all rights associated therewith, on and after the Effective Date, all notes, instruments, certificates, agreements, indentures, mortgages, security documents, and other documents evidencing Claims or Equity Interests shall be deemed canceled, surrendered, and discharged without any need for further

action or approval of the Bankruptcy Court or a Holder to take further action with respect to any note(s) or security and the obligations of the Debtors, as applicable; *provided*, *however*, that notwithstanding confirmation, any such agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of allowing Holders to receive Distributions under the Plan; and allowing ING Bank to appear in the Chapter 11 Cases or any proceeding in which they are or may become a party.

### Q.  Securities Law Exemption.

34.     The Liquidating Trust Interests shall not constitute "securities" and shall not be registered pursuant to the Securities Act of 1933 (as amended, the "Securities Act") or any other applicable U.S., state, or local law. However, if it should be determined that the Liquidating Trust Interests constitute "securities," the exemption provisions of Section 1145 of the Bankruptcy Code shall apply to the Liquidating Trust Interests such that the offering, sale, transfer, issuance, or distribution of the Liquidating Trust Interests shall be exempt from the requirements of, *inter alia*, section 5 of the Securities Act and any other U.S., state, or local law requiring registration prior to the offering, sale, transfer, issuance, or distribution of the Liquidating Trust Interests.  To the extent any "offer or sale" of the Liquidating Trust Interests may be deemed to have occurred, such offer or sale is under the Plan and in exchange for Claims against one or more of the Debtors, or principally in exchange for such Claims and partly for cash or property, within the meaning of Section 1145(a)(1) of the Bankruptcy Code.

### R.  Section 1146 Exemption.

35.     Pursuant to, and to the fullest extent permitted by Section 1146 of the Bankruptcy Code, any transfers of property pursuant to, in contemplation of, or in connection with, the Plan, including (1) the delivery of Estate assets to the applicable Liquidating Trusts; and (2) the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection

with the Plan, including any deeds, bills of sale, or assignments executed in connection with any

disposition or transfer of assets contemplated under the Plan, shall not be subject to any

document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax,

stamp act, real estate transfer, mortgage recording tax, or other similar tax, and upon entry of the

Confirmation Order, the appropriate state or local governmental officials or agents shall forgo

the collection of any such tax or governmental assessment and accept for filing and recordation

any of the foregoing instruments or other documents without the payment of any such tax,

recordation fee, or governmental assessment.

**S.    Professional Compensation and Reimbursement Claims.**

36.    Except as otherwise specifically provided in the Plan, from and after the Effective

Date, the Debtors or Liquidating Trusts shall, in the ordinary course of business and without any

further notice or application to or action, order, or approval of the Bankruptcy Court, pay in Cash

the reasonable legal, professional, or other fees and expenses related to implementation and

consummation of the Plan that are incurred on or after the Effective Date by the Debtors or

Liquidating Trusts.  Upon the Effective Date, any requirement that Professionals comply with

Sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or

compensation for services rendered after such date shall terminate, and the Debtors or the

Liquidating Trusts may employ and pay any Professional in the ordinary course of business

without any further notice to or action, order, or approval of the Bankruptcy Court.  Nothing

contained herein shall be deemed to waive the obligation of Holders of Fee Claims from filing

applications for final allowance of their Fee Claims as provided in Article II.B of the Plan.

**T. Provisions Relating to NuStar Supply and Trading LLC, NuStar Energy Services, Inc., and NuStar Terminals Marine Services N.V.**

37.     *NuStar Provisions.* In this Confirmation Order, "NuStar Supply & Trading LLC"

shall be referred to as "NuStar Supply," "NuStar Energy Services, Inc." shall be referred to as

"NuStar Services," "NuStar Terminals Marine Services N.V." shall be referred to as "NuStar

Terminals" and "NuStar" means NuStar Services, NuStar Supply, and NuStar Services, or any of

them.  The "NuStar Settlement Agreement" shall mean that certain Settlement Agreement among

NuStar, the Debtors, and the Committee dated as of November 4, 2015, which agreement has

been approved by Order of the Court dated December 14, 2015 [Docket No. 1270] (the "NuStar

Settlement Order").  The NuStar Settlement Agreement shall become effective upon

confirmation of the Plan as to OWB NA in the OWB NA Chapter 11 Case.

