**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| O.W. Bunker Holding North America Inc., *et al.*,[1] | : | Case No. 14-51720 (AHWS) |
|  | : |  |
| Debtors. | : | Jointly Administered |
|  | : |  |

## DEBTORS' FIRST MODIFIED LIQUIDATION PLANS

---

[1] The last four digits of the Debtors' taxpayer identification numbers follow in parentheses: O.W. Bunker Holding North America Inc. (7474), O.W. Bunker North America Inc. (7158) and O.W. Bunker USA Inc. (3556). The Debtors' address is 281 Tresser Blvd., 2 Stamford Plaza, 15th Floor, Stamford, CT 06901.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

ARTICLE I    -    DEFINITIONS AND CONSTRUCTION OF TERMS ................................. 1

    A.    Definitions.......................................................................................... 1

    B.    Interpretation, Application of Definitions and Rules of Construction................ 19

    C.    Computation of Time ....................................................................... 19

ARTICLE II    -    ADMINISTRATIVE AND PRIORITY CLAIMS AS TO ALL
    DEBTORS ...................................................................................... 19

    A.    Administrative Claims as to All Debtors (Other Than Fee Claims).................... 19

    B.    Fee Claims ..................................................................................... 20

    C.    Priority Tax Claims.......................................................................... 20

    D.    U.S. Trustee Fees ............................................................................ 21

ARTICLE III    -    CLASSIFICATION AND TREATMENT OF CLAIMS AND
    EQUITY INTERESTS ..................................................................... 21

    A.    Classification of Claims and Equity Interests....................................... 21

    B.    Claims Record Date ........................................................................ 21

    C.    Summary of Classification and Class Identification............................. 21

    D.    Treatment of Classified Claims and Equity Interests .......................... 22

    E.    Special Provision Regarding Unimpaired and Reinstated Claims........... 27

ARTICLE IV    -    ACCEPTANCE OR REJECTION OF THE PLAN .................................. 27

ARTICLE V    -    MEANS FOR IMPLEMENTATION OF THE PLAN .............................. 28

ARTICLE VI    -    CORPORATE GOVERNANCE.................................................... 31

ARTICLE VII    -    THE LIQUIDATING TRUSTS ................................................... 31

ARTICLE VIII    -    CONFIRMATION OF THE PLAN ........................................... 37

    A.    Conditions to Confirmation ............................................................. 37

    B.    Discharge of the Debtors ................................................................. 37

    C.    Exculpation ................................................................................... 37

    D.    Release ......................................................................................... 38

    E.    Injunction ..................................................................................... 39

    F.    Preservation of Litigation Claims ..................................................... 39

    G.    Cancellation of Certain Indebtedness and Existing Securities ............... 40

# TABLE OF CONTENTS

(continued)

**Page**

    H.    Preservation of Insurance ....................................................................... 40

ARTICLE IX   -  PROVISIONS GOVERNING DISTRIBUTIONS ....................................... 40

ARTICLE X   -  RETENTION OF JURISDICTION .................................................. 43

ARTICLE XI   -  EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................... 44

    A.    Assumption of Executory Contracts and Unexpired Leases................................ 44

    B.    Cure Claims ............................................................................ 45

    C.    Reservation of Rights................................................................. 46

    D.    Insurance Policies ..................................................................... 46

    E.    Post-Petition Contracts and Leases ................................................. 47

ARTICLE XII   -  PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS .............................................. 47

ARTICLE XIII  -  EFFECTIVENESS OF THE PLAN ............................................. 47

    A.    Conditions Precedent to Effectiveness............................................... 47

    B.    Waiver of Conditions Precedent to Effectiveness .................................. 48

    C.    Effect of Failure of Conditions ..................................................... 48

    D.    Vacatur of Confirmation Order....................................................... 48

    E.    Revocation, Withdrawal, or Non-Consummation ................................. 49

ARTICLE XIV  -  MISCELLANEOUS PROVISIONS ........................................... 49

    A.    Immediate Binding Effect............................................................ 49

    B.    Governing Law ....................................................................... 49

    C.    Filing or Execution of Additional Documents...................................... 50

    D.    Term of Injunctions or Stays......................................................... 50

    E.    Withholding and Reporting Requirements ......................................... 50

    F.    Exemption From Transfer Taxes ..................................................... 50

    G.    Plan Supplement ..................................................................... 50

    H.    Bar Dates for Administrative Claims................................................ 51

    I.    Amendment or Modification of the Plan ........................................... 51

    J.    The Creditors' Committee ........................................................... 51

    K.    Successors and Assigns............................................................... 51

    L.    Section 1125(e) of the Bankruptcy Code ........................................... 52

## TABLE OF CONTENTS
(continued)

**Page**

M.     Tax Reporting and Compliance .......................................................................... 52

N.     Notices .............................................................................................................. 52

O.     Conflicts............................................................................................................ 54

## INTRODUCTION

The following document consists of two separate chapter 11 plans of liquidation proposed pursuant to section 1121(a) of the Bankruptcy Code.  Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the Bankruptcy Code.

One Plan is for the Chapter 11 Case of OWB USA. The other Plan is for the Chapter 11 Case of OWB NA.  A third Debtor, OWB Holding, is a holding company with no assets that is not proposing to reorganize or liquidate under the Bankruptcy Code.  As to OWB Holding only, the Plan shall constitute a motion by which it requests the Bankruptcy Court dissolve or grant OWB Holding the authority to dissolve on the Effective Date pursuant to applicable state law as described in Article VI.1 of the Plan.  Any reference herein to the "Plan" shall be a reference to the separate Plan of each Debtor, as the context requires.  The votes to accept or reject a Plan by holders of Claims against a particular Debtor shall be tabulated as votes to accept or reject that Debtor's separate Plan.  Distributions under a Debtor's Plan will be made to the holders of Claims in the Classes identified in the Plan.

Claims against, and Equity Interests in, each of the Debtors will be treated as set forth herein.  Reference is made to the Disclosure Statement accompanying the Plan, including the exhibits thereto, for a discussion of the Debtors' history, businesses, and results of operations, together with a summary and analysis of the Plan.

THIS PLAN SHOULD BE CONSIDERED ONLY IN CONJUNCTION WITH THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED HEREWITH. THE DISCLOSURE STATEMENT IS INTENDED TO PROVIDE YOU WITH THE INFORMATION THAT YOU NEED TO MAKE AN INFORMED JUDGMENT WHETHER TO ACCEPT OR REJECT THIS PLAN.

## ARTICLE I
## DEFINITIONS AND CONSTRUCTION OF TERMS

### A.    Definitions.

Unless otherwise defined herein the following terms shall have the respective meanings set forth below:

1.    *Administrative Claim*:  means any right to payment constituting a Claim for the cost or expense of administration of a Chapter 11 Case of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) any actual and necessary costs and expenses of preserving an Estate incurred on or after the Petition Date, (b) any actual and necessary costs and expenses of operating the Debtors' businesses incurred on or after the Petition Date, (c) any indebtedness or obligations assumed by the Debtors in connection with the conduct of their businesses, (d) all compensation of fees and reimbursement of expenses of Professionals to the extent awarded by a Final Order pursuant to sections 330, 331 or 503 of the Bankruptcy Code, (e) any fees or charges assessed against an Estate under section 1930 of title 28 of the United States Code, and (f) any Section 503(b)(9) Claim.

2.     *Administrative Expense Bar Date*: means the date that is thirty (30) days after the Effective Date which date will be set without the need to seek separate authorization from the Bankruptcy Court.

3.     *Allowed*:  means, with reference to any Claim: (a) following the Claims Objection Deadline, any Claim as to which no objection or request for estimation has been filed prior to the Claims Objection Deadline, (b) a Claim that is expressly allowed pursuant to the terms of this Plan, (c) a Claim that is listed in the Schedules as liquidated, non-contingent, and undisputed, or (d) a Claim that has been expressly allowed (i) pursuant to a Final Order or (ii) in any stipulation that is executed by a Liquidating Trustee on behalf of a Liquidating Trust and the Holder of such Claim after the Effective Date; provided, however, that unless otherwise specified herein or by a Final Order, the term "Allowed Claim" shall not, for any purpose under the Plan, include any interest, penalties, premiums or late charges on such Claim accruing from and after the Petition Date.  If a Claim is Allowed only in part, any provisions hereunder with respect to Allowed Claims are applicable solely to the Allowed portion of such Claim.  For the avoidance of doubt, in the event the Schedules are amended (either by the Debtors or by the relevant Liquidating Trust) such that a Claim is reclassified so that it is no longer listed as liquidated, non-contingent, and undisputed, such Claim shall no longer be an Allowed Claim unless and until it becomes Allowed under clause (a) through (d) of this definition.

4.     *Assigned Rights*:  means, with respect to a Holder of an OWB NA Unaffiliated Trade Claim or an OWB USA Unaffiliated Trade Claim, all of such Holder's rights (including any alleged liens) and Claims against vessels or other property (including cargoes and other property of an Estate) relating to a Debtor's Supply Receivables or otherwise securing or relating to any other Claim held by such Holder against a Debtor including, without limitation, any such rights and claims under the Maritime Lien Act or any other U.S. or foreign law that provides a basis for such Holder to assert such claims.

5.     *Assumption Schedule*:  has the meaning given to it in Article XI.A.1.

6.     *Ballot*:  means the ballot upon which a Holder of an Impaired Claim entitled to vote shall cast its vote to accept or reject a Plan and, if applicable, exercise the OWB NA Class A Election, the OWB USA Class A Election, and/or the Release Opt Out Election.

7.     *Bankruptcy Code*:  means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect with respect to the Chapter 11 Cases.

8.     *Bankruptcy Court*:  means the United States Bankruptcy Court for the District of Connecticut having jurisdiction over the Chapter 11 Cases.

9.     *Bankruptcy Rules*:  means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and the local rules of the Bankruptcy Court, as the context may require, as in effect with respect to the Chapter 11 Cases.

10.     *Bar Date*:  means March 16, 2015, the date set by the Bankruptcy Court and included in the *Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, and Deadlines*

docketed in each of the Chapter 11 Cases as the date by which all Holders of Claims against the Debtors were advised to file Proofs of Claim.

11.     _Business Day_: means any day on which commercial banks are open for business, and not authorized to close, in both New York, New York, or Bridgeport, Connecticut, except any day designated as a legal holiday by Bankruptcy Rule 9006(a).

12.     _Cash_:  means legal tender of the United States of America.

13.     _Causes of Action_: means any and all Claims, causes of actions, cross-claims, counterclaims, third-party claims, indemnity claims, contribution claims, defenses, demands, rights, actions, debts, damages, judgments, remedies, Liens, indemnities, guaranties, suits, obligations, liabilities, accounts, offsets, recoupments, powers, privileges, licenses, and franchises of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, whether arising before, on or after the Petition Date, including through the Effective Date, in contract, in admiralty, in tort, in law or in equity, or pursuant to any other theory of law.  For the avoidance of doubt, the term "Causes of Action" shall include: (a) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims; (c) all claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) the claims and defenses of fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any state law fraudulent transfer claims; (f) any claims arising under the Maritime Lien Act or other maritime law of the U.S. or another jurisdiction; and (g) any claims asserted by any of the Debtors in one or more proceedings in the Bankruptcy Court or in another court of competent jurisdiction.

14.     _Chapter 11 Case_:  means a case commenced under chapter 11 of the Bankruptcy Code by a Debtor in the Bankruptcy Court by the filing of a Voluntary Petition for Relief under chapter 11 of the Bankruptcy Code on the Petition Date pursuant to section 301 of the Bankruptcy Code.

15.     _Claim_:  means a "claim", as such term is defined in section 101(5) of the Bankruptcy Code.

16.     _Claims Objection Deadline_:  means the first Business Day that is the later of:  (a) one-hundred eighty (180) days after the Effective Date, (b) ninety (90) days from the date by which a Holder of a Claim is required to file a Proof of Claim pursuant to an order of the Bankruptcy Court, or (c) such other date as may be established following a motion by a Debtor or a Liquidating Trust, which motion may be approved without a hearing and without notice to any Person.

17.     _Class_: means a group of Claims or Equity Interests classified under the Plan.

18.     _Collateral_: means any property or interest in property of an Estate subject to a Lien to secure the payment or performance of a Claim, which Lien has not been avoided or

is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

19.    *Committee*: means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code and any duly appointed successors, as the same may be reconstituted from time to time.

20.    Confirmation Alternative Settlement: means the Confirmation Alternative Settlement Agreement and Release Among O.W. Bunker USA Inc., the Official Committee of Unsecured Creditors, and ING Bank N.V., agreed in principle by OWB USA, the Committee, and ING, and to be filed with the Bankruptcy Court prior to the Confirmation Hearing.

21.    *Confirmation Date*:  means the date the Confirmation Order is entered on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

22.    *Confirmation Hearing*:  means the hearing held by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code and the Bankruptcy Rules, including any adjournments thereof, at which the Bankruptcy Court considers confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code.

23.    *Confirmation Order*:  means the order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Debtors, the Committee, and ING Bank.

24.    *Contract Supplier*:  means, in each case, an Entity within the OWB Group with a contract (whether on general terms and conditions of the OWB Group for the supply of bunkers or otherwise) with a customer which is not an OWB Group Entity to supply fuel bunkers to the customer's vessel, whether owned or chartered, as typically evidenced by the issuance of a sales order confirmation and invoice to the customer.

25.    *Cure Claim*:  means a Claim in an amount equal to all unpaid monetary obligations under an Executory Contract or Unexpired Lease assumed by a Debtor pursuant to section 365 of the Bankruptcy Code, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

26.    *Debtors*:  means OWB Holding, OWB USA, and OWB NA.

27.    *Disallowed*: means a Claim (a) as to which a finding, Final Order, or provision of the Plan provides that such Claim or Equity Interest, as the case may be, or any portion thereof, is disallowed and thus not an Allowed Claim; (b) that is either not listed on the Schedules or is listed on the Schedules as unliquidated, contingent, or disputed, and as to which no request for payment or Proof of Claim has been filed; or (c) as to which a request for payment or Proof of Claim was required to be filed but as to which a request for payment or Proof of Claim was not filed prior to the applicable deadline including the Bar Date or the Administrative Expense Bar Date.

-4-

28.     *Disbursing Agent*: means the OWB NA Disbursing Agent or the OWB USA Disbursing Agent, as the context may require.

29.     *Disclosure Statement*:  means the *First Amended Disclosure Statement for the Debtors' Liquidation Plans*, with respect to the Plan, dated as of October 26, 2015, as revised on October 28, 2015, and approved by the Bankruptcy Court on October 29, 2015.

30.     *Disputed*:  means a Claim (a) as to which a proper and timely request for payment or Proof of Claim has been filed, but with respect to which an objection or request for estimation has been filed and has not been withdrawn or determined by a Final Order, (b) that is disputed in accordance with the provisions of the Plan; or (c) that is otherwise disputed by a Debtor or a Liquidating Trust upon notice to the Holder of such Claim prior to the Claims Objection Deadline.  Any Cure Claim to which the Holder thereof disagrees with the priority and/or amount thereof as determined by a Debtor or the applicable Liquidating Trust shall be deemed a Disputed Claim under this Plan.

31.     *Disputed Claim Reserves*: mean the OWB NA Disputed Claim Reserve and the OWB USA Disputed Claim Reserve.

32.     *Distribution:* means any payment or transfer made to a Person under the Plan, whether such payment or transfer is made by a Debtor, a Disbursing Agent, or a Liquidating Trust.

33.     *Effective Date*: means the date which is the first Business Day selected by the Debtors, the Committee, and ING Bank on which all of the conditions to the occurrence of the Effective Date specified in Article XIII.A have been satisfied or waived in accordance with Article XIII.B.

34.     *Electing OWB NA Claimants*: mean all Holders of Allowed OWB NA Unaffiliated Trade Claims that are not Non-Electing OWB NA Claimants.

35.     *Electing OWB USA Claimants*: mean all Holders of Allowed OWB USA Unaffiliated Trade Claims that are not Non-Electing OWB USA Claimants.

36.     *English Credit Agreement*: means the USD $700,000,000 Multicurrency Revolving Borrowing Base Facilities Agreement dated as of December 19, 2013 by and among ING Bank N.V., as Coordinator, Agent and Security Agent, O.W. Bunker & Trading A/S, and certain arrangers thereto.