38.     *EVA SCHULTE AND ELISALEX SCHULTE Fuel.*  Upon the Plan Effective Date,

NuStar Supply shall have the exclusive right, title and interest to the proceeds of the NuStar

Reclaimed Fuel and the Other Fuel, as such terms are defined in the *Notice of True-Up*

*Accounting Calculations Related to NuStar's Reclamation of Fuel Oil on the Vessels EVA*

*SCHULTE and ELISALEX SCHULTE* [Docket No. 310].  This Court finds and determines (i)

NuStar to be the exclusive owner of the proceeds of the Reclamation Fuel and Other Fuel, and

(ii) this Order constitutes an Order allowing NuStar to immediately use and dispose of the

proceeds of the NuStar Reclaimed Fuel and Other Fuel in whatever manner NuStar, in its sole

discretion, may choose.

39.     *The Plan Does Not Affect the NuStar Settlement.*  No provisions of the Plan, any

modifications to the Plan, or any other part of this Confirmation Order shall be interpreted in a

manner inconsistent with the provisions of the NuStar Settlement Agreement, alter the terms of

the NuStar Settlement Agreement, or otherwise make ineffective any part of the NuStar

Settlement Agreement.  Without limiting the foregoing, and for the avoidance of doubt:

     a.     Nothing about the Plan, any modifications to the Plan, the Confirmation Order, or the NuStar Settlement Agreement shall affect, limit or abrogate in any way NuStar's claims under the Maritime Lien Act, the maritime law of the U.S. or a foreign jurisdiction, or other applicable law providing for assertion of NuStar's lien or attachment claims, or NuStar's rights with respect to or in any currently pending (or future) interpleader or vessel arrest actions or in any action that may be filed in the future if any currently pending action is dismissed prior to entry of a final, non-appealable judgment;

     b.     The Plan, modifications to the Plan and the Confirmation Order shall have no impact whatsoever on the rights of the Liquidating Trusts or NuStar in the interpleader/arrest actions except as otherwise explicitly set forth in the NuStar Settlement Agreement, except that (i) the Plan provides for the abandonment by the estates of their interests in certain transactions in which a Debtor was the Intermediary Supplier as defined in the Plan and (ii) NuStar shall have no rights to assert Claims or prosecute Causes of Action released by the Debtors pursuant to the Plan, including the Claims and Causes of Action that the Debtors or the Estates have or may have related to the allegations asserted by the Debtors in the ING Bank Adversary Proceeding (including any Claims or Causes of Action arising under Sections 547 and 548 of the Bankruptcy Code and applicable state fraudulent conveyance law). No plan injunction shall stay the pending interpleader or vessel arrest actions, including the NuStar Vessel Litigation.

     c.     The NuStar Settlement Agreement shall have no impact whatsoever on the Liquidating Trusts' or NuStar's rights in any other interpleader/arrest actions, including the NuStar Vessel Litigation.

     d.     Nothing about the Plan, any modifications to the Plan, the Confirmation Order, or the NuStar Settlement Agreement shall be interpreted to provide for NuStar's consent to the Bankruptcy Court's jurisdiction or the jurisdiction of the federal courts of the Southern District of New York over Claims and Causes of Action asserted by NuStar in any interpleader actions or arrest actions or other claims or actions available to any party under the Maritime Lien Act, the maritime law of the U.S. or foreign jurisdiction, or other applicable law, including the NuStar Vessel Litigation.  Nothing in the Plan, any modifications to the Plan, the Confirmation Order or the NuStar Settlement Agreement will prohibit NuStar from seeking discovery from OWB USA, OWB NA or the Liquidating Trusts.