37.     *Entity* has the meaning set forth in section 101(15) of the Bankruptcy Code.

38.     *Equity Interest*:  means any "equity security" as such term is defined in section 101(16) of the Bankruptcy Code, or any other instrument evidencing an ownership interest in a Debtor, whether or not transferable.

39.     *Estate*:  means the estate of a Debtor created by the relevant Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

40.    *Estate Assets*: means, with respect to a particular Debtor, all of the right, title and interest of that Debtor in, to and under any and all assets and property of whatever type or nature, whether tangible, intangible, real or personal, that constitutes property of the Debtor's Estate.

41.    *Exculpated Parties*: means each of the following: (a) the Debtors; (b) Adrian Tolson, in his capacity as a director of each of the Debtors; (c) Hans Staal Jonassen, in his capacity as an officer and director of each of the Debtors; (d) the Committee and its constituent members (solely in their capacities as such); (e) ING Bank; (f) the Lenders; (g) the Global Receivers; and (h) with respect to each of the foregoing Persons in clauses (a) through (g), such Persons' successors and assigns, members, affiliates, subsidiaries, officers, directors, partners, principals, employees, and Representatives, in each case solely in their capacity as such; provided, however, that the "Exculpated Parties" shall not include any director or officer of any Debtor other than Adrian Tolson and Hans Staal Jonassen.

42.    *Executory Contract*:  means a contract to which at least one Debtor is a party that is subject to assumption or rejection pursuant to section 365 of the Bankruptcy Code.

43.    *Fee Claim*:  means a Claim for compensation for services provided or expenses incurred by a Professional and invoiced by such Professional on or after the Petition Date.

44.    *Final Order*:  means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction that has not been modified, amended, reversed, vacated, or stayed, and as to which (a) the time to appeal, petition for certiorari, move for a new trial, stay, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, motion for new trial, stay, reargument, or rehearing shall then be pending; or (b) if an appeal, writ of certiorari, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing shall have expired, as a result of which such order shall have become final in accordance with Bankruptcy Rule 8002; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule may be filed relating to such order, shall not prevent an order from becoming a Final Order.

45.    *Finance Document*: has the meaning given to that term in the English Credit Agreement.

46.    *Foreign Affiliate Claims*:  means any Claim asserted by a Foreign Affiliate against a Debtor.

47.    *Foreign Affiliates*:  means, collectively, O.W. Bunker A/S, Amirtol SA, Bergen Bunkers Holding AS, Bergen Bunkers AS, Bergen Bunkers Neva LLC, Dynamic Oil Trading (Singapore) Pte. Ltd., Dynamic Oil Trading Holding A/S, Dynamic Oil Trading Middle East DMCC, Falcon Oil Ltd., LOAN OWB Finance - 1USD, O.W. Bunker & Trading (Chile)

Ltda., O.W. Bunker & Trading A/S, O.W. Bunker & Trading Do Brasil, O.W. Bunker & Trading
do Brasil Petroleo Ltda., O.W. Bunker & Trading Physical Distribution Sweden, O.W. Bunker
(Belgium) N.V., O.W. Bunker (Columbia) S.A.S., O.W. Bunker (Netherlands) B.V., O.W.
Bunker (South Korea) Ltd., O.W. Bunker (Switzerland) SA, O.W. Bunker Australia Pty Ltd.,
O.W. Bunker Canary Islands S.L., O.W. Bunker China Limited, O.W. Bunker China Ltd. (HK),
O.W. Bunker Far East (Singapore) Pte Ltd, O.W. Bunker Germany GmbH, O.W. Bunker
Holding A.S., O.W. Bunker Klaipeda Ltd., O.W. Bunker Malta Ltd., O.W. Bunker Middle East
DMCC, O.W. Bunker Panama S.A., O.W. Bunker South Africa Pty. Ltd., O.W. Bunker Spain
SL, O.W. Bunker Sweden AB, O.W. Bunkers (UK) Limited, O.W. Cargo Denmark A/S, O.W.
Global Trading A/S, O.W. Global Trading SA, O.W. Icebunker Ltd., O.W. Riga Bunkering Ltd.,
O.W. Supply & Trading A/S, O.W. Supply (Switzerland) SA, O.W. Supply ekspionering, O.W.
Taiwan, O.W. Tankers A/S, Oldendorff Carriers GmbH & Co. KG, OWB ARA SC – 213, OWB
Australia PH FE, OWB Colombia, OWB Colombia ME, OWB Denmark, OWB Denmark WW
(Aalborg, North), OWB Dubal-Korea, OWB Group Administration, OWB Mexican Gulf, OWB
Middle East SC, OWB NA PH Los Angeles, OWB NA PH New York, OWB Russia, OWB
Russia Sourcing, OWB Singapore WW, OWB USA SC Stamford, OWB WW Russia, Rederiet
O.W. Aalborg A/S, Rederiet O.W. Atlantic A/S, Rederiet O.W. Baltic A/S, Rederiet O.W.
Copenhagen A/S, Rederiet O.W. Pacific A/S, Rederiet O.W. Scandinavia A/S, Rederiet Oxana
A/S, TBS Denizcilik ve Petrol Ürünleri DiS¸ Ticaret A.S., and TS Denizccilik Tasimacilik ve
Ticaret AS, and any other Person directly or indirectly owned by O.W. Bunker A/S that is not a
Debtor.

   48. *General Unsecured Claim*:  means any Claim that is not an Administrative
Claim, a Priority Claim, a Fee Claim, a Secured Claim, a Cure Claim, or a Subordinated Claim.

   49. *Global Receivers*: means Paul David Copley, Ian David Green, and
Anthony Victor Lomas, each of PricewaterhouseCoopers LLP, in their capacities as receivers of
the Security Assets (as such term is defined in the Security Agreement).

   50. *Governmental Unit*:  has the meaning set forth in section 101(27) of the
Bankruptcy Code.

   51. *Holder*:  means the legal or beneficial holder of a Claim, Equity Interest,
or Liquidating Trust Interest and, when used in conjunction with a Class or type of Claim, Equity
Interest, or Liquidating Trust Interest, means a beneficial holder of a Claim, Equity Interest, or
Liquidating Trust Interest in such Class or of such type.

   52. *Impaired*:  means, when used with reference to Claims or Equity Interests,
Claims or Equity Interests that are "impaired" within the meaning of section 1124 of the
Bankruptcy Code.

   53. *ING Bank*: means ING Bank N.V., as Security Agent under the Finance
Documents.

   54. *ING Bank Adversary Proceeding*:  means the adversary proceeding filed
by the Debtors against ING Bank and docketed in the Bankruptcy Court as case number 14-
05063.

55.     *ING Bank Assignee Claims*: means the General Unsecured Claims held by ING Bank against OWB NA and against OWB USA on account of Intercompany Claims assigned by OWB NA, OWB USA, or a Foreign Affiliate to ING Bank pursuant to the Security Agreement (which claims were asserted by ING Bank as Proofs of Claim numbered 15-1 against OWB NA and 8-1 against OWB USA), which claims shall be Allowed pursuant to the Confirmation Order in amounts currently estimated at $67,783,321 and $86,602,015, respectively, which amounts are subject to final reconciliation (including giving effect to potential offsets and setoffs) and shall be set forth on a final basis in the Plan Supplement and shall be treated as General Unsecured Claims despite their assertion, at least in part, as Administrative Claims as part of the ING Settlement.

56.     *ING Bank Claims*: mean the ING Bank Direct Claims and the ING Bank Assignee Claims.

57.     *ING Bank Deficiency Claims*: mean the aggregate amount of the ING Bank Direct Claims that, in accordance with section 506(a) of the Bankruptcy Code, exceed the value of the Pledged Insurance Receivables that secure the ING Bank Direct Claims.

58.     *ING Bank Direct Claims*: mean the Claims held by ING Bank against each of OWB NA and OWB USA in connection with the respective Debtor's guaranty of obligations under the Finance Documents (which claims were asserted as Proofs of Claim numbered 19-1 against OWB NA and 10-1 against OWB USA), which claims shall be Allowed pursuant to the Confirmation Order in an amount currently estimated at $648,246,420, which amount is subject to final reconciliation and shall be set forth on a final basis in the Plan Supplement.  The ING Bank Direct Claims shall be Allowed Secured Claims against each Debtor solely to the extent of the value of the Pledged Insurance Receivables and Allowed ING Bank Deficiency Claims against each Debtor beyond the value of the Pledged Insurance Receivables.

59.     *ING Bank Receipts*:  means all amounts received by ING Bank after the Petition Date and prior to the Effective Date on account of a Debtor's Supply Receivables.

60.     *ING Bank Security Interests*:  mean the interests in all of OWB NA's and OWB USA's rights, title, and interests in the Intercompany Receivables and the Supply Receivables (as each of those terms are defined in the Security Agreement) that were assigned, pledged, charged, transferred or otherwise conveyed to ING Bank by OWB NA and OWB USA pursuant to the Security Agreement.

61.     *ING Released Parties*:  means (a) the Debtors; (b) Adrian Tolson, in his capacity as a director of each of the Debtors; (c) Hans Staal Jonassen, in his capacity as an officer and director of each of the Debtors; (d) the Committee and its constituent members (solely in their capacities as such); and (e) with respect to each of the foregoing Persons in clauses (a) through (d), such Persons' successors and assigns, members, affiliates, subsidiaries, officers, directors, partners, principals, employees, and Representatives, in each case solely in their capacity as such; <u>provided</u>, <u>however</u>, that notwithstanding the foregoing, the ING Released Parties shall not include: (i) the Debtors' officers, directors, employees, and managers other than Adrian Tolson and Hans Staal Jonassen; (ii) any of the Foreign Affiliates; or (iii) the respective current and former officers, directors, employees, managers, attorneys, financial advisors,

accountants, investment bankers, consultants, management companies, or other professionals or representatives of the Foreign Affiliates.

62.    _ING Releasing Parties_:  means (a) ING Bank, (b) the Lenders, and (c) with respect to each of ING Bank and the Lenders, such Persons' successors and assigns, members, affiliates, subsidiaries, officers, directors, partners, principals, employees, and Representatives, in each case solely in their capacity as such.

63.    _ING Settlement_: means the settlement of certain disputes between the Debtors and ING Bank which settlement is embodied in Article V.4, Article V.5, and Article V.6 of the Plan.

64.    _Intercompany Claims_:  means (a) any Claim held by a Debtor against another Debtor or (b) any Foreign Affiliate Claim.  To the extent any Intercompany Claim is duplicative of all or a portion of the ING Bank Assignee Claims, that portion of the Intercompany Claim is hereby disallowed and shall be treated as a Disallowed Claim without the necessity for any order of the Bankruptcy Court.

65.    _Intermediary Supplier_: means, in respect of a particular transaction, any party to a contract for the supply of fuel bunkers to be on-sold to a customer of an OWB Group Entity that was not, for the purpose such transaction, (a) a Contract Supplier, or (b) a Physical Supplier.

66.    _IRC_: means the U.S. Internal Revenue Code of 1986, as amended to the date hereof and from time to time hereafter, and any successor statute.

67.    _Lender_: means a Lender as defined in the English Credit Agreement.

68.    _Lien_:  has the meaning set forth in section 101(37) of the Bankruptcy Code; provided, however, that a lien that has been avoided pursuant to any section of the Bankruptcy Code shall not constitute a Lien.

69.    _Liquidating Trust_:  means the OWB NA Liquidating Trust or the OWB USA Liquidating Trust, as the context may require.

70.    _Liquidating Trust Agreement_: means the OWB NA Liquidating Trust Agreement or the OWB USA Liquidating Trust Agreement, as the context may require.

71.    _Liquidating Trust Assets_: means the OWB NA Liquidating Trust Assets or the OWB USA Liquidating Trust Assets, as the context may require.

72.    _Liquidating Trust Beneficiaries_: means the OWB NA Liquidating Trust Beneficiaries or the OWB USA Liquidating Trust Beneficiaries, as the context may require.

73.    _Liquidating Trust Expenses_: means the OWB NA Liquidating Trust Expenses or the OWB USA Liquidating Trust Expenses, as the context may require

74. *Liquidating Trustee:* means the OWB NA Liquidating Trustee or the OWB USA Liquidating Trustee, as the context may require.

75. *Liquidating Trust Interests*: means the OWB NA Liquidating Trust Interests or the OWB USA Liquidating Trust Interests, as the context may require.

76. *Litigation Claims*: means all Claims and Causes of Action not otherwise expressly released pursuant to this Plan, including all arguments and defenses, whether in law or equity, and whether known or unknown, to be assigned to and retained by a Liquidating Trust, the recoveries from which will be distributed pursuant to the terms of this Plan. Without limitation of the foregoing, Litigation Claims include any interpleader actions, arrest actions, or other claims or actions available to a Debtor under the Maritime Lien Act, the maritime law of the U.S. or foreign jurisdiction, or other applicable law.

77. *Maritime Lien Act*: means the Commercial Instruments and Maritime Liens Act, 46 U.S.C. § 31301 *et seq*.

78. *Non-Electing OWB NA Claimants*: mean Holders of Allowed OWB NA Unaffiliated Trade Claims that: (a) timely submit the Ballots they have received in respect of their Allowed OWB NA Unaffiliated Trade Claims; (b) indicate on such Ballots their votes to accept or reject the Plan; and (c) affirmatively decline the OWB NA Class A Election by checking the appropriate box on the Ballots, whether or not such Holders have voted to accept or reject the Plan, *provided, however*, Holders of Allowed OWB NA Unaffiliated Trade Claims that affirmatively decline the OWB NA Class A Election in this manner but who fail to vote to accept or reject the plan will be deemed to be Electing OWB NA Claimants.

79. *Non-Electing OWB USA Claimants*: mean Holders of Allowed OWB USA Unaffiliated Trade Claims that: (a) timely submit the Ballots they have received in respect of their Allowed OWB USA Unaffiliated Trade Claims; (b) indicate on such Ballots their votes to accept or reject the Plan; and (c) affirmatively decline the OWB USA Class A Election by checking the appropriate box on the Ballots, whether or not such Holders have voted to accept or reject the Plan, *provided, however*, Holders of Allowed OWB USA Unaffiliated Trade Claims that affirmatively decline the OWB USA Class A Election in this manner but who fail to vote to accept or reject the plan will be deemed to be Electing OWB USA Claimants.

80. *Non-Tax Priority Claim*: means a Claim that is entitled to priority in payment under section 507(a) of the Bankruptcy Code other than an Administrative Claim or a Priority Tax Claim.

81. *OWB Group*: means the Debtors and the Foreign Affiliates.

82. *OWB Holding*: means O.W. Bunker Holding North America Inc.

83. *OWB Holding Settlement Agreement*: means the agreement resolving certain disputes between OWB Holding and ING Bank that is attached to the OWB Holding Settlement Motion (as may be amended or otherwise modified by agreement of the parties thereto).

-10-

84.    *OWB Holding Settlement Motion*: means the joint motion filed in the Chapter 11 Cases by the Debtors and the Committee on September 15, 2015, seeking approval of the OWB Holding Settlement Agreement.

85.    *OWB NA*: means O.W. Bunker North America Inc.

86.    *OWB NA 503(b)(9) Schedule*: means the schedule of certain Section 503(b)(9) Claims asserted against OWB NA and proposed to be Allowed in the amounts listed on such schedule, a copy of which shall be included in the Plan Supplement.

87.    *OWB NA Affiliated Unsecured Claims*:  means (a) all ING Bank Deficiency Claims against OWB NA, (b) all ING Bank Assignee Claims against OWB NA, and (c) all Allowed Intercompany Claims against OWB NA.

88.    *OWB NA Class A Election*: means the election available to each Holder of an Allowed OWB NA Unaffiliated Trade Claim (whether or not such Holder votes to accept or reject the Plan) to receive an OWB NA Class A Trust Interest in exchange for: (a) assigning to the OWB NA Liquidating Trust any and all of such Holder's Assigned Rights; (b) returning any and all proceeds collected at any time on or after the Petition Date on account of such Holder's Assigned Rights to the OWB NA Liquidating Trust other than Distributions received pursuant to the Plan; and (c) waiving any and all rights to seek administrative priority status under section 503(b)(9) of the Bankruptcy Code  with respect to any of such Holder's Claims against OWB NA except to the extent (i) Section 503(b)(9) Claims held by such Holder are included on the OWB NA 503(b)(9) Schedule or (ii) such Holder, OWB NA, the Committee, and ING Bank may otherwise agree.  To the extent a Holder of an Allowed OWB NA Unaffiliated Trade Claim either fails to timely submit a Ballot or otherwise fails to indicate that such Holder rejects the OWB NA Class A Election on the Ballot, such Holder shall be deemed to have made the OWB NA Class A Election.