     40.    *No Class A Election by NuStar*.  Notwithstanding Plan Art. I.A.88 (definition of

OWB NA Class A Election), Plan Art. I.A.105 (definition of OWB USA Class A Election), or

any other aspect of the Plan, no NuStar entity shall be deemed to have made the OWB NA Class A Election or the OWB USA Class A Election by failure to timely submit a Ballot or by otherwise failing to indicate whether NuStar makes or declines an OWB NA Class A Election or an OWB USA Class A Election.  This Court finds and concludes that no NuStar entity has made the OWB NA Class A Election or the OWB USA Class A Election.  For further avoidance of doubt, and without limiting the foregoing, NuStar is NOT (a) assigning to the OWB NA Liquidating Trust or the OWB USA Liquidating Trust any of its Assigned Rights; (b) returning any proceeds collected at any time on or after the Petition Date on account of such NuStar's Assigned Rights to the OWB NA Liquidating Trust or the OWB USA Liquidating Trust; or (c) waiving, except as expressly set forth in the NuStar Settlement Agreement, any and all rights to seek administrative priority status under Section 503(b)(9) of the Bankruptcy Code, such Assigned Rights and Section 503(b)(9) Claims being expressly preserved in favor of NuStar.

41.     *Holdback of Distributions*.  No distributions shall be made with respect to OWB USA Section 503(b)(9) administrative claims (if any) or to OWB USA Liquidating Trust Beneficiaries until all objections to NuStar's Section 503(b)(9) Claims against OWB USA have been finally determined (through litigation or otherwise) and, if allowed by Final Order, paid in full.

42.     *Binding on Successors*.  The NuStar Settlement Agreement shall be binding on the Liquidating Trust, the Liquidating Trustee, any chapter 7 trustee, any chapter 11 trustee, or any other representatives of the bankruptcy estates of the Debtors.

43.     *Previous Settlement Withdrawn*.  That certain Settlement Agreement dated March 19, 2015 [Docket No. 542], has previously expired and been withdrawn.

**U. Provisions Relating to Chevron Marine Products LLC.**

44.    *Chevron Provisions.*  In this Confirmation Order, "Chevron Marine Products

LLC" shall be referred to as "Chevron."  The "Chevron Agreement" shall mean that certain

Settlement Agreement among Chevron and the Debtor, dated November 24, 2015, which

agreement has been approved by Order of the Court dated December 15, 2015, [Docket No.

1273] (the "Chevron Settlement Order").  The Chevron Settlement Agreement shall become

effective upon confirmation of the Plan as to OWB USA in the OWB USA Chapter 11 Case.

45.    *The Plan Does Not Affect the Chevron Settlement.*  No provisions of the Plan, any

modifications to the Plan, or any other part of this Confirmation Order shall be interpreted in a

manner inconsistent with the provisions of the Chevron Agreement, alter the terms of the

Chevron Agreement, or otherwise make ineffective any part of the Chevron Agreement.

Without limiting the foregoing, and for the avoidance of doubt:

a.    Nothing in the Plan, any modifications to the Plan, the Confirmation Order, or the
Chevron Agreement shall affect, limit or abrogate in any way Chevron's claims
under the Maritime Lien Act, the maritime law of the U.S. or a foreign
jurisdiction, or other applicable law providing for assertion of Chevron's lien or
attachment claims, or Chevron's rights with respect to or in any currently pending
(or future) interpleader or vessel arrest actions or in any action that may be filed
in the future if any currently pending action is dismissed prior to entry of a final,
non-appealable judgment;

b.    The Plan, any modifications to the Plan and the Confirmation Order shall have no
impact whatsoever on the rights of the Liquidating Trusts or Chevron in the
interpleader/arrest actions, except that (i) the Plan provides for the abandonment
by the estates of their interests in certain transactions in which a Debtor was the
Intermediary Supplier as defined in the Plan and (ii) Chevron shall have no rights
to assert derivative Claims, it being expressly understood that Chevron will only
assert direct Claims and Causes of Action.  No Plan injunction shall stay the
pending interpleader or vessel arrest actions involving Chevron;

c.    The Chevron Agreement shall have no impact whatsoever on the Trust's or
Chevron's rights in any other interpleader/arrest actions.