89.    *OWB NA Class A Trust Interests*: means the non-certificated beneficial interests in the OWB NA Liquidating Trust allocable to Electing OWB NA Claimants, which entitle each Electing OWB NA Claimant to its Pro Rata Share of Distributions from the OWB NA Liquidating Trust up to the lesser amount of (a) such Electing OWB NA Claimant's Pro Rata Share of $2.65 million, or (b) an amount necessary to satisfy 25% of such Electing OWB NA Claimant's Allowed OWB NA Unaffiliated Trade Claim; provided, however, that no Distributions shall be made on account of the OWB NA Class A Trust Interests until after payment of OWB NA Liquidating Trust Expenses and all Allowed Administrative and Priority Claims against OWB NA.

90.    *OWB NA Class B Trust Interests*: means the non-certificated beneficial interests in the OWB NA Liquidating Trust allocable to Holders of Allowed General Unsecured Claims against OWB NA other than Electing OWB NA Claimants, which entitle each such Holder to its Pro Rata Share of Distributions from the OWB NA Liquidating Trust up to such Holder's Pro Rata Share of the OWB NA Preferential Distribution Amount; provided, however, that no Distributions shall be made on account of the OWB NA Class B Trust Interests until after all Distributions on account of the OWB NA Class A Trust Interests have been made.

-11-

91.     *OWB NA Class C Trust Interests*: means the non-certificated beneficial interests in the OWB NA Liquidating Trust allocable to Holders of Allowed General Unsecured Claims against OWB NA, which entitle each such Holder to its Pro Rata Share of Distributions from the OWB NA Liquidating Trust; provided, however, that no Distributions shall be made on account of the OWB NA Class C Trust Interests until after all Distributions on account of the OWB NA Class A Trust Interests and the OWB NA Class B Trust Interests have been made; provided, further, the amount of a Holder's Allowed General Unsecured Claim against OWB NA that is used to calculate such Holder's Pro Rata Share of Distributions from the OWB NA Liquidating Trust shall be reduced by any Distributions previously received by such Holder on account of an OWB NA Class A Trust Interest or an OWB NA Class B Trust Interest, as applicable.

92.     *OWB NA Disbursing Agent*: means the Person retained by the OWB NA Liquidating Trust and charged with making Distributions to Holders of Allowed Claims against OWB NA, maintaining a register of Distributions made, and performing such other duties in respect to Distributions as may be required by the OWB NA Liquidating Trust or applicable law.

93.     *OWB NA Disputed Claim Reserve*:  means the reserve of Cash established and maintained by the OWB NA Liquidating Trust for Holders of Disputed Administrative Claims against OWB NA, Disputed Priority Claims against OWB NA, Disputed OWB NA Affiliated Trade Claims, and Disputed OWB NA Unaffiliated Trade Claims, sufficient to satisfy such Claims upon allowance of such Claims in accordance with their treatment under the Plan.

94.     *OWB NA Liquidating Trust:* means a trust that will be created on the Effective Date in accordance with Article VII of the Plan and the OWB NA Liquidating Trust Agreement for the benefit of Holders of Allowed Claims against OWB NA.

95.     *OWB NA Liquidating Trust Agreement*:  means an agreement evidencing the terms and provisions governing the OWB NA Liquidating Trust that shall be entered into prior to the establishment of the OWB NA Liquidating Trust and pursuant to which the OWB NA Liquidating Trust shall manage and administer the OWB NA Liquidating Trust Assets.

96.     *OWB NA Liquidating Trust Assets*:  means all of the property to be contributed to and held by the OWB NA Liquidating Trust including, without limitation: (a) Estate Assets contributed by OWB NA (including any Cash and Litigation Claims); (b) Electing OWB NA Claimants' Assigned Rights; (c) the ING Bank Receipts and the Subsequent Receipts in respect of OWB NA Supply Receivables; and (d) the ING Bank Security Interests in relation to OWB NA.  No OWB USA Liquidating Trust Assets will become or be treated as OWB NA Liquidating Trust Assets.

97.     *OWB NA Liquidating Trust Beneficiaries:* means the Holders of Allowed Claims against OWB NA.

98.     *OWB NA Liquidating Trust Expenses*: means the expenses that are due and owing and that were incurred in administering the property of the OWB NA Liquidating Trust which expenses shall not be subject to Bankruptcy Court approval.

-12-

99.     *OWB NA Liquidating Trust Interests*: means the non-certificated beneficial interests in the OWB NA Liquidating Trust allocable to Holders of Allowed Claims against OWB NA in accordance with the terms and conditions of this Plan and the OWB NA Liquidating Trust Agreement, which may or may not be transferable.

100.     *OWB NA Liquidating Trustee*: the Person selected to administer the OWB NA Liquidating Trust in accordance with the provisions of Article VII of the Plan and the OWB NA Liquidating Trust Agreement.

101.     *OWB NA Preferential Distribution Amount*: means an amount equal to the lesser of: (a) $2.65 million; or (b) 25% of all Electing OWB NA Claimants' Allowed OWB NA Unaffiliated Trade Claims.

102.     *OWB NA Unaffiliated Trade Claims*: means all General Unsecured Claims against OWB NA that are not ING Bank Claims or Intercompany Claims.

103.     *OWB USA*: means O.W. Bunker USA Inc.

104.     *OWB USA Affiliated Unsecured Claims*: means (a) all ING Bank Deficiency Claims against OWB USA, (b) all ING Bank Assignee Claims against OWB USA, and (c) all Allowed Intercompany Claims against OWB USA.

105.     *OWB USA Class A Election*: means the election available to each Holder of an Allowed OWB USA Unaffiliated Trade Claim (whether or not such Holder votes to accept or reject the Plan) to receive an OWB USA Class A Trust Interests in exchange for: (a) assigning to the applicable Liquidating Trust any and all of such Holder's Assigned Rights; (b) returning any and all proceeds collected at any time on or after the Petition Date on account of such Holder's Assigned Rights to the OWB USA Liquidating Trust other than Distributions received pursuant to the Plan; and (c) waiving any and all rights to seek administrative priority status under section 503(b)(9) of the Bankruptcy Code with respect to any of such Holder's Claims against OWB USA.  To the extent a Holder of an Allowed OWB USA Unaffiliated Trade Claim either fails to timely submit a Ballot or otherwise fails to indicate that such Holder rejects the OWB USA Class A Election on the Ballot, such Holder shall be deemed to have made the OWB USA Class A Election.

106.     *OWB USA Class A Trust Interests*: means the non-certificated beneficial interests in the OWB USA Liquidating Trust allocable to Electing OWB USA Claimants, which entitle each Electing OWB USA Claimant to its Pro Rata Share of Distributions from the OWB USA Liquidating Trust up to the lesser amount of (a) such Electing OWB USA Claimant's Pro Rata Share of $5.3 million, or (b) an amount necessary to satisfy 40% of such Electing OWB USA Claimant's Allowed OWB USA Unaffiliated Trade Claim; provided, however, that no Distributions shall be made on account of the OWB USA Class A Trust Interests until after payment of OWB USA Liquidating Trust Expenses and all Allowed Administrative and Priority Claims against OWB USA.

107.     *OWB USA Class B Trust Interests*: means the non-certificated beneficial interests in the OWB USA Liquidating Trust allocable to Holders of Allowed General Unsecured

-13-

Claims against OWB USA other than Electing OWB USA Claimants, which entitle each such Holder to its Pro Rata Share of Distributions from the OWB USA Liquidating Trust up to such Holder's Pro Rata Share of the OWB USA Preferential Distribution Amount; provided, however, that no Distributions shall be made on account of the OWB USA Class B Trust Interests until after all Distributions on account of the OWB USA Class A Trust Interests have been made.

108.    *OWB USA Class C Trust Interests*: means the non-certificated beneficial interests in the OWB USA Liquidating Trust allocable to Holders of Allowed General Unsecured Claims against OWB USA, which entitles each such Holder to its Pro Rata Share of Distributions from the OWB USA Liquidating Trust; provided, however, that no Distributions shall be made on account of the OWB USA Class C Trust Interests until after all Distributions on account of the OWB USA Class A Trust Interests and the OWB USA Class B Trust Interests have been made; provided, further, the amount of a Holder's Allowed General Unsecured Claim against OWB USA that is used to calculate such Holder's Pro Rata Share of Distributions from the OWB USA Liquidating Trust shall be reduced by any Distributions previously received by such Holder on account of an OWB USA Class A Trust Interest or an OWB USA Class B Trust Interest, as applicable.

109.    *OWB USA Disbursing Agent*: means the Person retained by the OWB USA Liquidating Trust and charged with making Distributions to Holders of Allowed Claims against OWB USA, maintaining a register of Distributions made, and performing such other duties in respect to Distributions as may be required by the OWB USA Liquidating Trust or applicable law.

110.    *OWB USA Disputed Claim Reserve*:  means the reserve of Cash established and maintained by the OWB USA Liquidating Trust for Holders of Disputed Administrative Claims against OWB USA, Disputed Priority Claims against OWB USA, Disputed OWB USA Affiliated Trade Claims, and Disputed OWB USA Unaffiliated Trade Claims, sufficient to satisfy such Claims upon allowance of such Claims in accordance with their treatment under the Plan.

111.    *OWB USA Liquidating Trust:* means a trust that will be created on the Effective Date in accordance with Article VII of the Plan and the OWB USA Liquidating Trust Agreement for the benefit of Holders of Allowed Claims against OWB USA.

112.    *OWB USA Liquidating Trust Agreement*:  means an agreement evidencing the terms and provisions governing the OWB USA Liquidating Trust that shall be entered into prior to the establishment of the OWB USA Liquidating Trust and pursuant to which the OWB USA Liquidating Trust shall manage and administer the OWB USA Liquidating Trust Assets.

113.    *OWB USA Liquidating Trust Assets*:  means all of the property to be contributed to and held by the OWB USA Liquidating Trust including, without limitation: (a) Estate Assets contributed by OWB USA (including any Cash and Litigation Claims); (b) Electing OWB USA Claimants' Assigned Rights; (c) the ING Bank Receipts and the Subsequent Receipts in respect of OWB USA Supply Receivables; and (d) the ING Bank Security Interests in relation to OWB USA.  No OWB NA Liquidating Trust Assets will become or be treated as OWB USA Liquidating Trust Assets.

114.      *OWB USA Liquidating Trust Beneficiaries:* means the Holders of Allowed Claims against OWB USA.

115.      *OWB USA Liquidating Trust Expenses*: means the expenses that are due and owing and that were incurred in administering the property of the OWB USA Liquidating Trust which expenses shall not be subject to Bankruptcy Court approval.

116.      *OWB USA Liquidating Trust Interests*: means the non-certificated beneficial interests in the OWB USA Liquidating Trust allocable to Holders of Allowed Claims against OWB USA in accordance with the terms and conditions of this Plan and the OWB USA Liquidating Trust Agreement, which may or may not be transferable.

117.      *OWB USA Liquidating Trustee:* the Person selected to administer the OWB USA Liquidating Trust in accordance with the provisions of Article VII of the Plan and the OWB USA Liquidating Trust Agreement.

118.      *OWB USA Preferential Distribution Amount*: means an amount equal to the lesser of: (a) $5.3 million; or (b) 40% of all Electing OWB USA Claimants' Allowed OWB USA Unaffiliated Trade Claims.

119.      *OWB USA Unaffiliated Trade Claims*: means all General Unsecured Claims against OWB USA that are not ING Bank Claims or Intercompany Claims.

120.      *Person*:  means any individual, corporation, partnership, limited liability company, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, Governmental Unit or any political subdivision thereof, or any other Entity.

121.      *Petition Date*:  means November 13, 2014, the date on which each Debtor commenced its respective Chapter 11 Case by filing a voluntary petition in the Bankruptcy Court.

122.      *Physical Supplier*:  means the Person that physically delivered fuel bunkers to a vessel, such physical supply of fuel being typically evidenced by such Person issuing a bunker delivery receipt to the customer and/or vessel, but regardless of whether the Person or its agent signed and stamped the bunker delivery receipt as supplier.

123.      *Plan*:  means this *Debtors' Liquidation Plans*, together with all addenda, exhibits, schedules, or other attachments, if any, including the Plan Supplement, each of which is incorporated herein by reference, and as may be amended, modified, or supplemented from time to time in accordance with the terms herein.

124.      *Plan Supplement*:  means the compilation of documents and forms of documents, schedules, and exhibits to the Plan to be filed with the Bankruptcy Court.  The Debtors shall file substantially complete versions of the materials comprising the Plan Supplement no later than five (5) Business Days before the Plan Voting Deadline.

125.      *Plan Voting Deadline*: means November 30, 2015, the date the Bankruptcy Court sets as the deadline by which all Ballots must be received.

126.    _Pledged Insurance Receivables_:  mean the Debtors' insurance receivables to the extent those insurance receivables were pledged by the Debtors pursuant to the Finance Documents.

127.    _Priority Claim_:  means a Priority Tax Claim or a Non-Tax Priority Claim.

128.    _Priority Tax Claim_:  means any Claim that is entitled to a priority in right of payment under section 507(a)(8) of the Bankruptcy Code.

129.    _Pro Rata Share_:  means, with respect to a Holder of a Liquidating Trust Interest, the proportion that the amount of such Holder's Allowed General Unsecured Claim against OWB NA or OWB USA, as applicable, bears to the aggregate amount of all Allowed General Unsecured Claims held by Holders of Liquidating Trust Interests of the same Class or sub-Class against OWB NA or OWB USA, as applicable.

130.    _Professional_:  means: (i) any professional employed or retained in the Chapter 11 Cases pursuant to sections 327, 1103, or otherwise of the Bankruptcy Code; and (ii) any professional or other Person seeking compensation or reimbursement of expenses in connection with these Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

131.    _Proof of Claim_:  means a written proof of Claim required to be filed with the Bankruptcy Court in a Chapter 11 Case.

132.    _Quarter_:  means the period beginning on the Effective Date and ending on the next March 31, June 30, September 30, or December 31 that is at least ninety (90) days after the Effective Date, and each 3-month period thereafter.

133.    _Quarterly Distribution Date_: means the 20th day after the end of a Quarter or the first Business Day thereafter.

134.    _Rejection Damage Claims_:  means Claims for damages arising from the rejection of Executory Contracts or Unexpired Leases pursuant to this Plan or by order of the Bankruptcy Court.

135.    _Release Opt Out Election_:  means the election available to Non-Electing OWB USA Claimants and Non-Electing OWB NA Claimants to opt out of providing the releases in Article VIII.E. of the Plan by checking the appropriate box on the Ballots received by such claimants.

136.    _Released Parties_:  means:  (a) the Debtors; (b) Adrian Tolson, in his capacity as a director of each of the Debtors; (c) Hans Staal Jonassen, in his capacity as an officer and director of each of the Debtors; (d) ING Bank, its predecessors, successors and assigns, subsidiaries, funds, portfolio companies; (e) the Lenders, their predecessors, successors and assigns, subsidiaries, funds, and portfolio companies; (f) the Global Receivers; (g) the Committee and its constituent members (solely in their capacities as such); and (h) with respect to each of the foregoing Persons in clauses (a) through (g), such Persons' successors and assigns, members, affiliates, subsidiaries, officers, directors, partners, principals, employees, and

-16-

Representatives, in each case solely in their capacity as such; provided, however, that, notwithstanding the forgoing, the Released Parties shall not include: (i) the Debtors' officers, directors, employees, and managers other than Adrian Tolson and Hans Staal Jonassen; (ii) any of the Debtors' Foreign Affiliates; or (iii) the respective current and former officers, directors, employees, managers, attorneys, financial advisors, accountants, investment bankers, consultants, management companies, or other professionals or representatives of the Debtors' Foreign Affiliates.  For the avoidance of doubt, no vessel, owner, charterer, or any other Entity liable to a Debtor for a Supply Receivable shall be a Released Party.