46.    *No Class A Election by Chevron.*  Notwithstanding Plan Art. I.A.105 (definition of OWB USA Class A Election), or any other aspect of the Plan, Chevron shall not be deemed to have made the OWB USA Class A Election by failure to timely submit a Ballot or by otherwise failing to indicate whether Chevron makes or declines an OWB USA Class A Election.  This Court finds and concludes that Chevron has not made the OWB USA Class A Election.  For further avoidance of doubt, and without limiting the foregoing, Chevron is NOT:

a.    Assigning to the applicable Liquidating Trust any and all of Chevron's Assigned Rights;

b.    Returning any and all proceeds collected at any time on or after the Petition Date on account of Chevron's Assigned Rights to the OWB USA Liquidating Trust other than Distributions received pursuant to the Plan; and

c.    Waiving any and all rights to seek administrative priority status under Section 503(b)(9) of the Bankruptcy Code, with respect to any of Chevron's Claims against OWB USA.  Such Assigned Rights and Section 503(b)(9) Claims being expressly preserved in favor of Chevron.

47.    *Holdback of Distributions.*  No distributions shall be made with respect to OWB USA Section 503(b)(9) administrative claims (if any) or to OWB USA Liquidating Trust Beneficiaries until all objections to the Chevron Section 503(b)(9) Claim have been finally determined (through litigation or otherwise) and, if allowed by Final Order, paid in full.

48.    *Binding on Successors.*  The Chevron Agreement shall be binding on the Liquidating Trust, the Liquidating Trustee, any chapter 7 trustee, any chapter 11 trustee, or any other representatives of the bankruptcy estates of the Debtors.

## V.  Provisions Relating to O'Rourke Marine Services, L.P., L.L.P.

49.    *O'Rourke Provisions.*  In this Confirmation Order, "O'Rourke Marine Services, L.P., L.L.P." shall be referred to as "OMS."  The "OMS Settlement Agreement" shall mean that certain Settlement Agreement among OMS and the Debtor, dated November 17, 2015, which agreement has been approved by Order of the Court dated December 15, 2015 [Docket No.

42

1272] (the "OMS Settlement Order"). The OMS Settlement Agreement shall become effective

upon confirmation of the Plan as to OWB NA in the OWB NA Chapter 11 Case.

50.    *EVA SCHULTE Fuel*. Upon the Plan Effective Date, OMS shall have the

exclusive right, title and interest to the proceeds of the OMS Reclaimed Fuel, as such term is

defined in the Notice of Accounting Related to O'Rourke Marine Services' Reclamation of Fuel

Oil on the Vessel EVA SCHULTE [Docket. No. 362].

51.    *The Plan Does Not Affect the OMS Settlement Agreement.* No provisions of the

Plan, any modifications to the Plan, or any other part of this Confirmation Order shall be

interpreted in a manner inconsistent with the provisions of the OMS Settlement Agreement, alter

the terms of the OMS Settlement Agreement, or otherwise make ineffective any part of the OSM

Settlement Agreement. Without limiting the foregoing, and for the avoidance of doubt:

a.    The Plan, modifications to the Plan and the Confirmation Order shall have no impact whatsoever on the rights of the Liquidating Trusts or O'Rourke in the O'Rourke Vessel Litigation except as otherwise explicitly set forth in this Settlement Agreement, except that (i) the Plan provides for the abandonment by the estates of their interests in certain transactions in which a Debtor was the Intermediary Supplier as defined in the Plan and (ii) O'Rourke shall have no rights to assert Claims or prosecute Causes of Action released by the Debtors pursuant to the Plan, including the Claims and Causes of Action that the Debtors or the Estates have or may have related to the allegations asserted by the Debtors in the ING Bank Adversary Proceeding (including any Claims or Causes of Action arising under Sections 547 and 548 of the Bankruptcy Code and applicable state fraudulent conveyance law). No plan injunction shall stay the pending interpleader or vessel arrest actions, including the O'Rourke Vessel Litigation.

b.    This Settlement Agreement shall have no impact whatsoever on the Trust's or O'Rourke's rights in any other interpleader/arrest actions, including the O'Rourke Vessel Litigation.

c.    This Settlement Agreement shall be binding on the Liquidating Trust, the Liquidating Trustee, any chapter 7 trustee, any chapter 11 trustee, or any other representatives of the bankruptcy estates of the Debtors.