137.    _Releasing Non-Debtor Parties_: means each of: (a) the Committee and its constituent members (solely in their capacities as such); (b) Holders of Impaired Claims entitled to vote on the Plan other than (i) the ING Releasing Parties, and (ii) Non-Electing OWB NA Claimants who properly make the Release Opt Out Election and Non-Electing OWB USA Claimants who properly make the Release Opt Out Election; (c) Holders of Unimpaired Claims; and (d) with respect to each of the foregoing Persons in clauses (a) through (c), such Persons' successors and assigns, members, affiliates, subsidiaries, officers, directors, partners, principals, employees, and Representatives, in each case solely in their capacity as such.

138.    _Reinstated or Reinstatement_:  means the treatment of a Claim, subject only to the approval of ING and otherwise in the Liquidating Trust's sole discretion, in accordance with one of the following:

(a)    The legal, equitable, and contractual rights to which such Claim entitles the Holder will be unaltered; or

(b)    Notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default:

(i)    any such default that occurred before the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, will be cured;

(ii)    the maturity of such Claim as such maturity existed before such default will be reinstated;

(iii)    the Holder of such Claim will be compensated for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; and

(iv)    the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim will not otherwise be altered.

139.    _Representatives_: means a Person's or Entity's former and current officers, former and current directors, former and current principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, and other professionals, each solely in its capacity as such.

-17-

140.    _Retained Proceeds_: has the meaning given to it in Article [IX.4]

141.    _Schedules_:  means the schedules of assets and liabilities, statements of financial affairs, and lists of Holders of Claims and Equity Interests filed with the Bankruptcy Court by the Debtors, including any amendments or supplements thereto (before or after the Effective Date and made by the Debtors or the relevant Liquidating Trust), including, for the avoidance of doubt, amendments to the classification of a Claim as liquidated, non-contingent, and undisputed.

142.    _Section 503(b)(9) Claim_:  means any filed Claim which explicitly requested treatment pursuant to section 503(b)(9) of the Bankruptcy Code to the extent such Claim was timely asserted on or prior to the Bar Date against one or more of the Debtors.

143.    _Secured_: means when referring to a Claim: (a) (i) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Final Order of a court of competent jurisdiction or (ii) entitled to the benefit of a setoff pursuant to section 553 of the Bankruptcy Code, in each case, to the extent determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan as a Claim that is Secured.

144.    _Securities Act_:  means the Securities Act of 1933, sections 77c-77aa of title 15 of the United States Code, as now in effect or as hereafter amended.

145.    _Security Agreement_:  means that certain English Omnibus Security Agreement, dated as of December 19, 2013 between ING Bank and the Chargors, as defined therein.

146.    _Subordinated Claims_: means any Claim that is subordinated under section 510(b) or 510(c) of the Bankruptcy Code.

147.    _Subsequent Receipts_:  means all amounts received by ING Bank on or after the Effective Date on account of a Debtor's Supply Receivables.

148.    _Supply Receivable_: means (a) for a Contract Supplier, the amount due and owing directly from the customer to the Contract Supplier pursuant to an agreement with the customer and applicable law; (b) for a Physical Supplier, the amount due and owing from its direct contract counterparty (either an Intermediary Supplier or Contract Supplier) pursuant to an agreement with the counterparty and applicable law; and (c) for an Intermediary Supplier, the amount due and owing from its direct contract counterparty (either a Contract Supplier or another Intermediary Supplier) pursuant to an agreement with the counterparty and applicable law.

149.    _Unclaimed Distribution Reserve_:  has the meaning given to it in Article Article IX.3.

150.    _Unexpired Lease_:  means a lease to which at least one Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

151.   *Unimpaired*:  means any Class of Claims that is not Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code.

152.   *U.S.*: means the United States of America including its federal district and its territories.

153.   *Voting Record Date*:  means the date that the Disclosure Statement was approved by the Bankruptcy Court.

### B.   Interpretation, Application of Definitions and Rules of Construction.

Capitalized terms that are not defined herein shall have the same meanings assigned to such terms by the Bankruptcy Code or Bankruptcy Rules, as the case may be. Meanings of capitalized terms shall be equally applicable to both the singular and plural forms of such terms. The words "herein," "hereof," and "hereunder" and other words of similar import refer to the Plan as a whole (including, for the avoidance of doubt, the Plan Supplement) and not to any particular section or subsection in the Plan unless expressly provided otherwise.  The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity, or specificity and do not in any respect qualify, characterize, or limit the generality of the class within which such things are included.  Captions and headings to articles, sections, and exhibits are inserted for convenience of reference only, are not a part of the Plan, and shall not be used to interpret the Plan.  The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan.

### C.   Computation of Time.

Except as otherwise specifically provided in the Plan, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### ARTICLE II
### ADMINISTRATIVE AND PRIORITY CLAIMS AS TO ALL DEBTORS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Fee Claims, as described below, have not been classified and thus are excluded from the Classes of Claims and Equity Interests set forth in Article III.

### A.   Administrative Claims as to All Debtors (Other Than Fee Claims).

Each Holder of an Allowed Administrative Claim (other than an Administrative Claim that is a Fee Claim) shall receive from the applicable Debtor against which such Administrative Claim is Allowed (if prior to or on the Effective Date) or the applicable Liquidating Trust (if after the Effective Date) (a) Cash in an amount equal to the amount of such Allowed Administrative Claim as soon as practicable after the later of (i) the Effective Date if such Administrative Claim is Allowed as of the Effective Date, (ii) thirty (30) days after the date such Administrative Claim becomes an Allowed Administrative Claim if such Administrative Claim is Disputed as of or following the Effective Date, or (iii) the date such Allowed Administrative Claim becomes due and payable by its terms, or as soon thereafter as is practicable; or (b) such

other treatment as the applicable Debtor or the applicable Liquidating Trust and such Holder shall have agreed upon in writing; provided, however, that Allowed Administrative Claims (other than Fee Claims) that arise in the ordinary course of the relevant Debtors' business shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions. Administrative Claims (other than an Administrative Claim that is a Fee Claim) that become Allowed after the Effective Date shall be paid by the applicable Liquidating Trust prior to payment on account of any other Claim or Liquidating Trust Interest. For the avoidance of doubt, none of the ING Bank Claims will be treated as Administrative Claims.

### B. Fee Claims.

All requests for compensation or reimbursement of Fee Claims shall be filed and served on the Debtors and their counsel, the Liquidating Trusts and their counsel, the U.S. Trustee, counsel to each of ING Bank and the Committee, and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court, no later than forty-five (45) days after the Effective Date. Holders of Fee Claims that are required to file and serve applications for final allowance of their Fee Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such Claims against the Debtors, the Liquidating Trusts, or their respective properties, and such Fee Claims shall be deemed discharged as of the Effective Date. Objections to any Fee Claims must be filed and served on the Debtors and their counsel, the Liquidating Trusts and their counsel, the U.S. Trustee, counsel to each of ING Bank and the Committee, the requesting party, and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court, no later than thirty (30) days after the filing of the final applications for compensation or reimbursement (unless otherwise agreed by the party requesting payment of a Fee Claim).

Each Holder of an Allowed Fee Claim shall receive from the applicable Debtor (if prior to or on the Effective Date) or the applicable Liquidating Trust (if after the Effective Date) (a) Cash in the amount of the Fee Claim awarded by the Bankruptcy Court as soon as practicable after entry of an order approving the Fee Claim; or (b) such other treatment as the applicable Debtor or the Liquidating Trust and such Holder shall have agreed upon in writing.

### C. Priority Tax Claims.

Each Holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive from the applicable Debtor (if prior to or on the Effective Date) or the applicable Liquidating Trust (if after the Effective Date), at the sole option of such Debtor or Liquidating Trust, as applicable, in full satisfaction, settlement, release, and discharge, of and in exchange for such Priority Tax Claim one of the following treatments: (a) payment in full in Cash as soon as practicable after the Effective Date in an amount equal to the amount of such Allowed Priority Tax Claim, plus statutory interest on any outstanding balance from the Effective Date, calculated at the prevailing rate under applicable nonbankruptcy law for each taxing authority and to the extent provided for by section 511 of the Bankruptcy Code; (b) payment in full in Cash in equal installments made each Quarter in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, over a period not to exceed five (5) years following the

Petition Date, plus statutory interest on any outstanding balance from the Effective Date, calculated at the prevailing rate under applicable nonbankruptcy law for each taxing authority and to the extent provided for by section 511 of the Bankruptcy Code, and in a manner not less favorable than the most favored General Unsecured Claim provided for by the Plan; or (c) such other treatment as may be agreed upon by such Holder and the applicable Debtor or applicable Liquidating Trust, or otherwise determined upon a Final Order of the Bankruptcy Court.

### D. U.S. Trustee Fees.

Notwithstanding anything to the contrary contained herein, on the Effective Date and prior to the transfer of any Estate Assets to the Liquidating Trusts, the Debtors shall pay, in full, in Cash, any fees due and owing to the U.S. Trustee as of the Effective Date. On and after the Effective Date, each Liquidating Trust shall be responsible for filing required post-confirmation reports and paying quarterly fees due to the U.S. Trustee until the entry of a final decree in such Debtor's Chapter 11 Case or until such Chapter 11 Case is converted or dismissed.

### ARTICLE III
### CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A. Classification of Claims and Equity Interests.

Except for those Claims addressed in Article II, all Claims and Equity Interests are placed in the Classes set forth below. A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled before the Effective Date.

### B. Claims Record Date.

As of the close of business on the Voting Record Date, the claims register shall be closed, and there shall be no further changes in the Holders of record of any Claims.

No Liquidating Trust shall have any obligation to recognize any transfer of any Claims occurring after the Voting Record Date except in the Liquidating Trust's sole and absolute discretion. Each Liquidating Trust shall instead be entitled to recognize and deal for purposes under the Plan with only those Holders of record identified on the claims register as of the close of business in Bridgeport, Connecticut on the Voting Record Date.

### C. Summary of Classification and Class Identification.

Below is a chart identifying Classes of Claims and Equity Interests, a description of whether each Class is Impaired, and the voting rights of each Class. If there are no Holders of Claims in one or more Classes, then such Class or Classes will be deemed to have been eliminated for that Debtor.

There are no Classes for OWB Holding because OWB Holding has no assets apart from its Equity Interests in OWB NA and OWB USA, which Interests are cancelled pursuant to this Plan.  OWB Holding shall be dissolved or granted the authority to dissolve pursuant to the Confirmation Order.

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for the purposes of the Confirmation Order by acceptance of the Plan by an Impaired Class of Claims; provided, however, that in the event no Holder of a Claim with respect to a specific voting Class for a Debtor timely submits a Ballot indicating acceptance or rejection of the Plan, such Class (with respect to such Debtor) will be deemed to have accepted the Plan.  The Debtors shall seek a Confirmation Order pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting (or deemed rejecting) Class of Claims or Equity Interests.  The Debtors reserve the right to modify the Plan in accordance with Article XIV.I hereof, including the right to withdraw the Plan at any time before the Effective Date.

| Class | Designation | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| 1 | Non-Tax Priority Claims Against OWB USA | NO | NO |
| 2 | Secured Claims Against OWB USA | NO | NO |
| 3 | OWB USA Affiliated Unsecured Claims | YES | YES |
| 4 | OWB USA Unaffiliated Trade Claims | YES | YES |
| 5 | Subordinated Claims Against OWB USA | YES | NO |
| 6 | Equity Interests in OWB USA | YES | NO |
| 7 | Non-Tax Priority Claims Against OWB NA | NO | NO |
| 8 | Secured Claims Against OWB NA | NO | NO |
| 9 | OWB NA Affiliated Unsecured Claims | YES | YES |
| 10 | OWB NA Unaffiliated Trade Claims | YES | YES |
| 11 | Subordinated Claims Against OWB NA | YES | NO |
| 12 | Equity Interests in OWB NA | YES | NO |

D.        **Treatment of Classified Claims and Equity Interests.**

1.        *Class 1 – Non-Tax Priority Claims Against OWB USA*.

(a)        <u>Classification</u>:  Class 1 consists of Allowed Non-Tax Priority Claims against OWB USA.

(b)        <u>Treatment</u>:  The legal, equitable, and contractual rights of Holders of Allowed Non-Tax Priority Claims against OWB USA are unaltered by the Plan.  In full and complete satisfaction, settlement and release of, and exchange for each Allowed Non-Tax Priority Claim against OWB USA, each Holder of an Allowed Non-Tax Priority Claims against OWB USA shall receive one of the following treatments, at the sole election of OWB USA: (i) to the extent then due and owing on the Effective Date, such Allowed Non-Tax Priority Claim against OWB USA shall be paid in full, in Cash on the Effective Date; (ii) to the extent not due and owing on the Effective Date, such an Allowed Non-Tax Priority Claim against OWB USA shall be paid in full, in Cash, by the OWB USA Liquidating Trust when and as such Allowed Non-Tax Priority Claim against OWB USA becomes due and owing in the ordinary course of business in accordance with the terms thereof; or (iii) such other less favorable treatment as is agreed upon by OWB USA or the OWB USA Liquidating Trust, as applicable, and the Holder of such Allowed Non-Tax Priority Claim against OWB USA.

(c)        <u>Voting</u>:  Class 1 is Unimpaired, and each Holder of a Class 1 Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1 Claims are not entitled to vote to accept or reject the Plan.

2.        *Class 2 – Secured Claims Against OWB USA*

(a)        <u>Classification</u>:  Class 2 consists of Allowed Secured Claims against OWB USA.

(b)        <u>Treatment</u>:  The legal, equitable and contractual rights of Holders of Allowed Secured Claims against OWB USA are unaltered by the Plan.  In full and complete satisfaction, settlement and release of, and exchange for each Allowed Secured Claim against OWB USA, each Holder of an Allowed Secured Claim against OWB USA shall receive, on the Effective Date or as soon thereafter as reasonably practicable, one of the following treatments, at the sole election of OWB USA:  (i) Cash in the amount of such Allowed Secured Claim against OWB USA; (ii) turnover of the Estate Assets that constitute Collateral for such Allowed Secured Claims against OWB USA, solely to the extent that such Estate Assets are not Cash and the Holder of such Allowed Secured Claim against OWB USA has a valid, perfected, enforceable, and unavoidable first-priority Lien on such Estate Assets; or (iii) such other, less favorable treatment as is agreed upon by OWB USA or the OWB USA Liquidating Trust, as applicable, and the Holder of such Allowed Secured Claim against OWB USA.

(c)        <u>Voting</u>:  Class 2 is Unimpaired, and each Holder of a Class 2 Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the

Bankruptcy Code.  Therefore, Holders of Class 2 Claims are not entitled to vote to accept or reject the Plan.

3.      *Class 3 – OWB USA Affiliated Unsecured Claims.*

(a)      Classification:  Class 3 consists of Allowed OWB USA Affiliated Unsecured Claims.

(b)      Treatment:  Holders of Allowed OWB USA Affiliated Unsecured Claims each shall receive on the Effective Date (i) an OWB USA Class B Trust Interest and (ii) an OWB USA Class C Trust Interest.

(c)      Voting:  Class 3 is Impaired.  Each Holder of an Allowed Claim in Class 3 is entitled to vote to accept or reject the Plan.

4.      *Class 4 - OWB USA Unaffiliated Trade Claims.*

(a)      Classification:  Class 4 consists of Allowed OWB USA Unaffiliated Trade Claims.  Allowed Class 4 Claims of Electing OWB USA Claimants are classified as Class 4(a) Claims.  Allowed Class 4 Claims of Non-Electing OWB USA Claimants are classified as Class 4(b) Claims.

(b)      Treatment:  Holders of Allowed Class 4(a) Claims shall receive on the Effective Date (i) an OWB USA Class A Trust Interest and (ii) an OWB USA Class C Trust Interest.  Holders of Allowed Class 4(b) Claims shall receive on the Effective Date (x) an OWB USA Class B Trust Interest and (y) an OWB USA Class C Trust Interest.

(c)      Voting:  Class 4 is Impaired.  Each Holder of an Allowed Claim in Class 4 is entitled to vote to accept or reject the Plan.

5.      *Class 5 – Subordinated Claims Against OWB USA.*

(a)      Classification:  Class 5 consists of Subordinated Claims against OWB USA.