### W. Provisions Relating to Martin Energy Services LLC

52.     *Martin Energy's Maritime Liens*. Nothing about the Plan, any modifications to the Plan, or the Confirmation Order shall affect, limit or abrogate in any way Martin Energy Services LLC's ("Martin Energy") claims under the Maritime Lien Act, the maritime law of the U.S. or a foreign jurisdiction, or other applicable law providing for assertion of Martin Energy's lien or attachment claims, or Martin Energy's rights with respect to or in any currently pending (or future) interpleader or vessel arrest actions or in any action that may be filed in the future if any currently pending action is dismissed prior to entry of a final, non-appealable judgment.  No plan injunction shall stay any pending interpleader or vessel arrest actions involving Martin Energy.

53.     *No Class A Election by Martin Energy*.  Notwithstanding Plan Art. I.A.105 (definition of OWB USA Class A Election), or any other aspect of the Plan, Martin Energy shall not be deemed to have made the OWB USA Class A Election.  This Court finds and concludes that Martin Energy has not made the OWB USA Class A Election.  For further avoidance of doubt, and without limiting the foregoing, Martin Energy is NOT (a) assigning to the OWB USA Liquidating Trust any of its maritime lien rights; or (b) returning any proceeds collected at any time on or after the Petition Date on account of such maritime lien rights to the OWB USA Liquidating Trust.  The Debtors shall reduce any allowed claim Martin Energy would otherwise receive as a Holder of a Class 4(b) (Non-Electing OWB USA Unaffiliated Trade Claims) by the amount of any recovery received by Martin Energy directly from the vessel.

### X.  Liquidating Trust Agreements

54.     Notwithstanding anything in the Plan to the contrary, including Article VII.6 which is hereby modified, in the event of an inconsistency between the Plan or this Confirmation

Order, as applicable, and a Liquidating Trust Agreement, the terms of the Plan or this Confirmation Order, as applicable, shall control.

**Y.  Nonseverability of Plan Provisions upon Confirmation.**

55.    Notwithstanding the possible applicability of Federal Rules of Bankruptcy Procedure 6004(g), 7062, 9014, or otherwise, the terms and conditions of this Confirmation Order will be effective and enforceable immediately upon its entry.  Each term and provision of the Plan, and the transactions related thereto as it heretofore may have been altered or interpreted by the Court is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified except as provided by the Plan or this Confirmation Order; and (c) nonseverable and mutually dependent.

**Z.  Waiver or Estoppel.**

56.    Each Holder of a Claim or Equity Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Equity Interest should be Allowed in a certain amount, in a certain priority, Secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel (or any other Entity), if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Court before the Confirmation Date.

**AA.    Authorization to Consummate.**

57.    The Debtors are authorized to consummate the Plan at any time after the entry of the Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to the Effective Date set forth in Article XIII.B of the Plan.  The substantial consummation of the Plan, within the meaning of Section 1127 of the Bankruptcy Code, is deemed to occur on the first date, on or after the Effective Date, on which Distributions are made in accordance with the terms of the Plan to Holders of any Allowed Claims.

**BB.**       **Assumption and Cure of Executory Contracts.**

58.       Unless otherwise agreed, the Debtors will not assume, cure, or otherwise treat any contract pursuant to this Confirmation Order that is the subject of an outstanding objection to a proposed assumption or cure amount (an "Assumption Objection") at the time of entry of this Confirmation Order.  All outstanding Assumption Objections will be heard at a hearing to be scheduled by the Court.  Unless otherwise agreed, the Debtors will not assume any contract that is the subject of an Assumption Objection until the Assumption Objection has been consensually resolved or the Court has made a determination on the Assumption Objection.

**CC.**       **Effect of Non-Occurrence of Conditions to the Effective Date.**

59.       Notwithstanding the entry of the Confirmation Order, if the Effective Date does not occur, the Plan shall have no force or effect.  Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement will be considered an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Equity Interests prior to the Effective Date.

**DD.**       **Effectiveness of the Order.**

60.       Pursuant to Federal Rule of Bankruptcy Procedure 3020(e), this Order shall not be stayed and shall be effective upon the date of its entry.

Dated at New Haven, Connecticut this 15th day of December, 2015.

T

Julie A. Manning
Chief United States Bankruptcy Judge

## Exhibit A

**Plan**