(b)      Treatment:  Holders of Subordinated Claims against OWB USA shall receive no property or Distributions under the Plan on account of such Claims in accordance with the effect of section 510 of the Bankruptcy Code.

(c)      Voting:  Class 5 is Impaired.  Each Holder of an Subordinated Claim against OWB USA is conclusively presumed to have rejected the Plan under section 1126(g) of the Bankruptcy Code and, therefore, is not entitled to vote to accept or reject the Plan.

6.      *Class 6 – Equity Interests in OWB USA.*

(a)      Classification:  Class 6 consists of Equity Interests in OWB USA.

(b)     Treatment:  On the Effective Date, Equity Interests in OWB USA shall be cancelled and discharged and shall be of no further force and effect, whether surrendered for cancellation or otherwise, and Holders of Equity Interests against OWB USA shall not receive or retain any property under the Plan on account of such Equity Interests.

(c)     Voting:  Class 6 is Impaired.  Each Holder of a Class 6 Equity Interest against OWB USA is conclusively presumed to have rejected the Plan under section 1126(g) of the Bankruptcy Code and, therefore, is not entitled to vote to accept or reject the Plan.

7.     *Class 7 – Non-Tax Priority Claims Against OWB NA.*

(a)     Classification:  Class 7 consists of Allowed Non-Tax Priority Claims against OWB NA.

(b)     Treatment:  The legal, equitable, and contractual rights of Holders of Allowed Non-Tax Priority Claims against OWB NA are unaltered by the Plan.  In full and complete satisfaction, settlement and release of, and exchange for each Allowed Non-Tax Priority Claim against OWB NA, each Holder of an Allowed Non-Tax Priority Claim against OWB NA shall receive one of the following treatments, at the sole election of OWB NA: (i) to the extent then due and owing on the Effective Date, such Allowed Non-Tax Priority Claim against OWB NA shall be paid in full, in Cash on the Effective Date; (ii) to the extent not due and owing on the Effective Date, such an Allowed Non-Tax Priority Claim against OWB NA shall be paid in full, in Cash, by the OWB NA Liquidating Trust when and as such Allowed Non-Tax Priority Claim against OWB NA becomes due and owing in the ordinary course of business in accordance with the terms thereof; or (iii) such other less favorable treatment as is agreed upon by OWB NA or the OWB NA Liquidating Trust, as applicable, and the Holder of such Allowed Non-Tax Priority Claim against OWB NA.

(c)     Voting:  Class 7 is Unimpaired by the Plan, and each Holder of a Class 7 Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 7 Claims are not entitled to vote to accept or reject the Plan.

8.     *Class 8 – Secured Claims Against OWB NA*

(a)     Classification:  Class 8 consists of Allowed Secured Claims against OWB NA.

(b)     Treatment:  The legal, equitable and contractual rights of Holders of Allowed Secured Claims against OWB NA are unaltered by the Plan.  In full and complete satisfaction, settlement, and release of, and in exchange for each Allowed Secured Claim against OWB NA, each Holder of an Allowed Secured Claim against OWB NA shall receive, on the Effective Date or as soon thereafter as reasonably practicable, one of the following treatments, at the sole election of OWB NA:  (i) Cash in the amount of such Allowed Secured Claim against OWB NA; (ii) turnover of the Estate Assets that constitute Collateral for such Allowed Secured Claim against OWB NA, solely to the extent that such Estate Assets are not Cash, and the Holder of such Allowed Secured Claim against OWB NA has a valid, perfected, enforceable, and

unavoidable first-priority Lien on such Estate Assets; or (iii) such other, less favorable treatment as is agreed upon by OWB NA or the OWB NA Liquidating Trust, as applicable, and the Holder of such Allowed Secured Claim against OWB NA.

(c)     Voting:  Class 8 is Unimpaired by the Plan, and each Holder of a Class 8 Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 8 Claims are not entitled to vote to accept or reject the Plan.

9.     *Class 9 – OWB NA Affiliated Unsecured Claims.*

(a)     Classification:  Class 9 consists of Allowed OWB NA Affiliated Unsecured Claims.

(b)     Treatment:  Holders of Allowed OWB NA Affiliated Unsecured Claims shall receive on the Effective Date (i) an OWB NA Class B Trust Interest and (ii) an OWB NA Class C Trust Interest.

(c)     Voting:  Class 9 is Impaired.  Each Holder of an Allowed General Unsecured Claim in Class 9 is entitled to vote to accept or reject the Plan.

10.     *Class 10 - OWB NA Unaffiliated Trade Claims.*

(a)     Classification:  Class 10 consists of Allowed OWB NA Unaffiliated Trade Claims.  Allowed Class 10 Claims of Electing OWB NA Claimants are classified as Class 10(a) Claims.  Allowed Class 10 Claims of Non-Electing OWB NA Claimants are classified as Class 10(b) Claims.

(b)     Treatment:  Holders of Allowed Class 10(a) Claims shall receive on the Effective Date (i) an OWB NA Class A Trust Interest and (ii) an OWB NA Class C Trust Interest.  Holders of Allowed Class 10(b) Claims shall receive on the Effective Date (x) an OWB NA Class B Trust Interest and (y) an OWB NA Class C Trust Interest.

(c)     Voting:  Class 10 is Impaired.  Each Holder of an Allowed Claim in Class 10 is entitled to vote to accept or reject the Plan.

11.     *Class 11 – Subordinated Claims Against OWB NA.*

(a)     Classification:  Class 11 consists of Subordinated Claims against OWB NA.

(b)     Treatment:  Holders of Subordinated Claims against OWB NA shall receive no property or Distributions under the Plan on account of such Claims in accordance with the effect of section 510 of the Bankruptcy Code.

(c)     Voting:  Class 11 is Impaired.  Each Holder of a Subordinated Claim against OWB NA is conclusively presumed to have rejected the Plan under section 1126(g) of the Bankruptcy Code and, therefore, is not entitled to vote to accept or reject the Plan.

12.      *Class 12 - Equity Interests in OWB NA.*

(a)      <u>Classification</u>:  Class 12 consists of Equity Interests in OWB NA.

(b)      <u>Treatment</u>:  On the Effective Date, Equity Interests in OWB NA shall be cancelled and discharged and shall be of no further force and effect, whether surrendered for cancellation or otherwise and Holders of Equity Interests against OWB NA shall not receive or retain any property under the Plan on account of such Equity Interests.

(c)      <u>Voting</u>:  Class 12 is Impaired.  Each Holder of a Class 12 Equity Interest against OWB NA is conclusively presumed to have rejected the Plan under section 1126(g) of the Bankruptcy Code and, therefore, is not entitled to vote to accept or reject the Plan.

### E.      Special Provision Regarding Unimpaired and Reinstated Claims.

Except as otherwise specifically provided in this Plan, nothing herein shall be deemed to affect, diminish, or impair a Debtor's or a Liquidating Trust's rights and defenses, both legal and equitable, with respect to any Reinstated Claim or Unimpaired Claim, including, but not limited to, legal and equitable defenses to setoffs or recoupment against Reinstated Claims or Unimpaired Claims; and, except as otherwise specifically provided in this Plan, nothing herein shall be deemed to be a waiver or relinquishment of any Litigation Claim, right of setoff, or other legal or equitable defense that a Debtor had immediately prior to the Petition Date, against or with respect to any Unimpaired Claim.  Except as otherwise specifically provided in this Plan, each Liquidating Trust shall have, retain, reserve, and be entitled to assert all Litigation Claims, rights of setoff, and other legal or equitable defenses that a Debtor had immediately prior to the Petition Date fully as if the Chapter 11 Cases had not been commenced, and all of a Liquidating Trust's legal and equitable rights with respect to any Reinstated Claim or Unimpaired Claim may be asserted after the Confirmation Date and the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

### ARTICLE IV
### ACCEPTANCE OR REJECTION OF THE PLAN

1.      <u>Acceptance by an Impaired Class</u>.  In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted this Plan if this Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject this Plan by the Plan Voting Deadline.

2.      <u>Presumed Acceptances by Unimpaired Classes</u>.  Classes 1, 2, 7 and 8 are Unimpaired under this Plan.  Under section 1126(f) of the Bankruptcy Code, Holders of such Claims are conclusively presumed to accept this Plan, and the votes of the Holders of such Claims will not be solicited.

3.      <u>Classes Deemed to Reject Plan</u>.  Holders of Subordinated Claims in Classes 5 and 11, and Holders of Equity Interests in Classes 6 and 12, are deemed to have

-27-

rejected the Plan.  Under section 1126(g) of the Bankruptcy Code, the votes of the Holders of such Subordinated Claims and Equity Interests will not be solicited.

        4.      <u>Summary of Classes Voting on the Plan</u>.  As a result of the provisions of Article III of this Plan, the votes of Holders of Claims in Classes 3, 4, 9, and 10 will be solicited with respect to this Plan.

        5.      <u>Cramdown</u>.  The Debtors hereby request that, to the extent necessary, the Bankruptcy Court confirm this Plan under section 1129(b) of the Bankruptcy Code.

**ARTICLE V**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

        1.      <u>Cancellation of Liens</u>.  Except as otherwise provided in the Plan, on the Effective Date, any Lien securing any Secured Claim shall be deemed released, and the Person holding such Secured Claim shall be authorized and directed to release any Collateral or other property of the Debtor (including any cash collateral) held by such Person and to take such actions as may be requested by the applicable Liquidating Trust to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases as may be requested by the applicable Liquidating Trust.

        2.      <u>Post-Effective Date Fees and Expenses</u>.  From and after the Effective Date, each Liquidating Trustee and the professionals retained by the Liquidating Trusts will be paid in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court.

        3.      <u>Corporate Actions</u>.  On the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects (subject to the provisions of the Plan), including, without limitation, the following: (a) cancellation of all Equity Interests; and (b) the execution and the delivery of, and the performance under, the Liquidating Trust Agreements. All matters provided for under the Plan involving the corporate structure of each Debtor and any corporate action required by a Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect pursuant to the Bankruptcy Code, without any requirement of further action by the stockholders or the directors of the Debtor.  On the Effective Date, the appropriate officers of the Debtors are authorized and directed to execute and to deliver the Liquidating Trust Agreements, and related documents and agreements and any other agreements, documents and instruments contemplated by the Plan, and related documents and agreements in the name and on behalf of the Debtors.

        4.      <u>Transfer of the ING Bank Security Interests</u>:  On the Effective Date, the ING Bank Security Interests shall be fully and finally transferred to the Liquidating Trusts.

        5.      <u>Sources of Cash for Plan Distributions</u>.  Except as otherwise provided in this Plan or the Confirmation Order, Distributions shall be payable solely from Cash (if any) from the ING Bank Receipts and the Subsequent Receipts, Cash in the Debtors' Estates, and Cash generated (if any) from the liquidation of the Liquidating Trust Assets, <u>provided</u>, <u>however</u>, the Plan incorporates an agreement between ING Bank and the Debtors as to the following:

-28-

(a)    Each Liquidating Trust shall instruct customers to pay the invoices issued to them by the relevant Debtor or Foreign Affiliate Contract Supplier, provided that no Liquidating Trust shall be required to make such instruction in respect of transactions where the Person that acted as Contract Supplier is not providing a similar instruction, having been requested to do so, to customers in respect of other transactions in which one of the Debtors acted as the Contract Supplier.

(b)    ING Bank and the Global Receivers shall not, on behalf of themselves or any Foreign Affiliate, assert claims under the Maritime Lien Act (or any similar U.S. or foreign law) in respect of transactions in which OWB NA or OWB USA was the Contract Supplier, and will instruct customers in transactions in which OWB NA or OWB USA was the Contract Supplier to pay the Contract Supplier.  Funds received by each of OWB NA or OWB USA pursuant to this provision will be transferred to the respective Liquidating Trust with funds received by OWB NA transferred to the OWB NA Liquidating Trust and funds received by OWB USA transferred to the OWB USA Liquidating Trust.

(c)    Neither Liquidating Trust shall assert any Assigned Rights without the prior written consent of ING Bank, which consent shall not be withheld, in respect of the assertion of such Assigned Rights in transactions where the Contract Supplier (i) is not a Debtor or Foreign Affiliate, or (ii) is a Foreign Affiliate that is actively contesting the right of the relevant Debtor and/or the OWB USA Liquidating Trust or the OWB NA Liquidating Trust, as applicable, to collect in full in any other transaction in which that Debtor acted as the Contract Supplier.

(d)    The OWB NA Liquidating Trust shall not assert, without the prior written consent of ING Bank, any rights the OWB NA Liquidating Trust holds as assignee of rights under the Maritime Lien Act (or any similar U.S. or foreign law) previously held by OWB NA in respect of transactions in which OWB NA acted as the Physical Supplier or an Intermediary Supplier.  In such transactions, the OWB NA Liquidating Trust shall instruct customers to pay the invoices issued to them by the relevant Contract Supplier (including Contract Suppliers who are Foreign Affiliates) in accordance with the terms of the underlying invoices.  ING Bank's consent to the assertion of such claims in a given transaction shall not be withheld where the Contract Supplier in such transaction (i) is not a Debtor or Foreign Affiliate, or (ii) is a Foreign Affiliate that is actively contesting the right of OWB NA or the OWB NA Liquidating Trust to collect in full in any other transaction in which OWB NA acted as the Contract Supplier.  For the avoidance of doubt, the OWB NA Liquidating Trust shall continue to prosecute, as needed, all rights under the Maritime Lien Act (or any similar U.S. or foreign law) in respect of transactions in which OWB NA acted as Contract Supplier.

(e)    The OWB USA Liquidating Trust shall not assert, without the prior written consent of ING Bank, rights the OWB USA Liquidating Trust holds as assignee of rights under the Maritime Lien Act (or any similar U.S. or foreign law) previously held by OWB USA in respect of transactions in which OWB USA acted as an Intermediary Supplier or the Physical Supplier.  In such transactions, the OWB USA Liquidating Trust shall instruct customers to pay the invoices issued to them by the relevant Contract Supplier (including Contract Suppliers who are Foreign Affiliates) in accordance with the terms of the underlying invoices.  ING Bank's consent to the assertion of such claims in a given transaction shall not be

-29-

withheld where the Contract Supplier in such transaction (i) is not a Debtor or a Foreign Affiliate or (ii) is a Foreign Affiliate that is actively contesting the right of OWB USA or the OWB USA Liquidating Trust to collect in full in any other transaction in which OWB USA acted as the Contract Supplier.  For the avoidance of doubt, the OWB Liquidating Trust shall continue to prosecute, as needed, rights under the Maritime Lien Act (or any other similar U.S. or foreign law) in respect of transactions in which OWB USA acted as Contract Supplier.

> (f)    In any litigation involving a transaction in which OWB USA or OWB NA acted as the Contract Supplier, neither ING Bank nor the Global Receivers will take, or cause another party to take any action adverse to the litigation position of the relevant Liquidating Trust in such litigation.

> 6.    <u>ING Section 503(b)(9) Claims</u>.  No ING Bank Claims shall be entitled to treatment as an Administrative Claim under section 503(b)(9) of the Bankruptcy Code or otherwise.

> 7.    <u>Cooperation Between the Debtors and ING Bank.</u>  The Plan incorporates an agreement between the Debtors and ING Bank to cooperate including:

> (a)    The Debtors and ING Bank covenant and agree to cooperate to expedite and maximize collection of amounts due to the Debtors.  In connection therewith, any amounts collected by ING Bank as a direct or indirect result of a joint direction directing payment of all amounts due to the Debtors as detailed in Article V.5 herein will be transferred into accounts held by ING Bank with all funds collected by ING Bank to be transferred as soon as practicable following such receipt into accounts maintained by the relevant Liquidating Trust in the U.S.  ING Bank agrees to provide a monthly accounting of such receipts to the relevant Liquidating Trust.

> (b)    Upon the Effective Date, or as soon as practicable thereafter, ING Bank shall transfer to the relevant Liquidating Trust all ING Bank Receipts after (i) deduction of administrative fees (including Professionals' fees) and expenses paid for the period May 1, 2015, through the earlier of the Effective Date or November 12, 2015, as applicable, or such other date as agreed in writing by the Debtors, ING Bank, and the Committee, in each of their absolute discretion and (ii) all ING Bank Receipts transferred prior to the Effective Date to accounts maintained and controlled by a Debtor.  As of August 12, 2015, ING Bank was holding approximately $7 million in ING Bank Receipts. Cash collected from accounts receivable invoiced by OWB NA will be deposited in the OWB NA Liquidating Trust and Cash collected from accounts receivable invoiced by OWB USA will be deposited in the OWB USA Liquidating Trust.

> (c)    On or after the Effective Date ING Bank shall transfer any Subsequent Receipt to the applicable Liquidating Trust within ten (10) Business Days of ING Bank's receipt of such Subsequent Receipt and ING Bank shall provide the relevant Liquidating Trusts with a monthly accounting of all Subsequent Receipts.

> (d)    The ING Bank Adversary Proceeding shall be deemed dismissed with prejudice on the Effective Date.  The Confirmation Order shall provide that the Liquidating

Trust is authorized and directed to take all necessary steps on and after the Effective Date to document such dismissal, including by filing any necessary motions or notices with the Bankruptcy Court.

8.      Approval of the ING Settlement.  The Plan and the Disclosure Statement shall constitute a motion to approve the ING Settlement pursuant to Bankruptcy Rule 9019.  The ING Settlement shall be deemed to be approved and effective contemporaneously with entry of the Confirmation Order and occurrence of the Effective Date, respectively.

9.      Intermediary Supplier Transactions.  In any pending or future litigation under the Maritime Lien Act, the maritime law of the U.S. or foreign jurisdiction, or other applicable law in which a Debtor is an Intermediary Supplier, upon the Effective Date of the Plan: (a) the Liquidating Trust shall abandon all interest in any Claim the Liquidating Trust may have against an end-customer and/or its vessel arising from a Debtor's role as an Intermediary Supplier; and (b) the automatic stay and the injunction provisions contained in the Plan shall remain in place and shall be effective.

**ARTICLE VI**
**CORPORATE GOVERNANCE**

1.      Corporate Existence. After the Effective Date, the OWB NA Liquidating Trust may decide (a) to maintain OWB NA as a corporation in good standing until such time as all aspects of the Plan pertaining to OWB NA have been completed, or (b) at such time as it considers appropriate and consistent with the implementation of the Plan pertaining to OWB NA, to dissolve OWB NA subject to the filing of a certificate of dissolution with the appropriate governmental authorities.

After the Effective Date, the OWB USA Liquidating Trust may decide (a) to maintain OWB USA as a corporation in good standing until such time as all aspects of the Plan pertaining to OWB USA have been completed, or (b) at such time as it considers appropriate and consistent with the implementation of the Plan pertaining to OWB USA, to dissolve OWB USA subject to the filing of a certificate of dissolution with the appropriate governmental authorities.

The Confirmation Order  shall include a determination by the Bankruptcy Court that as of the Effective Date, OWB Holding will be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Liquidating Trusts or any other Person unless directed by the Bankruptcy Court.  The Liquidating Trusts shall cause the Confirmation Order to be filed with Secretary of State of Connecticut or such other relevant Governmental Unit as evidence of the dissolution and file a notice of such filing with the Bankruptcy Court.

2.      Certificate of Incorporation and By-Laws. As of the Effective Date, the certificate of incorporation and by-laws of each Debtor shall be deemed amended to the extent necessary to carry out the provisions of the Plan.

## ARTICLE VII
## THE LIQUIDATING TRUSTS

1.     Identity of the Liquidating Trustees.  The identity of the Liquidating Trustees, which shall be agreed between the Debtors, the Committee, and ING, shall be disclosed in the Plan Supplement.

2.     Execution of the OWB NA Liquidating Trust Agreement. On the Effective Date, the OWB NA Liquidating Trustee shall execute the OWB NA Liquidating Trust Agreement.  The OWB NA Liquidating Trustee shall also take all other necessary steps to establish the OWB NA Liquidating Trust and the OWB NA Liquidating Trust Interests provided for therein, which shall be for the benefit of the OWB NA Liquidating Trust Beneficiaries.  In the event of any conflict between the terms of this Article VII and the terms of the OWB NA Liquidating Trust Agreement relating to the establishment of the OWB NA Liquidating Trust, the terms of this Article VII shall govern. The OWB NA Liquidating Trust Agreement shall be in substantially the form attached as an Exhibit to the Plan Supplement.  The OWB NA Liquidating Trust Agreement will provide powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of the OWB NA  Liquidating Trust as a "liquidating trust" for U.S. federal income tax purposes.

3.     Execution of the OWB USA Liquidating Trust Agreement. On the Effective Date, the OWB USA Liquidating Trustee shall execute the OWB USA Liquidating Trust Agreement.  The OWB USA Liquidating Trustee shall also take all other necessary steps to establish the OWB USA Liquidating Trust and the OWB USA Liquidating Trust Interests provided for therein, which shall be for the benefit of the OWB USA Liquidating Trust Beneficiaries.  In the event of any conflict between the terms of this Article VII and the terms of the OWB USA Liquidating Trust Agreement relating to the establishment of the OWB USA Liquidating Trust, the terms of this Article VII shall govern.  The OWB USA Liquidating Trust Agreement shall be in substantially the form attached as an Exhibit to the Plan Supplement.  The OWB USA Liquidating Trust Agreement will provide powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of the OWB USA Liquidating Trust as a "liquidating trust" for U.S. federal income tax purposes.

4.     Purpose of the Liquidating Trusts. The Liquidating Trusts shall be established for the sole purpose of liquidating and distributing the OWB NA Liquidating Trust Assets and the OWB USA Liquidating Trust Assets, as applicable, in accordance with Treasury Regulation § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

5.     Liquidating Trust Assets.

(a)     After the creation of the OWB NA Liquidating Trust pursuant to this Article VII, OWB NA shall transfer all of the OWB NA Liquidating Trust Assets, including any Litigation Claims, to the OWB NA Liquidating Trust.  Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax pursuant to section 1146(a) of the Bankruptcy Code.

(b)    After the creation of the OWB USA Liquidating Trust pursuant to this Article VII, OWB USA shall transfer all of the OWB USA Liquidating Trust Assets, including any Litigation Claims, to the OWB USA Liquidating Trust.  Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax pursuant to section 1146(a) of the Bankruptcy Code.

6.    <u>Administration of the Liquidating Trusts</u>. Each Liquidating Trust shall be administered by the Liquidating Trustee of such Liquidating Trust pursuant to the respective Liquidating Trust Agreement and the Plan.  In the event of an inconsistency between the Plan and a Liquidating Trust Agreement as such conflict relates to anything other than the establishment of a Liquidating Trust, the Liquidating Trust Agreement shall control.

7.    <u>General Authority of the Liquidating Trustees</u>.  The Liquidating Trustees shall have, subject to the terms of the Liquidating Trust Agreements, the authority to act on behalf of their respective Liquidating Trusts and actions taken by the Liquidating Trusts (including actions contemplated by this Plan) shall be actions taken by and through their respective Liquidating Trustees.

8.    <u>Liquidating Trusts' Tax Power.</u>

(a)    The OWB NA Liquidating Trust shall have the same authority in respect of all taxes of OWB NA, and to the same extent, as if the OWB NA Liquidating Trust was OWB NA.

(b)    The OWB USA Liquidating Trust shall have the same authority in respect of all taxes of OWB USA, and to the same extent, as if the OWB USA Liquidating Trust was OWB USA.

9.    <u>Cash Investments</u>.  The Liquidating Trusts may invest Cash (including any earnings thereon or proceeds therefrom); <u>provided</u>, <u>however</u>, that such investments are investments permitted to be made by a "liquidating trust" within the meaning of U.S. Treasury Regulation § 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

10.    <u>Distributions.</u>

(a)    The OWB NA Liquidating Trust is required to distribute to the Holders of Allowed Claims against OWB NA Cash (including any Cash received from OWB NA and treating any permissible investment as Cash for purposes of this Article VII), less Retained Proceeds and such other amounts as may be reasonably necessary to (a) meet contingent liabilities and to maintain the value of the OWB NA Liquidating Trust Assets during liquidation, (b) pay reasonably incurred or anticipated expenses (including, without limitation, any taxes imposed on or payable by OWB NA or the OWB NA Liquidating Trust or in respect of the OWB NA Liquidating Trust Assets), or (c) satisfy other liabilities incurred or anticipated by the OWB NA Liquidating Trust in accordance with the Plan or the OWB NA Liquidating Trust Agreement; <u>provided</u>, <u>however</u>, that the OWB NA Liquidating Trust shall not be required to make a Distribution pursuant to this section of the Plan if the OWB NA Liquidating Trust

determines that the expense associated with making the Distribution would likely utilize a substantial portion of the amount to be distributed.

(b)     The OWB USA Liquidating Trust is required to distribute to the Holders of Allowed Claims against OWB USA on account of their OWB USA Liquidating Trust Interests, Cash (including any Cash received from OWB USA and treating any permissible investment as Cash for purposes of this Article VII), less such amounts that may be reasonably necessary to (a) meet contingent liabilities and to maintain the value of the OWB USA Liquidating Trust Assets during liquidation, (b) pay reasonably incurred or anticipated expenses (including, without limitation, any taxes imposed on or payable by OWB USA or the OWB USA Liquidating Trust or in respect of the OWB USA Liquidating Trust Assets), or (c) satisfy other liabilities incurred or anticipated by the OWB USA Liquidating Trust in accordance with the Plan or the OWB USA Liquidating Trust Agreement; provided, however, that the OWB USA Liquidating Trust shall not be required to make a Distribution pursuant to this section of the Plan if the OWB USA Liquidating Trust determines that the expense associated with making the Distribution would likely utilize a substantial portion of the amount to be distributed.

(c)     Distributions from the OWB NA Liquidating Trust, after payment of OWB NA Liquidating Trust Expenses and all Allowed Administrative Claims and Allowed Priority Claims against OWB NA, shall be made as follows:

i.    first to Holders of OWB NA Class A Trust Interests up to the amounts specified therein and in accordance with the terms of such OWB NA Class A Trust Interests;

ii.   second to Holders of OWB NA Class B Trust Interests up to the amounts specified therein and in accordance with the terms of such OWB NA Class B Trust Interests; and

iii.  third to Holders of OWB NA Class C Trust Interests up to the amounts specified therein and in accordance with the terms of such OWB NA Class C Trust Interests.

(d)     Distributions from the OWB USA Liquidating Trust, after payment of OWB USA Liquidating Trust Expenses and all Allowed Administrative Claims and Allowed Priority Claims against OWB USA, shall be made as follows:

i.    first to Holders of OWB USA Class A Trust Interests up to the amounts specified therein and in accordance with the terms of such OWB USA Class A Trust Interests;

ii.   second to Holders of OWB USA Class B Trust Interests up to the amounts specified therein and in accordance with the terms of such OWB USA Class B Trust Interests; and

iii. third to Holders of OWB USA Class C Trust Interests up to the amounts specified therein and in accordance with the terms of such OWB USA Class C Trust Interests.

11.   <u>Federal Income Tax Treatment of Each Liquidating Trust</u>. For all U.S. federal income tax purposes, all parties shall treat the transfer of Liquidating Trust Assets to the respective Liquidating Trust as: (a) a transfer of Liquidating Trust Assets (subject to any obligations relating to those assets) directly to Liquidating Trust Beneficiaries (other than to the extent Liquidating Trust Assets are allocable to Disputed Claims), followed by (b) the transfer by such beneficiaries to the Liquidating Trust of Liquidating Trust Assets in exchange for the Liquidating Trust Interests.  Accordingly, Liquidating Trust Beneficiaries shall be treated for U.S. federal income tax purposes as the grantors and owners of their respective share of the Liquidating Trust Assets (other than such Liquidating Trust Assets as are allocable to Disputed Claims). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

12.   <u>Tax Reporting.</u>

(a)   Each Liquidating Trust shall file tax returns for the respective Liquidating Trust treating such Liquidating Trust as a grantor trust pursuant to U.S. Treasury Regulation § 1.671-4(a) and in accordance with this Article VII.12.

(b)   Allocations of Liquidating Trust taxable income among Liquidating Trust Beneficiaries (other than taxable income allocable to any assets allocable to, or retained on account of, Disputed Claims) shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed Distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value, other than assets allocable to, or retained on account of, Disputed Claims) to the Holders of Liquidating Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent Distributions from the Liquidating Trust.  Similarly, taxable loss of each such Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating Distribution of the remaining Liquidating Trust Assets. The tax book value of Liquidating Trust Assets for the purpose of this paragraph shall equal their fair market value on the date Liquidating Trust Assets are transferred to the Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable U.S. Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(c)   As soon as reasonably practicable after the Liquidating Trust Assets are transferred to each such Liquidating Trust, the Liquidating Trust shall make a good faith valuation of the Liquidating Trust Assets.

(d)   Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by a Liquidating Trust of a private letter ruling if such Liquidating Trust so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by such Liquidating Trust), each

Liquidating Trust (i) may timely elect to treat any Liquidating Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by U.S. Treasury Regulation § 1.468B-9, and (ii) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties (including the Liquidating Trust, the Debtors, and Liquidating Trust Beneficiaries) shall report for U.S. federal, state and local income tax purposes consistently with the foregoing.

(e)     Each Liquidating Trust shall be responsible for payment, out of the respective Liquidating Trust Assets, of any taxes imposed on each such Liquidating Trust or its assets.

(f)     Each Liquidating Trust may request an expedited determination of taxes of the Liquidating Trust, including any reserve for Disputed Claims, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, such Liquidating Trust for all taxable periods through the dissolution of such Liquidating Trust.

13.     <u>Enforcement of Assigned Rights</u>.  The assignment of Assigned Rights by Electing OWB NA Claimants and Electing OWB USA Claimants to the applicable Liquidating Trust as set forth herein shall not be conditioned upon the execution, filing, or recordation of any termination statements, releases, assignment agreements, or any other documentation. Nevertheless, the OWB NA Liquidating Trustee and the OWB USA Liquidating Trustee, as applicable, shall be authorized to execute, file, or record any such documentation, and take such other and further actions, on behalf of and in the name of the Electing OWB NA Claimants and Electing OWB USA Claimants, as applicable, as are necessary to effectuate the assignment of the Assigned Rights to the applicable Liquidating Trust.

14.     <u>Dissolution.</u>

(a)     Each Liquidating Trustee and its respective Liquidating Trust shall be discharged or dissolved, as the case may be, at such time as (i) all of the Liquidating Trust Assets have been distributed pursuant to the Plan and such Liquidating Trust Agreement, (ii) a Liquidating Trust determines, in its sole discretion, that the administration of any remaining Liquidating Trust Assets in its Liquidating Trust is not likely to yield sufficient additional Liquidating Trust proceeds to justify further pursuit, or (iii) all Distributions required to be made by a Liquidating Trust under the Plan and a Liquidating Trust Agreement have been made; provided, however, that in no event shall a Liquidating Trust be dissolved later than three (3) years from the creation of such Liquidating Trust unless the Bankruptcy Court, upon motion within the six-month period prior to the third (3rd) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed-period extension (not to exceed five (5) years, together with any prior extensions, without a favorable private letter ruling from the Internal Revenue Service or an opinion of counsel satisfactory to the Liquidating Trust that any further extension would not adversely affect the status of the trust as a liquidating trust for U.S. federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

(b)     If at any time a Liquidating Trust determines, in reliance upon such professionals as such Liquidating Trust may retain, that the expense of administering the

Liquidating Trust so as to make a final Distribution to Liquidating Trust Beneficiaries is likely to exceed the value of the assets remaining in the Liquidating Trust, such Liquidating Trust may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to dissolve the Liquidating Trust, (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the IRC, (B) exempt from U.S. federal income tax under section 501(a) of the IRC, (C) not a "private foundation," as defined in section 509(a) of the IRC, and (D) that is unrelated to the Debtors, such Liquidating Trust, the Liquidating Trustee and any insider of the Liquidating Trust, and (iii) dissolve such Liquidating Trust.

## ARTICLE VIII
## CONFIRMATION OF THE PLAN

### A.    Conditions to Confirmation.

The following are conditions to the entry of the Confirmation Order unless such conditions, or any of them, have been satisfied or duly waived in accordance with Article VIII.B:

1.    The Bankruptcy Court shall have approved the Disclosure Statement in form and substance acceptable to the Debtors, the Committee, and ING Bank.

2.    The Confirmation Order shall be in form and substance acceptable to the Debtors, the Committee, and ING Bank.

3.    The Plan (which, for purposes of this Article VIII.A., shall include the Plan Supplement), shall be in form and substance acceptable to the Debtors, the Committee, and ING Bank.

### B.    Discharge of the Debtors.

Pursuant to section 1141(d)(3) of the Bankruptcy Code, confirmation of the Plan shall not discharge any of the Claims against the Debtors; provided, however, that no Holder of a Claim may on account of such Claim seek to receive any payment or other treatment from, or seek recourse against the applicable Debtor or Liquidating Trust or their respective property, except as expressly provided herein.

### C.    Exculpation

**Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including without limitation the service of the Exculpated Parties in facilitating the expeditious liquidation or dissolution of the Debtors and the implementation of the transactions contemplated by the Plan, none of the Exculpated Parties shall have or incur any liability to any Holder of a Claim or Equity Interest or any other Person for any act or omission arising out of or in connection with the Debtors' liquidation or dissolution, or the Chapter 11 Cases, on or before the Effective Date, regardless of whether such act or omission occurred or failed to occur, respectively, before or after the Petition Date, including without limitation the commencement of the Chapter 11 Cases, the negotiation**

-37-

and execution of the Disclosure Statement, the negotiation, execution and performance of the Plan, the solicitation of votes for and the pursuit of the Confirmation Order, the Effective Date, the consummation of the Plan, or the administration of the Plan or the Distributions to be made under the Plan; **provided**, **however**, that the foregoing provisions of this Article VIII.C. shall have no effect on the liability of the Exculpated Parties for gross negligence, willful misconduct, fraud or criminal conduct as determined by a Final Order. The Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under and in connection with the Plan.

      D.    <u>Release</u>

      1.    <u>Releases by Debtors</u>. As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including without limitation the service of the Released Parties in facilitating the expeditious liquidation or dissolution of the Debtors and the implementation of the transactions contemplated by the Plan, each of the Debtors, and any Person seeking to exercise the rights of a Debtor's Estate, including without limitation the Liquidating Trusts, the Liquidating Trustees acting on behalf of the Liquidating Trusts, or other successors to the Debtors or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, hereby irrevocably, absolutely and permanently releases, waives, and discharges all the Released Parties and their respective property from any and all Claims or Causes of Action that the Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest or other Person, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising out of or in any way related to the Debtors, the Chapter 11 Cases, or the Plan, including, for the avoidance of doubt, all such Claims or Causes of Action that the Debtors or the Estates have or may have related to the allegations asserted by the Debtors in the ING Bank Adversary Proceeding (including any Claims or Causes of Action arising under sections 547 and 548 of the Bankruptcy Code and applicable state fraudulent conveyance law); **provided**, **however**, that there shall be no such release on account of Claims or liabilities in respect of any contractual obligation owed by such Person to a Debtor under the Plan or in any contracts, instruments, or agreements delivered under the Plan; and **provided**, <u>further</u>, that the foregoing provisions of this Article VIII.D.1. shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order.

      2.    <u>Releases by Releasing Non-Debtor Parties</u>. As of the Effective Date, in exchange for their rights and distributions hereunder, each of the Releasing Non-Debtor Parties (regardless of whether a Releasing Non-Debtor Party is a Released Party) shall be deemed to have released, waived, and discharged, irrevocably, absolutely, and permanently, each of the Released Parties and their respective property from any and all Claims or Causes of Action based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising out of or in any way related to the Debtors, the Chapter 11 Cases, or the Plan; **provided**, **however**, that the foregoing provisions of this Article VIII.D.2. shall have no

effect on (a) the liability of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order or (b) any Cause of Action brought derivatively by a Liquidating Trust and in respect of which Cause of Action a Liquidating Trust has standing (pursuant to the Plan) to pursue except to the extent such Cause of Action is released pursuant to the Plan; **provided**, **further**, that the foregoing provisions of this Article VIII.D.2. shall not operate to waive or release any Claims or Causes of Action held by a Releasing Non-Debtor Party with respect to Professionals' final fee applications or Fee Claims in the Chapter 11 Cases.

3.      **Releases by ING Parties.**  As of the Effective Date, in exchange for their rights and distributions hereunder, each of the ING Releasing Parties shall be deemed to have released, waived, and discharged, irrevocably, absolutely, and permanently, each of the ING Released Parties and their respective property from any and all Claims or Causes of Action based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising out of or in any way related to the Debtors, the Chapter 11 Cases, or the Plan; **provided**, **however**, that the foregoing provisions of this Article VIII.D.3. shall have no effect on (a) the liability of the ING Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order or (b) any Cause of Action brought derivatively by a Liquidating Trust and in respect of which Cause of Action a Liquidating Trust has standing (pursuant to the Plan) to pursue except to the extent such Cause of Action is released pursuant to the Plan; **provided**, **further**, that the foregoing provisions of this Article VIII.D.3. shall not operate to waive or release the rights of the ING Releasing Parties to object to Professionals' fee applications (and Fee Claims asserted thereunder) filed with the Bankruptcy Court after August 20, 2015.

E.      **Injunction.**

**In addition to the injunction provided under sections 524(a) and 1141 of the Bankruptcy Code, the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, directly, derivatively or otherwise, of any Claims, Causes of Action or liabilities released or exculpated pursuant to the Plan, including without limitation the Claims and Causes of Action released in Article VIII.D.1-3. hereof; provided, however, that  parties may obtain copies of the purchase order, bunker delivery receipt, and/or invoice in matters in which a Debtor was an Intermediary Supplier from the applicable Liquidating Trustee without seeking leave from the Bankruptcy Court.**

F.      **Preservation of Litigation Claims.**

In accordance with section 1123(b) of the Bankruptcy Code, and except as expressly provided herein, all Litigation Claims shall be vested with the applicable Liquidating Trust. Nothing contained in this Plan or the Confirmation Order shall be deemed a waiver or relinquishment of any Litigation Claim, right of setoff, or other legal or equitable defense of the Debtors that is not specifically waived or relinquished by this Plan.  Each Liquidating Trust, as applicable, shall have, retain, reserve, and be entitled to assert all claims, Litigation Claims, rights of setoff, and other legal or equitable defenses that the Debtors had immediately before the Petition Date as fully as if the Chapter 11 Cases had not been commenced, and all legal and

equitable rights respecting any claim that is not specifically waived or relinquished by this Plan may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Litigation Claim against them as any indication that a Liquidating Trust, as applicable, will not pursue any and all available Litigation Claims against such Person. The Liquidating Trusts, as applicable, each expressly reserve all rights to prosecute any and all Litigation Claims against any Person in accordance with the Plan. From and after the Effective Date, the Liquidating Trusts shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Litigation Claim and to decline to do any of the foregoing without further notice to, or action, order, or approval of, the Bankruptcy Court. The Liquidating Trusts are deemed to be representatives of the Estates for the purpose of prosecuting any Litigation Claim and any objections to Claims pursuant to 11 U.S.C. § 1123(b)(3)(B).

**G.     Cancellation of Certain Indebtedness and Existing Securities.**

On the Effective Date, except as otherwise specifically provided for in the Plan: (a) the obligations of the Debtors under any certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in a Debtor giving rise to any Claim or Equity Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of a Debtor that are specifically Reinstated pursuant to the Plan), shall be cancelled as to such Debtor; and (b) the obligations of a Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of such Debtor (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of a Debtor that are specifically Reinstated pursuant to the Plan or assumed by a Debtor) shall be released and discharged.

**H.     Preservation of Insurance.**

Except as necessary to be consistent with this Plan, nothing herein shall diminish or impair the enforceability of any insurance policy that may provide coverage for Claims against the Debtors, their current and former directors and officers, or any other Person.

**ARTICLE IX
PROVISIONS GOVERNING DISTRIBUTIONS**

1.     Distributions for Claims Allowed as of the Effective Date. Except as otherwise provided herein or as ordered by the Bankruptcy Court, Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made by the applicable Liquidating Trust on the Effective Date. Any payment or Distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day. Notwithstanding any other provision of the Plan to the contrary, no Distribution shall be made on account of any Allowed Claim or portion thereof that has been satisfied after the Petition Date pursuant to a Final Order. A Liquidating Trust, in its discretion, may request an

accounting from the Holder of an Allowed Claim regarding the extent to which such Claim has been satisfied from any source other than the applicable Debtor or the applicable Liquidating Trust, and the Liquidating Trust may hold Distributions to the Holder of such Claim (after making an appropriate reserve) pending resolution of any dispute regarding the extent to which such Claim has been satisfied.

2.    <u>Distributions by Each Liquidating Trust</u>.  Other than as specifically set forth herein, the Liquidating Trusts shall make the Distributions required to be distributed under this Plan after the Effective Date; <u>provided</u>, <u>however</u>, each such Liquidating Trust may employ or contract with a Disbursing Agent to assist in or make the Distributions required by this Plan.

3.    <u>Delivery of Distributions and Undeliverable or Unclaimed Distributions</u>.  Distributions to Holders of Allowed Claims shall be made at the addresses set forth in the Schedules, unless such addresses are superseded by Proofs of Claim or transfers of claim filed pursuant to Bankruptcy Rule 3001 (or at the last known addresses of such Holders if a Debtor has been notified in writing of a change of address).

If a Distribution to any Holder of an Allowed Claim is returned to a Liquidating Trust as undeliverable or is otherwise unclaimed, no further Distributions shall be made to such Holder unless and until such Liquidating Trust is notified in writing of such Holder's then-current address.  Undeliverable and unclaimed Distributions shall be deposited in a segregated, interest-bearing account, designated as an "unclaimed distribution reserve" (the "<u>Unclaimed Distribution Reserve</u>"), for the benefit of all such similarly situated Persons until such time as a Distribution becomes deliverable, is claimed or is forfeited in accordance with Article IX.4.

On each Quarterly Distribution Date, the Liquidating Trusts shall make or cause to be made all Distributions that have become deliverable or have been claimed since the Effective Date or the immediately preceding Quarterly Distribution Date, as the case may be, together with any interest actually earned thereon.

4.    <u>Retained Proceeds</u>.  "Retained Proceeds" shall mean the Cash portion of the Liquidating Trust Assets that each Liquidating Trust determines, in its reasonable discretion, shall be retained as a reserve fund to cover, among other things (a) the Disputed Claim Reserves (it being understood that the OWB NA Liquidating Trust is entitled to request that the Bankruptcy Court fix the amount for the OWB NA Disputed Claim Reserve and the OWB USA Liquidating Trust is entitled to request the Bankruptcy Court fix the amount for the OWB USA Disputed Claim Reserve); and (b) the post-Effective Date costs and expenses of liquidating and administering the amounts to be distributed to Classes receiving Distributions under the Plan, including a reasonable reserve for the payment of the post-Effective Date compensation of the Liquidating Trustees, and the fees and expenses of any professionals, including any Disbursing Agent, retained by the Liquidating Trusts.  Any amounts remaining in the OWB NA Disputed Claim Reserve and the OWB USA Disputed Claim Reserve shall be used to make the final Distributions under the relevant Plan.

Any Holder of an Allowed Claim that does not make a request pursuant to the Plan for an undeliverable or unclaimed Distribution within one (1) year after the attempted Distribution shall be deemed to have forfeited its Claim for such undeliverable or unclaimed Distribution and shall

be forever barred and enjoined from asserting any such Claim or Cause of Action for an undeliverable or unclaimed Distribution against the Debtors and their Estates, any Liquidating Trustee, a Liquidating Trust, or its property, agents, Professionals, directors, officers, partners, employees, and affiliates.  In such cases, any Cash in the Unclaimed Distribution Reserve for distribution on account of such claims for undeliverable or unclaimed Distributions shall become property to be distributed by the applicable Liquidating Trust notwithstanding any federal or state escheat laws to the contrary, and shall be distributed in accordance with the terms of the Plan.  Nothing shall require any party, including, but not limited to, a Liquidating Trust or a Debtor, to attempt to locate any Holder of an Allowed Claim.

       5.        <u>Allocation of Plan Distributions Between Principal and Interest</u>.  To the extent that any Allowed Claim entitled to a Distribution under this Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for all income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent that the value of the Distributions exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

       6.        <u>Means of Payment</u>.  Payments made pursuant to the Plan shall be in Cash and shall be made, at the option and in the sole discretion of each Liquidating Trust, by (a) checks drawn on or (b) wire transfer from a domestic bank selected by the Liquidating Trust.  Payments to foreign creditors may be made, at the sole option of each Liquidating Trust, in such currency and by such means as are necessary or customary in a particular foreign jurisdiction.

       7.        <u>Withholding and Reporting Requirements</u>.  In connection with this Plan and all Distributions hereunder, the Debtors and the Liquidating Trusts shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  The Debtors and the Liquidating Trusts shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.  All Persons holding Claims or Equity Interests shall be required to provide any information and documentation necessary to effect information reporting and the withholding of such taxes.

       8.        <u>Setoffs</u>.  A Liquidating Trust may, but shall not be required to, exercise any right of setoff against any Claim pursuant to section 553 of the Bankruptcy Code or other applicable law; <u>provided</u>, <u>however</u>, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim that a Liquidating Trust may have against such Holder.  The Debtors' setoff rights are specifically preserved hereunder to the fullest extent possible under section 553 of the Bankruptcy Code and other applicable law.

       9.        <u>Estimation</u>.  A Liquidating Trust may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether a Debtor or a Liquidating Trust had previously objected to such Claim.  The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during proceedings concerning any objection to such Claim.  In the event that the Bankruptcy Court estimates any Disputed Claim, such estimated amount may constitute either: (a) the Allowed amount of such Claim; (b) the amount on which a reserve is to be calculated for

purposes of any reserve requirement under the Plan; or (c) a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor or the Liquidating Trust, as the case may be, may elect to object to ultimate payment of such Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another.

## ARTICLE X
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction:

a)      to resolve any matters related to (i) the  assumption, assumption  and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor or a Liquidating Trust may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims and Rejection Damages Claims pursuant to section 365 of the Bankruptcy Code; (ii) a Liquidating Trust amending, modifying, or supplementing the Assumption Schedule; and (iii) any dispute regarding whether a contract or lease is or was executory or expired;

b)      to determine, adjudicate, or decide any other applications, adversary proceedings, contested matters, Litigation Claims, and any other matters pending on the Effective Date;

c)      to ensure that Distributions to Holders of Allowed Claims are accomplished as provided herein;

d)      to resolve disputes as to the ownership of any Claim;

e)      to allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

f)      to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, reversed, modified, or vacated;

g)      to issue such orders in aid of execution of the Plan as are authorized by section 1142 of the Bankruptcy Code;

h)      to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

i)      to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331 and 503(b) of the Bankruptcy Code;

-43-

j)　　　to hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan;

k)　　　to hear and determine any issue for which the Plan requires an order of the Bankruptcy Court;

l)　　　to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

m)　　　to hear and determine disputes arising in connection with compensation and reimbursement of expenses of Professionals for services rendered during the period commencing on the Petition Date through and including the Effective Date;

n)　　　to hear and determine any Litigation Claims preserved under the Plan, with the exception of any Litigation Claims arising under the Maritime Lien Act (including such claims arising under the general maritime law of the U.S. or a foreign entity) being prosecuted or defended in pending or future interpleader or arrest actions involving Supply Receivables;

o)　　　to hear and determine any matter regarding the existence, nature and scope of a Debtor's discharge;

p)　　　to hear and determine any matter, case, controversy, suit, dispute, or Litigation Claim (i) regarding the existence, nature, and scope of the discharge, releases, injunctions, and exculpation provided under the Plan, and (ii) enter such orders as may be necessary or appropriate to implement such discharge, releases, injunctions, exculpations, and other provisions;

q)　　　to enter a final decree closing a Chapter 11 Case;

r)　　　to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of the Plan;

s)　　　to adjudicate any and all disputes arising from or relating to Distributions under the Plan;

t)　　　to enforce all orders previously entered by the Bankruptcy Court; and

u)　　　to hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.　　Assumption of Executory Contracts and Unexpired Leases.

1.　　*Deemed Rejection.*  Except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously assumed, assumed and assigned, or rejected as of the Effective Date by a Final Order shall be deemed automatically rejected pursuant to sections

365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (a) is expressly identified on a schedule to the Plan Supplement as assumed (the "Assumption Schedule"); (b) has been previously assumed or rejected by the Debtors by Final Order or has been rejected by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (c) is the subject of a motion to assume pending as of the Effective Date; or (d) is otherwise assumed pursuant to the terms herein.

2. _Assumption Schedule_. The Debtors will file the Assumption Schedule as part of the Plan Supplement. The Assumption Schedule will include (a) the name of the non-Debtor counterparty, (b) the legal description of the Executory Contract or Unexpired Lease to be assumed, and (c) the proposed cure. On or as soon as practicable thereafter, the Debtors will serve a notice of the proposed assumption as well as a notice of filing of the Assumption Schedule upon each non-Debtor counterparty listed thereon, which will describe the procedures by which such parties may object to the proposed assumption of their respective Executory Contract or Unexpired Lease and explain how such disputes will be resolved by the Bankruptcy Court if the parties are not able to resolve a dispute consensually.

3. Effectiveness of the Confirmation Order. The Confirmation Order will constitute an order of the Bankruptcy Court approving such assumption or rejection pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date or as otherwise set forth in the Plan Supplement.

4. _Rejection Damage Claims_. If the rejection by the Debtors of an Executory Contract or Unexpired Lease gives rise to a Rejection Damage Claim, a Proof of Claim must be filed with the Bankruptcy Court within (a) thirty (30) days after the date of entry of an order of the Bankruptcy Court approving such rejection, or (b) if the Executory Contract or Unexpired Lease is not listed on the Assumption Schedule, within thirty (30) days after the date of entry of the Confirmation Order. For the avoidance of doubt, all Allowed Rejection Damage Claims shall be treated as General Unsecured Claims.

5. _REQUIREMENT TO FILE A PROOF OF CLAIM FOR REJECTION DAMAGE CLAIMS_. ANY REJECTION DAMAGE CLAIMS THAT ARE NOT TIMELY FILED SHALL BE DISALLOWED AUTOMATICALLY, FOREVER BARRED FROM ASSERTION, AND SHALL NOT BE ENFORCEABLE AGAINST A DEBTOR OR A LIQUIDATING TRUST WITHOUT THE NEED FOR ANY OBJECTION BY A DEBTOR OR A LIQUIDATING TRUST OR FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND ANY REJECTION DAMAGE CLAIM SHALL BE DEEMED FULLY SATISFIED, RELEASED, AND DISCHARGED, NOTWITHSTANDING ANYTHING IN THE SCHEDULES OR A PROOF OF CLAIM TO THE CONTRARY.

**B.    Cure Claims.**

At the election of a Debtor or a Liquidating Trust, as applicable, any monetary defaults under each Executory Contract and Unexpired Lease to be assumed under the Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code in one of the following ways: (a)

payment of the Cure Claim in Cash on or as soon as reasonably practicable after the first to occur of (i) thirty (30) days after the determination of the Cure Claim, and (ii) the Effective Date or such other date as may be set by the Bankruptcy Court, or (b) on such other terms as agreed to by a Debtor or Liquidating Trust and the non-Debtor counterparty to such Executory Contract or Unexpired Lease.  In the event of a dispute pertaining to assumption or assignment, the Cure Claim payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the resolution of the dispute in accordance with Article XII of this Plan.

The only adequate assurance of future performance required shall be the promise of a Liquidating Trust to perform all obligations under any Executory Contract or Unexpired Lease under this Plan.

**ASSUMPTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE PURSUANT TO THE PLAN OR OTHERWISE SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME BEFORE THE DATE OF ASSUMPTION OF SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE. ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT**.

Obligations arising under insurance policies assumed by the Debtors before the Effective Date shall be adequately protected in accordance with any order of the Bankruptcy Court authorizing such assumption.

C.      <u>Reservation of Rights.</u>

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, as applicable, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease for which it has any liability thereunder.  In the event a written objection is filed with the Bankruptcy Court as to whether a contract or lease is executory or unexpired, the right of the Debtors or a Liquidating Trust to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after the entry of a Final Order determining that the contract or lease is executory or unexpired, in which case the deemed assumptions and rejections provided for in the Plan shall not apply to such contract or lease.

D.      <u>Insurance Policies.</u>

Notwithstanding anything in this Plan to the contrary, all of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan.  On the Effective Date, the Debtors shall be

-46-

deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto, which shall be deemed assigned by the relevant Debtor to the relevant Liquidating Trust on the Effective Date.

### E.    Post-Petition Contracts and Leases.

All contracts, agreements, and leases that were entered into by a Debtor or assumed by a Debtor after the Petition Date shall be deemed assigned by that Debtor to the corresponding Liquidating Trust on the Effective Date.

## ARTICLE XII
## PROCEDURES FOR RESOLVING DISPUTED,
## CONTINGENT, AND UNLIQUIDATED CLAIMS

1.    Prosecution of Objections.  The Liquidating Trusts shall be authorized to, and shall, resolve all Disputed Claims by withdrawing or settling such objections thereto, or by litigating to judgment in the Bankruptcy Court or such other court having jurisdiction the validity, nature, and/or amount thereof.

2.    No Distributions Pending Allowance.  Notwithstanding any other provision of this Plan, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

3.    Amendments to Claims; Claims Filed After the Confirmation Date.  No Claim that was required to be filed by the Bar Date or the Administrative Expense Bar Date (as the case may be) shall be filed with the Bankruptcy Court or amended (except to reduce the amount of the Claim) after the respective bar date.  Any Claim that was required to be filed by the Bar Date or the Administrative Expense Bar Date (as the case may be) that is instead filed after the respective bar date shall be deemed Disallowed without further action or order of the Bankruptcy Court.  Any timely filed Claim that was amended (except to reduce the amount of the Claim) after the Bar Date or the Administrative Expense Bar Date (as the case may be) shall be deemed Disallowed with respect to the amended claim without further action or order of the Bankruptcy Court; provided, however, the original filed Claim shall not be affected.

## ARTICLE XIII
## EFFECTIVENESS OF THE PLAN

### A.    Conditions Precedent to Effectiveness.

The Plan shall not become effective unless and until the Confirmation Date has occurred and the following conditions have been satisfied in full or waived in accordance with Article XIII.B:

1.    the Confirmation Order shall not have been stayed, modified, or vacated on appeal;

2.      all actions, documents, certificates, and agreements necessary to implement the Plan (including without limitation the OWB NA Liquidating Trust Agreement and the OWB USA Liquidating Trust Agreement) shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable laws;

3.      all authorizations, consents and regulatory approvals required for the Plan's effectiveness (if any) shall have been obtained;

4.      there shall not be in effect on the Effective Date any (a) order entered by a U.S. court; (b) any order, opinion, ruling, or other decision entered by any other court or Governmental Unit or (c) any U.S. or other applicable law staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by the Plan;

5.      the Bankruptcy Court shall have entered a Final Order granting the OWB Holding Settlement Motion and approving the OWB Holding Settlement Agreement, which agreement shall be in form and substance acceptable to the Debtors, the Committee, and ING Bank; and

6.      to the extent the Debtors have withdrawn the Plan as it relates to OWB USA only and have sought approval of the Confirmation Alternative Settlement from the Bankruptcy Court, the Bankruptcy Court shall have entered a Final Order approving the Confirmation Alternative Settlement Agreement, which agreement shall be in form and substance acceptable to the Debtors, the Committee, and ING Bank.

## B.      Waiver of Conditions Precedent to Effectiveness.

The Debtors, with the consent of the Committee and ING Bank, may waive conditions set forth in Article XIII.A above at any time without leave of or order of the Bankruptcy Court and without any formal action.

## C.      Effect of Failure of Conditions.

In the event that the Effective Date does not occur on or before January 15, 2016 (or such later date agreed to by the Debtors, the Committee, ING Bank, and NuStar), upon notification (which shall be in form and substance as agreed among the Debtors, the Committee, ING Bank, and NuStar) submitted by the Debtors to the Bankruptcy Court, or as otherwise may be requested by the Debtors, the Committee, ING Bank, or NuStar after notice and a hearing, the Bankruptcy Court may vacate the Confirmation Order. For the avoidance of doubt, nothing shall prevent any party, after January 15, 2016, from seeking relief which seeks to (i) compel the Debtors to effectuate the Plan and the Confirmation Order, or (ii) vacate or revoke the Confirmation Order. Upon any such vacation of the  Confirmation Order: (a) no Distributions under the Plan shall be made; (b) the Debtors and all Holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (c) the Debtors' obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained in the Plan shall

constitute or be deemed a waiver, release, or discharge of any Claims or Equity Interests by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors unless otherwise ordered by the Bankruptcy Court.

### D.    Vacatur of Confirmation Order.

If a Final Order denying confirmation of the Plan is entered, or if the Confirmation Order is vacated, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall: (a) constitute a waiver, release, or discharge of any Claims against or Equity Interests in any Debtor; (b) prejudice in any manner the rights of the Holder of any Claim against, or Equity Interest in, the Debtors; (c) prejudice in any manner any right, remedy, or claim of the Debtors; or (d) be deemed an admission against interest by the Debtors.

### E.    Revocation, Withdrawal, or Non-Consummation.

1.    *Right to Revoke or Withdraw*.  The Debtors reserve the right to revoke or withdraw the Plan as a whole, or solely as it relates to either OWB USA or OWB NA, subject only to the agreement of the Committee and ING Bank, at any time before the Effective Date.

2.    *Effect of Withdrawal, Revocation, or Non-Consummation*.  If the Debtors revoke or withdraw the Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Equity Interest or Class of Claims or Equity Interests), the assumption or rejection of Executory Contracts, or Unexpired Leases effected by the Plan, any release, or exculpation provided for in the Plan, and any document or agreement executed pursuant to the Plan shall be null and void.  In such event, nothing contained herein and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims by or against or Equity Interests in the Debtors or any other Person, to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or to constitute an admission of any sort by the Debtors or any other Person.

## ARTICLE XIV
## MISCELLANEOUS PROVISIONS

### A.    Immediate Binding Effect.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon  the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed  binding  upon the Debtors, the Liquidating Trusts, and any and all Holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan), all Persons that are parties to or are subject to the settlements,  compromises,  releases,  discharges,  and injunctions  described  in the Plan, each Person acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with any Debtor.

### B.        Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Connecticut (without reference to the conflicts of laws provisions thereof that would require or permit the application of the law of another jurisdiction) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specified.

### C.        Filing or Execution of Additional Documents.

On or before the Effective Date, the Debtors or the Liquidating Trusts shall (on terms materially consistent with the Plan) file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, which shall be in form and substance acceptable to the Debtors, the Committee, and ING Bank.

### D.        Term of Injunctions or Stays.

**All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.**

### E.        Withholding and Reporting Requirements.

In connection with the Plan and all instruments issued in connection therewith and Distributions thereon, the Liquidating Trusts shall comply with all withholding and reporting requirements imposed by any U.S. federal, state, local or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Liquidating Trusts shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding any Distribution pending receipt of information and documentation necessary or appropriate to facilitate such Distributions, or establishing any other mechanisms they believe are reasonable and appropriate.

### F.        Exemption From Transfer Taxes.

Pursuant to and to the fullest extent permitted by section 1146(a) of the Bankruptcy Code, all transfers of property pursuant hereto shall not be subject to any stamp, conveyance, mortgage, sales or use, real estate transfer, recording, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

-50-

### G.     <u>Plan Supplement.</u>

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. The documents contained in the Plan Supplement shall be available online at www.pacer.gov. The Debtors reserve the right, in accordance with the terms hereof, to modify, amend, supplement, restate, or withdraw any part of the Plan Supplement after they are filed and shall promptly make such changes available online at www.pacer.gov.

### H.     <u>Bar Dates for Administrative Claims.</u>

The Confirmation Order will establish the Administrative Expense Bar Date as the deadline for filing Administrative Claims (other than Fee Claims) to the extent that such Administrative Claims were incurred <u>after</u> the Petition Date and not paid in the ordinary course of business. Holders of asserted Administrative Claims not paid before the Confirmation Date shall submit proofs of claim on or before such Administrative Expense Bar Date or forever be barred from doing so. The notice of confirmation to be delivered under Bankruptcy Rules 3020(c) and 2002(f) will set forth such date and constitute notice of this Administrative Expense Bar Date. The Debtors and the Liquidating Trusts shall have ninety (90) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Expense Bar Date to review and object to such Administrative Claims before a hearing for determination of allowance of such Administrative Claims. For the avoidance of doubt, the Administrative Expense Bar Date may not be used by any Person asserting a Section 503(b)(9) Claim which claims were due to be filed by the Bar Date.

### I.     <u>Amendment or Modification of the Plan.</u>

Subject to the limitations contained in the Plan, the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, and subject to the agreement of the Committee and ING Bank, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code. After entry of the Confirmation Order, the Debtors or the Liquidating Trusts, as the case may be, may, with the agreement of ING Bank, and the Committee (prior to its dissolution pursuant to Article XIV.J) and upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code.

### J.     <u>The Creditors' Committee.</u>

The Creditors' Committee will continue in existence until the Effective Date, at which time it will be dissolved and its members will be released from all their duties, responsibilities and obligations in connection with the Chapter 11 Cases, including with respect to the Plan and its implementation. The retention or employment of the Creditors' Committee's Professionals also will terminate on the Effective Date, except with respect to (a) the Fee Claims of the Committee's Professionals, and (b) any appeals of the Confirmation Order. All Fees and expenses of Creditors' Committee's Professionals through the Effective Date will be paid in accordance with the terms and conditions of a Final Order approving Fee Claims and the Plan.

### K.      Successors and Assigns.

This Plan shall be binding upon and inure to the benefit of each of the Debtors and their respective successors and assigns, including, without limitation, the Liquidating Trusts.  The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

### L.      Section 1125(e) of the Bankruptcy Code.

As of the Confirmation Date, the Debtors shall be deemed to have solicited acceptances hereof in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

### M.      Tax Reporting and Compliance.

The Debtors and the Liquidating Trusts are hereby authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtors for all taxable periods ending after the Petition Date through, and including, the Effective Date.

### N.      Notices

All notices, requests, and demands hereunder to be effective shall be made in writing or by e-mail, and unless otherwise expressly provided herein, shall be deemed to have been duly given when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed.  Each of such notices shall be addressed as follows:

1.      To the Debtors:

Natalie D. Ramsey and Davis Lee Wright
Montgomery, McCracken, Walker & Rhoads, LLP
437 Madison Avenue, 29th Floor
New York, NY 10022
nramsey@mmwr.com
dwright@mmwr.com
Tel: (212) 867-9500
Fax: (212) 599-1759

-and-

Michael R. Enright and Patrick M. Birney
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103
menright@rc.com
pbirney@rc.com
Tel: (860) 275-8290
Fax:  (860) 275-8299


2.      To the Committee:

Peter S. Partee, Sr. and Michael P. Richman
Hunton & Williams LLP
200 Park Avenue
New York, NY 10116
ppartee@hunton.com
mrichman@hunton.com
Tel: (212) 309-1223
Fax: (212) 309-1100


3.      To ING Bank:


Daniel J. Guyder and Joseph Badtke-Berkow
Allen & Overy LLP
1221 Avenue of the Americas
New York, NY 10020
daniel.guyder@allenovery.com
joseph.badtke-berkow@allenovery.com
Tel: (212) 610-6300
Fax: (212) 610-6417


        -and-

Craig I. Lifland
Halloran & Sage LLP
225 Asylum Street
Hartford, CT  06103-4303
lifland@halloransage.com
Tel: (860) 522-6103
Fax: (860) 548-0006

    4.      To the U.S. Trustee:

Holley L. Claiborn and Kim L. McCabe
Office of the United States Trustee
The Giaimo Federal Building
150 Court Street, Room 302
New Haven, CT 06510
Tel: (203) 773-2210
Fax: (203) 773-2217

**O.**    **Conflicts.**

The terms of the Plan shall govern in the event of any inconsistency between the Plan and the Disclosure Statement.  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern with respect to such inconsistency.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

3980626v5  11/19/2015

Dated:  October 14, 2015

First Modification Approved: November 18, 2015


**O.W. BUNKER HOLDING NORTH AMERICA INC.,**
**O.W. BUNKER USA INC., AND O.W. BUNKER NORTH AMERICA INC.**


By:      /s/ Hans Staal Jonassen
　　　　　Name: Hans Staal Jonassen
　　　　　Title:   Authorized Officer

-55-